IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONA DOBRICH, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A.No. 05-120-JJF |
| | : | |
| | : | |
| HARVEY L. WALLS, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT REGINALD L. HELMS' OPENING BRIEF IN SUPPORT OF HIS
MOTION TO DISMISS ALL CLAIMS AGAINST HIM IN HIS INDIVIDUAL
CAPACITY**

| | |
|---|---|
| THE RUTHERFORD INSTITUTE | THE NEUBERGER FIRM, P.A. |
| JOHN W. WHITEHEAD, ESQ. | THOMAS S. NEUBERGER, ESQ. (#243) |
| DOUGLAS R. MCKUSICK, ESQ. | STEPHEN J. NEUBERGER, ESQ. (#4440) |
| P.O. Box 7482 | Two East Seventh Street, Suite 302 |
| Charlottesville, VA 22906 | Wilmington, DE 19801 |
| (434) 978-3888 | (302) 655-0582 |
| JohnW@Rutherford.org | TSN@NeubergerLaw.com |
| DouglasM@Rutherford.org | SJN@NeubergerLaw.com |
| | |
| Of Counsel | Attorneys for Reginald L. Helms |

Dated: April 4, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      I.      DEFENDANT HELMS, AS A MEMBER OF THE SCHOOL BOARD, IS
            ABSOLUTELY IMMUNE FROM ALL CLAIMS AGAINST HIM IN HIS
            INDIVIDUAL CAPACITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            A.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**TABLE OF AUTHORITIES**

**Cases**                                              **Page**

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994) .................................... 6

Bogan v. Scott-Harris, 523 U.S. 44 (1998) ..................................... 5-6,8

City of Canton v. Harris, 489 U.S. 378 (1989) ..................................... 9

McHugh v. Bd. of Educ. of the Milford Sch. Dist., 100 F. Supp. 2d 231 (D. Del. 2000) ..... 5-6

Morris v. Stokes, 2004 WL 609376 (D.Del. March 18, 2004) ........................... 5

Pfizer, Inc. v. Ranbaxy Laboratories Ltd., 321 F. Supp. 2d 612 (D. Del. 2004) .............. 4

Supreme Ct. of Virginia v. Consumers Union of U.S., 446 U.S. 719 (1980) ................ 9

Tenney v. Brandhove, 341 U.S. 367 (1951) ....................................... 6

Yeldell v. Cooper Green Hosp., 956 F.2d 1056 (11th Cir. 1992) ....................... 7-8

Youngblood v. DeWeese, 352 F.3d 856 (3d Cir. 2003) .............................. 6,9

**Statutes and Rules**

42 U.S.C. § 1983 ...................................................... passim

Fed. R. Civ. P. 12(b)(6) ..................................................... 1,4

## NATURE AND STAGE OF THE PROCEEDINGS

The instant action is one to secure relief for alleged violations of the Constitution of the United States. The Plaintiffs are named and unnamed parents and children who reside within the Indian River School District (hereafter "the District"). The Defendants include the District, the Indian River School Board, District administrators, and the individual members of the School Board. Defendant Reginald Helms, on whose behalf the instant motion is filed, is a member of the School Board and is sued in his individual and official capacities. Only the Complaint has been filed in this case. The instant motion to dismiss is filed in answer to the Complaint under Fed. R. Civ. P. 12(b).

## SUMMARY OF THE ARGUMENT

Local legislators are absolutely immune from individual liability of any kind under 42 U.S.C. § 1983 for acts that are within the sphere of legitimate legislative activity. It is established that school board members like Defendant Helms are considered legislators protected by this absolute immunity. Even to the extent the Complaint alleges some conduct on the part of Defendant Helms that caused the deprivations alleged by the Plaintiffs, absolute legislative immunity attaches to that conduct. The Plaintiffs allege that Defendant Helms and other School Board members established a policy that resulted in constitutional deprivations. Such policymaking, whether by action or inaction, is the kind of discretionary decisionmaking for which local legislators are granted absolute immunity. Thus, all the claims against Defendant Helms in his individual capacity are barred by absolute legislative immunity and must be dismissed.

## STATEMENT OF FACTS

The Complaint alleges that the Plaintiffs are parents who reside within the District and

1

have children who attend District schools. (Comp. ¶¶ 7-14). The Defendant School Board is an elected body that governs the schools in the District and determines final policy for the District. (Comp. ¶ 16). Defendant Reginald L. Helms (hereafter "Helms") is a member of the District School Board and is sued in his individual and official capacities. (Comp. ¶ 17).

