IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONA DOBRICH and MARCO DOBRICH, individually and as parents and next friend of ALEXANDER DOBRICH, JANE DOE and JOHN DOE, individually and as parents and next friend of JORDAN DOE and JAMIE DOE, | : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | No. 05-cv-00120-JJF |
| HARVEY L. WALLS, MARK A. ISAACS, JOHN M. EVANS, RICHARD H. COHEE, GREGORY A. HASTINGS, NINA LOU BUNTING, CHARLES M. BIRELEY, DONALD G. HATTIER, REGINALD L. HELMS, M. ELAINE McCABE, individually and as members of the Indian River School Board, LOIS M. HOBBS, individually and as District Superintendent, EARL J. SAVAGE, individually and as Assistant District Superintendent, THE INDIAN RIVER SCHOOL BOARD and THE INDIAN RIVER SCHOOL DISTRICT, | : : : : : : : : : : : : : : : : | |
| Defendants. | : | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT REGINALD L. HELMS'S MOTION TO DISMISS ALL CLAIMS AGAINST HIM IN HIS INDIVIDUAL CAPACITY**

# **TABLE OF CONTENTS**

PAGE

NATURE AND STAGE OF THE PROCEEDINGS  . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.     THE MOTION SHOULD BE DENIED BECAUSE THE
          COMPLAINT ALLEGES LIABILITY BASED ON HELMS'S
          ADMINISTRATIVE CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.    LEGISLATIVE IMMUNITY DOES NOT SHIELD HELMS
          FROM LIABILITY FOR HIS NON-LEGISLATIVE ACTS  . . . . . . 7

          A.     School Board Members In Delaware Have
                 Administrative Responsibilities In Addition To Their
                 Policymaking Responsibilities . . . . . . . . . . . . . . . . . . . . . . . 9

          B.     The Complaint Alleges Administrative Failings
                 Beyond The Scope Of Legislative Immunity . . . . . . . . . . . 10

          C.     Prayer Before A School Board Meeting Is Not a
                 Legislative Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

CASES                                                                      PAGE(S)

Abraham v. Pekarski,
    728 F.2d 167 (3d Cir. 1984) ..................................................................... 7

Acevedo-Cordero v. Cordero-Santiago,
    958 F.2d 20 (1st Cir. 1992) ..................................................................... 7

Acierno v. Cloutier,
    40 F.3d 597 (3d Cir. 1994) ................................................................. 8, 9, 11

Blake v. Town of Delaware City,
    441 F. Supp. 1189 (D. Del. 1977) ...................................................... 6, 7

Bogan v. Scott-Harris,
    523 U.S. 44, 55 (1998) ......................................................................... 8

Carter v. Brady,
    C.A. No. 99-757-JJF, 2001 WL 34368378 (D. Del. Mar. 30, 2001) ................................. 6

Carver v. Foerster,
    102 F.3d 96 (3d Cir. 1996) ....................................................... 7, 9, 11, 12, 13

Hansen v. Bennett,
    948 F.2d 397 (7th Cir. 1991) .................................................................. 14

Jodeco, Inc. v. Hann,
    674 F. Supp. 488 (D.N.J. 1987) ............................................................ 7, 8

Kennedy v. Hughes,
    596 F. Supp. 1487 (D. Del. 1984) ........................................................ 9, 12

Meding v. Hurd,
    607 F. Supp. 1088 (D. Del. 1985) ............................................................ 9

McHugh v. Board of Educ. of the Milford School Dist.,
    100 F. Supp. 2d 231 (D. Del. 2000) ........................................................ 11

Reynolds v. Borough of Avalon,
    799 F. Supp. 442 (D.N.J. 1992) ........................................................... 6, 7

Ryan v. Burlington County,
    889 F.2d 1286 (3d Cir. 1989) ...................................................... 7, 8, 9, 12, 13

i

United States v. Brewster,
    408 U.S. 501 (1972) ............................................................................ 8, 13

Youngblood v. DeWeese,
    352 F.3d 836 (3d Cir. 2004) .............................................................. 8, 9

OTHER AUTHORITIES                                                    PAGE(S)

14 Del. C. § 1043 .................................................................................... 9, 10

14 Del. C. § 1049 ......................................................................................... 9

14 Del. C. § 1055 .................................................................................... 9, 10

14 Del. C. § 1058 .................................................................................... 9, 10

14 Del. C. § 1059 ......................................................................................... 9

Plaintiffs Mona Dobrich, Marco Dobrich and Alexander Dobrich, (collectively, the "Dobriches") and Jane Doe, John Doe, Jordan Doe and Jamie Doe (collectively, the "Does" and, together with the Dobriches, "Plaintiffs"), by and through their attorneys, respectfully submit this memorandum of law in opposition to Defendant Reginald L. Helms's motion to dismiss the claims against him in his individual capacity.

