# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d     Page 1
2001 WL 34368378 (D.Del.)

**(Cite as: 2001 WL 34368378 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Sherman CARTER, Plaintiff,
v.
Attorney General M. Jane BRADY, et al.,
Defendants.
**No. Civ.A. 99-757-JJF.**

March 30, 2001.

Sherman Carter, Wilmington, Delaware, Plaintiff, pro se.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendants' Motion to Dismiss (D.I.7), filed pursuant to Rules 12(b)(6) and 12(b)(5) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will grant the motion in part and will deny the motion in part.

BACKGROUND

Plaintiff Sherman A. Carter ("Plaintiff") was sentenced on August 4, 1994 to three years of imprisonment at Level V minus credit for time already served, suspended after one year to Level IV in-patient drug treatment for two years. (D.I. 8, Exh. A at ¶ 3). Plaintiff served one year and six days at Level V, and on September 9, 1994, became eligible for Level IV; however, Plaintiff remained at Level V until November 30, 1994, which is when space first became available at Level IV. (D.I. 8 at ¶ 4).

On December 1, 1997, Plaintiff was incarcerated for his third probation violation. He was sentenced by the New Castle County Superior Court on December 16, 1997, to two years at Level V effective on December 16, 1997, but, upon successful completion of a drug rehabilitation program, suspended for the remainder of the sentence at Level III. [FN1] (D.I. 8, Exh. A at ¶ 3-4). The December 16, 1997 sentencing order did not provide Plaintiff with credit for time already served. (D.I.8, Exh. B).

   FN1. Plaintiff never completed a drug rehabilitation program.

Plaintiff alleges that as early as July, 1998, he attempted to contact the Delaware Correctional Center's ("DCC") Records Department in order to clarify that he should have received credit for time already served. (D.I. 1 at 7). In August of 1998, Plaintiff alleges that he filed a grievance with the DCC claiming that the Records Department was erroneously interpreting his sentence. (D.I. 1 at 8). Plaintiff was provided a hearing in October, 1998, and argued that he was entitled to credit for time served pursuant to 11 *Del. C.* § 3901. [FN2] (D.I. 1 at 8). Plaintiff contends that the committee at the hearing promised Plaintiff that they would look into the matter, but that he did not hear back from anyone until "some five months later." (D.I. 1 at 8).

   FN2. Section 3901(b) of the Delaware Code states in relevant part: "[a]ll sentences for criminal offenses of persons who at the time the sentence is imposed are held in custody in default of bail, or otherwise, shall begin to run and be computed from the date of incarceration for the offense for which said sentence shall be imposed."

Meanwhile, on March 4, 1999, the superior court amended Plaintiff's December 16, 1997 sentencing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 34368378 (D.Del.)

(Cite as: 2001 WL 34368378 (D.Del.))

Page 2

order to specifically provide that Plaintiff was to receive "credit for time previously served." (D.I.8, Exh. C). Rebecca McBride ("Defendant McBride"), the Records Supervisor at the DCC, interpreted this amended sentencing order as affording Plaintiff credit for December 1, 1997 until December 16, 1997, the time that he was incarcerated but still awaiting sentencing on his third probation revocation. (D.I. 8, Exh. A at ¶ 5). Plaintiff, however, interpreted the March 4, 1999 amended sentencing order to mean that he was to receive credit for the extra time served at Level V on his original sentence, which included six days over the one-year sentence at Level V and the eighty-two extra days spent at Level V while waiting for space to open up at Level IV. [FN3] (D.I. 8 at ¶ 6). With credit for these eighty-eight days, Plaintiff would have been released on July 5, 1999. (D.I. 8 at ¶ 5).

> FN3. It is unclear from a reading of the Complaint and the exhibits attached to Plaintiff's brief whether this indeed was Plaintiff's contention regarding the appropriate calculation of his sentence. Some exhibits suggest that he was arguing for 16 days credit--consistent with Defendant McBride's calculation. Some exhibits suggest that he believed he should be released in January or February of 1999. Some exhibits appear to argue that he should receive credit for the extra eighty-eight days he served at Level V on his original sentence back in 1994.

*2 Plaintiff alleges that he repeatedly complained to the warden, the deputy warden, and the commissioner that his sentence was being misinterpreted, but that his complaints were ignored. [FN4] (D.I. 1 at 8). Plaintiff also filed numerous petitions in state court seeking his release from incarceration, but such relief was repeatedly denied.

