# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **MONA DOBRICH**, *et al.*, | : | |
| | : | C.A.. No. 05-120-JJF |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **HARVEY L. WALLS**, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANT REGINALD L. HELMS' REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

| | |
|---|---|
| **THE RUTHERFORD INSTITUTE** | **THE NEUBERGER FIRM, P.A.** |
| JOHN W. WHITEHEAD, ESQ. | THOMAS S. NEUBERGER, ESQ. (#243) |
| DOUGLAS R. MCKUSICK, ESQ. | STEPHEN J. NEUBERGER, ESQ. (#4440) |
| P.O. Box 7482 | Two East Seventh Street, Suite 302 |
| Charlottesville, VA 22906 | Wilmington, DE 19801 |
| (434) 978-3888 | (302) 655-0582 |
| JohnW@Rutherford.org | TSN@NeubergerLaw.com |
| DouglasM@Rutherford.org | SJN@NeubergerLaw.com |
| | Attorneys for Reginald L. Helms |

Of Counsel

Dated: April 25, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.  THE COMPLAINT IDENTIFIES NO ADMINISTRATIVE ACTS BY HELMS THAT CAUSED ANY DEPRIVATION OF THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    II.  PRAYER IN CONNECTION WITH SCHOOL BOARD SESSIONS IS ACTIVITY PROTECTED BY ABSOLUTE LEGISLATIVE IMMUNITY . . . . . . . . . . . . . . . . . . . . .6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page**

Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 2

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Bogen v. Doty, 598 F.2d 1110 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Blake v. Town of Delaware City, 441 F. Supp. 11 (D. Del. 1977) . . . . . . . . . . . . . . . . . . . . . . . 2

Bogan v. Scott-Harris, 523 U.S. 44 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7

Chambers v. Marsh, 675 F.2d 228 (8th Cir. 1982), rev'd, Marsh v. Chambers,
    463 U.S. 783 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Coles v. Cleveland Bd. Of Educ., 171 F.3d 369 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 10,11

Colorado v. Treasurer and Receiver General, 392 N.E.2d 1195 (Mass 1979) . . . . . . . . . . . . . 11

County of Allegheny v. ACLU, 492 U.S. 573 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Eastland v. United States Servicemen's Fund, 421 U.S. 491 (1975) . . . . . . . . . . . . . . . . . . . . . 6

Good News Club v. Milford Central School, 533 U.S. 98 (2001) . . . . . . . . . . . . . . . . . . . . . . 12

Hansen v. Bennett, 948 F.2d 397 (7th Cir 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lee v. Weisman, 505 U.S. 577 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lincoln v. Page, 241 A.2d 799 (N.H. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Marsa v. Wernik, 430 A.2d 888 (N.J. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Marsh v. Chambers, 463 U.S. 783 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9,10,11

Reynolds v. Avalon, 799 F. Supp. 442 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4

Ryan v. Burlington County, 889 F.2d 1286 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,5

Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 11

Tenney v. Brandhove, 341 U.S. 367 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Johnson, 383 U.S. 169 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wynne v. Town of Great Falls, S.C., 376 F.3d 292 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 11

Youngblood v. DeWeese, 352 F.3d 856 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5,6,7

Zorach v. Clauson, 343 U.S. 306, 313 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statutes**

42 U.S. C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

F.R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,12

14 Del. Code § 1043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14 Del. Code § 1055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14 Del. Code § 1058 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Constitutions**

U.S. Const. Art. I, § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Other Authority**

"Sixth Circuit Holds That Opening School board Meetings with a Prayer Is an Establishment of Religion," Harvard L. Rev. 1240 (March 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**ARGUMENT**

I. **THE COMPLAINT IDENTIFIES NO ADMINISTRATIVE ACTS BY HELMS THAT CAUSED ANY DEPRIVATION OF THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFFS.**

