IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


MONA DOBRICH, et al.,      )
      )
    Plaintiffs,      )
      )
    v.      )    No. 05-120
      )
HARVEY L. WALLS, et al.,      )
      )
    Defendants.      )


**OPENING BRIEF OF DEFENDANTS WALLS, ISAACS, EVANS, COHEE, HASTINGS, BUNTING, BIRELEY, HATTIER, MCCABE, HOBBS AND SAVAGE, AND THE INDIAN RIVER SCHOOL BOARD AND INDIAN RIVER SCHOOL DISTRICT,  IN SUPPORT OF THEIR MOTION TO DISMISS**

John Balaguer, Esq. (#2537)
White and Williams LLP
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
(302) 654-0424
Fax: (302) 654-0245

and

John F. Cafferky (VSB No. 26179)
William Porter (VSB No. 41798)
Andrea D. Gemignani (VSB No. 46889)
BLANKINGSHIP & KEITH
4020 University Dr., Suite 300
Fairfax, Virginia 22030
(703) 691-1235
Fax: (703) 691-3913

*Counsel for the Defendants*

Dated:  April 27, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................(ii)

I.  STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ..................................1

II.  SUMMARY OF ARGUMENT.................................................................................2

III.  FACTS ALLEGED IN THE COMPLAINT ..............................................................3

IV.  ARGUMENT .......................................................................................................9

     A.    School Board Members Are Entitled to Absolute Immunity ......................9
     B.    Members and Employees of the School Board are Entitled
          to Qualified Immunity ................................................................................13
     C.    The Complaint Includes No Specific Relevant Allegations Against
          the Individual Defendants ...........................................................................18
     D.    Claims in Complaint are Barred by Statute of Limitations ........................20
     E.    Claims of Plaintiff Dobriches' are Moot and Lack Standing .....................21

V.  CONCLUSION....................................................................................................23

DOCS_DE 109666v1

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

ACLU v. Black Horse Regional Board of Education, 84 F.3d 1471 (3d Cir. 1996) .........16

Adler v. Duval County School Board, 250 F.3d 1339 (11th Cir. 2001) ...........................17

Anderson v. Creighton, 483 U.S. 635 (1987) ..................................................................14

Blake v. Town of Delaware City, 441 F. Supp. 1189 (D. Del. 1977) ..............................11

Bogan v. Scott- Harris, 523 U.S. 44 (1998) ............................................................9-10, 11

Child Evangelism Fellowship of New Jersey v. Stafford Township School District,
    386 F.3d 514 (3d Cir. 2004). .....................................................................................17

Davis v. Scherer, 468 U.S. 183 (1984); ...........................................................................14

Donovan v. Punxsutawney Area School Board,
    336 F.3d 211 (3d Cir. 2003) ...................................................................... 17, 22-23, 24

Doremus v. Board of Education, 342 U.S. 429 (1952) .....................................................24

Egan v. Concini, 585 F. Supp. 801 (M.D. Pa. 1984) .......................................................19

Ellis v. Norris, 179 F.3d 1078 (8th Cir. 1999) .................................................................19

Flast v. Cohen, 392 U.S. 83 (1963) ..................................................................................24

Guzman v. Cranston 812 F. 2d 24 (1st Cir1987) ......................................................... 18-19

Hamilton v. Jamieson, 355 F. Supp. 290 (E.D. Pa. 1973) ...............................................19

Harlow v. Fitzgerald, 457 U.S. 800 (1982). ..............................................................14, 15

Hernandez v. Commissioner, 490 U.S. 680 (1989) ..........................................................18

Jones v. Clear Creek Independent School District, 977 F.2d 963 (5th Cir. 1992),
    cert. denied, 508 U.S. 967 (1993). ...........................................................................17

Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82 (3d Cir. 1998) ....15

Lee v. Wiseman, 505 U.S. 577 (1993) ..............................................................................16

Marsh v. Chambers, 463 U.S. 783 (1983) ..................................................................13, 15

Marvasi v. Shorty, 70 F.R.D. 14 (E.D. Pa. 1976); ..........................................................19

McCarther v. Grady County, 437 F. Supp. 831 (W.D. Okla. 1977)..................................19

McCollum v. Board of Education, 333 U.S. 203 (1948) ...................................................22

McHugh v. Board of Education of Milford School District,
    100 F. Supp. 2d 231 (D. Del. 2000)....................................................................... 10-11

Mitchell v. Forsyth, 472 U.S. 511 (1985) ........................................................................15

Monahan v. City of Wilmington, 2004 US Dist. LEXIS 1322 (D. Del. 2004) .................21

Morris v. Stokes, 2004 US Dist. LEXIS 4969 (D. Del. March 18, 2004) ........................9

Owens v. Okure, 488 U.S. 235 (1989). .............................................................................20

Pension Benefit Guaranty v. White Consolidated Industries,
    998 F.2d 1196 (3d Cir. 1993); cert. denied 510 U.S. 1042 (1984) ...............................5

Polk County v. Dodson, 454 U.S. 312 (1981) ..................................................................18

Rakes v. Coleman, 318 F. Supp. 181 (E.D. Va. 1970) .....................................................19

Rappa v. Hollins, 991 F.Supp. 367 (D.Del. 1997)...................................................... 14-15

Schanou v. Lancaster County School District, 62 F.3d 1040 (8th Cir 1995) .............. 22-23

