IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONA DOBRICH, et al., | : |
| Plaintiffs, | : |
| v. | : No. 05-cv-00120-JJF |
| HARVEY L. WALLS, et al., | : |
| Defendants. | : |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS
WALLS, ISAACS, EVANS, COHEE, HASTINGS,
BUNTING, BIRELEY, HATTIER, MCCABE, HOBBS AND
SAVAGE, AND THE INDIAN RIVER SCHOOL BOARD AND
<u>INDIAN RIVER SCHOOL DISTRICT'S MOTION TO STRIKE</u>**

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Plaintiffs

DATED: May 18, 2005

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ........................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ......................... 1

I.  Defendants' Motion Is Procedurally Flawed ......................... 3

II. Plaintiffs Have Pleaded Viable Claims For Relief ..................... 5

    A.  Defendants Have Failed To Demonstrate That The Allegations Are Immaterial, Impertinent Or Scandalous .................... 6

    B.  Defendants Have Failed To Articulate Any Prejudice ............ 12

CONCLUSION ................................................. 13

## TABLE OF CASES AND AUTHORITIES

**CASES**                                                      **PAGE(S)**

Augustus v. Board of Public Instruction,
    306 F.2d 862 (5th Cir. 1962) .............................................................................. 12

Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,
    295 F. Supp. 2d 430 (D. Del. 2003) ..................................................................... 6

Cobell v. Norton,
    224 F.R.D. 1 (D.D.C. 2004) ............................................................................ 6, 7

Delaware Health Care, Inc. v. MCD Holdings Co.,
    893 F. Supp. 1279 (D. Del. 1995) ................................................................... 5, 7

De-Raef Corp. v. Horner Sales Corp.,
    10 F.R.D. 28 (W.D. Pa. 1950) ........................................................................ 4, 5

First Nat'l City Bank v. Burton M. Saks Constr. Corp.,
    70 F.R.D. 417 (D.V.I. 1976) ................................................................................ 4

Flanagan v. Wyndham Int'l Inc.,
    C.A. No. 2002/237-M/R, 2003 WL 23198798 (D.V.I. Apr. 21, 2003) ............ 6, 12

Gateway Bottling, Inc. v. Dad's Rootbeer Co.,
    53 F.R.D. 585 (W.D. Pa. 1971) ........................................................................... 6

Moore v. Vangelo,
    C.A. No. 03-CV-4718, 2004 WL 292482 (E.D. Pa. Feb. 12, 2004) ................... 11

Schmid v. Roehm GmbH,
    544 F. Supp. 272 (D. Kan. 1982) ......................................................................... 4

Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.,
    820 F. Supp. 150 (D. Del. 1992) .................................................................... 6, 12

Southmark Prime Plus L.P. v. Falzone,
    768 F. Supp. 487 (D. Del. 1991) ........................................................................ 12

**AUTHORITIES**

Federal Rules Civil Procedure 1 ............................................................................... 5

Federal Rules of Civil Procedure 12(b)(1) ................................................................................ 3

Federal Rules of Civil Procedure 12(b)(6) ................................................................................ 3

Federal Rules of Civil Procedure 12(f) ..................................................................................... 3

5C Charles A. Wright and Arthur R. Miller,
 Federal Practice and Procedure § 1380 (3d ed. 1990) ............................................................ 7

## PRELIMINARY STATEMENT

Defendants (except Reginald Helms, who has not joined in his co-defendants' motion to strike) apparently dislike, or are even offended by, certain of Plaintiffs' allegations, and they have moved to strike them from the Complaint for being immaterial, impertinent and scandalous. But their motion to strike – disfavored at law and drastic in remedy – is both procedurally barred and substantively meritless, and should be denied.

The Federal Rules of Civil Procedure required the moving Defendants to file their motion to strike before they answered the Complaint, and their failure to do so waived their right to move to strike. Even if their motion were not procedurally barred (and it is), Defendants have failed to show that the allegations (which of course must be presumed true) are immaterial, impertinent or scandalous, or that they cause prejudice. The indisputable unpleasantness of the facts alleged against Defendants (which is the direct consequence of their continuing disregard of settled constitutional principles and their own policies) does not cause them prejudice as that term is interpreted under Federal Rule of Civil Procedure 12(f).

## NATURE AND STAGE OF THE PROCEEDINGS

At the Sussex Central High School graduation ceremony on June 3, 2004, Pastor Jerry Fike – who Defendant Helms has admitted was present at the invitation of school officials – led the assembled students and spectators in prayer.

He prayed to God to direct the soon-to-be graduates to "the truth that comes by knowing Jesus." After hearing the prayer, plaintiff Mona Dobrich – a Jewish woman who had been involved with the Indian River School District (the "District") for more than 25 years, first as a student and then as a parent of two children, one of whom was graduating near the top of her class that day – decided to ask that the District not use the name of Jesus at school events.

