IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONA DOBRICH, et al.,                    :
                                         :
          Plaintiffs,                    :
                                         :
     v.                                  :   No. 05-cv-00120-JJF
                                         :
HARVEY L. WALLS, et al.,                 :
                                         :
          Defendants.                    :

**PLAINTIFFS' ANSWERING BRIEF  IN OPPOSITION TO
DEFENDANTS WALLS, ISAACS, EVANS, COHEE, HASTINGS,
BUNTING, BIRELEY, HATTIER, MCCABE, HOBBS AND
SAVAGE, AND THE INDIAN RIVER SCHOOL BOARD AND
INDIAN RIVER SCHOOL DISTRICT'S MOTION TO DISMISS ALL CLAIMS**

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Plaintiffs

DATED: May 18, 2005

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.      THE COMPLAINT ALLEGES FACTS THAT ENTITLE
        PLAINTIFFS TO RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.     LEGISLATIVE IMMUNITY DOES NOT SHIELD THE
        SCHOOL BOARD MEMBERS FROM LIABILITY FOR
        THEIR NON-LEGISLATIVE ACTS . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      School Board Members In Delaware Have Statutorily
                Established Administrative Responsibilities In Addition
                To Their Policymaking Responsibilities . . . . . . . . . . . . . . . . 14

        B.      The Complaint Alleges Administrative Failures Beyond
                The Scope Of Legislative Immunity . . . . . . . . . . . . . . . . . . 15

        C.      Prayer Before A School Board Meeting Is Not A Legis-
                lative Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.    THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED
        TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      Qualified Immunity Does Not Shield The Individual
                Defendants From Suit For Equitable Relief . . . . . . . . . . . . . 20

B.    Qualified Immunity Does Not Protect The Individual Defendants From Liability For Violations Of Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.    The Law Is Clearly Established That the Public School System Cannot Actively Encourage Or Support Prayer And Religious Proselytizing . . . . . . . . . . . . . . . . . . . . . . . . . 21

D.    The District's Long-Standing Endorsement of Prayer At Graduation Ceremonies Is A Violation Of Clearly Established Constitutional Law . . . . . . . . . . . . . . . . . . . . . . . . . 22

E.    Sectarian Religious Education And Bible Clubs Led By Teachers And School Employees Are Violations Of Clearly Established Constitutional Law . . . . . . . . . . . . . . . . . 23

F.    School Participation In Bible Distributions Is A Violation Of Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . 25

G.    School Board Prayers Are Violations Of Clearly Established Constitutional Law . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV.    THE COMPLAINT STATES A FREE EXERCISE CLAIM . . . . . . 30

V.    THE ACTS AND OMISSIONS ALLEGED IN THE COMPLAINT IMPLICATE EVERY DEFENDANT . . . . . . . . . . . . . . . . 31

VI.    NONE OF PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

A.    The Complaint Alleges Constitutional Violations Within The Two-Year Limitations Period . . . . . . . . . . . . . . . 34

B.    The Complaint Alleges A Persistent Ongoing Pattern Of School-Sponsored Prayer . . . . . . . . . . . . . . . . . . . . . . . . 34

iii

VII.  PLAINTIFFS HAVE STANDING TO BRING THEIR
      CLAIMS FOR DAMAGES AND EQUITABLE RELIEF  . . . . . . . . 37

      A.  Mona And Marco Dobrich And Jane And John Doe
          Have Standing To Challenge Acts That Interfere With
          Their Right To Control The Religious Upbringing Of
          Their Children  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

      B.  The Dobriches Have Standing To Seek Damages For
          Past Constitutional Violations And Equitable Relief For
          School Board Prayer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      C.  The Does Have Standing To Seek Damages And Equi-
          table Relief For Past, Current And Future Constitutional
          Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

ACLU v. Black Horse Pike Reg'l Bd. of Educ.,
    84 F.3d 1471 (3d Cir. 1996) ......................................................................... 23

Abraham v. Pekarski,
    728 F.2d 167 (3d Cir. 1984) ......................................................................... 12

Acierno v. Cloutier,
    40 F.3d 597 (3d Cir. 1994) ..................................................................... 13, 15

Am. Fire, Theft & Collision Managers, Inc.v. Gillespie,
    932 F.2d 816 (9th Cir. 1991) ........................................................................ 20

Anderson v. Creighton,
    483 U.S. 635 (1987) ............................................................................... 20, 24

Anderson v. Davila,
    125 F.3d 148 (3d Cir. 1997) ........................................................................ 20

Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ.,
    52 Fed. Appx. 355 (9th Cir. 2002) ............................................................... 30

Berger v. Rensselaer Cent. Sch. Corp.,
    982 F.2d 1160 (7th Cir. 1993) ................................................................ 26, 27

Bogan v. Scott-Harris,
    523 U.S. 44 (1998) ................................................................................. 12, 13

Brown v. Muhlenberg Township,
    269 F.3d 205 (3d Cir. 2001) .................................................................. 20, 21

Carter v. Brady,
    C.A. No. 99-757-JJF, 2001 WL 34368378 (D. Del. Mar. 30, 2001) ................... 11, 22, 32

Carver v. Foerster,
    102 F.3d 96 (3d Cir. 1996) ...................................................... 12, 13, 15, 16, 19

Chaudhuri v. Tenn.,
    767 F. Supp. 860 (M.D. Tenn. 1991) ............................................................ 33

Child Evangelism Fellowship of N.J., Inc. v. Stafford Township Sch. Dist.,
    386 F.3d 514 (3d Cir. 2004) .................................................................. 26, 27

i

Choe-Rively v. Vietnam Veterans of Am., Chapter 83, New Castle County, Del., Inc.,
    135 F. Supp. 2d 462, 477-78 (D. Del. 2001) ............................................................. 33, 34

Coles ex rel. Coles v. Cleveland Bd. of Educ.,
    171 F.3d 369 (6th Cir. 1999) .......................................................................................... 29

Cowell v. Palmer Township,
    263 F.3d 286 (3d Cir. 2001) ........................................................................................... 33

Doe v. Tangipahoa Parish Sch. Bd.,
    C.A. No. 03-2870, 2005 WL 517341 (E.D. La. Feb. 24, 2005),
    appeal docketed, No. 05-30294 (5th Cir. Mar. 22, 2005) .............................................. 29

Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.,
    336 F.3d 211 (3d Cir. 2001) ............................................................... 24, 25, 38

Edwards v. Aguillard,
    482 U.S. 578 (1987) ............................................................................................. 22, 24

Engel v. Vitale,
    370 U.S. 421 (1962) ...................................................................................................... 22

Fleischfresser v. Dirs. of Sch. Dist. 200,
    15 F.3d 680 (7th Cir. 1994) ........................................................................................... 37

Goodwin v. Cross County Sch. Dist. No. 7,
    394 F. Supp. 417 (E.D. Ark. 1973) ..................................................................... 18, 26, 32

Hansen v. Bennett,
    948 F.2d 397 (7th Cir. 1991) ........................................................................................ 19

Ill. ex rel. McCollum v. Bd. of Educ. of Sch. Dist. No. 71,
    333 U.S. 203 (1947) ................................................................................................. 22, 24

Jabr v. Rapides Parish Sch. Bd. ex rel. Metoyer,
    171 F. Supp. 2d 653 (W.D. La. 2001) ........................................................................... 26

Jodeco, Inc. v. Hann,
    674 F. Supp. 488 (D.N.J. 1987) .................................................................................... 12

Kennedy v. Hughes,
    596 F. Supp. 1487 (D. Del. 1984) ............................................................................ 13, 16

Lee v. Weisman,
    505 U.S. 577 (1992) ...................................................................................................... 22

ii

Marsh v. Chambers,
    463 U.S. 783 (1983) ........................................................................................... 28

Massey v. Banning Unified Sch. Dist.,
    256 F. Supp. 2d 1090 (C.D. Cal. 2003) ........................................................... 39

