IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONA DOBRICH, et al.,                )
                                     )
            Plaintiffs,              )
                                     )
vs.                                  )        Civil Action No. 05-cv-00120-JJF
                                     )
HARVEY L. WALLS, et al.,             )        **E-FILED**
                                     )
            Defendants.              )
                                     )

## REPLY BRIEF OF DEFENDANTS WALLS, ISAACS, EVANS, COHEE, HASTINGS, BUNTING, BIRELEY, HATTIER, MCCABE, HOBBS AND SAVAGE, AND THE INDIAN RIVER SCHOOL BOARD AND INDIAN RIVER SCHOOL DISTRICT, IN SUPPORT OF THEIR MOTION TO DISMISS

John D. Balaguer (Bar I.D. 2537)
WHITE and WILLIAMS LLP
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, Delaware 19899-0709
(302) 467-4501

and

John F. Cafferky, Esq.
William B. Porter, Esq.
Andrea D. Gemignani, Esq.
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, VA 22030
*Counsel for Defendants Harvey L.
Walls, Mark A. Isaacs, John M. Evans,
Richard H. Cohee, Gregory A. Hastings,
Nina Lou Bunting, Charles M. Bireley,
Donald G. Hattier, M. Elaine McCabe,
Lois M. Hobbs, Earl J. Savage, the
Indian River School Board, and the
Indian River School District*

Dated: May 27, 2005

## Table of Contents

I.      Introduction and Summary of Argument .............. **Error! Bookmark not defined.**

II.     Argument...........................................................................................................1

    A.    Claims Against the School Board Members are Barred by Absolute Legislative
        Immunity.....................................................................................................1

        1.    Complaint Itself Alleges that School Board Members have Acted in
             Policymaking Role .................................................................................1

        2.    Plaintiffs Characterize the School Board Members' Action as Administrative"
             based upon Superseded Authority.........................................................2

        3.    School Board Members' Overall Stewardship of the School District is a
             Fundamentally Discretionary, Legislative Activity .............................3

    B.    The Complaint Includes No Specific Relevant Allegations Against the Individual
        Defendants..................................................................................................6

    C.    Members and Employees of the School Board are Entitled to Qualified Immunity,
        because the Actions Taken by *These* Individual Defendants do Not Violate
        Clearly Established Law..............................................................................9

        1.    General Statements in Cases Factually Different from the Present Case Do Not
             Constitute "Clearly Established" Law..................................................10

        2.    Clearly-Established Law as to Actions Not Taken by these Individual
             Defendants Does Not Defeat their Immunity......................................13

    D.    The Continuing Violation Doctrine Does Not Save Plaintiffs' Time-Barred
        Claims.......................................................................................................14

Conclusion...............................................................................................................18

## Table of Authorities

### Cases

ACLU v. Black Horse Regional Board of Education, 84 F.3d 1471 (3d Cir. 1996) ........ 12

Adler v. Duval County School Board, 250 F.3d 1330 (11th Cir.); cert. denied 534 U.S. 1065 (2001) ................................................................................................................ 12

Anderson v. Creighton, 483 U.S. 635 (1987)................................................................. 10

Bacus v. Palo Verde Unified School District, 52 Fed. Appx. 355 (9th Cir. 2002) ............ 11

Bogan v. Scott- Harris, 523 U.S. 44 (1998)......................................................... 2, 3, 4, 6

Brominski v. County of Luzerne, 289 F. Supp. 591 (M.D. Pa. 2003) ................................ 4

Carter v. Brady, 2001 U.S. Dist. LEXIS 25592 (D. Del. 2001)...................................... 7, 8

Carver v. Foerster, 102 F.3d 96 (3d Cir. 1996)............................................................ 3, 4

Chambers v. Marsh, 675 F.2d 228 (8th Cir. 1982) ......................................................... 4

Chaudhuri v. Tennessee, 767 F. Supp. 860 (M.D. Tenn. 1991) ........................................ 16

Child Evangelism Fellowship of New Jersey v. Stafford Township School District, 386 F.3d 514 (3d Cir. 2004).............................................................................................. 12

Choe-Riley v. Vietnam Veterans of America, 135 F. Supp. 2d 462 (D. Del. 2001)......... 16

Cowell v. Palmer Township, 263 F.2d 286 (3d Cir. 2001) ................................... 14, 15, 16

Davis v. Scherer, 468 U.S. 183 (1984)........................................................................... 10

Donovan v. Punxsutawney Area School Board, 336 F.3d 211 (3d Cir. 2003) ........... 12, 19

Edwards v. Aguillard, 482 U.S. 578 (1987).................................................................... 10

Egan v. Concini, 585 F. Supp. 801 (M.D. Pa. 1984) ........................................................ 7

Ellis v. Norris, 179 F.3d 1078 (8th Cir. 1999) ................................................................ 7

Engel v. Vitale, 370 U.S. 421 (1962) .............................................................................. 10

Guzman v. Cranston, 812 F.2d 24 (1st Cir. 1987) ........................................................... 7

