ONE RODNEY SQUARE
BOX 636
WILMINGTON, DELAWARE 19899-0636

(302) 651-3000

June 8, 2005

**BY HAND AND E-FILE**

The Honorable Joseph J. Farnan, Jr.
844 North King Street
Lock Box 27
Wilmington, Delaware 19801

Re:    Dobrich, et al., v. Walls, et al., D. Del. No. 05 - 120

Dear Judge Farnan:

     Enclosed for the Court's review is a proposed Rule 16 scheduling order. The parties have reached agreement on all the provisions of the order except for the limit on depositions contemplated by paragraph 4(d). The parties have further agreed to carve out from this limit the depositions of named parties and experts, so the remaining dispute regards the number of non-expert, non-party depositions to be permitted. Plaintiffs propose that they be permitted sixty depositions, thirty of which would last no longer than three hours. As discussed more fully below, we submit that the breadth and nature of the factual disputes in this case – involving dozens of events over a period of years, each with their own discrete sets of witnesses – amply justify this proposal.

**Defendants Cannot Establish The Necessary Basis**
**Under Rule 26(b)(2) To Restrict Deposition Discovery.**

     Local Rule 26.1(b) provides that "[u]nless otherwise ordered by the Court, there shall be no limitation upon the permissible number of ... depositions ...." According to the Third Circuit, "[o]nly if one of the factors in Federal Rule[] of Civil Procedure 26(b)(2) is present should the Court limit the number of depositions." Pacitti v. Macy's, 193 F.3d 766, 778 (3d Cir. 1999) (holding that the trial court erred by limiting deposition discovery).

     Here, none of the factors enumerated in Rule 26(b)(2) apply. Specifically, as discussed below, the deposition discovery Plaintiffs anticipate will not be unreasonably cumulative or duplicative, nor is it available from a more convenient, less burdensome or less expensive source. Plaintiffs have had no opportunity to conduct formal discovery to obtain information. Nor does the burden or expense of the

The Honorable Joseph J. Farnan, Jr.
June 8, 2005
Page 2

proposed discovery outweigh its likely benefit given the important constitutional issues at stake and the importance of the depositions in resolving the disputed facts. See Fed. R. Civ. P. 26(b)(2).

**The Complaint Alleges - And Defendants Deny --
A Longstanding Custom And Practice Involving Dozens
Of Discrete Incidents, Each With Their Own Participants And Witnesses.**

The custom and practice of school-sponsored prayer that Plaintiffs challenge in the Complaint was and remains widespread. School officials and community religious leaders delivered prayers at events and meetings organized by the District. (Compl. ¶ 22) Prayers began and ended athletic banquets, academic banquets, school potlucks, school baccalaureate services, graduation exercises and school board meetings. (Id.) District coaches led their sports teams in prayer before practices and games. (Compl. ¶¶ 40-42) School officials led Bible Club activities in District schools and actively encouraged student attendance by awarding Bible Club members preferential treatment. (Compl. ¶¶ 31-33) School officials pressured parents to encourage their children to attend Bible Club. (Compl. ¶ 36) District schools participated in Bible distributions to their students. (Compl. ¶¶ 37-39)

In response, Defendants have contested virtually every allegation in the Complaint. For example, Defendant Helms denied or denied knowledge of every single allegation regarding Bible Clubs, school Bible distributions, and prayer at athletic events. (Helms's Answer ¶¶ 31-42) The remaining Defendants refused to respond to some of the same critical allegations because "they lack[ed] any reference to time or other specifics" or because of "their vague and general nature." (Non-Helms Defendants' Answer ¶¶ 33-35) Elsewhere in their answer, the remaining Defendants directly disputed the allegations in the Complaint. (See, e.g., Non-Helms Defendants' Answer ¶¶ 23, 26)

In short, this is not a case where the conduct in question is undisputed and the only question for the Court is its constitutionality. On the contrary, because Defendants dispute the alleged conduct, this case will be decided on its facts. Those facts require discovery, and that discovery will require that a large number of administrators, teachers, counselors, parents, students and others, be deposed.