It is alleged that school-sponsored prayer pervades the life of students in District schools. (Comp. ¶ 22). Plaintiffs allege incidents involving prayer at graduation exercises (Comp. ¶¶ 23-30), athletic events (Comp. ¶¶ 40-42), and other school-related social events. (Comp. ¶¶ 43-47). It is further alleged that the School Board opened every meeting with a prayer. (Comp. ¶ 52). In one case, a meeting was opened with a prayer in "the Lord's name." (Comp. ¶ 58). On other occasions, meetings were opened with a prayers "in the name of Christ" and to "Our Heavenly Father." (Comp. ¶¶ 62, 64). The Complaint alleges that "the School Board makes District and school policy at School Board meetings and that, . . . School Board meetings are an integral component of the District's public school system." (Comp. ¶ 69).

The Complaint goes on to recount the Plaintiffs' reaction to prayers at school-related events. The Dobrich Plaintiffs, who are Jewish, heard Pastor Fike, who is neither a School Board member nor an agent or officer of the District, give a prayer at a graduation ceremony invoking the guidance of Jesus. (Comp. ¶ 70). In response, the Dobrichs complained to school administrators and sought to have the issue of prayer considered by the School Board. (Comp. ¶¶ 71-72). Plaintiff Mona Dobrich spoke out at the School Board's June 15, 2004 meeting and requested that the name of Jesus not be used at school events. (Comp. ¶ 74). At the School Board's subsequent meeting, the issue of prayer was again considered and Mona Dobrich spoke out about how she was made to feel different by the prayers offered at school events. (Comp. ¶ 81). Other members of the public spoke out in favor of allowing prayers as they had been made

2

in the past. (Comp. ¶ 82). In response, the School Board eventually announced it would form a committee to develop a policy regarding prayer. (Comp. ¶ 84).

The controversy over prayer was the subject of local controversy and media coverage. (Comp. ¶¶ 85-88). Many supporters of prayer gathered at the subsequent school board meeting, and the Dobrichs allege they were intimidated by the crowd at the meeting. (Comp. ¶ 89-91). The meeting was opened by prayer offered by a School Board member. (Comp. ¶ 92). Plaintiff Mona Dobrich again offered public comments at the meeting in which she spoke of a backlash against her because of the prayer issue. (Comp. ¶ 95). The statement of Plaintiff Alex Dobrich was read by his sister, in which Alex recounted how he had been called a "Jew boy" by classmates. Before his statement was read, a member of the crowd shouted to Alex to "take your yamulke off." (Comp. ¶ 96). Other members of the public allegedly made comments in which they expressed the importance of invoking the name of Jesus in prayer. (Comp. ¶¶ 99, 103). One speaker purportedly suggested that Mona Dobrich might "disappear" like Madalyn Murray O'Hair. (Comp. ¶ 101).

It is alleged that after Mona spoke out in favor of a different prayer policy, "members of the community who opposed her views made the Dobrich family miserable." The Complaint recites instances where members of the public made derogatory comments to the Dobrichs about their Jewish faith and heritage. (Comp. ¶¶ 106-108). The Dobrichs became increasingly fearful . (Comp. ¶ 109-110).

It is alleged that "[a]s a direct result of the policies and practices of the School Board and the District, and the environment they fostered, the Dobrichs decided that they had to leave." (Comp. ¶ 111).

New policies on prayer were submitted to the School Board. It is alleged that the School

3

Board refused to distribute copies of these policies to allow for meaningful public comment. (Comp. ¶ 119). However, the Complaint also alleges that the School Board has violated its policy of having a prayer offered on a rotating basis because Defendant John Evans, a School Board member, has opened three consecutive School Board meetings with a prayer in the name of Jesus. (Comp. ¶ 125).

The Complaint contains three counts. Count I alleges that the Defendants violated the First Amendment by endorsing and establishing prayer and other religious activities at school events. (Comp. ¶ 139). Count II alleges that the Defendants violated the Plaintiffs' rights under the First Amendment to freely exercise their religion. (Comp. ¶ 148). Count III alleges that the Defendants, by failing to train district personnel, have allowed violations of the Plaintiffs' First Amendment rights. (Comp. ¶ 156). The Plaintiffs apparently base their right to relief for these alleged deprivations upon 42 U.S.C. § 1983. (Comp. ¶ 20).