## NATURE AND STAGE OF THE PROCEEDINGS

At the Sussex Central High School graduation ceremony on June 3, 2004, Pastor Jerry Fike – at the invitation of School officials – led the assembled students and spectators in prayer. He prayed to God to direct the soon-to-be graduates to "the truth that comes by knowing Jesus." After hearing the prayer, Mona Dobrich made up her mind to ask that the Indian River School District (the "District") not use the name of Jesus at school events.

Mona spoke with the School Superintendent and the President of the Indian River School Board (the "Board" or the "School Board"), and she spoke against school-sponsored prayer at several School Board meetings. When the District subsequently adopted policies regarding school prayer, Mona (through her attorneys) wrote letters to the School Board pointing out that the policies were insufficient and also that the District was failing even to implement those insufficient policies. At the November 2004 Board meeting, Mona publicly urged the Board to

respond to her letters. Finally, on February 28, 2005, the Dobrich family, together with the Does, filed a complaint in this Court (the "Complaint") seeking damages and injunctive relief for the unconstitutional practices of the Board and the employees of the District.

On April 4, 2005, Defendant Reginald L. Helms ("Helms") answered the Complaint in his official capacity. On the same day, Helms filed a motion to dismiss the claims against him in his individual capacity and submitted an opening brief ("Op. Br.") in support. This is Plaintiffs' answering brief.

## SUMMARY OF THE ARGUMENT

1.     Legislative immunity does not shield Helms and the other members of the School Board from individual liability for their administration and supervision of the District. State statutes charge the members of the School Board with two responsibilities. They must establish rules and regulations for the District, and they must administer and supervise the District in accordance with state and federal law and their own rules and regulations. School Board members can claim legislative immunity for the acts they take while formulating, debating and enacting District policy. However, School Board members cannot claim legislative immunity for managing the District. Here, the Board members have deliberately failed to manage District schools in accordance with well-settled constitutional principles and federal law. This failure is not legislative; it is managerial.

2

2.    Nor can Helms claim legislative immunity for prayer at School Board meetings. Board members lead the assembled students and teachers in prayer prior to and independent of the policymaking process. Prayer is not an integral part of the Board's legislative process. The School Board's policymaking can, and should, go on without prayer. This Court should deny the motion to dismiss.

## STATEMENT OF FACTS

School-sponsored prayer has been a long-standing tradition in the Indian River School District. (Compl. ¶ 2) School officials and community religious leaders have regularly delivered prayers at academic banquets, graduation ceremonies and numerous other events organized by District schools. (Id.) District coaches have led their sports teams in prayer before practices and games. (Compl. ¶¶ 40, 42) School Board members have led students and other members of the audience in prayer at School Board meetings. (Compl. ¶¶ 52)

School-sponsored prayer has pervaded the life of teachers and students in the District. (Compl. ¶ 22) School officials have led bible club activities in District schools and actively encouraged student attendance by awarding bible club members preferential treatment. (Compl. ¶¶ 31-33) One teacher in the District emphasized to a class of middle school students that there was only one true religion. (Compl. ¶ 50) Another teacher explained to her students that she did not believe in the "big bang" theory of the creation of the universe. She made references to her

3

religious views of creation and told her class that they would have to come to bible club to find out more. (Compl. ¶ 51)

Defendant Helms and other school administrators have managed the District in a manner that encourages school-sponsored prayer. School officials invited Pastor Jerry Fike to give the invocation and the benediction at the 2004 Sussex Central High School graduation exercises. (Compl. ¶ 26) School officials have pressured parents to encourage their children to attend bible club. (Compl. ¶ 36) District schools have participated in distributing bibles to their students. (Compl. ¶¶ 37-39) Opening and closing prayers punctuate District academic banquets. (Compl. ¶ 46) The District has failed to investigate allegations of constitutional misconduct by teachers and administrators. (Compl. ¶ 114)