> FN4. The Court notes that Plaintiff's Complaint is not clear as to when he attempted to contact these people--either before or after the March 4, 1999 amended sentencing order was issued.

Plaintiff alleges that he began writing to politicians in May, 1999. (D.I. 1 at 10). According to Plaintiff, he contacted the Lieutenant Governor's office on May 12, 1999, which accordingly requested that an employee in the Delaware Department of Corrections' ("DOC") Administrative Building examine Plaintiff's complaint. (D.I. 1 at 10). In early July of 1999, Plaintiff alleges that someone in the Lieutenant Governor's office contacted a family member of Plaintiff and informed said family member that Plaintiff should have been released sometime between June 1, 1999 and June 5, 1999. (D.I. 1 at 10). Upon receiving this information, Plaintiff claims that he began talking about filing a lawsuit, which caused the contact in the Lieutenant Governor's office to "recant[ ] her statement." (D.I. 1 at 11).

Soon thereafter, Plaintiff alleges that he received a letter from Mary Page Bailey, a Deputy Attorney General in the Delaware Department of Justice ("DAG Bailey"), who informed Plaintiff that she would send a letter to the superior court asking for a clarification of the March 4, 1999 amended sentencing order. (D.I. 1 at 11). DAG Bailey sent this letter on July 22, 1999. (D.I.8, Exh. D). The superior court responded by letter dated August 2, 1999, stating that: "to the extent that [Plaintiff] may have served more than one year Level V on the original sentence, the excess time should be applied to" the sentence Plaintiff received on December 16, 1997, as amended on March 4, 1999. (D.I.8, Exh. D).

Defendant McBride received a copy of the superior court's letter on August 3, 1999, and immediately recalculated Plaintiff's sentence in accordance with the letter resulting in a release date of July 5, 1999. (D.I. 8, Exh. A at ¶ 9). Plaintiff was released from the DCC that day.

Plaintiff filed the instant Complaint on November 5, 1999 against Attorney General M. Jane Brady, Commissioner Stanley Taylor, Warden Robert Snyder, and Defendant McBride (collectively "Defendants") in their personal capacities, alleging violations of 42 U.S.C. § 1983 by depriving Plaintiff of his Eighth and Fourteenth Amendment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2001 WL 34368378 (D.Del.)

Page 3

**(Cite as: 2001 WL 34368378 (D.Del.))**

rights when they kept Plaintiff incarcerated for almost a full month after his sentence had expired. (D.I. 1 at 3). Defendants filed the instant Motion to Dismiss (D.I.7) on March 17, 2000.

## STANDARD OF REVIEW

When a court analyzes a motion to dismiss brought under Rule 12(b)(6), the "factual allegations of the complaint must be accepted as true." *Dow Chem. Co. v. Exxon Corp.,* 30 F.Supp.2d 673, 693 (D.Del.1998). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 694. In sum, the only way a court can grant a Rule 12(b)(6) motion to dismiss is "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in the complaint. *Id.*

## DISCUSSION

*3 In order to establish a claim under 42 U.S.C. § 1983, the plaintiff must show that the conduct complained of: (1) was committed by a person acting under color of state law; and (2) deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Barna v. City of Perth Amboy,* 42 F.3d 809, 815 (3d Cir.1994) (citations omitted). Because there is no dispute that Defendants were acting under color of state law, the Court will focus solely on whether or not Plaintiff was deprived of any federally secured rights.

A. Unlawful Incarceration

Detaining a prisoner beyond the termination of his or her sentence can amount to cruel and unusual punishment in violation of the Eighth Amendment. *Sample v. Diecks,* 885 F.2d 1099, 1108 (3d Cir.1989). To state a Section 1983 claim for incarceration beyond the expiration of a prisoner's sentence, a prisoner must establish that: (1) a prison official "had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted"; (2) the prison official "either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight"; and (3) a causal connection exists between the prison official's response to the problem and the unjustified detention." *Moore v. Tartler,* 986 F .2d 682, 686 (3d Cir.1993).