As the Answer, which Helms filed together with his Motion, clearly indicates, all of the material allegations of the Complaint are disputed. This includes denials of allegations of legislatively created policies, rules and regulations which deliberately violate of the Establishment Clause and individual liberty because defendant Helms, other Board members or administrators, have a policy of "spread[ing] hatred in the name of religion. Hatred in the name of religion." Complaint ¶ 95. This includes the unfounded allegation of a policy of refusing to investigate misconduct (see Answering Brief, "A.B." at 4, Complaint ¶ 114), such as small children being made subject to abhorrent racial and religious epithets through a policy of deliberate indifference or actual instigation or acquiescence. Complaint ¶¶ 96, 107. Strict proof will be demanded of such incredible allegations which appropriate investigation of classroom personnel and administrative staff have found to be totally uncorroborated and previously unreported. But for now, given the Rule 12(b) posture of this case, the focus is that the allegations in the written Complaint challenge the creation of polices, rules and regulations, which are inherently legislative acts, not administrative ones.

The plaintiffs stake their opposition to defendant Helms' defense of absolute legislative immunity and motion to dismiss upon the idea that he committed some act in an "administrative" capacity which is beyond the scope of the immunity to which he is entitled as a member of the Indian River School Board. See A.B. at 6-12. They incorrectly assert

that whether acts causing a deprivation are "legislative" or "administrative" is a fact issue that should not be resolved on a Rule 12(b)(6) motion, citing Reynolds v. Avalon, 799 F. Supp. 442, 448 (D.N.J. 1992). A.B. at 6-7. But Reynolds held only that actions by local legislators affecting the employment of a single individual are clearly administrative, applying the rule that "'[l]egislative acts are those which involve policy-making decisions of general scope . . . where the decision effects [sic] a small number of people or a single individual, the legislative power is not implicated.'" Id. (quoting Ryan v. Burlington County, 889 F.2d 1286, 1291 (3d Cir. 1989)). Reynolds is inapplicable on the facts and the law. Our case involves no single employment decision and instead implicates the legislative power.

Similarly, plaintiffs are not aided by the ruling in Blake v. Town of Delaware City, 441 F. Supp. 11 (D. Del. 1977). See A.B. at 6-7. This case actually upheld the absolute immunity claims of local legislators and held only that there was a question of fact as to whether the "admittedly" non-legislative act of a mayor, not a legislator, rose to the level of a constitutional violation.

Lastly, Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20 (1st Cir. 1992), is not persuasive (A.B. at 7) because the court there found that a defendant's entitlement to legislative immunity depended upon the motivation for the legislative act, which was a disputed fact question. This holding is patently wrong; a legislator's motives in adopting legislation is irrelevant to whether absolute immunity attaches to the act. Youngblood v. DeWeese, 352 F.3d 856, 839-40 (3d Cir. 2003).

In the present case, the issue of whether the claims against Helms in his individual capacity should be dismissed on the basis of legislative immunity is not inherently fact

driven in any way whatsoever. Dismissal instead required if the Complaint fails to set forth any challenged of Helms to which legislative immunity does not attach. On this type of scrutiny the Complaint utterly fails to bring into play any non-legislative action.

For example, plaintiffs refer to Delaware statutory provisions that generally empower School Boards "to administer and to supervise the free public schools of the reorganized school district and which shall have the *authority to determine policy and adopt rules and regulations* for the general administration and supervision of the free public schools of the reorganized school district." 14 Del. Code § 1043 (emphasis added). Other than this general delegation of the power to "administer" district schools, plaintiffs also cite statutes authorizing school boards to maintain school property, 14 Del. Code § 1055, and decide controversies over school policies and rules. 14 Del. Code § 1058. A.B. at 9-10. Significantly, the Complaint itself does not refer to these provisions respecting "administration" of the school district, nor does it allege that the defendant School Board or its members acted in an administrative capacity in any manner whatsoever. Instead, it actually alleges that "[t]he Board determines final policy and prescribes rules and regulations for the conduct and management of District Schools," citing 14 Del. Code § 1043 (Comp. ¶ 16).