Smith v. Special School District No. 1, 184 F.3d 764 (8th Cir 1999) ...............................24

Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir. 1998) .........................................16

United States ex rel. Tyrell v. Speaker, 471 F.2d 1197 (3d Cir. 1973) ............................19

Valley Forge Christian College v. Americans United for Separation
    of Church and State, 454 U.S. 464 (1982)...........................................................22, 24

ii

<u>Wheeler v. Travelers Insurance Company</u>, 22 F.3d 534 (3d Cir. 1994)...........................24

<u>Wood v. Strickland</u>, 420 U.S. 308 (1975). ......................................................................14

<u>Youngblood v. Deweese</u>, 352 F.3d 836 (3d Cir. 2003) .......................................10, 11, 13

## Constitution

Article III, U.S. Constitution ................................................................................21, 23

## Statutes

42 U.S.C. § 1983......................................................................................................passim

10 Del. Code §8119 (2005) ......................................................................................3, 21

14 Del. Code §1043 .........................................................................................................13

14 Del. Code §1046 .........................................................................................................10

## Rules

Fed. R. Civ. P. 12(b)(1) ...............................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 2, 9

## I.     Statement of Nature and Stage of Proceedings

Defendants Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe (collectively "School Board Members"), Lois M. Hobbs ("Superintendent") and Earl J. Savage ("Assistant Superintendent"), in their individual and official capacity (collectively "Individual Defendants"), and the Indian River School Board and Indian River School District, by counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6), file this Opening Brief in Support of their Motion to Dismiss the Complaint of plaintiffs Mona, Marco & Alexander Dobrich, and Jane, John, Jordan & Jamie Doe ("Plaintiffs").

Plaintiffs in this action seek monetary, injunctive and declaratory relief for alleged violations of their constitutional rights.  Specifically, they sue pursuant to 42 U.S.C. §1983 for alleged violations of the First Amendment's Establishment and Free Exercise clauses, and the Delaware Constitution, by the Indian River School Board, the Indian River School District, as well as individual members of the School Board, the Superintendent and the Assistant Superintendent in their individual and official capacities.

To date, Plaintiffs have filed and served the Complaint upon all named parties. One member of the School Board, Mr. Reginald Helms, has filed a Motion to Dismiss the claims against him in his individual capacity, and that matter has been briefed.

This matter now comes before the Court upon the remaining Defendants' Motion to Dismiss the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of

jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

## II.     Summary of Argument

1.      The School Board Members, Defendants Walls, Isaacs, Evans, Cohee, Hastings, Bunting, Bireley, McCabe and Hattier, sued in their individual capacity, are entitled to absolute legislative immunity for any alleged violations based on the policies and practices of the School Board.

2.      The Superintendent and Assistant Superintendent, Defendants Hobbs and Savage respectively, should be dismissed because they cannot be liable purely on a respondeat superior basis, and the few allegations in the Complaint concerning their personal involvement do not amount to any violation of law.  This is also true for the individual School Board Members.

3.      To the extent any claims against the Individual Defendants remain, they are entitled to qualified immunity from actions brought against them in their individual capacity, since their conduct does not violate clearly-established rights which a reasonable person would have known at the time of the alleged conduct.

4.      Some of the alleged acts or events in the Complaint occurred more than two years prior to the filing of this lawsuit on February 23, 2005, and are barred by Delaware's two year statute of limitations for personal injury actions, which is borrowed for §1983 claims.  10 Delaware Code §8119 (2005).  As to all Defendants, those claims should be dismissed.

5.      Mona and Alexander Dobrich are no longer residents of the Indian River School District, and Alexander is not attending, and is not currently eligible to attend, a school within the Indian River School District.  Therefore, the Dobrichs lack standing to

2

pursue their prospective claims, and those claims have been rendered moot as to all Defendants.

### III.     Facts Alleged in the Complaint

This action is brought by a student and two former students of the Indian River School District ("IRSD")[1], and their respective parents.  They have sued IRSD alleging that various policies and practices of IRSD violate the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution, as well as the Delaware Constitution.  Plaintiffs seek compensatory, declaratory and equitable relief.

In addition to their claims against the school district, however, Plaintiffs have also sued in their individual capacity all ten members of the School Board, as well as the Superintendent and the Assistant Superintendent of the school district.  Against these individual defendants, they seek, inter alia, unspecified monetary damages, as well as attorneys' fees and costs.

According to the Complaint, the issue which led to this lawsuit concerned the June 3, 2004 commencement at Sussex Central High School, one of the high schools in the Indian River School District.  During that program, the father of one of the graduating seniors delivered an invocation, and later a benediction.  (Compl. ¶¶ 26-30).  In doing so, he offended plaintiff Mona Dobrich, as well as her daughter, who is not a party to the Complaint.  (Compl. ¶¶ 70, 71).  After the ceremony, Ms. Dobrich complained to the Superintendent both orally, and via e-mail.  (Compl. ¶ 71).

The Superintendent immediately brought the matter to the attention of the School Board.  (Compl. ¶¶72, 73).  As the Complaint itself details, the members of the School

---

[1]  Including the Indian River School Board.