        Mona appealed to the School Superintendent and the President of the Indian River School Board (the "School Board"), and she bravely spoke against school-sponsored prayer at several School Board meetings. She was consistently rebuffed or ignored, and was the subject of verbal attacks at School Board meetings, at which Defendants actively encouraged a revival meeting atmosphere. When the District subsequently adopted formal policies regarding school prayer, Mona (through her attorneys) wrote letters to the School Board pointing out that the policies were constitutionally deficient and that the District was already failing to implement even the deficient policies. At the November 2004 School Board meeting, Mona publicly urged the School Board to respond to her letters. Finally, on February 28, 2005, Plaintiffs (the Dobrich family, together with the Does – who filed anonymously due to their fear of the same sort of retribution the Dobriches experienced) filed the Complaint seeking damages and injunctive relief for the pattern and practice of unconstitutional behavior of the School Board, the District and District employees.

2

On April 4, 2005, Defendant Reginald Helms answered the Complaint in his official capacity and filed a motion to dismiss the claims against him in his individual capacity. He did not move to strike any of the allegations in the Complaint. The parties have fully briefed Helms's motion to dismiss.

Counsel for the remaining Defendants sought several weeks of additional time to respond to the Complaint, to which Plaintiffs consented – largely because of representations that such counsel could be a constructive force in the litigation. On April 27, 2005, the remaining Defendants answered the Complaint in their official capacity; then moved to strike the Complaint (or select portions of it) on the grounds that it contains immaterial, impertinent and scandalous allegations. Finally, Defendants moved to dismiss the Complaint based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This is Plaintiffs' answering brief in opposition to Defendants' motion to strike.

**I.  Defendants' Motion Is Procedurally Flawed.**

Because Defendants answered the Complaint before they filed their motion to strike, the motion to strike is barred. Federal Rule of Civil Procedure 12(f) provides:

> (f) Motion to Strike. Upon motion made by a party <u>before responding to a pleading</u> or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

3

Fed. R. Civ. P. 12(f) (emphasis added).

Unfortunately, Defendants' motion reveals that they were not ignorant of the timing requirement in the Rule. Thus, in their motion to strike, Defendants quote the Rule but omit all the language regarding the timing of the motion, substituting an ellipsis without explanation. (Motion to Strike at 2) The missing language is critical. Defendants were required to file their motion to strike before they answered the Complaint.[1] Defendants could have raised their objections in the Answer itself. Instead, they burdened the Court and the parties with additional, unnecessary motion practice (which the Rule aims to prevent), and they deliberately left out language in the Rule that would have revealed their procedural default.

The timing requirement is not a meaningless or trivial provision; numerous courts have denied motions to strike for failure to comply with the timing provisions. See, e.g., Schmid v. Roehm GmbH, 544 F. Supp. 272, 273 (D. Kan. 1982) (denying motion to strike filed after answer as untimely); First Nat'l City Bank v. Burton M. Saks Constr. Corp., 70 F.R.D. 417 (D.V.I. 1976) (denying motion to strike affirmative defenses as untimely); De-Raef Corp. v. Horner Sales Corp., 10

---

[1] In fact, Defendants filed their Motion to Strike shortly after filing their Answer. If Defendants had not signaled their awareness of their procedural default by omitting the relevant portion of the rule, the timing of their filings would be easier to excuse.

4

F.R.D. 28 (W.D. Pa. 1950) (denying motion to strike as untimely where plaintiff had already replied to defendant's counterclaim).

Moreover, Defendant Helms has already answered and filed a partial motion to dismiss (Helms filed those papers on April 4, 2005). Accordingly, if the Court were to grant the untimely and procedurally barred motion to strike of the non-Helms Defendants, the resolution would only complicate the record, since allegations stricken as to one set of Defendants would remain as to another. This perverse result would completely defeat the purpose of the Rule, Delaware Health Care, Inc. v. MCD Holdings Co., 893 F. Supp. 1279, 1291-92 (D. Del. 1995) ("[T]he function of a 12(f) motion to strike is to avoid expenditure of time and money that necessarily arises from litigating spurious issues by disposing of those issues prior to trial."), and the purpose of the Federal Rules of Civil Procedure generally. See Fed. R. Civ. P. 1 ("[T]hese rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").

## II. Plaintiffs Have Pleaded Viable Claims For Relief.

Procedural deficiencies provide ample reason to reject Defendants' motion to strike. But the motion is also completely devoid of substantive merit and should be denied in any event. As discussed below, the allegations in question are not immaterial, impertinent or scandalous, and Defendants have failed to demonstrate any prejudice from their inclusion in the Complaint.