McHugh v. Bd. of Educ. of Milford Sch. Dist.,
    100 F. Supp. 2d 231 (D. Del. 2000) ................................................................. 16

Meding v. Hurd,
    607 F. Supp. 1088 (D. Del. 1985) .................................................................... 13

Montanez v. Thompson,
    C.A. No. 03-6713, 2004 WL 2668582 (E.D. Pa. Nov. 19, 2004) ..................... 35

N.A.I.F. Inc. v. Snyder,
    C.A. No. 03-506-JJF, 2005 WL 735554 (D.Del. Mar. 30, 2005) ..................... 32

Peck v. Upshur County Bd. of Educ.,
    155 F.3d 274 (4th Cir. 1998) ............................................................................ 26

Prof'l Staff Leasing Corp. v. Unicare Life & Health Ins. Co.,
    C.A. No. 02-11-JJF, 2003 WL 21359621 (D. Del. Mar. 31, 2003) ................. 11

Ryan v. Burlington County,
    889 F.2d 1286 (3d Cir. 1989) ........................................... 12, 13, 14, 16, 17, 18, 32

Sante Fe Indep. Sch. Dist. v. Doe,
    530  U.S. 290 (2000) ......................................................................................... 22

Sch. Dist. of Abington Township, Pa. v. Schempp,
    374 U.S. 203 (1963) ......................................................................................... 22

Sherman v. Cmty. Consol. Sch. Dist. 21,
    8 F.3d 1160 (7th Cir. 1993) .............................................................................. 28

United States v. Brewster,
    408 U.S. 501 (1972) ............................................................................... 12, 13, 19

West v. Philadelphia Elec. Co.,
    45 F.3d 744 (3d Cir. 1995) ..................................................................... 33, 34, 35

Wright v. O-Hara,
    C.A. No. 00-1557, 2002 WL 1870479 (E.D. Pa. Aug. 14, 2002) ..................... 35

Youngblood v. DeWeese,
    352 F.3d 836 (3d Cir. 2004) ........................................................................ 13, 14

AUTHORITIES

Federal Rules of Civil Procedure 12(b)(1) ...................................................... 3

Federal Rules of Civil Procedure 12(b)(6) ...................................................... 3

20 U.S.C. § 4071(c) ...................................................................................... 25

20 U.S.C. § 4072(2) ...................................................................................... 25

28 U.S.C. §1983 ........................................................................................... 32

14 Del. C. § 1043 ......................................................................................... 14

14 Del. C. § 1049 ......................................................................................... 14

14 Del. C. § 1055 ......................................................................................... 14

14 Del. C. § 1058 ......................................................................................... 14

14 Del. C. § 1059 ......................................................................................... 14

Plaintiffs Mona Dobrich, Marco Dobrich and Alexander Dobrich, (the "Dobriches") and Jane Doe, John Doe, Jordan Doe and Jamie Doe (the "Does" and, together with the Dobriches, "Plaintiffs"), by and through their attorneys, respectfully submit this memorandum of law in opposition to Defendants Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier and M. Elaine McCabe (the "School Board Members"), Lois M. Hobbs and Earl J. Savage (together with the School Board Members, the "Individual Defendants"), the Indian River School Board (the "School Board") and Indian River School District's (the "District," and, together with the Individual Defendants and the School Board, "Defendants") motion to dismiss (the "Motion").

## NATURE AND STAGE OF THE PROCEEDINGS

At the Sussex Central High School graduation ceremony on June 3, 2004, Pastor Jerry Fike -- who Defendant Helms has admitted was present at the invitation of School officials -- led the assembled students and spectators in prayer. He prayed to God to direct the soon-to-be graduates to "the truth that comes by knowing Jesus." After hearing the prayer, plaintiff Mona Dobrich – a Jewish woman who had been involved with the Indian River School District for more than 25 years, first as a student and then as a parent of two children, one of whom was graduating

near the top of her class that day – decided to ask that the District not use the name of Jesus at school events.

Mona appealed to the School Superintendent and the President of the School Board, and she bravely spoke against school-sponsored prayer at several School Board meetings. She was consistently rebuffed or ignored, and was the subject of verbal attacks at School Board meetings, at which Defendants actively encouraged a revival meeting atmosphere. When the District subsequently adopted formal policies regarding school prayer, Mona (through her attorneys) wrote letters to the School Board pointing out that the policies were constitutionally deficient and that the District was already failing to implement even the deficient policies. At the November 2004 School Board meeting, Mona publicly urged the School Board to respond to her letters. Finally, on February 28, 2005, Plaintiffs (the Dobrich family, together with the Does – who filed anonymously due to their fear of the same sort of retribution the Dobriches experienced), filed the Complaint seeking damages and injunctive relief for the pattern and practice of unconstitutional behavior of the School Board, the District and District employees.

On April 4, 2005, Defendant Reginald Helms answered the Complaint in his official capacity and filed a motion to dismiss the claims against him in his individual capacity. He did not move to strike any of the allegations in the Complaint. The parties have fully briefed Helms's motion to dismiss.

2

Counsel for the remaining Defendants sought several weeks of additional time to respond to the Complaint, to which Plaintiffs consented – largely because of representations that such counsel could be a constructive force in the litigation. On April 27, 2005, the remaining Defendants answered the Complaint in their official capacity, then moved to strike the Complaint (or select portions of it) on the grounds that it contains immaterial, impertinent and scandalous allegations. Finally, Defendants moved to dismiss the Complaint based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This is Plaintiffs' answering brief in opposition to Defendants' motion to dismiss.

## SUMMARY OF THE ARGUMENT

1.      Legislative immunity does not shield the School Board Members from individual liability for their administration and supervision of the District. State statutes charge the School Board Members with two responsibilities. They must establish rules and regulations for the District, and they must administer and supervise the District in accordance with state and federal law and their own rules and regulations. The School Board Members can claim legislative immunity for the acts they take while formulating, debating and enacting District policy. However, the School Board Members cannot claim legislative immunity for managing the District. Here, the Complaint alleges that the School Board Members have deliberately failed to manage District schools in accordance with well-settled constitutional principles and federal law, as well as their own policies. This failure is not legislative; it is managerial.

2.      Nor can the School Board Members claim legislative immunity for prayer at School Board meetings. School Board Members have chosen to lead the assembled students and teachers in prayer prior to and independent of the policymaking process. Prayer is not an integral part of the School Board's legislative process. The School Board's policymaking can, and should, go on without prayer. This Court should reject the School Board Members' legislative immunity argument.

4

3.     The Individual Defendants are not entitled to the defense of qualified immunity for claims against them that are prospective in nature or seek damages for past violations of clearly established law. The Complaint seeks prospective relief as well as damages for numerous violations of clearly established law, including prayer at high school graduation ceremonies, teacher-led Bible Clubs and religious instruction during school hours, school participation in Bible distribution, and prayer at School Board meetings.

4.     The Complaint alleges that the Individual Defendants have permitted ongoing constitutional violations in the District. This mismanagement has encouraged school-sponsored prayer and religious exercises. These unconstitutional acts and omissions have placed a substantial burden on Plaintiffs and violated their rights under the Free Exercise Clause. This Court should reject Defendants' argument that the Complaint fails to state a free exercise claim.

5.     The statute of limitations does not bar otherwise time-barred claims that are part of a continuing violation. The Complaint enumerates acts that establish an unconstitutional custom and practice that has persisted in the District before and after February 28, 2003. The frequency and nature of Defendants' unconstitutional practices demonstrate a continuing violation that is not subject to the statute of limitations.

6.    Each Plaintiff has standing to sue Defendants for past viola-
tions of the Constitution.  Marco Dobrich, a regular attendee of School Board
meetings and a resident of the District, has standing to seek injunctive and declaratory
relief for the School Board's practice of opening its meetings with prayer.  The Does
have standing to seek prospective relief on behalf of Jamie Doe for ongoing constitu-
tional violations, or for those violations that would affect Jordan Doe when Jordan
returns to the District for high school.  Defendants' standing argument fails.