Hamilton v. Jamieson, 355 F. Supp. 290 (E.D. Pa. 1973) ................................................. 7

Hansen v. Bennett, 948 F.2d 397 (7th Cir. 1991) ........................................................... 4

Harlow v. Fitzgerald, 457 U.S. 800 (1982)..................................................................9-10

Hernandez v. Commissioner, 490 U.S. 680 (1989) ......................................................... 13

Ill. Ex. Rel. McCollum v. Board of Education, 333 U.S. 203 (1947)............................... 10

Jones v. Clear Creek Independent School District, 977 F.2d 963 (5th Cir. 1992), cert. denied, 508 U.S. 967 (1993) ........................................................................................ 12

Larsen v. Senate of the Commonwealth of Pa., 152 F.3d 240 (3d Cir. 1998) ................... 4

Lee v. Wiseman, 505 U.S. 577 (1993)............................................................................. 12

Marsh v. Chambers, 463 U.S. 783 (1983)................................................................... 4, 11

Marvasi v. Shorty, 70 F.R.D. 14 (E.D. Pa. 1976) ............................................................ 7

McCarther v. Grady County, 437 F. Supp. 831 (W.D. Okla. 1977) ................................... 7

McHugh v. Board of Education of Milford School District, 100 F. Supp. 2d 231 (D. Del. 2000)......................................................................................................................... 6, 11

Monnell v. Department of Social Services, 436 U.S. 658 (1978)....................................... 2

Polk County v. Dodson, 454 U.S. 312 (1989)....................................................................7
Rappa v. Hollins, 991 F. Supp. 367 (D. Del. 1997) .........................................................10
School District of Abington Township v. Schempp, 374 U.S. 203 (1963)......................10
Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir. 1998)........................................11
Tenney v. Brandhove, 341 U.S. 367 (1951)........................................................................3
United States ex rel. Tyrell v. Speaker, 471 F.2d 1197 (3d Cir. 1973).............................7
United States v. Brewster, 408 U.S. 501 (1972) ............................................................4, 6
Valley Forge Christian College v. Americans United for Separation of Church and State,
    454 U.S. 464 (1982) ...................................................................................................18
West v. Philadelphia Electric Company, 45 F.3d 744 (3d Cir. 1995).............................16
Wood v. Strickland, 420 U.S. 308 (1975)........................................................................10
Youngblood v. Deweese, 352 F.3d 836 (3d Cir. 2003) ..................................2, 3, 4, 6, 7

## Statutes

34 CFR §104.7 ..................................................................................................................12
34 CFR §106.8 ..................................................................................................................12
14 Del. Code §1043 ............................................................................................................5
14 Del. Code §1046.............................................................................................................5

## Rules

Federal Rule of Civil Procedure 12(b)(1) ..........................................................................1
Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1

iii

Defendants Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe (collectively "School Board Members"), Lois M. Hobbs ("Superintendent") and Earl J. Savage ("Assistant Superintendent"), in their individual and official capacity (collectively "Individual Defendants"), and the Indian River School Board and Indian River School District, by counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6), file this Reply Brief in Support of their Motion to Dismiss the Complaint, and to reply to Plaintiffs' Answering Brief to that motion.

## I.    <u>Argument</u>

### A. <u>Claims Against the Individual School Board Members are Barred by Absolute Legislative Immunity</u>

Plaintiffs' attempts to defeat the absolute immunity to which the School Board Members are entitled by arguing that the Board Members' actions are "administrative" rather than legislative.  Plaintiffs' position is inconsistent with both the allegations in their Complaint, and with the controlling decisions of the United States Supreme Court and the Third Circuit.

### 1.    <u>Complaint Itself Alleges that School Board Members have Acted in Policymaking Role</u>

Plaintiffs do not appear to contest that local school board members have absolute legislative immunity in the discharge of their *policymaking* responsibilities.  Yet the position which they assert in their Brief, <u>i.e.</u> that the individual School Board Members have here acted in an "administrative" role, is fundamentally inconsistent with the allegations in their Complaint.  In that Complaint, they allege that those acts were

1

undertaken as part of the policymaking role of the School Board.  Specifically, the

Complaint alleges in all three counts – presumably for purposes of attempting to establish

Section 1983 liability of the School Board under <u>Monell v. Department of Social</u>

<u>Services</u>, 436 U.S. 658 (1978) – that Defendants, including "*individual defendants* acting

in their official and personal capacity *have established a policy* of promoting, endorsing

and establishing prayer and other religious activities at school events, ceremonies,

meetings and assemblies. . . ."  (Complaint ¶ 139[1]) (emphasis added).  While Plaintiffs do

indeed make many allegations in their Complaint, they do not qualify the foregoing

statement as applying to only some of them.  Given that Plaintiffs themselves allege that

the actions at issue were taken pursuant to formal or informal policies adopted by the

School Board Members, the individual members of that Board are entitled to legislative

immunity.