As alleged in the Complaint, the District's unconstitutional practices occurred in distinct settings, involved different school officials, different teachers and coaches, and different students in a number of different schools. Depositions of the individuals involved will not be duplicative or unreasonably cumulative because each of the

The Honorable Joseph J. Farnan, Jr.
June 8, 2005
Page 3

alleged practices made its own separate contribution to the District-wide environment of religious exclusion.

To give just one example, the Complaint specifically alleges that three different employees at Selbyville Middle School led three different Bible Clubs – one each for the sixth, seventh and eighth grades. (Compl. ¶ 32) Each Bible Club involved different students, and each Bible Club had its own impact on the environment at Selbyville Middle School. Plaintiffs should be able to test through discovery Defendants' denials about what happened at the Bible Clubs. Plaintiffs should be able to question the school official who announced at lunch that Bible Club would meet and the witnesses who observed the preferential treatment Bible Club members received. (Compl. ¶ 33) Plaintiffs should be able to question at least some parents about the effect of the Bible Clubs on their children and how District officials treated their complaints. Plaintiffs should be able to question District employees who received complaints about whether those complaints were handled appropriately. (Compl. ¶ 36)

And Bible Club is only one of the many practices Defendants deny and that Plaintiffs must therefore pursue through discovery. The list of potential deponents is equally long (if not longer) for the other school-sponsored religious practices set out in the Complaint. For instance, Plaintiffs should be able to depose at least several of the literally hundreds of people (parents, students and community members) who attended the school board meetings in July and August of 2004.

Many of Defendants' factual contentions only intensify the need for these depositions. For instance, Plaintiffs assert that school officials invited clergy to deliver an invocation and benediction at the 2004 Sussex Central High School graduation ceremonies. (Compl. ¶¶ 23, 26) The non-Helms Defendants dispute this claim, instead asserting that students – not District officials – invited clergy members. (non-Helms Defendants' Answer ¶¶ 23, 26) Resolution of this factual dispute will require, not only the testimony of the school officials who may have been responsible for inviting speakers to graduation ceremonies, but also the students whom the non-Helms Defendants claim invited clergy members to give an invocation and a benediction.

Moreover, evidence in the case will not be limited to a small number of people with global knowledge of the District's practices. The Complaint alleges distinct practices at different schools. As a result, individuals who can testify to one aspect of the District's custom and practice of school-sponsored prayer are not likely to be able to testify as to the others (e.g., deponents who can explain the District's

The Honorable Joseph J. Farnan, Jr.
June 8, 2005
Page 4

policy regarding the selection of graduation speakers at Sussex Central High school are unlikely to be able to testify about the effect of Bible Clubs at Selbyville Middle School).

In sum, a large number of distinct practices combined to form the alleged unconstitutional custom and practice, and discovery regarding those distinct practices and their effects will require the deposition of numerous of individuals, each of whom will assume particularized importance related to the distinct conduct they witnessed.

**Deposition Discovery Will Likely Be**
**The Most Important Method of Discovery.**

Finally, deposition discovery is likely to be the most important method of discovery in this case. The evidence Plaintiffs seek to discover through depositions is not likely to be available through document discovery. Documents are unlikely to memorialize what occurred during Bible Club, or what happened in District classrooms or athletic fields.

\* \* \*

Here, where the parties dispute almost every fact relating to a longstanding custom and practice involving a large number of different occurrences witnessed by many individuals, and where deposition testimony will likely be the critical medium for discovery, sixty depositions (half of which will be no longer than three hours) would not be inappropriate. We request that the Court rule accordingly.

Respectfully,

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Plaintiffs

The Honorable Joseph J. Farnan, Jr.
June 8, 2005
Page 5

Enclosure

cc: John D. Balaguer, Esquire (by e-file)
    Thomas S. Neuberger, Esquire (by e-file)