## ARGUMENT

I. **DEFENDANT HELMS, AS A MEMBER OF THE SCHOOL BOARD, IS ABSOLUTELY IMMUNE FROM ALL CLAIMS AGAINST HIM IN HIS INDIVIDUAL CAPACITY.**

**A. Standard of Review.** Even under the demanding standard applicable to sustain a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the claims in this case against Defendant Helms in Helms' individual capacity must be dismissed under the established doctrine of legislative immunity. A complaint may be dismissed under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Pfizer, Inc. v. Ranbaxy Laboratories Ltd., 321 F. Supp. 2d 612, 615 (D. Del. 2004). All factual allegations of the complaint must be accepted as true and all reasonable inferences from those allegation must be drawn in favor of the nonmoving party. Id. at 614-15. But these

4

accommodations to the plaintiff will not suffice where it appears that the claims against a defendant are barred by immunity principles applicable to claims brought under 42 U.S.C. § 1983.  Morris v. Stokes, 2004 WL 609376, *2 (D.Del. March 18, 2004).

**B. Discussion.**  Even if there were some allegation of conduct on the part of Defendant Helms that conceivably could be deemed to have caused the deprivations alleged by the Plaintiffs, the absolute immunity applicable to the acts of legislative officials precludes any action against Defendant Helms in his personal capacity for any relief.  In Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998), the Supreme Court confirmed that "local legislators are entitled to absolute immunity from § 1983 liability for legislative activities."  School board members like Defendant Helms are covered by this absolute immunity under the decision in McHugh v. Bd. of Educ. of the Milford Sch. Dist., 100 F. Supp. 2d 231 (D. Del. 2000).  McHugh held that individual school board members in Delaware perform the kind of legislative functions that clothe them with immunity from § 1983 liability.

> Under Delaware law, the School Board is vested with authority "to determine and adopt rules and regulations for the general administration and supervision" of the public schools in the District. 14 Del. C. §§ 1043. The Board also has authority to appoint personnel and to "determine the educational policies... and prescribe rules and regulations for the conduct and management of the schools." Id. §§ 1049(2), (9).

McHugh, 100 F. Supp. 2d at 238.  Because of the legislative character of a school board's powers, its members are absolutely immune from suits based upon the member's conduct in that office.

To the extent the Plaintiffs are relying upon the adoption of a policy on prayer in the schools and at District-sponsored events, the adoption is clearly a legislative act for which Defendant Helms is absolutely immune.  Legislative immunity attaches to any activity that is within the sphere of legitimate legislative activity.  Bogan, 523 U.S. at 54.  That sphere broadly

5

includes all activities that are part of the deliberative and communicative process by which members of a legislative body participate in proceedings with respect to the passage of proposals within their jurisdiction. Youngblood v. DeWeese, 352 F.3d 856, 840 (3d Cir. 2003). Those actions that reflect a "discretionary, policymaking decision" are part of the legislative sphere of activity and protected by absolute immunity. Id. (quoting Bogan, 523 U.S. at 55-56). Almost by definition, any policy on prayer or religious activities adopted by the School Board must be deemed a policymaking decision.

Even assuming the Plaintiffs could show that the purpose of the School Board's adoption of a policy on religious activities was to establish a religion or interfere with the Plaintiffs' exercise of their faith, a purpose which Defendant Helms disavows, that would not remove the protection of legislative immunity. The Supreme Court has held that "legislators' motives are irrelevant to whether their activities enjoy legislative immunity, stating that 'the claim of an unworthy purpose does not destroy the privilege.'" Youngblood, 352 F.3d at 839-840 (quoting Tenney v. Brandhove, 341 U.S. 367, 377 (1951)).

Any reliance by the Plaintiffs upon the idea that Defendant Helms is not protected by absolute immunity because he did not act through established legislative procedures, or act in any way whatsoever, and so was not "procedurally legislative" must be rejected. In McHugh, 100 F. Supp. 2d at 238 n.6, (citing Acierno v. Cloutier, 40 F.3d 597, 610 (3d Cir. 1994)), the Court recognized that Third Circuit decisions predating the Bogan decision by the Supreme Court required that conduct be "procedurally" legislative, meaning that it was undertaken through established legislative procedures. However, in Youngblood, 352 F.3d at 841 n.4, the Third Circuit held that the ruling in Bogan showed that requiring an act be procedurally legislative is inconsistent with the scope of legislative immunity. It noted that the Bogan decision had refused

6

to require that a legislator's act be of a "formally legislative character" in order to be protected by the immunity.