When the threat of litigation forced Dist0rict officials to adopt District-wide policies on prayer and religion (Compl. ¶ 118), the Board deliberately undercut those policies by refusing to make them readily available to parents and teachers. (Compl. ¶¶ 119-122) The Board also continues to operate District schools in a manner inconsistent with those new policies. For example, even after the District ratified its policies on religion, a District official approached the Dagsboro Church of God about bringing its ministry into District middle and high schools. (Compl. ¶ 124) The School Board continues to lead students and other attendees in prayer before every School Board meeting. (Compl. ¶ 52)

4

In sum, the School Board has managed the District in a manner that
fosters school-sponsored prayer. The School Board's refusal to administer District
schools in accordance with constitutional guidelines, and the School Board's refusal
to implement or enforce its own policies, have fostered an environment of religious
exclusion that has harmed and continues to harm the Dobrich and Doe families.
(Compl. ¶ 4)

5

## ARGUMENT

I.    **THE MOTION SHOULD BE DENIED BECAUSE THE COMPLAINT
ALLEGES LIABILITY BASED ON HELMS'S ADMINISTRATIVE
CONDUCT.**

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must

accept all factual allegations as true and draw all reasonable inferences from those

allegations in favor of the plaintiff.  Carter v. Brady, C.A. No. 99-757-JJF, 2001 WL

34368378, at *2 (D. Del. Mar. 30, 2001) (Ex. A).  The Court should only grant a

motion to dismiss under Rule 12(b)(6) "'if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations contained'

in the complaint."  Id.

Where a plaintiff alleges liability based on administrative conduct and

a defendant claims that he or she has acted in a legislative capacity warranting

immunity, the parties' contentions raise an issue of fact that cannot be resolved on a

motion to dismiss.  Reynolds v. Borough of Avalon, 799 F. Supp. 442, 448 (D.N.J.

1992) (refusing to dismiss claims based on legislative immunity where plaintiff's

allegations raised a dispute of fact regarding whether defendants acted in their

administrative or legislative capacities).  See Blake v. Town of Delaware City, 441 F.

Supp. 1189, 1202 (D. Del. 1977) (dispute of fact as to whether defendant's acts were

executive or legislative precluded summary judgment on legislative immunity

6

grounds); Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir. 1992) (same).

Here, the Complaint alleges claims based in part on administrative acts and omissions. Helms's implicit assertion that all of the Board's conduct was legislative (Op. Br. at 5) raises a dispute of fact that the Court cannot resolve at the pleadings stage of the case. Reynolds, 799 F. Supp. at 448; Blake, 441 F. Supp. at 1202; Acevedo-Cordero, 958 F.2d at 23. Accordingly, the Court should deny the motion to dismiss.

## II.    LEGISLATIVE IMMUNITY DOES NOT SHIELD HELMS FROM LIABILITY FOR HIS NON-LEGISLATIVE ACTS.

The Third Circuit has "repeatedly stated that a public official's legislative immunity from suit attaches only to those acts undertaken in a legislative capacity." Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996). Thus, "the first inquiry with respect to the application of [legislative] immunity must be whether those claiming it were performing . . . legislative, rather than proprietary or manage-rial functions." Abraham v. Pekarski, 728 F.2d 167, 174 (3d Cir. 1984); see also Ryan v. Burlington County, 889 F.2d 1286, 1290 (3d Cir. 1989) (in order to deter-mine whether the defendants enjoy legislative immunity "it is necessary to decide if the function performed . . . at the time of the alleged violation was legislative, managerial or proprietary"); Jodeco, Inc. v. Hann, 674 F. Supp. 488, 494 (D.N.J.

7

1987) ("[a] prerequisite for the granting of legislative immunity is the presence of legislative, rather than administrative, executive, or managerial conduct").

A legislative act is one that is an "integral step" in the legislative process. Bogan v. Scott-Harris, 523 U.S. 44, 55 (1998). "Legislative acts are those which involve policy-making decision[s] of a general scope." Ryan, 889 F.2d at 1290-91. To fall within the scope of legislative immunity, an act must be "part of the legislative process itself." See United States v. Brewster, 408 U.S. 501, 528 (1972). Acts that are only "casually or incidentally related to legislative affairs" are not protected. Id.[1] Indeed, legislative immunity "does not extend beyond what is necessary to preserve the integrity of the legislative process." Brewster, 408 U.S. at 517.