Defendants do not dispute that the first element is satisfied; rather, they contend that Plaintiff has failed to allege facts that could warrant a finding that Defendants acted with deliberate indifference towards Plaintiff's problem, and that there is no causal connection between Defendants' conduct and Plaintiff's unlawful incarceration because Defendants did not have the authority to amend or alter the superior court's sentencing order. (D.I. 8 at ¶ 6). The Court concludes that Defendants' contentions lack merit.

1. Causal Connection

The Court concludes that, after March 4, 1999, Defendants' conduct is sufficiently connected to Plaintiff's unlawful incarceration to survive the instant motion to dismiss. Before March 4, 1999, the sentencing order specifically required that Plaintiff be imprisoned at Level V for two years effective as of the date of sentencing, subject to suspension at Level III upon completion of a drug rehabilitation program. Prison officials do not have the authority to amend or alter a sentencing order issued by a court. Therefore, the Court concludes that Defendants' inaction prior to March 4, 1999 is not causally connected to Plaintiff's unlawful incarceration. However, the Court cannot conclude as a matter of law that Defendants' inaction after March 4, 1999, is not causally connected to Plaintiff's unlawful incarceration because Defendants did have the authority to seek clarification of ambiguities in Plaintiff's amended sentencing order.

2. Deliberate Indifference

*4 Defendants contend that Plaintiff's Complaint does not allege sufficient facts for a finding that Defendants acted with deliberate indifference to Plaintiff's problem. (D.I. 8 at ¶ 6). As evidence of this, Defendants contend that Defendant McBride understood the March 4, 1999 amended sentencing order to require that Plaintiff receive credit for his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d 2001 WL 34368378 (D.Del.)

Page 4

**(Cite as: 2001 WL 34368378 (D.Del.))**

December 1, 1997 to December 16, 1997 incarceration. (D.I. 8 at ¶ 6). Furthermore, Defendants contend that upon receiving the amended sentencing order, Plaintiff's records were adjusted immediately to reflect credit for these 16 days. (D.I. 8 at ¶ 6).

The Court concludes that Plaintiff has sufficiently alleged deliberate indifference on the part of Defendants. Plaintiff alleges that he repeatedly complained that his release date was possibly miscalculated. The Court notes that the rationale for Plaintiff's contention, as reflected in the exhibits attached to Plaintiff's Complaint and to his brief in opposition to the instant motion, is not always consistent or comprehensible. However, Plaintiff does allege that a Deputy Attorney General admitted to Plaintiff that the March 4, 1999 amended sentencing order was ambiguous as to whether it required credit for the time served from December 1, 1997 to December 16, 1997, or whether it required that Plaintiff be afforded credit for the extra eighty-eight days he spent at Level V in 1994. (D.I. 1 at 11). Then, Plaintiff's contention received further support when the Delaware Supreme Court issued an opinion on May 12, 1999, reaffirming that when a person on probation has his or her probation revoked, the probationer should be "given Level V credit for [time] served at Level V incarceration while waiting for available space at Level IV work release" on his original sentence. *Gamble v. Delaware*, 728 A.2d 1171, 1172 (Del.1999). It appears that those responsible only started listening to Plaintiff when he began to refer to *Gamble* in his letters and pleas for help.

Defendants contend that these allegations do not allow for a conclusion of deliberate indifference because Plaintiff had requested that Defendants "recalculate his sentence in accordance with *Gamble*," which Defendants did not have the authority to do. (D.I. 8 at ¶ 6). However, Plaintiff did not ask for a recalculation of his sentence; rather, Plaintiff asked that Defendants recalculate his release date in accordance with his interpretation of the ambiguous March 4, 1999 amended sentencing order. The fact that Defendants failed to take any timely action in response to Plaintiff's complaints leads the Court to conclude that Plaintiff does sufficiently allege deliberate indifference for purposes of surviving the instant motion to dismiss.