So the actual wording of the Complaint only puts in play legislative acts of policy, rules and regulations for the conduct and management of the schools, not, for example, questions of hiring, or other administrative matters. The Complaint sets forth no action on the part of Helms in any of these respects. There is no allegation that Helms did anything in an administrative capacity respecting the maintenance of a school or with respect to the resolution of a controversy, much less some administrative act that caused the alleged

violation of plaintiffs' constitutional rights.

As pointed out in the Reynolds case, 799 F. Supp. at 448, administrative acts are those directed at a single individual or decisions made on an individualized basis. Acts that are considered administrative in nature include employment decisions and land-use decisions taken in connection with a specific piece of property. Id.; Acierno v. Cloutier, 40 F.3d 597, 611 (3d Cir. 1994). The Complaint identifies no such decision or action on the part of Helms. Instead, plaintiffs refer to instances where religious activities have been undertaken by others on school grounds or at school events and assert that this raises an inference that Helms and other Board members have "managed" the District in a manner that encourages school-sponsored prayer. But certainly, Helms has not administered or managed the District by virtue of the conduct of others, and he has not done so in a manner that is shown by the allegations of the Complaint to have caused the violation of the United States Constitution, as alleged by the Plaintiffs.

Plaintiffs also refer to a failure to act or alleged omissions on the part of the School Board as a basis for their claims. They point to an alleged refusal to implement new policies and a refusal to distribute copies of those policies. A.B. at 4. To support the claim that the failure to act constitutes an exercise of administrative power to which absolute immunity does not apply, plaintiffs repeatedly cite Ryan v. Burlington County, supra, an action brought by a prisoner for injuries allegedly resulting from a county legislature's failure to address overcrowding at the jail. However, the decision in Ryan that a failure to adequately fund upgrades to the jail was not a legislative action was based upon the court's application of the now discredited two-part test that conditioned absolute immunity on a showing that the action in question was both substantively and procedurally

legislative.  The Ryan court held that because no ordinance was involved, the challenged conduct was not procedurally legislative and not covered by absolute immunity.  Id. at 1291-92.[1]  But this two-part test was explicitly denounced in Youngblood v. DeWeese, 352 F.3d 836, 841 n.4 (3d Cir. 2003).  So the Ryan decision offers no support to plaintiffs.  Indeed, the ruling in Ryan that a legislative body's funding and budgeting decision are not immune from suit is wholly inconsistent with, and must be deemed overruled by, the holding in Bogan v. Scott-Harris, 523 U.S. 44, 55-56 (1998), that local legislative budgetary decisions are discretionary policymaking decisions and individual local legislators are absolutely immune for such decisions.

But even assuming omissions could be deemed "administrative" and beyond the scope of the absolute immunity, the Complaint itself negates the idea that any of the alleged omissions caused or contributed to the constitutional violations of which plaintiffs complain.  The Complaint alleges an establishment of religion and interference with the free exercise of religion by virtue of the District's policies (Comp. ¶¶ 139, 148).  But if Helms and the other defendants have failed to implement or publicize a policy, an unimplemented policy certainly could not have caused an establishment of religion or interfered with the right of the plaintiffs to practice their religion.  Indeed, since the Complaint admits that the purpose of the policies was to abate alleged ongoing constitutional violations (Comp. ¶ 128), any failure to implement the policy could not have

---

[1] Additionally, the facts in that case showed that the county legislature had formally assumed direct day-to-day control and management of the jail from the local sheriff's office.  Thus, there were facts to support the conclusion that the county legislature had assumed administrative responsibility for the conditions of which the injured prisoner complained.  Ryan, 889 F.2d at 1291.

caused the alleged constitutional deprivations.