Board, along with the Superintendent, went into action. They studied the issue and solicited advice from their school attorney. (Compl. ¶¶ 76, 77). They also met repeatedly for the purpose of formulating policies to address graduation and other religion-related issues, discussing the matter in at least five successive meetings during the summer and early fall of 2004. (Compl. ¶¶ 74-76, 79-84, 88-103, 118).

During those School Board meetings, and in the ones that followed, Ms. Dobrich has had numerous opportunities to express her viewpoint and concerns regarding reference to prayer at graduation and any other school-related activities. According to her Complaint, she addressed the Board about those issues on at least four separate occasions. (Compl. ¶¶ 74, 81, 95, 133). Mr. and Ms. Dobrich's daughter, their son (by written statement), Ms. Dobrich's sister, and an ACLU representative also spoke to the Board on those subjects. (Compl. ¶¶ 96, 97, 98).

At some of those School Board meetings, other members of the community have likewise had the opportunity to express their own personal views and convictions. Some of those views have differed from those of Mr. and Ms. Dobrich and their family. (Compl. ¶¶ 75, 82, 99, 100, 102, 103).

As a result of its deliberations, on October 19, 2004 the School Board adopted three policies, including "School Prayer at Graduation/Commencement and Baccalaureate Ceremonies", "Board Prayer at Regular Board Meetings", and "Religion." (Compl. ¶ 118). Those policies are referenced and discussed in the Complaint, but not attached or made an exhibit to it. They are attached to this Opening Brief as Exhibits A, B and C, respectively, see Pension Benefit Guaranty v. White Consolidated Industries, 998 F.2d 1196 (3d Cir. 1993); cert. denied 510 U.S. 1042 (1994) (on motion to dismiss, court may consider document upon which complaint is based), and provide in part:

4

## BOARD PRAYER AT REGULAR BOARD MEETINGS

1. In order to solemnify its proceedings, the Board of Education may choose to open its meetings with a prayer or moment of silence, all in accord with the freedom of conscience of the  individual adult Board member.

\*                              \*                              \*

3. Such opportunity shall not be used or exploited to proselytize, advance or convert anyone, or to derogate or otherwise disparage any particular faith or belief.

4. Such prayer is voluntary, and it is among only the adult members of the Board. No school employee, student in attendance, or member of the community in attendance shall be required to participate in any such prayer or moment of silence.

### RELIGION

\*                              \*                              \*

## EQUAL ACCESS TO DISTRICT FACILITIES

\*                              \*                              \*

Faculty monitors may not participate in any religious meetings and the [Equal Access] Act prohibits school sponsorship of any religious meetings. This means that school officials may not promote, lead, or participate in any such meetings. The assignment of a teacher, administrator, or other school employee to the meeting is limited to oversight and is merely to insure order and good behavior.

\*                              \*                              \*

The District will make it clear that its allowing a religious club to meet on school premises is not an endorsement of the views of the club's participants.

\*                              \*                              \*

The meetings of any such religious groups must be voluntary and student initiated. . . .

## SCHOOL PRAYER AT COMMENCEMENT / GRADUATION AND BACCALAUREATE CEREMONIES

\*                              \*                              \*

Commencement / Graduation Ceremony

1.      School officials may not mandate or organize prayer at graduation or select speakers in a manner that favors religious speech. Graduation speakers shall be selected on the basis of genuinely neutral criteria and shall retain primary control over the content of their expression. Neither the District, nor any school administrator, teacher or other school employee shall implement any selection processes (including student-elections) to determine whether or not a political, philosophical, religious or other message shall be presented during commencement or graduation ceremonies. School officials may make appropriate neutral disclaimers to clarify that graduation speeches (whether religious or non-religious) represent the views of the speaker and not of the school district.

5

Following the School Board's adoption of the Policies, Ms. Dobrich's lawyers sent letters to the School Board complaining about various aspects of them. They requested numerous written "clarifications" of the Policies. (Compl. ¶¶ 129, 131). Her lawyers also asked for an in-person meeting where they could tell the Board what they regarded as its "failures" in regard to those Policies. (Compl. ¶ 135). The Board declined those opportunities at that time.

At the time she first approached the Superintendent and the School Board in June 2004, Ms. Dobrich asked only that the Board not have further prayer at high school graduation, and that any invocation at School Board meetings be offered, "in the name of God." (Compl. ¶ 74). On several occasions thereafter during the process of considering and formulating new policies for the Board one or more members of the School Board engaged with Ms. Dobrich in an attempt at reaching some compromise. (Compl. ¶¶ 77, 83). That did not occur.

In their lawsuit, however, Plaintiffs have now dramatically expanded their claims, ranging well beyond prayer at graduation and at meetings of the School Board. Many of these allegations have to do with the alleged comments of other speakers at School Board meetings, reporters, radio talk show hosts, community members, or anonymous passersby who are not employed by the School Board, and over whom it obviously has no control. (Compl. ¶¶ 75, 77, 79, 80, 82, 85, 87, 89-91, 93, 96, 97, 99, 100, 102, 103, 106-110). Other allegations have to do with actions which Plaintiffs would like the School Board to take, but which are not required, such as posting certain policies on its web site, and adopting a separate, written investigation procedure for religion-related complaints. (Compl. ¶¶ 120, 129).