5

Motions to strike are disfavored and are granted sparingly and only if clearly warranted. Schwarzkopf Techs. Corp. v. Ingersoll Curring Tool Co., 820 F. Supp. 150, 154 (D. Del. 1992); Flanagan v. Wyndham Int'l., Inc., C.A. No. 2002/237-M/R, 2003 WL 23198798 (D.V.I. Apr. 21, 2003) ("the movant must show that the allegations being challenged are so unrelated to Plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings will be prejudicial"). "Any doubt as to the striking of matter in a pleading should be resolved in favor of leaving the pleading unstricken." Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 295 F. Supp. 2d 430 (D. Del. 2003); Flanagan, 2003 WL 23198798, at *2.

### A. Defendants Have Failed To Demonstrate That The Allegations Are Immaterial, Impertinent Or Scandalous.

Defendants have not articulated any legitimate reason to strike Plaintiffs' allegations as immaterial, impertinent or scandalous. Scandalous matter "does not merely offend someone's sensibilities; it must improperly cast a person or entity in a cruelly derogatory light." Flanagan, 2003 WL 23198798, at *2. It is not enough that the facts are "unpleasant for [Defendants] to have on the record"; instead, "[t]o strike material as scandalous, it must be obviously false and unrelated to the subject matter...." Gateway Bottling Inc. v. Dad's Rootbeer Co., 53 F.R.D. 585, 588 (W.D. Pa. 1971). See also Cobell v. Norton, 224 F.R.D. 1, 5 (D.D.C. 2004) ("[s]tatements are to be stricken as 'scandalous' only when they contain allegations

6

'that unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court'") (citation omitted) Matters are impertinent or immaterial if they have no important or essential relationship to the claim for relief or do not pertain to the issues in question. Delaware Health Care, 893 F. Supp. at 1291-92.

Here, Plaintiffs seek redress (including damages for past injuries and injunctive relief against continuing violations) for the pattern and practice of constitutional violations in the District, and Defendants concede this fact. They nevertheless seek to strike alleged facts that are pleaded to be a "direct result of the policies and practices of the [Defendants], and the environment they fostered...." (Compl. ¶ 111)

Defendants dislike paragraphs 12, 78, 85-87, 89-90, 96-97, 99[2]-101,[3] 103 and 106-110.[4] However, these paragraphs demonstrate the harm that the

---

[2] Defendants seek to strike paragraph 99, yet nowhere do they include that paragraph in the analysis. We address it in any event.

[3] The motion is inconsistent in reference to paragraph 100 or 101. Some portions of the motion exclude paragraph 101 from the list of paragraphs, but the argument section includes 101 in its analysis. Accordingly, we address both in our opposition.

[4] Defendants state that they seek to strike the entire Complaint pursuant to Rule 12(f) yet they articulate no basis for striking the non-enumerated allegations. To the extent they are claiming that those allegations fail to state a claim, a Rule 12(f) motion is not the proper procedural vehicle for dismissing the claims. Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004). That is the purpose of a Rule 12(b)(6) motion,
(continued...)

7

Dobriches have suffered for challenging the unconstitutional customs and practices in the District – a matter that is directly relevant to their claim for damages.

Defendants seek to strike references to the public backlash against the Dobriches detailed in paragraph 12. Paragraph 12, however, deals with the need for the Does to remain anonymous:

> Given public backlash directed against the Dobriches, which is described in detail below, the Does wish to remain anonymous to avoid retaliation by members of the community and employees of the District.

(Compl. ¶ 12)

Moreover, the paragraph helps explain how the District's acts and omissions forced the Dobriches to choose between silently suffering constitutional deprivation and publicly suffering the hostility detailed in the Complaint, including the threats of harm or intimidation described in paragraph 96 (shouts from the public at School Board meeting to fifth-grader Alex Dobrich to "take your yarmulke off!"), paragraph 97 (ACLU representative told to "Go back up North"), paragraph 101 (former School Board member suggesting that Mona Dobrich might "disappear" like freedom of religion activist Madalyn Murray O'Hair, who in 1995 was murdered and dismembered), paragraph 106 (the Dobriches should either convert to Christianity and "accept Jesus Christ as their lord and savior" or leave Sussex County), paragraph 107

---

4  (...continued)
   which Defendants (apparently understanding this) have separately filed.