## STATEMENT OF FACTS

School-sponsored prayer has been a long-standing tradition in the
District.  (Compl. ¶¶ 2, 22, 23, 43, 44, 82 and 139)  These prayers have consistently
been overtly sectarian, Christian prayers.  (Compl. ¶¶ 26, 29-52, 54, 58, 62, 64, 70,
74, 79, 82, 92, 124, 125, 127 and 132)  School officials and community religious
leaders have regularly delivered prayers at academic banquets, graduation ceremonies,
athletic events and numerous other events organized by District schools.  (Compl. ¶¶
2, 22, 23, 25, 26, 29, 30, 40-42, 43-46 and 82)  The District has continued to promote
school-sponsored prayer at high school graduation ceremonies despite a United States
Supreme Court holding that school officials cannot invite clergy to deliver prayers at
graduation ceremonies.  (Compl. ¶ 24)  District coaches have led their sports teams in
prayer before practices and games, (Compl. ¶¶ 40-42); indeed, a photograph of one
such instance was an exhibit to Defendants' motion to strike.  School Board Members

6

have led students and other members of the audience in prayer at School Board meetings. (Compl. ¶¶ 52, 54, 58, 62, 64, 74, 79, 92, 126 - 127, 130 and 132)  The School Board has conducted these prayers despite the mandatory presence and participation of students and District employees. (Compl. ¶¶ 53, 55-57, 59-61, 63, 65, 67, 69, 75)

School-sponsored prayer has pervaded the life of teachers and students in the District.  Religious instruction has become part of the District's curriculum. (Compl. ¶¶ 22 and 48)  School officials have led Bible Club activities in District schools and actively encouraged student attendance by awarding Bible Club members preferential treatment. (Compl. ¶¶ 31-33)  The schools failed to provide students reasonable alternatives to Bible Club. (Compl. ¶¶ 34-35)  One teacher in the District emphasized to a class of middle school students that there was only one true religion. (Compl. ¶ 50), and left no doubt what that religion was.  Another teacher explained to her students that she did not believe in the "big bang" theory of the creation of the universe.  She made references to her religious views of creation and told her class that they would have to come to Bible Club to find out more. (Compl. ¶ 51)  Students in at least one school could attend Bible Club in place of learning about evolution. (Compl. ¶ 49)  The school offered special Bible Clubs that week to insure that all who wanted to could attend.  (Id.)

7

The Individual Defendants and other school administrators have managed the District in a manner that permits and encourages school-sponsored prayer, and the atmosphere of religious intolerance and oppression that is its inevitable result. School officials invited Pastor Jerry Fike to give the invocation and the benediction at the 2004 Sussex Central High School graduation exercises. (Compl. ¶ 26) Given Pastor Fike's religious background and beliefs – matters that were well known to Defendants – it was hardly a surprise that, with Jewish students <u>known</u> to be among the graduates, Pastor Fike prayed to God to direct the graduates to "the truth that comes by knowing Jesus." (Compl. ¶ 30) School officials pressured parents to encourage their children to attend Bible Club. (Compl. ¶ 36) District schools participated in Bible distributions to their students. (Compl. ¶¶ 37-39) Opening and closing prayers punctuated District academic banquets. (Compl. ¶ 46) And the District wilfully failed to investigate allegations of constitutional misconduct by teachers and administrators. (Compl. ¶ 114)

When the threat of litigation forced District officials to adopt District-wide policies on prayer and religion (Compl. ¶ 118), the Board deliberately undercut those policies by refusing to make them readily available to parents and teachers, in the same manner as other District policies. (Compl. ¶¶ 119-122) And the School Board also continues to operate District schools in a manner inconsistent with those new policies. For example, after the District ratified its policies on religion, a District

8

official approached the Dagsboro Church of God about bringing its ministry into
District middle and high schools.  (Compl. ¶ 124)  The School Board continues to
lead students and other attendees in prayer before every School Board meeting.
(Compl. ¶ 52)

In sum, the School Board has managed the District in a manner that
fosters school-sponsored prayer.  The School Board's refusal to administer District
schools in accordance with constitutional guidelines, and the School Board's refusal to
implement or enforce its own policies, have fostered an environment of religious
exclusion and intolerance that has harmed and continues to harm the Dobrich and Doe
families.  (Compl. ¶¶ 4, 81, 139 and 148)

Mona Dobrich attempted to correct Defendants' constitutional viola-
tions the only way she knew how, by complaining to Defendant Hobbs and by
bringing her complaints to the School Board.  (Compl. ¶¶ 71-74, 77, 81, 95 and 96)
When her public comments received no response, she wrote letters through her
attorneys.  (Compl. ¶¶ 129, 131 and 135)  When those letters received no meaningful
response, she publicly urged the School Board to respond.  (Compl. ¶¶ 132 and 133)
Finally, Mona and her family joined with the Does and filed suit.  (Compl. ¶¶ 114-
117, 120-124, 128, 129, 131 and 133-136)

The Dobriches are Jewish.  (Compl. ¶ 70)  Mona and Marco Dobrich
were long-standing residents of the District and were actively involved in the commu-

nity and in the District schools, both as a student (in Mona's case) and as parents of students. (Compl. ¶¶ 7-8)  Marco Dobrich remains a resident in the District and he regularly attends School Board meetings. (Compl. ¶¶ 8, 10, 90, 130 and 132)  Mona and Alexander left the District to avoid Defendants' religious indoctrination and the virulent community backlash arising from the Dobriches' public challenge to Defendants' unconstitutional acts. (Compl. ¶¶ 101, 106, 107, 111-113, 144, 149 and 158)  The Dobriches seek damages for Defendants' past constitutional violations and declaratory and injunctive relief from current and future School Board prayer. (Compl. ¶¶ A., D. and G.)

The Does are residents of the District who brought their claims pseudonymously to avoid  retaliation by members of the community and District employees. (Compl. ¶ 12)  Jamie Doe currently attends a District elementary school and plans to attend District middle and high schools. (Compl. ¶ 14)  Jordan Doe attended a District middle school before transferring to a different school to avoid continuing exposure to Defendants' unconstitutional conduct and the atmosphere of religious intolerance such conduct fosters. (Compl. ¶¶ 13, 145, 150 and 159)  Jordan plans to return to the District for high school. (Compl. ¶ 13)  The Does seek damages for Defendants' past constitutional violations and injunctive and declaratory relief from current and future constitutional violations. (Compl. ¶¶ B.-G.)

10

## **ARGUMENT**

### I.    **THE COMPLAINT ALLEGES FACTS THAT ENTITLE PLAINTIFFS TO RELIEF.**

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and draw all reasonable inferences from those allegations in favor of the plaintiff. Carter v. Brady, C.A. No. 99-757-JJF, 2001 WL 34368378, at *2 (D. Del. Mar. 30, 2001). The Court should only grant a motion to dismiss under Rule 12(b)(6) "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' contained in the complaint." Id. (citation omitted). Here, the Complaint, and all reasonable inferences drawn therefrom, establish claims for which Plaintiffs are entitled to relief, and Defendants' Rule 12(b)(6) challenge fails.

Defendants also attack the Court's jurisdiction under Rule 12(b)(1). (Op. Br. at 1-2) Because Defendants "do not dispute the existence of the jurisdictional facts alleged in the complaint . . . the court must accept the facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Prof'l Staff Leasing Corp. v. Unicare Life & Health Ins. Co., C.A. No. 02-11-JJF, 2003 WL 21359621, at *2 (D. Del. Mar. 31, 2003). Here, the facts alleged in the Complaint, and all reasonable inferences drawn therefrom, establish Plaintiffs' standing and this Court's jurisdiction. Defendants' 12(b)(1) argument therefore also fails.