### 2.  <u>Plaintiffs Characterize the School Board Members' Actions as "Administrative" Based Upon Too Narrow a Test</u>

Furthermore, for their characterization of the School Board Members' actions as

"administrative" rather than "legislative," Plaintiffs rely heavily upon decisions

predating, and far narrower than the analysis in, the leading decisions from both the

United States Supreme Court, <u>Bogan v. Scott- Harris</u>, 523 U.S. 44, 49 (1998), and the

Third Circuit, <u>Youngblood v. Deweese</u>, 352 F.3d 836, 839-40 (3d Cir. 2003).  The

authorities upon which Plaintiffs rely for their contention that the School Board

Members' actions are not "legislative" predate <u>Bogan</u> and <u>Youngblood</u> by years, and in

---

[1] Incorporated by reference into all three counts of the Complaint.  (Complaint ¶¶ 147, 152).

many cases decades.  See Plaintiffs' Answering Brief, at 12-13.  As a result, those older

decisions relied upon an overly narrow test for determining whether an act was

"legislative" or "administrative."  E.g. Carver v. Foerster, 102 F.3d 96 (3d Cir. 1996).

That test is inconsistent with the analysis in Bogan, as Youngblood explained:

> Youngblood argues that we should instead apply the two-part analysis we
> used in *Carver v. Foerster, 102 F.3d 96 (3d Cir. 1996)*, to determine that a
> county commissioner did not enjoy legislative immunity for ordering the
> termination of all county employees who supported his political opponent.
> In *Carver*, we analyzed the commissioner's activities for whether they
> were both substantively and procedurally legislative.  *Id. at 100.*  We have
> since recognized, however, that the substance/procedure test was
> "developed for municipalities," where individual officials are more likely
> to perform a mixing of administrative and legislative functions, and thus
> have "declined to extend [the *Carver*] analysis . . . to other levels of
> government."  *Larsen v. Senate of the Commonwealth of Pa., 152 F.3d
> 240, 252 (3d Cir. 1998).*
>
> We similarly decline to apply the *Carver* analysis to this case,
> especially in light of language from the Supreme Court that, we believe,
> casts doubt on the propriety of using any separate test to examine
> municipal-level legislative immunity, *see Bogan, 523 U.S. at 49* (holding
> that local legislators are "likewise" absolutely immune from suit under
> *§1983*), particularly a two-part, substance/procedure test, *id. at 55*
> (refusing to require that an act must be "legislative in substance" as well
> as of "formally legislative character" in order to be a legislative act).

352 F.3d at 841 n.4.  Given that the Third Circuit has now declined to apply the overly

narrow Carver analysis to issues of legislative immunity for local government officials,

this Court should reject Plaintiffs' attempt to resurrect that analysis in this case.

### 3.    School Board Members' Overall Stewardship of the School District is a Fundamentally Discretionary, Legislative Activity

In regard to legislative immunity, the proper inquiry is whether the activities at

issue "are within the sphere of legitimate, legislative activity."  Youngblood, 352 F.3d at

841 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).  Whether or not Plaintiffs

3

agree with the decisions of the individual School Board Members here, it is clear that the School Board Members' overall stewardship of the school district involves myriad general and discretionary decisions which are entitled to legislative immunity.

Many of School Board Members' actions alleged in the Complaint involve expressly the adoption of policies. Specifically, Plaintiffs challenge the School Board's previous and current policies regarding prayer at graduation and at school board meetings.[2] Plaintiffs further allege certain of the School Board's policies are lacking, in that they do not include procedures to investigate complaints of alleged violations regarding prayer and religion. (Complaint ¶¶ 118, 119, 123, 129). Each of these alleged actions falls squarely within the scope of the Board Members' legislative responsibilities.

While voting formally for or against a particular policy is one example of a legislative act, it is by no means the only action protected from liability under Section 1983 by absolute immunity. "Legislative" activities include those that have, "reflected a discretionary, policymaking decision." Youngblood, 352 F.3d at 840 (quoting Bogan, 523 U.S. at 55-56); accord Brominski v. County of Luzerne, 289 F. Supp. 591, 594 (M.D. Pa. 2003). Thus, in Youngblood, for example, the Court found that the discretionary acts

---

[2] Plaintiffs' argument that invocations which the School Board members offer pursuant to the Board's School Board Prayer policy are not "legislative" is not well-taken. Plaintiff's notion that a legislative invocation is not related to the process of enacting legislation was a position articulated by the Eighth Circuit in Marsh (sub nom Chambers v. Marsh, 675 F.2d 228, 232 (8th Cir. 1982), and reversed by the U.S. Supreme Court in Marsh v. Chambers, 463 U.S. 783 (1983). The Court there stated, "The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country." 463 U.S. at 786. None of the authorities upon which Plaintiffs rely (Brewster, Carver, or Hansen v. Bennett, 948 F.2d 397 (7th Cir. 1991) hold that delivering a prayer at the beginning of a legislative session is a "ministerial' or "administrative" act.

4

of two state representatives in allocating funding for internal office staffing was entitled to legislative immunity, even though no action of the legislative body was involved. Similarly here, the other actions by the individual members of the Indian River School Board that Plaintiffs claim deprive them of their constitutionally protected rights are all legislative acts, inasmuch as they require the exercise of their discretion as local officials.