Accordingly, the Plaintiffs cannot avoid the application of the absolute immunity doctrine here on the basis that the acts upon which they base their claims against Defendant Helms are not procedurally legislative. Indeed, it is difficult to accept such an argument because the Plaintiffs' Complaint does not identify any <u>act</u> on the part of Defendant Helms that caused the alleged constitutional deprivations. In Counts I and II, the Plaintiffs refer to a "custom or practice" on the part of the individual defendants that established a policy resulting in an endorsement and establishment of religion and interference with the Plaintiffs' freedom to exercise their religion. But no act on the part of Defendant Helms is alleged which resulted in the creation of this policy or practice. Count III of the Complaint asserts a <u>failure</u> to act on the part of the School Board, so again it does not set forth an act on the part of Defendant Helms resulting in a violation of the Plaintiff's constitutional rights.

Any resistance to Defendant Helms' claim of absolute immunity fares no better to the extent the Plaintiffs' claims are based upon a failure of Defendant Helms or the School Board to act. Indeed, such a failure to act is plainly the basis for the claim in Count III of the Complaint and also largely underlies the claims in Counts I and II. Again, the Complaint sets forth no conduct on the part of Defendant Helms that resulted in the custom or practice alleged in the Complaint. Thus, the only ground for attaching liability to Defendant Helms is that he condoned or failed to remedy allegedly harmful customs or practices existing in the District.

A theory of § 1983 liability based upon a failure of a legislator to act surely cannot withstand a defense based upon legislative immunity. In <u>Yeldell v. Cooper Green Hospital</u>, 956 F.2d 1056 (11th Cir. 1992), the court held that local legislators were protected by absolute

immunity from a § 1983 claim alleging race discrimination against employees of a county hospital. Several of the legislators were allegedly liable because they failed to take action to prevent or remedy the unconstitutional conduct. In holding that a claim based on a failure to act was barred by the legislators' absolute immunity, the court held that "the decision whether or not to introduce legislation is one of the most purely legislative acts there is." Id. at 1063. The court went on to write as follows:

> To conclude otherwise would require us to ignore the central purpose of the doctrine of legislative immunity. Legislative immunity evolved as a measure to protect the democratic integrity of the legislative process by guaranteeing that the other branches of government would not be able to exert undue influence over the decisions of democratically elected officials. When individuals can sue members of a legislative body to ensure that a certain piece of legislation is brought before that body for a vote, the process is no longer democratic.

Id.

The instant claims, which essentially charge that Defendant Helms failed to take some legislative action to remedy alleged unconstitutional conditions, customs or practices, must be dismissed for the reasons identified in Yeldell. Defendant Helms' failure to introduce a resolution is a part of the legislative process. It is the kind of discretionary, policy-driven action that are part of the core activities protected by absolute, legislative immunity. Bogan, 534 U.S. at 49.

It would be completely illogical to hold that inaction by a legislator is not covered by legislative immunity simply because it does not constitute "action" through "established legislative procedures." If that proposition is accepted, then Defendant Helms is granted less protection because he failed to act than he is if he affirmatively voted as a School Board member for policies that affirmatively required Christian prayer in the District schools and at District events or that required religious beliefs and practices be suppressed. Absolute legislative

8

immunity clearly applies in those instances where a legislator votes on a matter before the legislative body, so would apply to overt actions that violate the First Amendment. It makes no sense to hold that the immunity does not apply when it is alleged that the same deprivation is effected through a failure to take legislative action.

Indeed, claims that § 1983 liability attaches for a failure to train or because of the existence of a "custom" are simply other ways of showing that a municipal policy caused the deprivation of the plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 385-87 (1989). It is precisely policy decisions by legislators that are protected by absolute immunity. Youngblood, 352 F.3d at 840. Whether that policy is effected by affirmative action or by inaction, local legislators are protected from suits against them in their individual capacities by absolute legislative immunity.

Therefore, the Plaintiffs' claims in the instant case against Defendant Helms in his individual capacity are barred by absolute, legislative immunity. They arise out of either his discretionary actions or inactions in establishing policy for the School District. Absolute immunity bars granting any relief, whether legal, equitable or declaratory, against Defendant Helms in his individual capacity. Supreme Ct. of Virginia v. Consumers Union of U.S., 446 U.S. 719, 733 (1980).

## **CONCLUSION**

For the reasons set forth above, Defendant Reginald L. Helms respectfully requests that his motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against him in his individual capacity be granted.