---

[1]    For several years, courts in the Third Circuit applied a two-part substantive/procedure test to analyze whether activity at the municipal level was legislative or administrative. Ryan, 889 F.2d at 1209; see also Youngblood v. DeWeese, 352 F.3d 836, 841 n.4 (3d Cir. 2004). To qualify for legislative immunity, the challenged act first had to be "substantively legislative," requiring a policymaking or line-drawing decision, Ryan, 889 F.2d at 1290-91 (3d Cir. 1989); Acierno v. Cloutier, 40 F.3d 597, 610-12 (3d Cir. 1994). Second, the act had to be "procedurally legislative" – accomplished through established legislative procedures. Ryan, 889 F.2d at 1291; see also Acierno, 40 F.3d at 610. In Youngblood, a Third Circuit panel expressed some doubt as to the continued viability of the substantive/procedure test in light of the Supreme Court's decision in Bogan. Youngblood, 352 F.3d at 841 n.4. In any event, both the two-pronged standard and Bogan require that the challenged act be "integral" to the legislative process. Administrative and managerial acts fall outside the scope of both standards.

Legislative immunity does not shield officials acting to enforce or administer policy. Carver, 102 F.3d at 100 (executive decision implementing policy not covered by legislative immunity); Kennedy v. Hughes, 596 F. Supp. 1487, 1491 (D. Del. 1984) (city board of commissioners not entitled to legislative immunity for administrative or executive acts); Meding v. Hurd, 607 F. Supp. 1088, 1110 n.28 (D. Del. 1985) (members of town council not entitled to legislative immunity when performing managerial functions). As explained below, the Complaint alleges that Helms has acted (and failed to act) in an administrative and managerial capacity, and he cannot claim legislative immunity for that conduct.

A.    **School Board Members In Delaware Have Administrative Re-sponsibilities In Addition To Their Policymaking Responsibilities.**

"Local governmental bodies" frequently wield "a combination of proprietary, managerial and legislative powers." Ryan, 889 F.2d at 1290. See Acierno v. Cloutier, 40 F.3d 597, 610 (3d Cir. 1994) (noting that the defendant county council had a combination of legislative and administrative powers); Youngblood v. DeWeese, 352 F.3d 836, 841 n.4 (3d Cir. 2004) (noting that munici-pal officials are "likely to perform a mixing of administrative and legislative func-tions").

Under Delaware law, a local school board has both legislative and administrative powers. See 14 Del. C. §§ 1043, 1049, 1055, 1058, 1059. Specifi-cally, statutes charge school boards with a legislative role – to "adopt rules and

9

regulations for the general administration and supervision of the free public schools"

– and an administrative role – "to administer and supervise the free public schools."

14 Del. C. § 1043.

        As a result, in addition to discharging its policymaking responsibili-

ties, the Indian River School Board must administer its policy and supervise District

schools.  See 10 Del. C. § 1043.  The Board must manage the buildings and property

of the District in accordance with state standards.  14 Del. C. § 1055.  The Board

must decide controversies involving District rules and regulations.  14 Del. C. §

1058.

        The Complaint alleges that the Board has failed in its administrative

and managerial role as well as in its legislative role.  For the administrative and

managerial failures, Helms cannot claim legislative immunity.

**B.**      **The Complaint Alleges Administrative Failures Beyond The Scope Of Legislative Immunity.**

        The Complaint alleges that the Board has failed to manage the District

in accordance with well-settled Constitutional rules.  For years District employees

have asked a member of the local clergy to deliver prayers at the Sussex Central High

School graduation ceremonies.  (Compl. ¶ 23)  School officials have delivered

prayers at events and meetings organized by District schools.  (Compl. ¶ 2)  District

coaches have led student athletes under their charge in prayer before practices and

games.  (Compl. ¶ 40)  Together, the allegations raise an inference that School Board

10

members have managed the District in a manner that encourages school-sponsored prayer. These administrative and managerial failures do not merit legislative immunity. See Carver, 102 F.3d at 100 (holding that chairman of county board of commissioners could not claim legislative immunity for acts taken while implementing (as opposed to formulating) county policy); Acierno, 40 F.3d at 611 (explaining that acts to implement or enforce existing laws are administrative, executive or ministerial and the officials performing them are not entitled to legislative immunity).