Defendants nonetheless contend that they "immediately" responded to the confusion over the March 4, 1999 amended sentencing order by writing a letter to the superior court requesting that the court clarify the ambiguity. (D.I. 8 at ¶ 6). However, this letter was not written until July 22, 1999 and Defendants provide no explanation for the delay. As a result of this delay, the confusion was not rectified until almost a month after Plaintiff's appropriate release date. Thus, the Court concludes that Defendants' contention does not support a motion to dismiss. *See Moore*, 986 F.2d at 687 (granting motion for summary judgment only because the defendants immediately and actively investigated the prisoner's claim of a sentence miscalculation, despite that the investigation was extremely slow and inept); *Doyle v. U.S. Dep't of Justice*, 1995 WL 412406, at *8 n. 17 (E.D.Pa. July 7, 1995)(holding that a prisoner did not establish deliberate indifference when the defendants "thoroughly investigated" the prisoner's claim of sentence miscalculation); *Campbell v. Illinois Dep't of Corr.*, 907 F.Supp. 1173, 1181 (N.D.Ill.1995) (same)(citing *Moore*, 986 F.2d at 686; *Sample*, 885 F.2d at 1108-09).

B. Personal Involvement of Each Defendant

*5 Defendants next contend that Plaintiff does not adequately allege individual involvement by each Defendant in the complained of conduct. (D.I. 8 at ¶ 7). Since Defendants cannot be held liable for Section 1983 violations under the doctrine of respondeat superior, Defendants contend that the Court should grant their motion to dismiss. (D.I. 8 at ¶ 8). The Court agrees that Plaintiff must allege some personal involvement by each individual Defendant in order to maintain a claim against that Defendant, and that "not every official who is aware of a problem exhibits [deliberate] indifference by failing to resolve it." *Sample*, 885 F.2d at 1110. To determine if an individual Defendant is liable for a prisoner being incarcerated beyond the expiration of his sentence, an examination of the individual

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 5
2001 WL 34368378 (D.Del.)
(Cite as: 2001 WL 34368378 (D.Del.))

Defendant's "official duties and his or her role in the everyday workings of the prison" is necessary. *Campbell,* 907 F.Supp. at 1182.

1. Defendant McBride

It is apparent from Defendants' briefs that Defendant McBride, as the Records Supervisor at the DCC, had the authority to calculate Plaintiff's release date in accordance with the March 4, 1999 amended sentencing order. (D.I.8, Exh. A). In his Complaint, Plaintiff alleges that he wrote "numerous letters" to the Records Department trying to clarify his sentence miscalculation. (D.I. 1 at 2). Therefore, the Court concludes that Plaintiff sufficiently alleges personal involvement by Defendant McBride to survive the motion to dismiss. *See Sample,* 885 F.2d at 1111 (affirming Section 1983 judgment against a records supervisor for a prisoner's unlawful detention).

2. Defendant Snyder and Defendant Taylor

Plaintiff alleges that he wrote numerous letters to Defendant Snyder, as warden of the DCC, and Defendant Taylor, as commissioner of the DOC, seeking their assistance in rectifying the problem. (D.I. 1 at 2). The Court of Appeals for the Third Circuit has specifically held that policymaking officials such as the Commissioner of the Bureau of Corrections can be held liable under Section 1983 for violating a prisoner's due process rights, by keeping the prisoner incarcerated beyond the expiration of his sentence, when that policymaker "authorizes constitutionally inadequate procedures" for a prisoner to challenge the calculation of his release date. *Sample,* 885 F.2d at 1114.

The Third Circuit has also stated that, although a prison warden "does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter," the court refused to hold that a prison warden could never be liable for sentence miscalculations when his job description requires his or her involvement in such issues. *Id.* at 1110. *See also Homoki v. Northampton County,* 86 F.3d 324, 325 (3d Cir.1996)(reversing the district court's granting of a motion for summary judgment filed by the warden when the prisoner had raised issues of material fact as to whether he was incarcerated beyond the expiration of his sentence); *Douglas v. Murphy,* 6 F.Supp.2d 430, 432 (E.D.Pa.1998) (suggesting that a warden could be held liable for a prisoner being incarcerated beyond the expiration of his sentence).

*6 Applying the above standards, absent any evidence regarding Defendants Snyder's and Cook's official duties, the Court cannot conclude as a matter of law that they cannot be held liable for Plaintiff's unlawful detention. *See Campbell,* 907 F.Supp. at 1182 (refusing to dismiss the defendants from plaintiff's unlawful incarceration claim because the court did not have any evidence as to each individual defendant's official duties at the prison).

3. Defendant Brady

The Court concludes that Defendant Brady should be dismissed from the case. In his Complaint, Plaintiff alleges that various employees in the Delaware Department of Justice ("DOJ") concealed his sentence miscalculation. (D.I. 1 at 12). Plaintiff alleges that Defendant Brady should be held liable because she "has altimate [sic] responsibility for actions taken by her staff which violated Plaintiff's rights," and that her acquiescence to unethical policies, customs, and practices within the DOJ subject her to liability. (D.I. 1 at 15- 17).