Finally, the scope of the exception to the immunity otherwise afforded to local legislators like Helms which is suggested by the arguments of the plaintiffs is truly breathtaking. Without pointing to any affirmative act on the part of Helms, plaintiffs suggest that legislative immunity is inapplicable whenever legislators have failed to act to prevent or cure an alleged unconstitutional situation. As was pointed out in Helms' Opening Brief, this result is wholly unreasonable because it places a legislative official in a worse position than if he or she had affirmatively voted for legislation implementing the unconstitutional condition. The position of plaintiffs is just contrary to the principle that legislative immunity should be implemented "'broadly to effectuate its purpose.'" Youngblood, 352 F.3d at 842 (quoting Eastland v. United States Servicemen's Fund, 421 U.S. 491, 501 (1975)).

## II. PRAYER IN CONNECTION WITH SCHOOL BOARD SESSIONS IS ACTIVITY PROTECTED BY ABSOLUTE LEGISLATIVE IMMUNITY.

Though defendants' current policy on prayer to solemnize the opening of School Board meetings was not addressed in Helm's Opening Brief, plaintiffs have now claimed that such a policy is clearly illegal and can not be considered part of any legitimate legislative act. A.B. at 13-14.

In answer, dismissal is still warranted because prayers intended to solemnize School Board meetings are part of the legislative process and they are protected by absolute immunity. Legislative immunity attaches to any activity that is within the sphere of legitimate legislative activity. Bogan, 523 U.S. at 54. That sphere broadly includes all activities that are part of the deliberative and communicative process by which members of

a legislative body participate in proceedings with respect to the passage of proposals within their jurisdiction.  Youngblood, 352 F.3d at 840.

As pointed out in Youngblood, 352 F.3d at 839, legislative immunity from § 1983 liability is coterminous with the immunity afforded by the Speech and Debate Clause of U.S. Const. Art. I, § 6.  Immunity under the Speech and Debate Clause has been found to extend to legislators addressing committees and "of course, speaking before the legislative body in session." Id. at 840 (citing United States v. Johnson, 383 U.S. 169, 184-85 (1966)).  In Johnson, the Supreme Court held that a legislator was immune from prosecution on a charge that he made a speech on the floor of Congress in exchange for compensation. The Court pointed out the long history of affording legislators immunity for the statements and expression they engage in during legislative sessions or hearings.  Id. at 179-180; accord Tenney v. Brandhove, 341 U.S. 367 (1951).

That same immunity applies to the expression inherent in Helms' participation in prayers given during School Board meetings.  The Supreme Court has long recognized that prayers to solemnize legislative sessions are an integral and important part of those sessions:

> In light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society. To invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an "establishment" of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country. As Justice Douglas observed, "[we] are a religious people whose institutions presuppose a Supreme Being."
> Zorach v. Clauson, 343 U.S. 306, 313 (1952).

Marsh v. Chambers, 463 U.S. 783, 792 (1983).  In Marsh, the Supreme Court rejected an Establishment Clause challenge to the Nebraska legislature's practice of legislative

7

prayer.[2] Thus, it is well-recognized that prayer is a part of the communicative process of a legislative body and so is entitled to the protection of absolute legislative immunity.[3] Any attempt to distinguish Marsh or to claim that it does not apply to school boards will be unavailing.

Discovery also will establish that the Board's current policy on prayer at its meetings solely among the adult elected members of that body was adopted on October 19, 2004.[4] The Complaint admits that it was drafted by counsel (Complaint ¶ 93), who are well experienced with the legal issue.

---

[2] Significantly, the lower court had dismissed claims against individual legislators in Marsh in response to a defense of absolute legislative immunity. Chambers v. Marsh, 675 F.2d 228, 232 n. 7 (8th Cir. 1982), rev'd, Marsh v. Chambers, 463 U.S. 783 (1983).

[3] The decision cited by the Plaintiffs, Hansen v. Bennett, 948 F.2d 397 (7th Cir. 1991), is wholly inapposite. The court made clear that the session at issue was not legislative in character and the conduct at issue did not involve communication by a legislator.

[4] The policy states -

1. In order to solemnify School Board proceedings, it is the policy of the Board to open its meetings with a prayer, sectarian or non-sectarian, or a moment of silence, all in accord with the freedom of conscience of the individual adult Board member.