6

In addition, Plaintiffs' Complaint contains an assortment of miscellaneous, dated allegations concerning other times and other schools.  For example,  the Complaint alleges that at some unspecified point in the past, two teachers at Selbyville Middle School – one of the District's fourteen schools  which plaintiffs apparently did not attend – made comments concerning their religious beliefs, (Compl. ¶¶ 50, 51), and "led" Bible Clubs, (Compl. ¶ 32).  One of those same teachers also said a pre-meal grace, and later reflected her own personal "zeal for religion", at a family dinner at school in September 2003.  (Compl. ¶ 45).  The football coach at Indian River High School – attended by none of the Plaintiffs – is alleged to have led the students in a practice or game prayer at some unspecified time.  (Compl. ¶ 40).  The Complaint alleges that any student who desired could skip the prayer, and it is not alleged that it was broadcast to anyone else.  (Compl. ¶ 41).  At another unspecified time in the past, the cross-country coach as Sussex Central High School allegedly said grace at some pre-race pasta dinners.  (Compl. ¶ 42).  Finally, an unspecified elementary school which no plaintiff attended is alleged to have allowed the distribution of Bibles approximately two years ago.  (Compl. ¶¶ 37-39).

These various additional claims have at least three things in common:  (1)  None of them involve the Superintendent, Assistant Superintendent, or any of the School Board Members. Indeed, together those assorted allegations identify about five of  the approximately one-thousand employees in the IRSD (Compl.¶ 15); (2)  No plaintiff is alleged to have attended[2], or be planning to attend, any of the schools involved, and (3) none are alleged to have occurred since the School Board adopted its Religion policy in October 2004.

---

[2]  Other than Mona Dobrich, who graduated from the former Sussex Central High School 21 years ago.  (Compl. ¶ 7).

At this point, neither Mona Dobrich nor her son Alex live in the Indian River School District.  (Compl. ¶¶ 111, 112).  Neither Alex Dobrich nor Jordan Doe attend school in the District.  (Compl. ¶¶ 115, 159).

### IV.     Argument

Motions to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted when the plaintiffs cannot demonstrate any set of facts that would entitle them to the requested relief.  See, e.g., Morris v. Stokes, 2004 U.S. Dist. LEXIS 4969, *4 (D. Del. March 18, 2004).  In accordance with this standard, in considering a motion to dismiss, the Court should accept as true the material allegations in the complaint and construe the allegations in favor of the Plaintiff.  Id. at *3.  The Court, however, can only rely on the facts contained in the allegations of the Complaint and is not bound to accept as true any conclusory allegations regarding the legal effect of the facts alleged.

### A.  School Board Members are Entitled to Absolute Immunity

All claims against the School Board Members are barred by absolute legislative immunity, and must be dismissed.

Local legislators are entitled to the same absolute immunity from liability for §1983 claims as are state legislators and members of Congress.  See, Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998) (finding that rationale for absolute immunity applies equally to local, state and regional legislators, as well as Congress).  As a general matter, the Supreme Court recognized that absolute immunity of legislators at all levels of government exists for their discretionary acts.  Id. at 51.  Specifically, the Court held that "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by fear of personal liability."  Id. at 52.  The Court also recognized the threat of

8

lawsuits and the time and energy it takes to defend them are particularly significant at the local level where there is greater concern that individuals may be deterred from exercising their discretion and serving as local government officers when there is a threat of liability in their individual capacity.  Id.  This concern is especially applicable in the present case, since school board members in Delaware are not compensated for their service as a local official.  See, 14 Del. Code § 1046.

This absolute immunity extends to all actions taken, "in the sphere of legitimate legislative activity," including but not limited to, voting on resolutions, preparing reports, and speaking before the legislative body.  Id. at 54; see also, Youngblood v. Deweese, 352 F.3d 836, 839-40 (3rd Cir. 2003) (internal citations omitted).  The acts of legislators not protected by absolute immunity are those acts that are only, "casually or incidentally related to legislative affairs," such as, preparing news letters for constituents or accepting bribes.  Id. at 840 (internal citations omitted).  In Youngblood, for example, the Court found that the discretionary acts of two state representatives in allocating funding for internal office staffing was entitled to legislative immunity, even though no policy-making of the legislative body was involved.

In Delaware it is well-established that this same absolute legislative immunity applies to local school board members who are sued in their individual capacity.  See, McHugh v. Board of Education of Milford School District, 100 F. Supp. 2d 231, 238 (D. Del. 2000).  This Court specifically recognized that in Delaware school boards are, "vested with authority 'to determine and adopt rules and regulations for the general administration and supervision' of the public schools…[and] to appoint personnel and 'determine the educational policies… and prescribe rules and regulations for the conduct and management of the schools."  Id.  Therefore, the acts of local school board members

9

in determining the rules and regulations for the general administration and management of the schools are examples of the types of legislative activities that are protected by absolute legislative immunity.

There is no indication that the absolute immunity for school board members is any less extensive in scope than the general legislative immunity applied to state legislators or members of Congress. Therefore, while voting for or against a particular policy may be the best example of a quintessentially legislative act, it is certainly not the only action protected from liability under §1983 by absolute immunity. In fact the courts have specifically recognized that speaking before the legislative body is considered a legislative act protected by absolute immunity. Youngblood, 352 F.3d at 839-40. As recognized by the Supreme Court, actions by legislators that involve the exercise of their discretionary authority, rather than simple mandatory or ministerial acts, are absolutely immune from liability. See, Bogan, 523 U.S. at 51. Similarly, as recognized by this Court, to the extent plaintiffs' allegations do not demonstrate that the individual defendants exceeded the scope of their legislative authority, absolute immunity protects their actions and dismissal is appropriate. See, Blake v. Town of Delaware City, 441 F. Supp. 1189, 1201 (D. Del. 1977).