8

(a stranger gave Samantha Dobrich tapes praising Jesus, and Alex Dobrich's schoolmates felt free to call him "Jew boy" and tell him that he "killed Jesus"), and paragraph 108 (the Dobriches were warned that "the Ku Klux Klan was meeting nearby"). These acts of intimidation and threats of harm help explain why Mona and Alex felt forced to leave the District, and are directly relevant to their claims for damages, as well as the allegations that the pattern of unconstitutional conduct by Defendants fostered an atmosphere in which such hateful and intolerant behavior could flourish. (See Compl. ¶¶ 109, 110)

Paragraphs 78, 85, 86 and 87 describe how knowledge of the events alleged in the Complaint spread throughout the community. Paragraph 78 refers to news coverage of the Dobriches' complaints about the District's unconstitutional practices. Paragraph 86 demonstrates Defendant Hattier's involvement with a local radio station, WGMD, that fanned the flames of controversy over prayer in the District. (Compl. ¶¶ 85, 87) The public controversy in turn led to the acts and statements in paragraphs 96, 97, 101, 106, 107 and 108. Thus, the allegations in paragraphs 78, 85, 86 and 87 are a link in the chain of events that help explain why Mona and Alex Dobrich decided they could not remain in the District.

Paragraphs 89, 90, 99, 100, 101 and 103 show how difficult life was for the Dobriches after they urged Defendants to comply with the Constitution. Large crowds gathered at Frankford Elementary School for the August 24, 2004 School

9

Board meeting. (Compl. ¶ 89) The Dobriches were intimidated by the crowd and sought the aid of a Delaware state trooper, who ultimately agreed to escort the family into the building. (Compl. ¶ 90) The fact that the Dobriches felt they needed a police escort to get to a School Board meeting helps explain why they decided to leave the District.

Paragraphs 99, 100 and 103 show how members of the community responded to the Dobriches' complaints at the August 24, 2004 School Board meeting. Paragraph 99 describes how the School Board meeting resembled a religious meeting with people shouting "Amen" and "Praise Jesus" and quoting scripture passages. Paragraph 100 pleads that an elected official encouraged the School Board and the District to ignore the Constitution and the Dobriches' complaints. Paragraph 103 sums up the community's indifference to the Dobriches' beliefs: a parent explained that "Jesus is just about the best role model [that a parent] could ask for [her] child," and that prayer in Jesus' name should be in the schools. These paragraphs show how the Dobriches' challenge to the District's unconstitutional behavior, and its complete indifference to their complaints, left them isolated and despised in their own community.

Collectively, these allegations show that Mona and Alex Dobrich left the District as a "direct result of the policies and practices of the School Board and the District, and the environment they fostered...." (Compl. ¶ 111) The Dobriches seek

10

relief from Defendants for the costs associated with that move and the harm it has done to them. (Compl. ¶¶ 111, 112, 113, 144, 149 and 158) The paragraphs that Defendants have moved to strike are part of the foundation for the relief that the Dobriches seek. See Moore v. Vangelo, C.A. No. 03-CV-4718, 2004 WL 292482 (E.D. Pa. Feb. 12, 2004) (denying motion to strike pattern and practice allegations potentially relevant to the plaintiffs' claims).

The challenged allegations are indeed serious (one can easily see why Defendants are troubled by a recitation in black and white of their own unconstitutional conduct and the inevitable consequences of their decision to ignore the bedrock principles of our nation), but they are not immaterial or impertinent. Indeed, Defendants make no real effort to describe how the allegations are scandalous – other than noting that a news report (which also featured a photograph of a District athletic team kneeling in prayer with their coach before a game) included some of those allegations in its coverage (And why not? The atmosphere of extreme religious intolerance fostered by Defendants' utter indifference to constitutional principles is surely newsworthy, as the subsequent stream of letters to the editor on the topic made clear). While the allegations may be unpleasant for Defendants, that is hardly sufficient to justify striking them from the Complaint.

11

### B. Defendants Have Failed To Articulate Any Prejudice.

To succeed on a motion to strike, Defendants must also demonstrate prejudice from the presence of the challenged statements. Schwarzkopf, 820 F. Supp. at 154; see also Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962) (reversing district court's grant of motion to strike and holding "that when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike") (footnotes omitted). The burden of demonstrating prejudice is a real one. It is not enough that the allegations are unpleasant or embarrassing. Numerous courts have declined to strike allegations that a party might find unpleasant to have in the record. See, e.g., Southmark Prime Plus, L.P. v. Falzone, 768 F. Supp. 487 (D. Del. 1991) (holding that allegations that defendants were connected to and controlled by organized crime were not scandalous or impertinent); Flanagan, 2003 WL 23198798 (denying motion to strike allegations of a pattern of molesting young girls even though those molestations were not being challenged in the complaint before the court). Here, the only prejudice Defendants attempt to articulate is embarrassment over the media coverage of the matter. Defendants cite no authority for the proposition that negative media coverage constitutes the type of prejudice warranting the drastic remedy they seek. Indeed, Defendants articulate no prejudice at all in the proceedings before this Court.

12

## CONCLUSION

On the basis of the foregoing arguments and authorities, Defendants' Motion To Strike should be denied.

*/s/ Rosemary S. Goodier*
Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Plaintiffs

DATED:  May 18, 2005