11

## II.    LEGISLATIVE IMMUNITY DOES NOT SHIELD THE SCHOOL BOARD MEMBERS FROM LIABILITY FOR THEIR NON-LEGISLATIVE ACTS.

The Third Circuit has "repeatedly stated that a public official's legislative immunity from suit attaches only to those acts undertaken in a legislative capacity." Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996). Thus, "the first inquiry with respect to the application of [legislative] immunity must be whether those claiming it were performing . . . legislative, rather than proprietary or managerial functions." Abraham v. Pekarski, 728 F.2d 167, 174 (3d Cir. 1984); see also Ryan v. Burlington County, 889 F.2d 1286, 1290 (3d Cir. 1989) (to determine whether the defendants enjoy legislative immunity "it is necessary to decide if the function performed . . . at the time of the alleged violation was legislative, managerial or proprietary"); Jodeco, Inc. v. Hann, 674 F. Supp. 488, 494 (D.N.J. 1987) ("[A] prerequisite for the granting of legislative immunity is the presence of legislative, rather than administrative, executive, or managerial conduct.").

A legislative act is one that is an "integral step" in the legislative process. Bogan v. Scott-Harris, 523 U.S. 44, 55 (1998). "Legislative acts are those which involve policy-making decision[s] of a general scope. . . ." Ryan, 889 F.2d at 1290-91. To fall within the scope of legislative immunity, an act must be "part of the legislative process itself." See United States v. Brewster, 408 U.S. 501, 528 (1972). Acts that are only "casually or incidentally related to legislative affairs" are not

12

protected. Id.[1] Indeed, legislative immunity "does not extend beyond what is necessary to preserve the integrity of the legislative process." Id. at 517.

Legislative immunity does not shield officials acting to enforce or administer policy. Carver, 102 F.3d at 100 (executive decision implementing policy not covered by legislative immunity); Kennedy v. Hughes, 596 F. Supp. 1487, 1491 (D. Del. 1984) (city board of commissioners not entitled to legislative immunity for administrative or executive acts); Meding v. Hurd, 607 F. Supp. 1088, 1110 n.28 (D. Del. 1985) (members of town council not entitled to legislative immunity when performing managerial functions). As explained below, the Complaint shows that the School Board Members have acted (and failed to act) in an administrative and managerial capacity, and they cannot claim legislative immunity for that conduct.

---

[1]    For several years, courts in the Third Circuit applied a two-part substantive/procedure test to analyze whether activity at the municipal level was legislative or administrative. Ryan, 889 F.2d at 1290; see also Youngblood v. DeWeese, 352 F.3d 836, 841 n.4 (3d Cir. 2004). To qualify for legislative immunity, the challenged act first had to be "substantively legislative," requiring a policymaking or line-drawing decision. Ryan, 889 F.2d at 1290-91 (3d Cir. 1989); Acierno v. Cloutier, 40 F.3d 597, 610-12 (3d Cir. 1994). Second, the act had to be "procedurally legislative" – accomplished through established legislative procedures. Ryan, 889 F.2d at 1291; see also Acierno, 40 F.3d at 610. In Youngblood, a Third Circuit panel expressed some doubt as to the continued viability of the substantive/procedure test in light of the Supreme Court's decision in Bogan. Youngblood, 352 F.3d at 841 n.4. In any event, both the two-pronged standard and Bogan require that the challenged act be "integral" to the legislative process. Administrative and managerial acts fall outside the scope of both standards.

13

A.    **School Board Members In Delaware Have Statutorily Established Administrative Responsibilities In Addition To Their Policymaking Responsibilities.**

"Local governmental bodies" frequently wield "a combination of proprietary, managerial and legislative powers." <u>Ryan</u>, 889 F.2d at 1290.  <u>See</u> <u>Acierno</u>, 40 F.3d at 610 (noting that the defendant county council had a combination of legislative and administrative powers); <u>Youngblood</u>, 352 F.3d at 841 n.4 (noting that municipal officials are "likely to perform a mixing of administrative and legislative functions. . . .").

Under Delaware law, a local school board has both legislative and administrative powers.  <u>See</u> 14 <u>Del. C.</u> §§ 1043, 1049, 1055, 1058 and 1059.  Specifically, statutes charge school boards with a legislative role – to "adopt rules and regulations for the general administration and supervision of the free public schools" – and an administrative role – "to administer and to supervise the free public schools. . . ."  14 <u>Del. C.</u> § 1043.

As a result, in addition to discharging its policymaking responsibilities, the School Board must administer its policy and supervise District schools.  <u>See</u> 10 <u>Del. C.</u> § 1043.  The School Board must manage the buildings and property of the District in accordance with state standards.  14 <u>Del. C.</u> § 1055.  The School Board must decide controversies involving District rules and regulations.  14 <u>Del. C.</u> § 1058.

14

The Complaint alleges that the School Board has failed in its administrative and managerial role as well as in its legislative role. For the administrative and managerial failures, the School Board Members cannot claim legislative immunity. To the extent there is a factual dispute as to where the School Board's administrative functions end and its legislative duties begin, the Court cannot resolve that issue on a motion to dismiss.

**B.    The Complaint Alleges Administrative Failures Beyond The Scope Of Legislative Immunity.**

The Complaint alleges that the School Board has failed to manage the District in accordance with well-settled constitutional rules. For years, District employees have asked a member of the local clergy to deliver prayers at the Sussex Central High School graduation ceremonies. (Compl. ¶ 23) School officials have delivered prayers at events and meetings organized by District schools. (Compl. ¶ 2) District coaches have led student athletes under their charge in prayer before practices and games. (Compl. ¶ 40) Together, the allegations raise an inference that School Board Members have managed the District in a manner that encourages school-sponsored prayer. These administrative and managerial failures do not merit legislative immunity. See Carver, 102 F.3d at 100 (holding that chairman of county board of commissioners could not claim legislative immunity for acts taken while implementing (as opposed to formulating) county policy); Acierno, 40 F.3d at 611 (explaining

15

that acts to implement or enforce existing laws are administrative, executive or ministerial and the officials performing them are not entitled to legislative immunity).

To be sure, the School Board's adoption of a policy on prayer and religion in school may have been a legislative step subject to legislative immunity. See McHugh v. Bd. of Educ. of Milford Sch. Dist., 100 F. Supp. 2d 231 (D. Del. 2000). But the Complaint does not simply challenge the legislative acts and omissions of the School Board. The Complaint also challenges acts and omissions that are administrative and/or managerial. For example, the Complaint alleges that (1) the School Board has refused to implement its new policies on religion (Compl. ¶¶ 123, 124, 126 and 127), (2) the School Board has failed to investigate complaints of teacher and administrator misconduct (Compl. ¶ 114), and (3) the School Board has refused to distribute copies of its policies, in an apparent effort to undercut their effectiveness. (Compl. ¶¶ 119-122)

Acts to enforce a policy, and acts to prevent or undermine the implementation of a policy are not legislative acts – they are administrative acts (or omissions) beyond the scope of legislative immunity. See Carver, 102 F.3d at 100; Ryan, 889 F.2d at 1291 (denying legislative immunity to defendants who had failed to manage the county jail in accordance with well-settled constitutional principles); Kennedy, 596 F. Supp. at 1491 (city board of commissioners' conduct, including

16

instructions to chief of police regarding enforcement, were executive or administrative acts not covered by legislative immunity).

A failure to act by a municipal body invested with both legislative and administrative powers is not necessarily legislative. See Ryan, 889 F.2d 1286. In Ryan, the plaintiff brought suit against the Burlington County Board of Chosen Freeholders for injuries allegedly sustained because the county board mismanaged the municipal jail. Id. at 1288-89. Specifically, the plaintiff alleged that the county board permitted the inmate population to exceed a legislative cap, and that the county board knew of the overcrowded conditions and lack of supervision but failed to correct those problems. Id. at 1293. The Court found legislative immunity inapplicable: "[a]lthough legislative immunity does protect a public official acting in a legislative capacity from liability for damages, when the legislative power is set aside to take on administrative duties . . . officials must be held accountable for instances where their actions violate clearly established rights." Id. at 1294.