Plaintiffs nonetheless argue that the individual School Board Members can be sued for personal financial liability because the activities about which they complain constitute a violation of those Members' administrative duty to "supervise." Plaintiffs' Answering Brief, at 14. Yet the individual members of the school board do not personally run the day-to-day operations of the school district. They meet only once a month (Complaint ¶¶ 74, 79, 88, 125 n. 1), and receive no compensation for their service, 14 Del. Code § 1046. Rather, their duty is a general, discretionary one. In that regard, Delaware law provides that school boards are vested with authority by the state legislature "to administer and supervise the free public schools... [and] to determine policy and adopt rules and regulations for the general administration and supervision of the free public schools." 14 Del. Code § 1043. In the exercise of this authority the individual members are called upon to exercise discretion in deciding how the schools in the district should be run, including how, when, and whether to adopt specific policies, and how and when to take action to ensure the overall appropriate running of the schools. It is exactly these discretionary functions that are intended to be protected by absolute legislative immunity. This Court recognized that Delaware school board members exercise that discretionary policymaking responsibility in dismissing claims against a

board member on legislative immunity grounds in McHugh v. Board of Education of Milford School District, 100 F. Supp. 2d 231, 238 (D. Del. 2000).

The acts of legislators not protected by absolute immunity are those acts that are only, "casually or incidentally related to legislative affairs." Youngblood, 352 F.3d at 840. Yet the kind of activities which the Court refers to there are those, "including 'a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, new releases and speeches delivered outside the [legislative body]." Id., (quoting United States v. Brewster, 408 U.S. 501, 512 (1972)). Here, by contrast, Plaintiffs are claiming that the individual School Board Members are liable for making the discretionary decision not to adopt a different policy, formal or informal. Yet this is precisely the kind of discretionary decision-making which the courts in Bogan and Youngblood found to be legislative.

Accordingly, the claims against the individual School Board Members are barred by absolute immunity, and should be dismissed.

### B. The Complaint Includes No Specific Relevant Allegations Against the Individual Defendants

In their Opening Brief, Defendants point out that the claims against all the Individual Defendants should further be dismissed because the Complaint contains no specific, relevant allegations as to any of them. (Defendants' Opening Brief, at 18-20). Plaintiffs' one-page response to this point (Plaintiffs' Answering Brief, at 31-32) does not substantively address any of Defendants' arguments, other than to repeat the many general claims in the Complaint, and assert that all of the Individual Defendants are

6

responsible. Even at the motion to dismiss stage, this type of hand-waving is not sufficient to sustain broad, non-particularized Section 1983 claims against eleven different school officials.

It is well-established that individual supervisory government officials may not be held liable under Section 1983 for the acts of subordinates on a purely respondeat superior basis. See, e.g. Polk County v. Dodson, 454 U.S. 312, 325 (1989). Accordingly, as this Court stated in Carter v. Brady, 2001 U.S. Dist. LEXIS 25592, *14 (D. Del. 2001), "The Court agrees that Plaintiff must allege some personal involvement by each individual Defendant in order to maintain a claim against that Defendant, . . ."

Plaintiffs' Answering Brief does not respond to this point, or any of the many authorities cited in Defendants' Opening Brief for the proposition that supervisory liability under Section 1983 requires that a named defendant have personally subjected plaintiff to deprivation of a plaintiff's constitutional rights, or have caused the conduct complained of, or participated in some manner in the allegedly unlawful actions of his or her subordinates, including Guzman v. Cranston, 812 F.2d 24, 25-26 (1st Cir. 1987); McCarther v. Grady County, 437 F. Supp. 831 (W.D. Okla. 1977); Egan v. Concini, 585 F. Supp. 801, (M.D. Pa. 1984), and that where no specific factual allegations are made with respect to a named defendant, that defendant is properly dismissed. Ellis v. Norris, 179 F.3d 1078 (8th Cir. 1999); Marvasi v. Shorty, 70 F.R.D. 14, 22-23 (E.D. Pa. 1976); United States ex rel. Tyrell v. Speaker, 471 F.2d 1197, 1204 (3d Cir. 1973); Hamilton v. Jamieson, 355 F. Supp. 290, 294 (E.D. Pa. 1973).