9

        Respectfully submitted,

        **THE NEUBERGER FIRM, P.A.**


        /s/ Thomas S. Neuberger
        **THOMAS S. NEUBERGER, ESQ. (#243)**
        **STEPHEN J. NEUBERGER, ESQ. (#4440)**
        Two East Seventh Street, Suite 302
        Wilmington, DE 19801
        (302) 655-0582
        TSN@NeubergerLaw.com
        SJN@NeubergerLaw.com

        Attorneys for Reginald L. Helms


        **THE RUTHERFORD INSTITUTE**
        **JOHN W. WHITEHEAD, ESQ.**
        **DOUGLAS R. McKUSICK, ESQ.**
        P.O. Box 7482
        Charlottesville, VA 22906
        (434) 978-3888
        JohnW@Rutherford.org
        DouglasM@Rutherford.org

Dated April 4, 2005        Of Counsel

# Tab A



Not Reported in F.Supp.2d
2004 WL 609376 (D.Del.)
**(Cite as: 2004 WL 609376 (D.Del.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Virgil R. MORRIS, Jr., Plaintiff,
v.
Richard F. STOKES, Roberta Burns, and Susan Rickards, Defendants.
**No. Civ. 02-026-SLR.**

March 18, 2004.

Virgil R. Morris, Jr., Seaford, DE, pro se.

Kevin J. Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Stuart B. Drowos, Department of Justice State of Delaware, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

**\*1** At Wilmington, this 18th day of March, 2004, having reviewed the motion of defendant Stokes to dismiss for failure to state a claim upon which relief can be granted (D.I.15), and the memoranda submitted therewith;

IT IS ORDERED that defendant's motion (D.I.15) is granted for the reasons that follow:

1. Plaintiff, a *pro se* litigant proceeding *in forma pauperis,* filed this action on January 11, 2002 pursuant to 42 U.S.C. § 1983 alleging violations of the Eight and Fourteenth Amendment against the Honorable Richard F. Stokes, Superior Court Judge in Sussex County, Roberta Burns, and Susan Rickards. [FN1] (D.I.2)

> FN1. Plaintiffs' complaint identifies defendant Rickards as "Susan," but the court notes that the correct spelling of her name is "Suesann." (D.I.12)

2. Plaintiff is a former inmate previously incarcerated at the Sussex Correctional Institution in Georgetown, Delaware. Plaintiff was sentenced on July 6, 2001, by Judge Stokes after having been found guilty of driving under the influence of alcohol. As it was plaintiff's fourth DUI offense, Judge Stokes sentenced plaintiff to a mandatory minimum six months term of incarceration and ordered his participation in the Key program. [FN2] (D.I.16, ex. 1)

> FN2. The Key program is a substance abuse treatment program for offenders with a basic self-help therapeutic community approach. (D.I. 16 at 3)

3. Plaintiff contends that at some point between July 9, 2001 and August 31, 2001, plaintiff suffered severe angina attacks as a direct result of his mandatory participation in the Key program. (D.I. 2 at 4) Plaintiff contends that defendant Burns declined to provide a medical waiver for plaintiff from the program, but instead prescribed certain activity restrictions for plaintiff. (*Id.*) Defendant Burns allegedly based her decision upon instructions by her supervisor Rickards. (*Id.*) On August 31, 2001, plaintiff contends that despite reporting his chest pain, defendant Burns failed to issue a medical waiver. Later that day, however, defendant Burns provided a memorandum to plaintiff excusing him from the Key program.

4. Plaintiff contends that the defendants acted with deliberate indifference to his serious medical condition, and that their conduct "caused possible heart damage and the risk of serious physical injury and the unnecessary and wanton infliction of pain and suffering proscribed by the Eighth Amendment." (*Id.*) Plaintiff seeks both injunctive relief and money damages. [FN3]

> FN3. As plaintiff is no longer incarcerated in a Delaware correctional facility, any claim he might have had for injunctive relief is moot.

5. In analyzing a motion to dismiss pursuant to Rule

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 609376 (D.Del.)  
**(Cite as: 2004 WL 609376 (D.Del.))**

Page 2

12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Where the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't.,* 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

**\*2** 6. It is well settled law that a judge is entitled to absolute immunity from civil damages for suits brought under 28 U.S.C. § 1983. *See Stump v. Sparkman,* 435 U.S. 349, 363, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). In the present case, defendant Stokes sits as a judge in the Delaware Superior court, a court of general jurisdiction, and the conduct plaintiff contends gives rise to his claim was an official judicial act. Consequently, no suit may lie against Judge Stokes for money damages and the complaint, as to Judge Stokes, is dismissed.

2004 WL 609376 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on April 4, 2005, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Thomas J. Allingham II
>Robert S. Saunders
>One Rodney Square
>P.O. Box 636
>Wilmington, DE 19899


>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

cc: client

Helms/Pleadings/ Motion to Dismiss - OB.final

11