To be sure, the Board's adoption of a policy on prayer and religion in school may have been a legislative step subject to legislative immunity. See McHugh v. Board of Educ. of the Milford School Dist., 100 F. Supp. 2d 231 (D. Del. 2000). But the Complaint does not simply challenge the legislative acts and omissions of the Board. The Complaint also challenges acts and omissions that are administrative and/or managerial. For example, the Complaint alleges that (1) the Board has refused to implement its new policies on religion (Compl. ¶¶123-128), (2) the Board has failed to investigate complaints of teacher and administrator misconduct (Compl. ¶ 114), and (3) the Board has refused to distribute copies of its policies, in an apparent effort to undercut their effectiveness. (Compl. ¶¶ 119-122)

Acts to enforce a policy or acts to prevent the implementation of a policy are not legislative acts – they are administrative acts (or omissions) beyond the

scope of legislative immunity. See Carver, 102 F.3d at 100; Ryan, 889 F.2d at 1291 (denying legislative immunity to defendants who had failed to manage the county jail in accordance with well-settled constitutional principles); Kennedy, 596 F. Supp. at 1491 (city board of commissioners' conduct, including instructions to chief of police regarding enforcement, were executive or administrative acts not covered by legislative immunity).

A failure to act by a municipal body invested with both legislative and administrative powers is not necessarily legislative. See Ryan, 889 F.2d 1286. In Ryan, the plaintiff brought suit against the Burlington County Board of Chosen Freeholders for injuries allegedly sustained because the Board mismanaged the municipal jail. Id. at 1288-89. Specifically, the plaintiff alleged that the Board permitted the inmate population to exceed a legislative cap, and that the Board knew of the overcrowded conditions and lack of supervision but failed to correct those problems. Id. at 1293. The Court found legislative immunity inapplicable: "[a]lthough legislative immunity does protect a public official acting in a legislative capacity from liability for damages, when the legislative power is set aside to take on administrative duties . . . officials must be held accountable for instances where their actions violate clearly established rights." Id. at 1294.

Here, the Complaint alleges that the Board has managed the District in a manner that promotes school-sponsored prayer. The Board has permitted

12

schools in the District to subject impressionable students to school-sponsored prayer. The Board has deliberately refused to implement and enforce its own policies regarding prayer. Helms cannot invoke legislative immunity to protect himself from damages stemming from his acts to promote school-sponsored prayer, nor can he claim immunity for his "deliberate choice" of "doing nothing" to prevent it. <u>Ryan</u>, 889 F.2d at 1293.

     **C.**     **Prayer Before A School Board Meeting Is Not A Legislative Act.**

     The Complaint raises a reasonable inference that Helms has participated and will participate in the School Board's past and current practice of opening each meeting with a prayer. (Compl. ¶ 52) The act of praying is not an integral part of the legislative process because it does not involve voting, debating or formulating regulations or legislation. Legislative immunity does "not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." <u>See</u> <u>Brewster</u>, 408 U.S. at 528. Nor does legislative immunity shield officials "from liability for a course of conduct taken prior to and independent of legislative action." <u>Carver</u>, 102 F.3d at 102.

     Here, the prayers School Board members deliver before Board meetings is at most incidentally related to the legislative process. <u>See</u> <u>Brewster</u>, 408 U.S. at 528. Board members deliver the prayer "prior to and independent of" the legislative process they later conduct. <u>Carver</u>, 102 F.3d at 102. Actions at meetings

13

of municipal bodies are not automatically legislative acts, even if other legislative activities take place during the rest of the meeting. See Hansen v. Bennett, 948 F.2d 397, 402-03 (7th Cir. 1991). In Hansen, the Seventh Circuit held that legislative immunity did not apply for actions taken during the public comments portion of a city council meeting. The panel found that the public comments portion of a city council meeting was not legislative because "citizens were not limited to discussing legislative issues, and the aldermen were not considering any legislation or investigating any legislation. They did not conduct legislative business until another portion of the meeting, after an officer had closed the open portion and announced that the meeting would proceed with the agenda." Hansen, 948 F.2d at 402.

Here, no legislative business can take place while a School Board member leads a prayer at School Board meetings. Prayer does not relate to the consideration or investigation of legislation, nor does it involve formulating policy. Prayer does not implicate the budgetary priorities or the services that the District provides to its students. Accordingly, prayer is not an integral part of the School Board's legislative process, and legislative immunity does not apply.

14

## CONCLUSION

Legislative immunity does not shield Defendant Helms from suit for administrative acts or managerial misconduct, nor does it shield him from liability for acts that are not integral to the legislative process. The Complaint alleges that Helms's administrative failures have violated Plaintiffs' constitutional rights. Helms cannot claim legislative immunity for that conduct. Nor can Helms claim legislative immunity for the act of giving a prayer before a Board meeting when that prayer is not an integral part of the legislative process. The Court should deny the motion to dismiss.

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Plaintiffs

DATED:  April 18, 2005