Courts have held that liability can extend to "non-prison officials who play a direct role in a person's unlawful incarceration." *Adams v. Costello,* 1998 WL 242600, at *4 (E.D.Pa. May 13, 1998). Therefore, prosecutors potentially can be held liable for a prisoner's Section 1983 unlawful incarceration claim. However, in the instant case, Defendant Brady did not play a "direct role" in Plaintiff's unlawful incarceration; rather, Plaintiff merely alleges that Defendant Brady acquiesced to deficient procedures. Although a prison policymaker can be held liable for approving deficient procedures at a prison, the Court is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2001 WL 34368378 (D.Del.)  
Page 6

(Cite as: 2001 WL 34368378 (D.Del.))

aware of any authority suggesting that a State Attorney General can be liable under circumstances similar to those in the instant case. Therefore, the Court concludes that Defendant Brady should be dismissed as a Defendant.

C. Defendants' Affirmative Defenses

Defendants also raise numerous affirmative defenses in their motion, including: (1) Eleventh Amendment immunity, (2) qualified immunity, (3) sovereign immunity, and (4) protection under the State Tort Claims Act. (D.I. 8 at ¶ 9-12). The Court concludes that Eleventh Amendment immunity does not apply in the instant case because Plaintiff is only suing Defendants "in their personal capacity [sic]." (D.I. 1 at 1). The claim for qualified immunity has been rendered moot by the Court's conclusion above that Plaintiff sufficiently alleges deliberate indifference. Lastly, the doctrine of sovereign immunity and the State Tort Claims Act do not apply to Section 1983 claims seeking redress for federally protected rights. Therefore, the Court concludes that none of these affirmative defenses are applicable in the instant case.

D. Service of Process

Defendants next contend that Defendants Snyder and McBride have not been served in this case, and that these Defendants should therefore be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. (D.I. 8 at ¶ 13). Defendants' contentions regarding lack of service appear weak in light of the documentary evidence submitted by Plaintiff. Plaintiff claims that he mailed copies of his Complaint and two waiver forms to Defendants Snyder, Taylor, and McBride, on November 8, 1999. (D.I. 15 at ¶ 16; Exh. 24). Defendants' counsel sent a letter to Plaintiff dated December 21, 1999, in which Defendants' counsel informed Plaintiff that he had requested that his clients sign the waiver forms. (D.I.15, Exh. 25). Defendants' counsel sent Plaintiff another letter dated March 3, 2000, indicating that the waivers signed by Defendants Snyder and McBride were misfiled and that efforts were underway to locate them. (D.I.15, Exh. 26). Also in this letter, Defendants' counsel indicated that he intended to file an Answer to Plaintiff's Complaint in the near future. (D.I.15, Exh. 26). Based on this record, the Court concludes that dismissal pursuant to Rule 12(b)(5) is not warranted.

*7 Defendants also contend that Plaintiff has failed to comply with 10 *Del. C.* § 3104(c), which requires that a plaintiff serve the Attorney General, State Solicitor, or Chief Deputy Attorney General whenever a state official is sued in connection with the performance of his or her discretionary duties. (D.I. 8 at ¶ 13). Without deciding whether or not 10 *Del. C.* § 3104 applies in the instant case, the Court concludes that dismissal is not warranted where Defendants received adequate notice of the filing of Plaintiff's pro se Complaint.

CONCLUSION

For the reasons discussed above, the Court concludes that Defendants' Motion to Dismiss (D.I.7) will be granted insofar as it seeks to dismiss Attorney General M. Jane Brady as a Defendant. The Court further concludes that Defendants' Motion to Dismiss (D.I.7) will be denied in all other respects.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *30* day of March, 2001, for the reasons set forth in the Memorandum Opinion issued on this date;

IT IS HEREBY ORDERED that:
1. Defendants' Motion to Dismiss (D.I.7) is *GRANTED* insofar as it seeks to dismiss Attorney General M. Jane Brady as a Defendant.
2. Defendants' Motion to Dismiss (D.I.7) is *DENIED* in all other respects.

2001 WL 34368378 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.