2. On a rotating basis one individual Board member per meeting will be given the opportunity to offer a prayer or moment of silence. If the member chooses not to exercise this opportunity, the next member in rotation shall have the opportunity.

3. Such opportunity shall not used or exploited to proselytize, advance or convert anyone or to derogate or otherwise disparage any particular faith or belief.

4. Such prayer is voluntary and it is just among the adult members of the Board. No school employee, student in attendance or member of the community in attendance shall be required to participate in any such prayer or moment of silence.

5. Any such prayers may be sectarian or non-sectarian, denominational or non-denominational, in the name of a Supreme Being, Jesus Christ, Jehovah, Buddha, Allah, or any other entity, all in accord with the freedom of conscience, speech and religion of the individual Board member, and his or her particular religious heritage.

The first prayer offered by the Board was that of our first President George Washington, as he concluded his service as the Continental Army's Commander in Chief, on June 14, 1783, when he wrote all the governors of the newly freed states urging them to join him in this prayer which the Complaint quotes in full in paragraph 92 :

> Almighty God, We make our earnest prayer that Thou wilt keep the United States in Thy holy protection: that Thou wilt incline the hearts of the citizens to cultivate a spirit of subordination and obedience to government, and entertain a brotherly affection and love for one another and for their fellow citizens of the United States at large.
>
> And finally that Thou wilt most graciously be pleased to dispose us all to do justice, to love mercy, and to demean ourselves with that charity, humility, and pacific temper of mind which were the characteristics of the Divine Author of our blessed religion, and without a humble imitation of whose example in these things we can never hope to be a happy nation. Grant our supplication, we beseech Thee Amen.

It has long been recognized that "[t]here is an unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789." Lynch v. Donnelly, 465 U.S. 668, 674 (1984). In Marsh, the Supreme Court held that prayer before sessions of legislative bodies does not violate the Establishment Clause. The Court reasoned and stated that such prayer must not violate the Establishment Clause, noting that the practice pre-exists the First Amendment itself.

> The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. From colonial times through the founding of the Republic and ever since, the practice of legislative prayer has coexisted with the principles of disestablishment and religious freedom.

Id. at 786. The Court cited the practices of the First Congress as evidence of the Framers' understanding that prayer before meetings of legislative bodies did not violate the Establishment Clause and also said:

> It can hardly be thought that in the same week Members of the First Congress voted to appoint and to pay a chaplain for each House and also voted to approve the draft of the First Amendment for submission to the states, they intended the Establishment Clause of the Amendment to forbid what they had just declared acceptable.

Id. at 790. Thus, it is a settled principle that legislative and other deliberative bodies do

9

not violate the Establishment Clause of the First Amendment by opening their meetings with a brief invocation.

In support of assertions that a School Board member's prayer is unlawful, the ACLU has relied upon the divided Sixth Circuit's opinion in <u>Coles v. Cleveland Bd. of Educ.</u>, 171 F.3d 369 (6th Cir. 1999). However, the Sixth Circuit's 2-to-1 decision in <u>Coles</u> is, of course, not even binding precedent in Delaware. The Third Circuit has not addressed this question, and counsel are unaware of any court in the Third Circuit that has even cited to the <u>Coles</u> decision, much less any court that has indicated that it viewed the decision favorably. Furthermore, the fractured <u>Coles</u> decision has faced considerable criticism from legal scholars because it ignores the Supreme Court decision in <u>Marsh</u>. <u>See, e.g.</u>, "Sixth Circuit Holds That Opening School Board Meetings with a Prayer Is an Establishment of Religion," Harvard L. Rev. 1240 (March 2000) (majority in <u>Coles</u> "inappropriately attributed to school board meetings the same coercive context as the classroom and read too narrowly the permissible role of religious speech in solemnizing the lawmaking process"). So <u>Marsh</u> is still very good law.