In the present case, the Plaintiffs seek damages for past practices and policies allegedly orchestrating and encouraging school-sponsored prayer in the District. (Compl. ¶ 5). Specifically, Plaintiffs challenge the School Board's previous and current policies regarding prayer at graduation and at school board meetings. Plaintiffs also allege that the School Board and school administrators have approved the practice of asking local clergy members to deliver an invocation and benediction at graduation, and have failed to develop and implement policies for investigating complaints of alleged violations of its

10

policies regarding prayer and religion generally. (Compl. ¶¶ 23-25, 118, 123). Each of these alleged actions falls squarely within the scope of protected legislative acts that are subject to absolute immunity from liability against §1983 claims.

Count I of the Plaintiffs' Complaint alleges that the School Board and the individuals acting in their personal and individual capacities, "*established a policy* of promoting, endorsing and establishing prayer and other religious activities at school events…" (Compl. ¶ 139) (emphasis added). Similarly, in both Counts I and II, Plaintiffs allege that the pervasive custom and practices of the School Board infringed on their constitutional rights under the First Amendment. (Compl. ¶¶ 141-143, 148). Finally, Count III is based upon the alleged "deliberate" actions of the School Board in allegedly failing to train its employees regarding various policies and responsibilities. (Compl. ¶¶ 153-157).

The alleged actions of the Individual Defendants in developing and implementing school board policies regarding prayer at graduation and school board meetings are exactly the kind of legislative acts intended to be protected by absolute immunity. For example inasmuch as the United States Supreme Court has upheld the right to open a legislative session with a prayer, Marsh v. Chambers, 463 U.S. 783, 792 (1983) (recognizing that beginning legislative sessions with prayer is part of the "fabric of our society"), the allegations regarding prayer at School Board meetings concern legislative acts within the meaning provided by the Third Circuit in Youngblood. 352 F.3d at 839-40.

In addition, the other actions by the Individual Defendants as members of the Indian River School Board that Plaintiffs claim deprive them of their constitutionally protected rights are all legislative acts, inasmuch as they require the exercise of their

11

discretion as local officials.  In accordance with Delaware law, school boards are vested

with authority by the state legislature "to administer and supervise the free public

schools… [and] to determine policy and adopt rules and regulations for the general

administration and supervision of the free public schools."  14 Del. Code §1043.  In the

exercise of this legislatively- delegated authority the School Board, and each of its

individual members, must exercise discretion in deciding how the schools in the district

should be run, including how and when to adopt specific policies and how and when to

develop and foster custom and practice to ensure the appropriate and efficient running of

the schools.  It is exactly these discretionary functions of local legislators, including local

school board members, that are intended to be protected by absolute legislative immunity.

Accordingly, the claims against the individual School Board Members are barred

by absolute immunity, and should be dismissed.

### B.  Members and Employees of the School Board are Entitled to Qualified Immunity

Claims against all the Individual Defendants should further be dismissed on the

basis of qualified immunity.

It is generally accepted that public officials, sued in their individual capacity, who

perform discretionary functions are entitled to qualified immunity for damages claims

brought pursuant to 42 U.S.C. §1983 when their conduct does not violate clearly

established statutory or constitutional rights that a reasonable person should have known.

See, Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).  This defense of qualified

immunity extends to local school board members.  Wood v. Strickland, 420 U.S. 308,

321-322 (1975).  Plaintiffs may only overcome a qualified immunity defense if they can

show that the Defendants' actions were objectively unreasonable based on clearly

DOCS_DE 109666v1

established laws at the time of the conduct.  See, Davis v. Scherer, 468 U.S. 183, 197

(1984); see also Rappa v. Hollins, 991 F. Supp. 367, 371 (D.Del. 1997) (plaintiff has

burden of proving the existence of a clearly established constitutional right).

     The determination of whether the law is clearly established at the time of the

alleged conduct and the determination of whether or not the official's conduct was

reasonable in light of the established law are both questions of law for the Court.  Rappa,

991 F.Supp. at 371.  The standard for determining whether or not the asserted

constitutional right was "clearly established" is based on whether the right is "sufficiently

clear that a reasonable official would understand that what he is doing violates that right."

Id. at 370 (citing Anderson v. Creighton, 483 U.S. 635, 640 n7 (1987)).  If reasonable

people can disagree regarding the proper interpretation of the existing law at the time of

the conduct, then the Defendants are entitled to immunity.  Rappa, 91 F. Supp at 370.

Moreover, the clearly established law must be specific to the facts in the present case, not

simply a general statement of constitutional law, such as the general principle that

employees may not be retaliated against for exercising their First Amendment Rights.  Id.

at 374 n15 & 375-76 (finding defendants were entitled to qualified immunity despite

significant Supreme Court precedent regarding First Amendment retaliation because it

was not clear at the time that defamatory statements could constitute retaliation).