Here, the Complaint alleges that the School Board has managed the District in a manner that promotes school-sponsored prayer. The School Board has permitted schools in the District to subject impressionable students to school-sponsored prayer. The School Board has deliberately refused to publicize, implement and enforce its own policies regarding prayer. The School Board Members cannot invoke legislative immunity to protect themselves from damages stemming from their acts to

17

promote school-sponsored prayer, nor can they claim immunity for their "deliberate choice" of "doing nothing" to prevent it.  Ryan, 889 F.2d at 1293; see also Carter, 2001 WL 34368378, at *5 (policymaker that "'authorizes constitutionally inadequate procedures'" is liable for unconstitutional prison policies) (citation omitted); cf. Goodwin v. Cross County Sch. Dist. No. 7, 394 F. Supp. 417, 423 (E.D. Ark. 1973) ("Furthermore, the policies of the School Board do not change the results.  There is an inference, which the Court accepts, that, not only do the superintendent of schools and the principal permit or condone the practices, but the School Board is fully aware of the fact that their duly authorized officials, in charge of the schools, permit the practices each morning.").

**C.    Prayer Before A School Board Meeting Is Not A Legislative Act.**

The Complaint pleads explicitly that "[t]he District has opened every School Board meeting with a prayer," and thus raises a reasonable inference that the School Board Members have participated and will participate in the School Board's past, current and continuing practice of opening each meeting with a prayer.  (Compl. ¶ 52)  The act of praying is not an integral part of the legislative process because it does not involve voting, debating or formulating regulations or legislation.  Legislative immunity does "not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself."  See

18

Brewster, 408 U.S. at 528. Nor does legislative immunity shield officials "from liability for a course of conduct taken prior to and independent of legislative action. . . ." Carver, 102 F.3d at 102.

The prayers School Board Members deliver before Board meetings are at most incidentally related to the legislative process. See Brewster, 408 U.S. at 528. School Board Members deliver the prayers "prior to and independent of" the legislative process they later conduct. Carver, 102 F.3d at 102. Actions at meetings of municipal bodies are not automatically legislative acts, even if other legislative activities take place during the rest of the meeting. See Hansen v. Bennett, 948 F.2d 397, 402-03 (7th Cir. 1991). In Hansen, the Seventh Circuit held that legislative immunity did not apply for actions taken during the public comments portion of a city council meeting. The panel found that the public comments portion of a city council meeting was not legislative because "citizens were not limited to discussing legislative issues, and the aldermen were not considering any legislation or investigating any legislation. They did not conduct legislative business until another portion of the meeting, after an officer had closed the open portion and announced that the meeting would proceed with the agenda." Hansen, 948 F.2d at 402 (footnote omitted).

Here, no legislative business can take place while a School Board Member leads a prayer at School Board meetings. Prayer does not relate to the consideration or investigation of legislation, nor does it involve formulating policy.

19

Prayer does not implicate the budgetary priorities or the services that the District

provides to its students. Accordingly, prayer is not an integral part of the School

Board's legislative process, and legislative immunity does not apply.

## III.   THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALI-FIED IMMUNITY.

### A.   Qualified Immunity Does Not Shield The Individual Defendants From Suit For Equitable Relief.

Qualified immunity does not protect an official from suit seeking

injunctive relief. Am. Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d

816, 818 (9th Cir. 1991), citing Wood v. Strickland, 420 U.S. 308, 314 n.6 (1975).

See Anderson v. Davila, 125 F.3d 148, 161 n.13 (3d Cir. 1997) (noting that qualified

immunity does not apply to claims for injunctive relief). Plaintiffs seek injunctive

and declaratory relief from the Individual Defendants in their personal capacity, and

qualified immunity therefore does not apply.

### B.   Qualified Immunity Does Not Protect The Individual Defendants From Liability For Violations Of Clearly Established Law.

Defendants are not entitled to qualified immunity for acts that violate

clearly established law. Brown v. Muhlenberg Township, 269 F.3d 205, 211 (3d Cir.

2001). A right is clearly established when the "'contours of the right [are] sufficiently

clear that a reasonable official would understand that what he is doing violates that

right.'" Id., quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). An official's

actions do not need to have been previously held unlawful in order to violate a clearly

20

established right so long that the unlawfulness is "apparent" in "'light of pre-existing law.'" Brown, 269 F.3d at 211, quoting Anderson, 483 U.S. at 640.

There is no need for binding precedent from either the United States Supreme Court or the Third Circuit for an official's conduct to be a violation of a clearly established right. Brown, 269 F.3d at 211 n.4. A right can be clearly established even if there is a circuit split as long as "'no gaping divide has emerged in the jurisprudence such that defendants could reasonably expect [the Third Circuit] to rule' to the contrary." Id., quoting Bieregu v. Reno, 59 F.3d 1445, 1458-59 (3d Cir. 1995). Where other circuits have considered whether an official's acts violate a clearly established right, there need only be "'some . . . factual correspondence between relevant precedents and the conduct at issue.'" Id., quoting Bieregu, 59 F.3d at 1459. Here, the allegations of the Complaint state numerous violations of clearly established law. Nor can Defendants claim ignorance that their conduct was clearly unconstitutional. As the Complaint makes clear, Plaintiffs repeatedly urged Defendants to cease their unconstitutional practices (well before this suit was filed), yet Defendants persisted. The Individual Defendants' qualified immunity argument must fail.

**C.    The Law Is Clearly Established That the Public School System Cannot Actively Encourage Or Support Prayer And Religious Proselytizing.**

The United States Supreme Court has consistently held that public school systems cannot actively encourage or support prayer or religious proselytizing.

21

See Ill. ex rel. McCollum v. Bd. of Educ. of Sch. Dist. No. 71, 333 U.S. 203 (1947) (public schools cannot grant access to private religious groups to use school facilities during the regular school day to provide religious education to students); Engel v. Vitale, 370 U.S. 421 (1962) (daily, mandatory public school classroom prayer is unconstitutional); Sch. Dist. of Abington Township, Pa. v. Schempp, 374 U.S. 203 (1963) (daily Bible readings broadcast school-wide or conducted in classrooms are unconstitutional); Edwards v. Aguillard, 482 U.S. 578 (1987) (Louisiana act that required teaching of Creationism in addition to theory of evolution was unconstitutional); Lee v. Weisman, 505 U.S. 577 (1992) (school-sponsored prayer at public high school graduation ceremonies is unconstitutional); Sante Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000) (school policies allowing student-led and student-initiated prayer at the start of football games are unconstitutional).

Even if these six decades of Supreme Court jurisprudence were not enough to clearly establish the unlawfulness of prayer and religious proselytizing in the public school setting, circuit and district courts have further elaborated on this separation between church and state.

**D.    The District's Long-Standing Endorsement of Prayer At Graduation Ceremonies Is A Violation Of Clearly Established Constitutional Law.**

For years, school officials have invited local clergy to deliver invocations and benedictions at high school graduations in the District. (Compl. ¶¶ 23-26)

22

For example, "[s]chool officials invited Pastor Jerry Fike . . . to give the invocation and benediction at the 2004 [Sussex Central] graduation exercises." (Compl. ¶ 26) Defendants permitted this conduct despite the Supreme Court's clear holding (more than a decade ago) that school officials cannot invite clergy to lead students in prayer at high school graduations. Lee, 505 U.S. 577.

The Individual Defendants argue that "Courts of Appeal have reached different results as to the circumstances under which a prayer by *a student* or *student-selected* speaker would be constitutionally permissible." (Op. Br. at 15) (emphasis added). But the Individual Defendants cannot recharacterize the conduct alleged in the Complaint for the purposes of their Motion. Carter, 2001 WL 34368378, at *2 The Individual Defendants' suggestion that graduation speakers (as opposed, apparently, to Pastor Fike and his ilk) were students or "student-selected" raises a factual dispute that warrants discovery, not dismissal.[2]

### E. Sectarian Religious Education And Bible Clubs Led By Teachers And School Employees Are Violations Of Clearly Established Constitutional Law.