7

Plaintiffs' position appears to be that school board members and senior administrators have an all-encompassing duty of supervision, and are personally and financially responsible for every action, or omission, which occurs anywhere within the school system. Courts have never adopted such a standard. For example, this Court in Carter was faced with a prisoner's Section 1983 claims brought against four specific defendants, and concerning miscalculation of his sentence. Conducting an individual analysis of the allegations against each defendant, this Court concluded that defendant Records Supervisor was alleged to be personally involved in the miscalculation, and that the defendants Warden and Commissioner may have had involvement in the issue. 2001 U.S. Dist. LEXIS 25592, at *15-16. By contrast, defendant Attorney General was simply one of many Delaware Department of Justice officials alleged to have been aware of, and to have acquiesced in, the supposedly defective incarceration procedures. Though she was alleged to be "ultimately responsible" for the actions taken against the prisoner plaintiff, this Court dismissed the claims against her, noting that "in the instant case, *Defendant Brady did not play a direct role* in Plaintiff's unlawful incarceration." Id. at *17. (emphasis added)

Similarly here, Mr. Savage is not alleged to have played a direct role in any assertedly unconstitutional activity. He is simply identified in caption and as a party defendant (Complaint ¶ 19), but nowhere else in the Complaint. The same is true for School Board Members Mark A. Isaacs, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, and M. Elaine McCabe. The few allegations of personal involvement on the part of the Superintendent do not amount to any

8

unconstitutional activity either.  She is alleged simply to have listened to Ms. Dobrich's

complaints (Complaint ¶ 71); put the issue of prayer at graduation on the School Board

agenda, and later announced that consideration of the matter would be deferred due to a

death in the family of the school board attorney (Complaint ¶¶ 73, 76); Told Ms. Dobrich

that she was ungrateful  (Complaint ¶ 104); and returned one call concerning

investigation of a complaint, but not another.  (Complaint ¶¶ 115, 116).  Likewise, as

distinguished from the School Board as a whole, the only specific actions attributed to

defendants Harvey Walls, John Evans and Donald Hattier are that they ran School Board

meetings, offered a prayer in accordance with their own freedom of conscience, or spoke

with Mona Dobrich in an attempt to resolve her concerns. (Complaint ¶¶ 74, 76, 77, 80,

83, 92, 94, 125, 127).  None of these individual defendants has had the kind of direct,

personal involvement in, and responsibility for, allegedly unconstitutional actions as

would properly subject them to liability under Section 1983.  Accordingly, all should be

dismissed.

**C. Members and Employees of the School Board are Entitled to Qualified Immunity, Because the Actions Taken by These Individual Defendants Do Not Violate Clearly Established Law**

In their Answering Brief, plaintiffs do not dispute that public school officials,

sued in their individual capacity, who perform discretionary functions are entitled to

qualified immunity for damage claims brought pursuant to 42 U.S. C. §1983 when their

conduct does not violate clearly established statutory or constitutional rights that a

reasonable person should have known, as of the time of the conduct.  See, Harlow v.

Fitzgerald, 457 U.S. 800, 817-18 (1982);  Wood v. Strickland, 420 U.S. 308, 321-322

(1975); Davis v. Scherer, 468 U.S. 183, 197 (1984).

　　　Nor is there dispute that the standard for determining whether or not the asserted

constitutional right was "clearly established" is based on whether the right is "sufficiently

clear that a reasonable official would understand that what he is doing violates that right."

Rappa v. Hollins, 991 F. Supp. 367, 370 (D. Del. 1997) (citing Anderson v. Creighton,

483 U.S. 635, 640 n.7 (1987)).  If reasonable people can disagree regarding the proper

interpretation of the existing law at the time of the conduct, then the Defendants are

entitled to immunity.  Rappa, 991 F. Supp at 370.

### 1.  General Statements in Cases Factually Different from the Present Case Do Not Constitute "Clearly Established" Law

　　　Moreover, "*clearly established*" law must be specific to the facts in the present

case, not simply a general statement of constitutional law.  Id. at 374 n.15 & 375-76

(emphasis added).  Yet many of the authorities upon which Plaintiffs rely are no more

than general statements of constitutional law which – while they occur generally in a

school context – do not apply to the facts alleged in this case.  Ill. Ex. Rel. McCollum v.

Board of Education, 333 U.S. 203 (1947), for example, involved a private group using

school facilities during the regular school day to provide religious education to students;

Engel v. Vitale, 370 U.S. 421 (1962) invalidated the daily mandatory recitation of a

public school classroom prayer;  School District of Abington Township v. Schempp, 374

U.S. 203 (1963) had to do with daily Bible readings broadcast or conducted school-wide;

Edwards v. Aguillard, 482 U.S. 578 (1987) struck down a Louisiana act that required the

teaching of Creationism.  None of these activities are alleged in the Complaint here.

In this case, even taking as true the factual allegations in the Complaint, the actions of the Individual Defendants were – at a minimum – reasonable as a matter of law.  With respect to prayer at School Board meetings, there is no Third Circuit or U.S. Supreme Court decision on point.  School Boards in Delaware are considered legislative bodies, McHugh v. Board of Education of Milford School District, 100 F. Supp. 2d 231, 238 (D. Del. 2000), and the most applicable decision with regard to prayer before legislative bodies is Marsh v. Chambers, 463 U.S. 783 (1983) which expressly holds it to be constitutional.  Moreover in Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir. 1998), the Tenth Circuit Court of Appeals held that invocational prayers at a city council meeting fell squarely under Marsh and that such "'legislative prayer' does not violate the Establishment Clause." Id. at 1233.  Even Bacus v. Palo Verde Unified School District, 52 Fed. Appx. 355 (9th Cir. 2002), though it does strike down a school board's opening prayer under the particular facts there, did assume that Marsh applied to school board meetings.  Given this legal landscape, the members of the School Board unquestionably acted reasonably regarding their brief invocation as Constitutionally permissible.