Contrary to the Sixth Circuit's dismissal of <u>Marsh</u> as a "historical aberration," <u>Coles</u>, 171 F.3d at 383, the Supreme Court itself has regularly recognized the continuing vitality of <u>Marsh v. Chambers</u> in the legislative arena. <u>See, e.g.</u> <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 603 (1989) (discussing the scope of <u>Marsh</u>); <u>Lee v. Weisman</u>, 505 U.S. 577, 596-97 (1992) (noting the inherent differences between the forced attendance of students at a high school graduation and the voluntary attendance of adults at legislative sessions).

Furthermore, a majority of the federal Courts of Appeals that have addressed the matter have followed the Supreme Court's command and squarely held that prayer by legislative and other deliberative bodies does not violate the Establishment Clause. For example, in <u>Snyder v. Murray City Corp.</u>, 159 F.3d 1227 (10th Cir 1998), the Tenth Circuit

Court of Appeals held that invocational prayers at a city council meeting fell squarely under Marsh and that such "'legislative prayer' does not violate the Establishment Clause." Id. at 1233.  Likewise, the Fourth Circuit Court of Appeals held that a town council may "invoke Divine guidance for itself before engaging in public business."  Wynne v. Town of Great Falls, S.C., 376 F.3d 292, 298 (4th Cir. 2004).  And more than a quarter century earlier, the Eighth Circuit Court of Appeals held that prayer by a clergyman before a county board meeting helps set "a solemn tone for the transaction of government business and assists towards the maintenance of order and decorum."  Bogen v. Doty, 598 F.2d 1110, 1115 (8th Cir. 1979).

   Moreover, even before the Supreme Court's decision in Marsh, at least three State Supreme Courts had decided that prayer by deliberative bodies did not run afoul of the Establishment Clause.  See Marsa v. Wernik, 430 A.2d 888 (N.J. 1981) (prayer at borough council meetings by council members); Colo v. Treasurer and Receiver General, 392 N.E.2d 1195 (Mass. 1979) (prayer by chaplains in state legislature); Lincoln v. Page, 241 A.2d 799 (N.H. 1968) (prayer by clergy at town meetings).

   So in reality it is the divided Coles decision which is the aberration and not these six courts of appeals. Additionally, Coles was decided before the recent landmark decision by the U.S. Supreme Court in Good News Club v. Milford Central School, 533 U.S. 98 (2001), which laid to rest the legally incorrect notion that just because religious activity takes place upon public school grounds it is a violation of the Establishment Clause.  The Supreme Court there also criticized lower courts which take the simplistic position that mere geography determines whether voluntary prayer is constitutional.

## CONCLUSION

   For the reasons set forth above, Defendant Reginald L. Helms respectfully requests that his motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against him in his individual capacity be granted.

Respectfully submitted,

**THE NEUBERGER FIRM, P.A.**

 /s/ **Thomas S. Neuberger**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER,ESQ.(#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
Attorneys for Reginald L. Helms

**THE RUTHERFORD INSTITUTE**
**JOHN W. WHITEHEAD, ESQ.**
**DOUGLAS R. McKUSICK, ESQ.**
P.O. Box 7482
Charlottesville, VA 22906
(434) 978-3888
JohnW@Rutherford.org
DouglasM@Rutherford.org

Of Counsel

Dated:  April 25, 2005

## CERTIFICATE OF SERVICE

      I, Thomas S. Neuberger, being a member of the Bar of this Court do hereby certify that on April 25, 2005, I electronically filed this **Answering Brief** with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

>Thomas J. Allingham II, Esq.
>Robert S. Saunders, Esq.
>One Rodney Square
>P.O. Box 636
>Wilmington, DE 19899
>
>John D. Balaguer, Esq.
>White & Williams
>824 Market Street, Suite 902
>P.O. Box 709
>Wilmington, DE 19899-0709

>/s/ Thomas S. Neuberger
>**THOMAS S. NEUBERGER, ESQ.**

cc: client
    TRI

Helms/BbRIEFS/ Motion to Dismiss RB FINAL