     Qualified immunity is intended to protect government officials and the public

from the expense of litigation, the diversion from government service and the deterrence

of potential public officials.  Harlow, 457 U.S. at 814; Mitchell v. Forsyth, 472 U.S. 511,

525-527 (1985); Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82,

87 (3rd Cir. 1998).  Because qualified immunity is intended to shield government officials

and the public from both liability and the costs of litigation, it should be decided at an

early stage of the proceedings.  See, Harlow, 457 U.S. at 816-18; Mitchell, 472 U.S. at 526; Larsen, 154 F.3d at 87.

In this case, even taking as true the factual allegations in the Complaint, the actions of the Individual Defendants were – at a minimum – reasonable as a matter of law.

With respect to School Board prayer, for example, the United States Supreme Court held in Marsh v. Chambers, 463 U.S. 783 (1983) that prayer before sessions of legislative bodies does not violate the Establishment Clause.  The Court stated, "The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. From colonial times through the founding of the Republic and ever since, the practice of legislative prayer has coexisted with the principles of disestablishment and religious freedom." Id. at 786. Since then, in Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir 1998), the Tenth Circuit Court of Appeals held that invocational prayers at a city council meeting fell squarely under Marsh and that such "'legislative prayer' does not violate the Establishment Clause." Id. at 1233.  Given that the policymaking activities of a School Board clearly are legislative in nature, the members of the School Board unquestionably acted reasonably in regarding their brief invocation as Constitutionally permissible.

Insofar as the Complaint attacks what it alleges to be the School Board's graduation prayer practice or policy, that policy or practice is one which a reasonable person could certainly have regarded as constitutional.  For example, with respect to future graduations, the Board's graduation policy provides that the choice of any speaker shall be made by the students, that the School District shall not exercise control over the

content of his or her message, and that school officials may not mandate or organize prayer at graduation.

The law in this area cannot be described as "clearly established." Since the Supreme Court's decision in Lee v. Wiseman, 505 U.S. 577 (1993), Courts of Appeal have reached different results as to the circumstances under which a prayer by a student or student-selected speaker would be constitutionally permissible. A majority of a divided Third Circuit, sitting en banc, held that where graduation included a student-elected prayer, but where the school administration refused to permit another speaker expressing a different viewpoint, the practice violated the Establishment Clause. ACLU v. Black Horse Regional Board of Education, 84 F.3d 1471 (3rd Cir. 1996). Since then, however, the Eleventh Circuit, in Adler v. Duval County School Board, 250 F.3d 1339 (11th Cir. 2001); cert. denied 508 U.S. 967 has upheld a policy similar in many respects to that adopted by the School Board. The Fifth Circuit also reached a different result in Jones v. Clear Creek Independent School District, 977 F.2d 963 (5th Cir. 1992), cert. denied 113 S. Ct. 2950 (1993). This disagreement has yet to be resolved by the United States Supreme Court. Certainly, it should not be the responsibility of local school officials to do so.

As for permitting distribution of religious materials in a school, the Third Circuit ruled as recently as last fall that barring their distribution by a religious club, at least where distribution of other kinds of materials was allowed, violated the free speech rights of the club. Child Evangelism Fellowship of New Jersey v. Stafford Township School District, 386 F.3d 514 (3rd Cir. 2004).

The Complaint argues in part that because bible clubs meet during lunch at one middle school (Compl. ¶ 33), and because they are popular with the students (Compl. ¶

36), the Individual Defendants are somehow responsible for an Establishment Clause violation. The Complaint does note that other clubs, such as the Book Club, were allowed to meet during lunch. (Compl. ¶ 34). The Third Circuit, however, has recently emphasized that not allowing a Bible Club to meet during such no instructional time, where other non curriculum-related clubs are allowed to do so, would be a violation of the Equal Access Act. <u>Donovan v. Punxsutawney Area School Board</u>, 336 F.3d 211 (3d Cir. 2003).

Plaintiffs' also claim that the Individual Defendants are responsible for violations of the Free Exercise Clause. Establishing such a claim would require a showing that those defendants have "placed a substantial burden on the observation of a central religious belief or practice." <u>Hernandez v. Commissioner</u>, 490 U.S. 680, 699 (1989). Here, that is not even alleged. While the Complaint makes allegations regarding various past or present religious-related practices in the IRSD, it does not allege that any, or all, of these practices have substantially burdened any plaintiff in the exercise of his or her religion. To the extent the Complaint alleges that any plaintiff has been significantly burdened, those averments concern the alleged conduct of third parties over whom the Individual Defendants clearly have no control.

Finally, with respect to prayers at a pot luck or pasta dinner, or a football practice, or expressions of faith by an individual teacher or two  somewhere and at some time in the District, the 38 pages of the Complaint are silent as to any suggestion that the Individual Defendants were involved in, or approved of, those actions.

Accordingly, all of the Individual Defendants are entitled to qualified immunity and should be dismissed.

### C. The Complaint Includes No Specific Relevant Allegations Against the Individual Defendants

The claims against all the Individual Defendants should further be dismissed because the Complaint contains no specific, relevant allegations as to any of them.