At one school in the District, teachers and a school secretary led three different Bible Clubs. (Compl. ¶ 32) Teachers used Bible Club to supplement or

---

[2]    Even if students selected and invited clergy members to give these invocations and benedictions (Op. Br. at 15), the Third Circuit has already held that such student-elected prayer violates the First Amendment. See ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471 (3d Cir. 1996).

replace school curriculum. Students could go to extra sessions of Bible Club and complete a worksheet instead of learning about evolution. (Compl. ¶ 49) One teacher told her students to go to Bible Club to find out more about her religious views of creation. (Compl. ¶ 51) A school official insisted that a student could and should attend Bible Club. (Compl. ¶ 36) Bible Club attendees were given special privileges and rewards not made available to other students. For example, Bible Club students were permitted to cut to the head of the lunch line (Compl. ¶ 33), and teachers rewarded students who attended Bible Club by giving them donuts. (Id.)

Sectarian teaching cannot be a part of a public school's curriculum. McCollum, 333 U.S. 203; see also Aguillard, 482 U.S. 578. In McCollum, the Supreme Court held that a public school could not permit private religious groups to provide sectarian religious instruction to students during the school day. Id. at 226-28. Here, the Individual Defendants have allowed teachers and District employees to provide sectarian religious instruction to students during the school day, both in class and at Bible Club. The Individual Defendants' acts and omissions have "actively further[ed] [students'] inculcation in the religious tenets of some faiths. . . ." Id. at 228. The unlawfulness of teacher and employee-led Bible Clubs is and has been clearly established. See id.; Anderson, 483 U.S. at 640.

Defendants' reliance on Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211 (3d Cir. 2001), and the Equal Access Act, 20 U.S.C.

§§ 4071-4074, is misplaced. The student in <u>Donovan</u> sought equal access to school facilities for a <u>student-run</u> Bible Club where the school allowed other student-run, non-curriculum-related student groups to meet. The court observed that this Bible Club would not have violated the Establishment Clause because the Equal Access Act would have prohibited school-appointed "monitors from participating in [the] religious meetings, as well as school sponsorship of those meetings." <u>Donovan</u>, 336 F.3d 211, 227; <u>see also</u> 20 U.S.C. §§ 4071(c) and 4072(2). Here, the Complaint not only alleges that District officials led Bible Clubs, but that District officials actively encouraged students to attend. The Complaint demonstrates that teachers used the Bible Clubs to supplement subject matter taught in the classroom. The Individual Defendants cannot rely on <u>Donovan</u> and the Equal Access Act to shield them from liability for these violations of clearly established law.

### F.    School Participation In Bible Distributions Is A Violation Of Clearly Established Law.

In one elementary school, administrators helped distribute Bibles to students. (Compl. ¶¶ 37-39) "A school official would make an announcement during class, reminding students to pick up their Bibles." (Compl. ¶ 38) Teachers would interrupt their classroom instruction to dismiss students to retrieve their Bibles. (Compl. ¶ 39) After students retrieved their Bibles, they returned to class for further instruction. (Compl. ¶ 39)

25

Courts in the Fourth, Fifth, Seventh and Eighth Circuits have held that public school participation in the distribution of Bibles to public elementary school students is unconstitutional. Peck v. Upshur County Bd. of Educ., 155 F.3d 274, 287 n.* (4th Cir. 1998); see also Berger v. Rensselaer Cent. Sch. Corp., 982 F.2d 1160 (7th Cir. 1993); Jabr v. Rapides Parish Sch. Bd. ex rel. Metoyer, 171 F. Supp. 2d 653 (W.D. La. 2001); Goodwin v. Cross Sch. Dist. No. 7, 394 F. Supp. 417 (E.D. Ark. 1973). These rulings have held unconstitutional activities ranging from the simple display of Bibles on a table (which elementary students could visit at their leisure), Peck, 155 F.3d at 287 n.*, to the active participation of school officials in the distribution of Bibles. See Berger, 982 F.2d at 1165-66 (school policy permitting outside groups to distribute Bibles directly to elementary students during school hours was unconstitutional); see also Jabr, 171 F. Supp. 2d at 663 (school principal could not call students into his office and hand them Bibles in the presence of other students); Goodwin, 394 F. Supp. at 427 (school policy allowing outside groups to deliver Bibles to each fifth grade student was unconstitutional). The Complaint alleges that at least one elementary school was actively involved in the distribution of Bibles to its students. Those allegations establish a violation of clearly established constitutional law.

The Individual Defendants' reliance upon Child Evangelism Fellowship of N.J., Inc. v. Stafford Township Sch. Dist., 386 F.3d 514 (3d Cir. 2004), is

misplaced. In <u>Child Evangelism</u>, teacher involvement with a religious group's distribution of flyers advertising the group's after-school meetings was limited to handing out those flyers at the end of the day in addition to materials that had been provided by the PTA, Boy Scouts/Girl Scouts, Four-H Club, Lions Club and other groups. <u>Child Evangelism</u>, 386 F.3d at 520. The messages in the flyers were "'not incorporated into the instructional component of the school day.'" <u>Id.</u> (citation omitted). Nor would teachers discuss or express approval of the religious group's flyers. <u>Child Evangelism</u>, 386 F.3d at 525. In fact, the flyers included an express disclaimer that the religious group's meetings were "'not a school sponsored activity.'" <u>Id.</u> (citation omitted).

Here, District officials were actively involved in the distribution of Bibles to students. School officials demonstrated their approval of the Bible distribution by reminding students to pick up their copies. Bible distribution interrupted classroom instruction. School officials did not hand out a flyer; they distributed a religious text. The Third Circuit's decision in <u>Child Evangelism</u> did not address the factual circumstances of the District's Bible distribution, and there is no indication of a gaping divide between the Third Circuit's decision in <u>Child Evangelism</u> and those circuits that have already held that school participation in Bible distribution is unconstitutional. <u>Compare</u> <u>Berger v. Rensselaer Cent. Sch. Corp.</u>, 982 F.2d 1160 (7th Cir. 1993) (school participation in Bible distribution was unconstitutional), <u>with</u>

27

Sherman v. Cmty. Consol. Sch. Dist. 21, 8 F.3d 1160, 1165 (7th Cir. 1993) (no

establishment clause violation for distribution of flyers, where district's distribution

policy was an "even-handed treatment of religious and nonreligious youth

groups. . . .").

### G.    School Board Prayers Are Violations Of Clearly Established Constitutional Law.

The School Board regularly opens its meetings with prayer.  (Compl.

¶¶ 52, 54, 58, 62, 64, 74, 79, 92 and 127)  Student participation is a regular compo-

nent of School Board meetings.  (Compl. ¶¶ 53, 55, 56, 57, 59, 60, 61, 63, 69 and

126)  In some cases, student attendance at School Board meetings is mandatory.

(Compl. ¶ 53)  Teachers and District employees regularly appear at School Board

meetings to receive awards or to address District business.  (Compl. ¶¶ 60, 65, 69 and

75)  School Board meetings are an integral part of the District's public school system.

They provide a forum for students to communicate with the School Board about how

their schools are run.  They provide a forum for the establishment of curricula, the

approval of school trips and new construction, and the establishment of District

policy.  (Compl. ¶¶ 53, 67 and 69)

Courts in the Fifth, Sixth and Ninth circuits have rejected arguments

that opening prayers for school board meetings fall within the legislative prayer

exception that the Individual Defendants point to in Marsh v. Chambers, 463 U.S. 783

(1983), and no Circuit Court of Appeals has held to the contrary.  Together with the

28

Supreme Court's consistent prohibition of state-sponsored prayer in the public school system, these cases show that the School Board's practice of opening its meetings with prayer is a violation of clearly established constitutional law.