Insofar as the Complaint attacks what it alleges to be the School Board's current graduation prayer practice or policy, that policy or practice is one which a reasonable person could certainly have regarded as constitutional.  With respect to that issue, Plaintiffs' Answering Brief (at 22-23) mischaracterizes or misunderstands the Individual Defendants' point.  The legal discussion there is directed toward the School District's October 2004 adoption of its graduation speaker policy, which does indeed place responsibility for selection of a graduation speaker in the hands of the students.

11

As argued in Defendants' Opening Brief, the law in this area cannot be described as "clearly established."  For example, since the Supreme Court's decision in Lee v. Wiseman,  505 U.S. 577 (1993), and a divided Third Circuit en banc opinion in ACLU v. Black Horse Regional Board of Education, 84 F.3d 1471 (3d Cir. 1996), the Eleventh Circuit, in Adler v. Duval County School Board, 250 F.3d 1330, 1339 (11th Cir.), cert. denied, 534 U.S. 1065 (2001) has upheld a policy similar in many respects to that here. The Fifth Circuit also reached a different result in Jones v. Clear Creek Independent School District, 977 F.2d 963 (5th Cir. 1992), cert. denied 508 U.S. 967 (1993).  This disagreement has yet to be resolved by the United States Supreme Court.  Certainly, the law is not "clearly established."

Likewise the Individual Defendants' citation to Donovan v. Punxsutawney Area School Board, 336 F.3d 211 (3d Cir. 2003) and Child Evangelism Fellowship of New Jersey v. Stafford Township School District, 386 F.3d 514 (3d Cir. 2004) has to do, at a minimum, with distribution of material, and access to school facilities, consistent with the School District's October 2004 policies.

As pointed out in the Individual Defendants' Opening Brief (at 6), and not contested in Plaintiffs' Answering Brief, some purportedly unconstitutional omissions in the School Board's policies are things which are not legally required at all.  Thus, for example, Plaintiffs complain that the policies contain no separate complaint investigation procedure.  (Compl. ¶ 123).  Such a procedure is expressly required in some other contexts,  such as for complaints of sex discrimination in violation of Title IX, 34 C.F.R. §106.8, or disability discrimination in violation of Section 504, 34 C.F.R. §104.7.  Had

12

Congress or a regulatory agency wanted to mandate such a procedure for religion-based complaints, they certainly could have done so.

Finally, the one paragraph of their Answering Brief which Plaintiffs devote to their afterthought Free Exercise claim does not make reference to any law at all – clearly established or otherwise. Establishing such a claim would require a showing that those defendants have "placed a substantial burden on the observation of a central religious belief or practice." Hernandez v. Commissioner, 490 U.S. 680, 699 (1989). Here, at most, what is alleged is that Plaintiffs disapproved of the "environment." (Plaintiffs' Answering Brief, at 30-31). To the extent the Complaint alleges that any plaintiff has been significantly burdened, those averments concern the alleged conduct of third parties over whom the Individual Defendants clearly have no control. Certainly Plaintiffs have not carried their burden of establishing that the conduct of the Individual Defendants in regard to that was a violation of clearly-established law.

### 2.   Clearly-Established Law as to Actions Not Taken by these Individual Defendants Does Not Defeat their Immunity

As to other areas where the law is alleged to be clearly established, the Complaint contains no allegations that *these individual defendants* are responsible. Thus, for example, the 2004 graduation speaker is alleged to have been invited by unidentified "school officials," not by the Superintendent, Assistant Superintendent, or any of the School Board Members who comprise the defendants in the case. (Complaint, ¶¶ 23-26). The distribution of Bibles alleged to have occurred in one school was likewise the result of other unidentified "school officials" (Complaint, ¶¶ 37-39), rather than any of the Individual Defendants. The pre-game prayers at football games and cross-country meets

are alleged to have been delivered by the coaches, not by any of the individual

defendants. And the Bible Clubs alleged to have been conducted for one year at one

school are alleged to have been led by two teachers and a secretary, not by any of the

Individual Defendants). Surely, in Plaintiffs' 38-page, 160-paragraph Complaint, if they

had a factual basis to allege that these activities had been undertaken by any of the

Individual Defendants – as opposed to any of the other 1000 school district employees or

officials (Complaint ¶ 15) -- they would have done so. This Court should not, by

inference or otherwise, make that leap for them. Accordingly, all of the Individual

Defendants are entitled to qualified immunity and should be dismissed.

### D. Continuing Violation Doctrine does Not Save Plaintiffs' Time-Barred Claims

Plaintiffs' attempt to revive many of their time-barred claims by arguing that they

have alleged a continuing violation is not supported by law or facts in this case. As an

initial matter, Plaintiffs cite no decisions from the Third Circuit which establish that the

continuing violation doctrine should be applied to Section 1983 claims based on an

alleged First Amendment violation. Indeed, in Cowell v. Palmer Township, 263 F.2d

286, 292-293 n5 (3d Cir. 2001), relied on by Plaintiffs, the Third Circuit recognizes that

the continuing violation doctrine is most often applied in the employment discrimination

context and they expressly decline to find a per se rule that the continuing violation

doctrine applies to all Section 1983 claims based on substantive due process claims.