It is well-established that individual supervisory government officials may not be held liable under Section 1983 for the acts of subordinates on a purely respondeat superior basis. See, e.g. Polk County v. Dodson, 454 U.S. 312, 325 (1989); Guzman v. Cranston, 812 F.2d 24 (1st Cir. 1987). Rather, supervisory liability under Section 1983 requires that a named defendant have personally subjected plaintiff to deprivation of a plaintiff's constitutional rights, or have caused the conduct complained of, or participated in some manner in the allegedly unlawful actions of his or her subordinates. Guzman, 812 F.2d at 25-26; McCarther v. Grady County, 437 F. Supp. 831 (W.D. Okla. 1977); Egan v. Concini, 585 F. Supp. 801, (M.D. Pa. 1984).

As a result, even under the liberal pleading standards of the Federal Rules, where no specific factual allegations are made with respect to a named defendant, that defendant is properly dismissed. Ellis v. Norris, 179 F.3d 1078 (8th Cir. 1999); Marvasi v. Shorty, 70 F.R.D. 14, 22-23 (E.D. Pa. 1976); United States ex rel. Tyrell v. Speaker, 471 F.2d 1197, 1204 (3d Cir. 1973); Hamilton v. Jamieson, 355 F. Supp. 290, 294 (E.D. Pa. 1973); Rakes v. Coleman, 318 F. Supp. 181, 192-193 (E.D. Va. 1970) (action dismissed as to Attorney General and Governor, where Complaint failed to specify their involvement in the alleged wrong).

Indeed, faced with pleadings much like the Complaint here, the Marvasi court observed:

> [W]ith regard to Frank Rizzo, Hillel Levinson, Joseph
> Cody, William McNulty and Harry Kite, although their

17

> names appear in the caption of this case and in the
> identification of parties portion of the amended complaint,
> their names appear nowhere else in the text of the amended
> complaint. This fact alone is sufficient for dismissal.

70 F.R.D. at 22-23.  This observation is on all fours with respect to Mr. Savage, who is
identified in caption and as a party defendant (Compl. ¶ 19), but nowhere else in the
Complaint.  It also applies to School Board Members Mark A. Isaacs, Richard H. Cohee,
Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, and M. Elaine McCabe.
Accordingly, all should be dismissed.

Likewise the allegations of personal involvement on the part of the Superintendent
and the other School Board members are almost as peripheral.  Other than identifying her
as a defendant, the only specific factual allegations concerning Ms. Hobbs are that she:

- Listened to comments from Mona Dobrich after graduation.  (Compl. ¶ 71);

- Put the issue of prayer at graduation on the School Board agenda, and later
announced that consideration of the matter would be deferred due to a death in the family
of the school board attorney.  (Compl. ¶¶ 73, 76);

- Told Ms. Dobrich that she was ungrateful.  (Compl. ¶ 104);

- Returned one call concerning investigation of a complaint, and did not return
another.  (Compl. ¶¶ 115, 116).

The above actions of Ms. Hobbs clearly cannot be said to have denied plaintiffs'
constitutional rights.  Likewise, as distinguished from the action of the School Board as a
whole, the only specific actions attributed to defendants Harvey Walls, John Evans and
Donald Hattier are that they ran School Board meetings, offered a prayer in accordance
with their own freedom of conscience, or spoke with Mona Dobrich in an attempt to
resolve her concerns. (Compl. ¶¶ 74, 76, 77, 80, 83, 92, 94, 125, 127).  They should be
dismissed as individual defendants as well.

### D.  Claims in Complaint are Barred by Statute of Limitations

The Supreme Court has held that courts should borrow the state statute of limitation from personal injury actions for all claims brought pursuant to 42 U.S.C. §1983. See, e.g., Owens v. Okure, 488 U.S. 235, 240-41 (1989). In Delaware, the two-year statute of limitations for personal injury actions applies to §1983 claims, such as the claims in the present case. See, 10 Del. Code §8119 (2005) (statute of limitation for personal injury claims); see also, Monahan v. City of Wilmington, 2004 US Dist. LEXIS 1322, *8 (D. Del. 2004) (applying Delaware's two year statute of limitation for personal injury actions to §1983 claims). Therefore, since the present lawsuit was filed on February 23, 2005, any and all claims in the present case based on actions occurring prior to February 23, 2003 are barred by the statute of limitations.

Specifically, to the extent plaintiffs claim to seek damages for allegedly "past unconstitutional practices and policies…" these claims must be limited by the two-year statute of limitations. (Compl. ¶5). For example, claims for relief in the present case cannot be based on alleged actions, such as those asserted on behalf of Mona Dobrich regarding the time that she attended school in the Indian River School District. (Compl. at ¶¶ 7, 81). Similarly, the plaintiffs' claims cannot be based on alleged actions during Samantha Dobrich's ninth, tenth or eleventh grade years. (Compl. ¶ 47). General claims that the alleged practice of fostering school-sponsored prayer in a variety of settings has occurred for many years, must be limited to the last two years as the basis for any claims in this case. (See, e.g., Compl. ¶¶ 2, 22, 23, 43). Moreover, allegations of particular specific events without reference to any date should be dismissed unless plaintiffs can show the alleged acts occurred within the two-year statute of limitations. (See, e.g., Compl. ¶¶ 32-36, 40-42, 48-51, 52, 114-117).