For example, in Coles ex rel. Coles v. Cleveland Bd. of Educ., 171 F.3d 369 (6th Cir. 1999), the Sixth Circuit held that school board meetings could not open with prayer because those meetings are an integral component of the public school system. Students actively participated at school board meetings, either to speak on matters related to their education or to attend disciplinary hearings. Coles, 171 F.3d at 382-83.

The Eastern District Court for the District of Louisiana has also held that school boards do not fall under the Marsh legislative prayer exception. Doe v. Tangipahoa Parish Sch. Bd., C.A. No. 03-2870, 2005 WL 517341 (E.D. La. Feb. 24, 2005), appeal docketed, No. 05-30294 (5th Cir. Mar. 22, 2005).[3] The district court there held that opening school board meetings with prayer "is an endorsement of religion which undermines the promise made by the Establishment Clause to public school students of all faiths, or no faith, that their schools will remain neutral with respect to the highly personal and private matter of religious belief." Tangipahoa, 2005 WL 517341, at *7.

_____

[3]    While Tangipahoa was decided after many of the School Board prayers described in the Complaint, this case is further evidence of why the School Board prayers are unconstitutional as a matter of settled law.

29

In <u>Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ.</u>, 52 Fed. Appx.
355 (9th Cir. 2002), the Ninth Circuit *assumed* that <u>Marsh</u> applied to school board
meetings and still held that a school board's proselytizing prayers were unconstitu-
tional. In <u>Bacus</u>, the school board routinely opened its meetings with prayers "'in the
Name of Jesus'" and continued to do so in spite of objections to explicit Christian
references. <u>Bacus</u>, 52 Fed. Appx. at 356. As the Complaint here shows, School
Board prayers have included many references to Christ, "Heavenly Father" or other
Christian references. (Compl. ¶¶ 54, 58, 62, 64, 74, 92 and 127) The School Board
has also indicated its intention to continue to offer these sectarian prayers, both
through Defendant Evans' comments (Compl. ¶ 74) and the promulgation of its policy
on "Board Prayer at Regular Meetings." (Compl. ¶¶ 118 and 125) As the Complaint
and <u>Bacus</u> demonstrate, the School Board would not be entitled to the protection of
<u>Marsh</u> even if <u>Marsh</u> applied generally to School Board meetings.

## IV.    THE COMPLAINT STATES A FREE EXERCISE CLAIM.

Defendants claim the Complaint lacks allegations that Defendants' conduct
placed a substantial burden on the observation of a central religious belief. (Op. Br. at
16) This claim is plainly wrong. The Complaint explicitly pleads that the District's
overtly Christian practices, which are pleaded in great detail (Compl. ¶¶ 26, 29-52,
54, 58, 62, 64, 74, 79, 82, 92, 124, 127 and 132), have fostered an environment of
religious exclusion. (Compl. ¶¶ 4, 81) The conduct of District employees has placed

30

a substantial burden on Plaintiffs by interfering with their right to be free from state interference in the religious education of their children. (Compl. ¶ 148) Indeed, the Complaint specifically alleges that the Does had to remove Jordan Doe from a District school to avoid exposure to the District's sectarian environment. (Compl. ¶¶ 13, 145, 150 and 159)

## V.    THE ACTS AND OMISSIONS ALLEGED IN THE COMPLAINT IMPLICATE EVERY DEFENDANT.

Defendants insist that the claims against the Individual Defendants should be dismissed because "the Complaint contains no specific, relevant allegations as to any of them." (Op. Br. at 17) Defendants' argument misses the point. The Individual Defendants who are not singled out in the Complaint are at least liable for their omissions. They have failed to manage the district in accordance with well-settled constitutional rules. The District has repeatedly invited local clergy to deliver prayers at high school graduation ceremonies. (Compl. ¶ 23) School officials have delivered prayers at events and meetings organized by District schools. (Compl. ¶¶ 2, 43-47) District coaches have led their student athletes in prayer before games and practices. (Compl. ¶¶ 40-42) Even after the District implemented its policies on religion in the District, a District official invited the Dagsboro Church of God to bring its ministry into District middle and high schools. (Compl. ¶ 124) These events, taken together with the District's failure to take steps to instruct District teachers about the new policies (Compl. ¶ 128), or to investigate parental complaints of

31

constitutional violations (Compl. ¶¶ 115-117), demonstrate the Individual Defendants' failure to manage the District in accordance with constitutional rules.

The Individual Defendants are liable for their "deliberate choice" of "doing nothing" to prevent ongoing constitutional violations. Ryan, 889 F.2d at 1293; see also Carter, 2001 WL 34368378, at *5 (policymaker that "'authorizes constitutionally inadequate procedures'" is liable for unconstitutional prison policies) (citation omitted); cf. Goodwin, 394 F. Supp. at 423 ("There is an inference, which the Court accepts, that, not only do the superintendent of schools and the principal permit or condone the [unconstitutional] practices, but the School Board is fully aware of the fact that their duly authorized officials, in charged of the schools, permit the [unconstitutional] practices each morning.")

## VI.   NONE OF PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED.

Defendants correctly point out that claims arising under 28 U.S.C. § 1983 are governed by Delaware's two-year statute of limitations on personal injury claims. N.A.I.F. Inc. v. Snyder, C.A. No. 03-506-JJF, 2005 WL 735554, at *2 (D. Del. Mar. 30, 2005). But Defendants mistakenly assert that since the present lawsuit was filed on February 23, 2005[4] "any and all claims in the present case based on actions occurring prior to February 23, 2003 [sic] are barred by the statute of limitations." (Op. Br. at 19)

---

[4]      Actually, the Complaint was filed on February 28, 2005.

32

Defendants overlook the unpleasant (to them) fact that the Complaint alleges continuing violations of the Constitution. These continuing violations are not barred by the two-year statute of limitations. See Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001) (explaining that the "continuing violations doctrine is an 'equitable exception to the timely filing requirement'") (citation omitted); see also West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995) (plaintiff who alleged pattern and practice of discrimination alleged sufficient facts to support the application of the continuing violations theory); Choe-Rively v. Vietnam Veterans of Am., Chapter 83, New Castle County, Del., Inc., 135 F. Supp. 2d 462, 477-78 (D. Del. 2001) (allegations of a pattern of discriminatory conduct supported application of the continuing violations theory); Chaudhuri v. Tenn., 767 F. Supp. 860, 866-67 (M.D. Tenn. 1991) ("Christian prayer services, were not isolated events, but rather [were] evidence of an on-going University policy, practice, or custom of unconstitutional discrimination" that warranted application of the continuing violation doctrine).

In determining whether the continuing violation doctrine applies, "the [C]ourt's task is twofold." Choe-Rively, 135 F. Supp. 2d at 477. First, the Court must determine whether the Complaint alleges constitutional violations within the two-year statute of limitations period. Id.; West, 45 F.3d at 754. Second, the Court must determine whether conduct that occurred prior to that time is "reasonably related" to the conduct that occurred within the limitations period. Choe-Rively, 135 F. Supp. 2d

33

at 477. The critical question is whether the occurrences within the limitations period were "isolated, intermittent acts" or part of a "persistent, on-going pattern" that continued for more than a two-year period. See West, 45 F.3d at 754.

### A.    The Complaint Alleges Constitutional Violations Within The Two-Year Limitations Period.

Plaintiffs filed suit on February 28, 2005, and the complaint alleges numerous constitutional violations within two years of that date. (Compl. ¶¶ 23, 25, 26, 29, 30, 37-39, 45-47, 52, 54, 58, 62, 64, 70, 74, 79, 92, 107 and 124-128) For example, the school-sponsored graduation prayer at the 2004 Sussex Central High School Graduation Ceremony and the prayers at School Board meetings during the 2003-2004 school year easily fall within the limitations period. As explained below, these occurrences were not isolated, intermittent acts but part of the District's long-standing custom and practice of school-sponsored prayer. Under the continuing violation doctrine, the District cannot escape liability simply because some of the acts that make up that custom and practice fall outside of the two-year limitations period.