In Cowell, the Court found no continuing violation because plaintiffs fail to allege

continual affirmative acts by defendants in violation of plaintiffs' rights. Id. at 293-94.

The Court also identified three factors that should be considered when determining

14

whether or not defendant's conduct was more than isolated acts. Id. at 292. The court should consider the subject matter, frequency and the degree of permanence. Id. Ultimately the Court in Cowell rejected plaintiffs' continuing violation allegations because it finds that the alleged actions are "isolated, intermittent acts" since the subject matter of the untimely claims is not sufficiently related to the timely claims, but is linked only in terms of general allegations regarding property rights. Id. at 294.

These same observations apply to the present case. For example, acts that occurred in the 1980s when Mona Dobrich attended the IRSD are far removed from the timely claims in this case. Similarly, plaintiffs' allegations regarding religion, in general, does not satisfy the subject matter test as articulated by the Third Circuit for establishing a continuing violation.

Plaintiffs fail to allege 1) affirmative acts, 2) by the Defendants, 3) that infringed on Plaintiffs' rights both within and outside the limitations period to establish a continuing violation. In attempting to rescue their untimely claims, Plaintiffs' Answering Brief relies on the 2004 Sussex graduation ceremony and prayers at School Board meetings during the 2003-2004 school year to satisfy the first prong of the continuing violation test of alleging acts within the two-year statute of limitations. (See, Plaintiffs' Answering Brief at 34). The Plaintiffs then claim that the many undated allegations in their Complaint regarding prayer in other venues given by third parties are reasonably related to these isolated events to rescue their untimely claims. (Id. at 35-36). Plaintiffs admit that many of their allegations are based on alleged omissions by the Defendants, not affirmative acts. (Id. at 15). Similarly, many of the allegations do not constitute any

15

actions by the Defendants, but were instead allegedly done by someone else.  (See, e.g., Complaint ¶¶26, 32).  Finally, many of the allegations do not directly involve the Plaintiffs at all.  In fact, there is no allegation that the Does even participated in the events that occurred within the statute of limitations period such as attending the 2004 graduation ceremony or attending more than one School Board meeting at some unspecified time, not necessarily during the 2003-2004 school year.  (Complaint ¶¶ 27, 54).

Plaintiffs' argument regarding a continuing violation also fails because there is no allegation that each of the Plaintiffs themselves were actually present for many of the alleged violations that occurred at unspecified times in the past.  Unlike the facts in the present case, in the cases cited by the Plaintiffs in their Answering Brief regarding continuing violations the plaintiffs were directly involved in the activities both inside and outside the limitations period.  See, e.g., Cowell, 263 F.3d at 293-294 (untimely allegations included municipal liens against plaintiff's property, breach of negotiated resolution with plaintiffs, building permit restrictions and installation requirements that decreased the value of plaintiff's property, and improper billing by defendant to plaintiff for services); see also West v. Philadelphia Electric Company, 45 F.3d 744 (3d Cir. 1995) (allegations regarding hostility of Plaintiff's work environment outside 300 day complaint period allowed); Choe-Riley v. Vietnam Veterans of America, 135 F. Supp. 2d 462, 478 (D. Del. 2001) (untimely allegations included racist and sexist comments directed to plaintiff); Chaudhuri v. Tennessee, 767 F. Supp. 860, 867 (M.D. Tenn. 1991) (incidents prior to statute of limitations period in which plaintiff was forced to attend

16

Christian prayer could be consider by court in awarding injunctive, not monetary, relief). That is not true in the present case.

For example, Plaintiffs allege: 1) delivery of invocation and benediction at graduation "for many years" when none of the plaintiffs were in attendance (Complaint ¶23); 2) Bible clubs at some unspecified time in the past at Selby Middle School without any allegation that any plaintiffs attended school there at the time (Complaint at ¶¶32-36); distribution of bibles at an elementary school during the 2003 school year again without allegations that any of the plaintiffs were present for this alleged action (Complaint ¶¶37-38); alleged prayers before football practices and games at some unspecified time without any allegations that any of the plaintiffs played football or even attended games (Complaint ¶¶40-41); alleged prayers at the cross-country team's pasta dinner at some unspecified time without any allegation that the plaintiffs ran cross country or attended the dinner; beginning of year events, some of which "have begun" with prayers (Complaint ¶¶43-45); actions by particular teachers in their classrooms at named and unnamed schools in the district at some unspecified time without any allegation that plaintiffs were in attendance (Complaint at ¶48-51), as well as other events that occurred at unspecified times both with and without plaintiffs' presence.   In addition to occurring over an unspecified period of time in the past, there is no allegation that any of the Plaintiffs were involved in these alleged events, and therefore they cannot represent continuing violations of *their* constitutional rights.