### E. Claims of Plaintiff Dobriches' are Moot and Lack Standing

19

In accordance with Article III of the U.S. Constitution, federal courts only have jurisdiction to decide cases when a current case and controversy is presented for their consideration. Part of the threshold determination of whether a case and controversy exists is based on whether the Plaintiffs have standing to assert the specific legal claims in the Complaint. See, Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471 (1982). As a general matter an individual only has standing to invoke the court's authority when he can, "show that he personally has suffered some actual or threatened injury as a result of putatively illegal conduct of the defendant." Id. at 472 (internal citations omitted). Standing cannot be based on any general right of all citizens to require the government to follow the Constitution or implement the law. Id. at 482-83. In addition, the injury-in-fact requirement means that plaintiffs may only base their claims on their own legal rights, not the rights of others in order to avoid "abstract questions" and "generalized grievances." Id. at 474-75. (internal citations omitted).

A narrow exception is recognized to this general rule for parents who are asserting individual claims of establishment clause violations at the schools attended by their children. See, e.g., McCollum v. Board of Education, 333 U.S. 203, 206 (1948); see also Donovan v. Punxsutawney Area School Board, 336 F.3d 211, 217 n2 (3rd Cir. 2003). This exception, however, is limited by its derivative nature to claims that could be raised by the student. See, Donovan, 336 F.3d at 217 n2 (finding that parents' claims are also moot when student had graduated and there was no evidence of other children attending school in the district); see also Schanou v. Lancaster County School District, 62 F.3d 1040 (8th Cir. 1995) (finding parents cannot satisfy burden to prove standing when

only child has graduated and parental standing is derivative of student's claims). In both

Donovan and Schanou the courts found that the parents lacked standing to invoke the

jurisdiction of the court to decide their constitutional claims (or presented only moot

claims) because they did not have any children currently enrolled in the defendant school

district. Donovan, 336 F.3d at 217 n2; Schanou, 62 F.3d at 1043. In addition, in

Schanou, the parent chose to withdraw the student from the defendant's schools, and as a

result the Court found that her claims should be dismissed for lack of a current live

controversy between the parties. 62 F.3d at 1041, 1043 & 1046 (finding that the mere

fact that the Student was once in the district's school is not enough to present a judiciable

claim).

     In the present case, any claims by Marco or Mona Dobrich must be based on one

of their children's current attendance at an IRSD school. However, as alleged in the

Complaint, Samantha Dobrich has graduated from high school, and her brother

Alexander now attends private school in Philadelphia. (Compl. ¶¶ 11 & 112). Therefore,

on the face of the Complaint, the Dobrichs do not currently have any children enrolled in

the Indian River School District, and cannot satisfy the requirements of Article III of the

Constitution to present a current controversy capable of judicial resolution based on

either lack of standing or mootness.[3] Since lack of standing divests the court of

jurisdiction to entertain the parents' complaint, the claims must be dismissed. See,

Wheeler v. Travelers Insurance Company, 22 F.3d 534, 537 (3rd Cir 1994) (standing is a

threshold question that goes to the court's subject matter jurisdiction).

---

[3] The Does' claims are similarly derivative of their children's claims with regards to
asserting constitutional violations for alleged actions at their schools. However, as
indicated in the Complaint, Jordan Doe is also currently not enrolled in the Indian River
School District. (Compl. ¶ 145). Therefore, as with the Dobrichs' claims, the Does fail
to present a current live controversy with regards to Jordan.

In addition, according to the Complaint, both Mona and Alexander Dobrich currently reside in Wilmington, Delaware, outside the Indian River School District. (Complaint at ¶ 112). As the courts have recognized, a case is considered moot when the issue presented is no longer "live," such as when a student graduates from high school or when the plaintiffs move out of the defendant school district. See, Donovan, 336 F.3d at 216 (cases are moot when there is no longer a current controversy between the parties, such as when a student graduates from school); see also Smith v. Special School District No. 1, 184 F.3d 764, 766-68 (8th Cir. 1999) (moving from district moots claims). Therefore the claims of plaintiffs Mona and Alexander Dobrich are moot based on the fact that they no longer live in the school district, and the claims of plaintiff Marco Dobrich are also moot because his claims are necessarily derivative of his children, who do not present current live claims.

The Dobriches' status as taxpayers in Delaware and in the Indian River School District specifically does not resolve this lack of current controversy with regard to their son, because they do not have independent standing as taxpayers to assert constitutional violations in federal court. See, Valley Forge, 454 U.S. at 477-79 (citing Doremus v. Board of Education, 342 U.S. 429 (1952) (paying taxes alone does not confer standing to challenge constitutionality) and Flast v. Cohen, 392 U.S. 83 (1963) (establishing two-part test for taxpayer standing to challenge federal acts under spending clause).

22

## V.    Conclusion

For the foregoing reasons, Defendants Harvey L Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe, Lois M. Hobbs and Earl J. Savage, in their individual and official capacity, as well as the Indian River School Board and the Indian River School District pray that the Complaint be dismissed in its entirety as to them.

Respectfully submitted,

**WHITE and WILLIAMS LLP**

By:    ___/s/ John D. Balaguer___
John D. Balaguer (Bar I.D. 2537)
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, Delaware 19899-0709
(302) 467-4501

and

John F. Cafferky, Esq.
William A. Porter, Esq.
Andrea D. Gemignani, Esq.
BLANKINGSHIP & KEITH
4020 University Drive, Suite 300
Fairfax, VA 22030

*Counsel for Defendants Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe, Lois M. Hobbs, Earl J. Savage, the Indian River School Board, and the Indian River School District*

Dated:  April 27, 2005