### B.    The Complaint Alleges A Persistent Ongoing Pattern Of School-Sponsored Prayer.

When considering the second prong of the continuing violation test, the court must consider whether the conduct outside the limitations period "reasonably relates" to conduct that occurred within the limitations period. Choe-Rively, 135 F. Supp. 2d at 477. As mentioned above, the critical question is whether the occur-

34

rences that fall outside the limitations period are part of a "persistent, on-going

pattern" of unconstitutional behavior. See West, 45 F.3d at 754. The Court should at

least consider (1) whether the separate incidents represent the same type of unconsti-

tutional conduct; (2) whether the frequency of the incidents indicate a recurring

pattern or merely isolated occurrences; and (3) whether the separate incidents trig-

gered Plaintiffs' duty to assert rights arising from the unconstitutional conduct. See

West, 45 F.3d at 755 n.9; Montanez v. Thompson, C.A. No. 03-6713, 2004 WL

2668582, at *2 (E.D. Pa. Nov. 19, 2004); Wright v. O-Hara, C.A. No. 00-1557, 2002

WL 1870479, at *4 (E.D. Pa. Aug. 14, 2002).

        Here, the Complaint details conduct that falls outside of the two-year

statute of limitations. School-sponsored prayer at District academic banquets, for

example, occurred each of the four years Samantha Dobrich attended as a high school

student. (Compl. ¶ 47) That conduct forms part of a custom and practice of school-

sponsored prayer that continues to this day. Indeed, the central allegations of the

Complaint articulate precisely the sort of pattern and practice that supported the

finding of a continuing violation in West. See West, 45 F.3d at 756 (persistent

ongoing pattern of illegal harassment and discrimination prompted the application of

the continuing violation doctrine); see also Montanez, 2004 WL 2668582, at *2

(inmate's continuous and ignored requests concerning his erroneous release date were

evidence of single type of discrimination); Wright, 2002 WL 1870479, at *4 (plaintiff

35

alleged a continuing violation where defendant made death threats against plaintiff and encouraged others to assault the plaintiff for a length of time that exceeded the limitations period); Choe-Rively, 135 F. Supp. 2d at 478 (pre-statute of limitations racist and sexist comments were part of campaign directed against plaintiff).

The unconstitutional conduct alleged in the Complaint has occurred with enough frequency to generate an inference that the District's behavior represents a custom and practice of school-sponsored prayer. For instance, between the 2003 and 2004 Sussex Central High School graduations, Defendants engaged in graduation prayer, prayer at the start of academic banquets, prayer at the start of School Board meetings and prayer to commence the District's academic year. (Compl. ¶¶ 25, 26, 29, 30, 45, 52, 58, 62, 64, 74, 79, 92 and 127) The Complaint also alleges pervasive traditions, customs and practices that have encouraged prayer and other religious activities in District schools. (Compl. ¶¶ 2, 22, 23, 43, 82 and 139)

Plaintiffs repeatedly attempted to remedy these violations without resorting to litigation. Wright, 2002 WL 1870479, at *4 n.4. When Mona Dobrich heard Pastor Fike urge her daughter into the "the truth that comes by knowing Jesus," she sought to correct Defendants' constitutional violations the only way she knew how, by raising the issue with Defendant Hobbs and by bringing her concerns to the School Board – a public forum that Defendants initially tried to deny Mona by refusing to put the issue on the Board agenda. (Compl. ¶¶ 71-74, 77, 81, 95 and 96)

36

When her public comments received no response, she wrote letters through her attorneys. (Compl. ¶¶ 129, 131 and 135)  When those letters received no meaningful response, she publicly urged the School Board to respond.  (Compl. ¶¶ 132 and 133) Finally, left with no other option, Mona and her family joined with the Does and filed suit.  (Compl. ¶¶ 114-117, 120-124, 128, 129, 131 and 133-136)

## VII.    PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS FOR DAMAGES AND EQUITABLE RELIEF.

### A.    Mona And Marco Dobrich And Jane And John Doe Have Standing To Challenge Acts That Interfere With Their Right To Control The Religious Upbringing Of Their Children.

Parents have standing to challenge Establishment Clause violations that interfere with their rights "to direct the religious training of their children." Fleischfresser v. Dirs. of Sch. Dist. 200, 15 F.3d 680, 683 (7th Cir. 1994).  Parents also have standing to challenge Free Exercise violations that interfere with their rights "to control the religious upbringing and training of their minor children." Fleischfresser, 15 F.3d at 684.  Mona and Marco Dobrich and Jane and John Doe have standing to sue for violations that interfered with their parental rights.[5]

---

[5]    Defendants do not claim that Alexander Dobrich and Jordan and Jamie Doe lack standing to challenge those constitutional violations since those violations directly affected them.

**B.    The Dobriches Have Standing To Seek Damages For Past Consti-
tutional Violations And Equitable Relief For School Board Prayer.**

The Dobriches seek damages for Defendants' past constitutional

violations.  (Compl. ¶ A)  A claim for damages for past conduct confers standing to

sue.  Donovan, 336 F.3d at 218.

Marco Dobrich has regularly attended School Board meetings and he

currently resides in the District.  (Compl. ¶¶ 8, 10, 90, 112, 130 and 132)  As someone

who has a legitimate interest in attending School Board meetings, Marco Dobrich has

standing to seek injunctive and declaratory relief for the School Board's practice of

opening its meetings with prayer.  Bacus, 52 Fed. Appx. at 356.

**C.    The Does Have Standing To Seek Damages And Equitable Relief
For Past, Current And Future Constitutional Violations.**

Jane and John Doe sue on Jamie's behalf and therefore have standing

to challenge Defendants' current and future constitutional violations.  Donovan, 336

F.3d at 217 n.2 ("parents independently have standing to bring constitutional chal-

lenges to the conditions in their children's schools").

The Does have standing to seek damages for the unconstitutional

conduct of the District including the resulting cost of having to remove Jordan from a

District school.  (Compl. ¶¶ 145, 150 and 159); Donovan, 336 F.3d at 218.  The

Complaint also alleges that Jordan Doe will attend a District high school.  (Compl.

38

¶ 13)  As a result, the Does have standing to challenge any conduct that might affect Jordan upon the child's return to a District school.  See Massey v. Banning Unified Sch. Dist., 256 F. Supp. 2d 1090, 1097-98 (C.D. Cal. 2003) (motion to strike claim for injunctive relief for a student's lack of standing was premature prior to development of a factual record where the student expressed a desire to return to the school).

## **CONCLUSION**

The Complaint alleges that the Individual Defendants' administrative failures have violated Plaintiffs' constitutional rights. Legislative immunity does not shield the School Board Members from suit for administrative acts or managerial misconduct, nor does it shield them from liability for acts that are not integral to the legislative process. The School Board Members cannot claim legislative immunity for that conduct. Nor can the School Board Members claim legislative immunity for the act of reciting a prayer before a School Board meeting when that prayer is not an integral part of the legislative process. Qualified immunity does not shield the Individual Defendants from liability for their violations of clearly established law, nor does it protect the Individual Defendants from claims seeking injunctive or declaratory relief. The statute of limitations does not bar claims in the Complaint that arise from a pattern and practice of unconstitutional behavior that has persisted for more than two years. Finally, Plaintiffs have standing to seek damages for constitutional violations. Marco Dobrich has standing to seek prospective relief for the School Board's practice of opening its meetings with prayer, and Jane and John Doe have standing to seek prospective relief on behalf of themselves and their children.

On the basis of the foregoing arguments and authorities, the Court should deny

Defendants' Motion.

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Plaintiffs

DATED:  May 18, 2005