Plaintiffs' failure to allege actions both inside and outside the limitations period that actually involved the plaintiffs also overlooks the requirements of Article III of the

17

U.S. Constitution that a live controversy exists between the actual parties in a particular

case. Plaintiffs cannot base their claims on the general rights of all citizens or otherwise

generalized grievances that impact the rights of others. See, Valley Forge Christian

College v. Americans United for Separation of Church and State, 454 U.S. 464, 474-75 &

482-83 (1982). As the examples above illustrate, Plaintiffs' allegations regarding prayer

during events at unspecified times in the past without any allegations that any of the

plaintiffs were in attendance at these events fails to satisfy even this requirement.

### E. Plaintiffs Lack Standing for Some Claims

There are seven different Plaintiffs in this case and a 38 page complaint with 160

numbered allegations and three separate legal counts. As Plaintiff's Answering Brief

illustrates each of the Plaintiffs does not have standing to bring each of the claims.

Defendants, through their Motion to Dismiss, are to clarify exactly which issues the court

has jurisdiction to consider in the present lawsuit and which of the numerous allegations

in the Complaint are relevant to those limited claims. Based on a review of the Plaintiffs

and the allegation in this case, and as admitted by Plaintiffs in their Answering Brief,

certain Plaintiffs do lack standing to assert claims in this case.

First, Plaintiffs do not challenge the fact that Mona Dobrich and Alexander

Dobrich are not residents of the Indian River School District and, therefore, do not have

standing to seek any prospective relief in this case. (See, Plaintiffs' Answering Brief at

38). Therefore, in accordance with Plaintiffs' own representations the claims of Mona

and Alexander Dobrich should be dismissed to the extent they seek injunctive or

declaratory relief regarding school board practice or policies. Similarly any claims for

18

prospective funding for maintaining a residence in Wilmington or paying for Alexander's private school placement should be dismissed.

Second, Plaintiffs suggest that Marco Dobrich's standing in this case is limited to challenging the school board's policy regarding prayer at school board meetings. (See, Plaintiffs' Answering Brief at 38). Contrary to Plaintiffs' argument that the 7th Circuit has recognized some broader standing on behalf of parents to challenge Free Exercise violations that interfere with their rights to control their children's upbringing, the 3rd Circuit has found that parents' rights to bring constitutional challenges against their children's schools are derivative in nature and require the parents to have a child attending the school. See, e.g., Donovan v. Punxsutawney, 336 F.3d 211, 217 n2 (3d Cir. 2003). Since Mona and Marco Dobrich admittedly do not have a child attending an Indian River School, they lack standing to assist such violations in this case.

Finally, the Complaint does not allege that any of the Does were present for or participated in many of the allegedly unconstitutional events presented in this case. Since the Does claims must be based on their own legal rights in accordance with Article III, they cannot assert claims of Establishment Clause or Free Exercise Clause violations based on events that did not direct impact their rights. For example, there is no allegation that any of the Does have ever attended a graduation ceremony in the IRSD. (Complaint ¶¶ 23-30). Similarly, there are no allegations that the alleged Bible Clubs, Bible distribution or discussion of religion in a classroom were conducted at Jamie or Jordan Doe's schools or that they were required to attend or receive a Bible. (Id. ¶¶ 31-39, 48-

19

51). There is also no allegation that any of the Does played football, ran cross-country, or attended a potluck dinner, ice cream social or academic banquet. (Id. ¶¶ 40-48).

## Conclusion

For the foregoing reasons, and those contained in their Opening Brief, Defendants Harvey L Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe, Lois M. Hobbs and Earl J. Savage, in their individual and official capacity, as well as the Indian River School Board and the Indian River School District pray that the Complaint be dismissed in its entirety as to them.

WHITE and WILLIAMS LLP

By: _____

John D. Balaguer (Bar I.D. 2537)
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, Delaware 19899-0709
(302) 467-4501

and

John F. Cafferky, Esq.
William A. Porter, Esq.
Andrea D. Gemignani, Esq.
BLANKINGSHIP & KEITH
4020 University Drive, Suite 300
Fairfax, VA 22030
*Counsel for Defendants Walls,*
*Isaacs, Evans, Cohee, Hastings,*
*Bunting, Bireley, Hattier, McCabe,*
*Hobbs, Savage, the Indian River*
*School Board, and the Indian River*
*School District*

Dated: May 27, 2005

20

## Certificate of Service

I certify that on the 27th day of May 2005, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

> Thomas J. Allingham II, Esq.
> Robert S. Saunders, Esq.
> One Rodney Square, P.O. Box 636
> Wilmington, Delaware, 19899
> *Counsel for Plaintiffs*
>
> Thomas S. Neuberger, Esq.
> Stephen J. Neuberger, Esq.
> The Neuberger Firm, P.A.
> Two East Seventh Street, Suite 302
> Wilmington, DE 19801
> *Counsel for Defendant Reginald L. Helms*

John D. Balaguer, Esq.

22