IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONA DOBRICH, et al., | : |
| Plaintiffs, | : |
| v. | : No. 05-cv-00120-JJF |
| HARVEY L. WALLS, et al., | : |
| Defendants. | : |

**PLAINTIFFS' OPENING BRIEF
IN SUPPORT OF THEIR MOTION TO DENY
OR CONTINUE HELMS'S MOTION FOR SUMMARY JUDGMENT**

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
Attorneys for Plaintiffs

DATED: August 19, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .......................................... i

NATURE AND STAGE OF THE PROCEEDINGS ......................... 1

SUMMARY OF THE ARGUMENT ..................................... 3

STATEMENT OF FACTS ........................................... 4

ARGUMENT ..................................................... 5

I.  THE SUMMARY JUDGMENT MOTION IS MOOT ................... 5

II. THE SUMMARY JUDGMENT MOTION IS PREMATURE ............. 6

    A.  Two Of The Marsh Factors Remain In Dispute ................ 8

    B.  Plaintiffs Need Discovery On Helms's Assertion That The Recipients Of The School Board's Prayer Are Not Susceptible To Religious Indoctrination ............................. 10

    C.  Plaintiffs Need Discovery To Show That The School Board Has Exploited The Prayer Opportunity To Proselytize Or Advance A Particular Faith ............................. 12

    D.  The Court Must Lift The Stay Of Discovery Before It Permits Briefing On The Summary Judgment Motion To Proceed ........ 14

III. THE COURT SHOULD NOT ACCEPT HELMS'S INVITATION TO LITIGATE THIS CASE PIECEMEAL ............................. 15

CONCLUSION .................................................. 16

# TABLE OF AUTHORITIES

**CASES**                                                                                                                              **PAGE(S)**

ACLU v. Black Horse Pike Reg'l Bd. of Educ.,
    84 F.3d 1471 (3d Cir. 1996) .................................................................................. 8

Argus Inc. v. Eastman Kodak Co.,
    552 F. Supp. 589 (S.D.N.Y. 1982) ........................................................................ 7

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ......................................................................................... 6, 7

Contractors Ass'n of E. Pa., Inc. v. Philadelphia,
    945 F.2d 1260 (3d Cir. 1991) ............................................................................ 7, 8

Farris v. Moeckel,
    664 F. Supp. 881 (D. Del. 1987) ....................................................................... 7, 8

G-I Holdings, Inc. v. Baron & Budd,
    213 F.R.D. 146 (S.D.N.Y. 2003) ......................................................................... 12

Johnson v. DaimlerChrysler Corp.,
    C.A. No. 02-69-GMS, 2003 WL 1089394 (D. Del. Mar. 6, 2003) ...................... 5

Lee v. Weisman,
    505 U.S. 577 (1992) ............................................................................................. 9

Lemon v. Kurtzman,
    403 U.S. 602 (1971) ............................................................................................. 8

Marsh v. Chambers,
    463 U.S. 783 (1983) ........................................................................... 3, 5, 8, 9, 11

McCreary County v. ACLU of Ky.,
    125 S. Ct. 2722 (2005) ....................................................................................... 12

Metallgesellschaft AG v. Foster Wheeler Energy Corp.,
    143 F.R.D. 553 (D. Del. 1992) ............................................................................ 7

Miller v. DaimlerChrysler Corp.,
    219 F.R.D. 331 (D. Del. 2003) ............................................................................ 7

RePass v. Vreeland,
    357 F.2d 801 (3d Cir. 1966) .............................................................................. 15

St. Surin v. V.I. Daily News, Inc.,
    21 F.3d 1309 (3d Cir. 1994) ............................................................................................. 7

Temple Univ. v. Salla Bros., Inc.,
    656 F. Supp. 97 (E.D. Pa. 1986) ..................................................................................... 12

Winward v. Hill,
    C.A. No. 92-2116, 1999 WL 782516 (E.D. Pa. Sept. 27, 1999) ..................................... 15

AUTHORITIES

Fed. R. Civ. P. 56(f) ................................................................................................................... 6

Plaintiffs Mona Dobrich, Marco Dobrich, Alexander Dobrich, Jane Doe, John Doe, Jordan Doe and Jamie Doe (collectively, the "Plaintiffs"), by and through their attorneys, respectfully submit this opening brief in support of their motion to deny or continue Defendant Reginald L. Helms's Motion for Summary Judgment on the Board's Voluntary Prayer Policy as Written (the "Summary Judgment Motion").[1]

## NATURE AND STAGE OF THE PROCEEDINGS

On February 28, 2005, Plaintiffs filed the complaint in this action (the "Complaint") seeking damages and injunctive relief for a pattern and practice of unconstitutional behavior on the part of the School Board, the District and District employees.

On April 4, 2005, Defendant Reginald Helms answered the Complaint in his official capacity and filed a motion to dismiss the claims against him in his individual capacity. On April 27, 2005, the Non-Helms Defendants answered the Complaint in their official capacity, then moved to dismiss the Complaint based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1] Defendants the Indian River School District (the "District"), the Indian River School Board (the "School Board"), Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe, Lois M. Hobbs and Earl J. Savage (collectively, the "Non-Helms Defendants" and together with Defendant Helms, "Defendants") have not joined the Summary Judgment Motion.

On June 8, 2005, the parties submitted a proposed Rule 16 Scheduling Order along with letters detailing their respective positions on the number of non-party, non-expert depositions needed during discovery.

On June 16, 2005, the Court referred the case to mediation with Magistrate Judge Mary Pat Thynge, and stayed discovery indefinitely "[i]n deference to the mediation process." (June 13, 2005 Mem. Order 1-2) ("All discovery except initial disclosure pursuant to Federal Rule of Civil Procedure 26(a)(1) and Local Rule 16.2 is **STAYED** until further order of the Court.")

On June 20, 2005, Judge Thynge issued a mediation order explaining that the Court expected "the parties' full and good faith cooperation with the mediation process." (June 20, 2005 Order ¶ 6) The parties exchanged initial disclosures on July 8, 2005. Then, on August 2, 2005, this Court issued an opinion (the "Opinion") and an order granting in part and denying in part Defendants' motions to dismiss.

On August 4, 2005, the parties attended the scheduled mediation conference with Judge Thynge, and, at the Judge's suggestion, agreed to an additional conference call on August 18, 2005 and a day of mediation on September 14, 2005. The next day, Judge Thynge followed up with a written order holding that "[t]here shall be no further submissions of the parties." (August 5, 2005 Order) Hours later, Defendant Helms submitted his Summary Judgment Motion. This is Plaintiffs' response.

2

## SUMMARY OF THE ARGUMENT

1. Helms's Summary Judgment Motion is moot. In its August 2 Opinion, this Court held that Plaintiffs did not state an establishment clause claim against the School Board for its practice of opening its public meetings with a prayer. The Court explained that it found the School Board's conduct constitutional under the United States Supreme Court's holding in Marsh v. Chambers, 463 U.S. 783 (1983). Helms offers no reason why the Court should rule again on the same issue.

2. Even if the Summary Judgment Motion were not moot, the Court should deny it as premature, or hold it in abeyance until Plaintiffs have had an adequate opportunity to conduct discovery. The Court has stayed all discovery aside from the parties' initial disclosures, and without discovery, Plaintiffs cannot substantiate their merits-based opposition to the Summary Judgment Motion.

3. The Court should not accept Helms's invitation to litigate this case piecemeal. A decision on Helms's Summary Judgment Motion will not dispose of any of Plaintiffs' claims, nor will it materially limit the scope of permissible discovery. Consideration of the merits at this stage will waste the time and resources of both the Court and the parties.

## STATEMENT OF FACTS

At the Sussex Central High School graduation ceremony on June 3, 2004, Pastor Jerry Fike led the assembled students and spectators in prayer. He prayed to God to direct the soon-to-be graduates to "the truth that comes by knowing Jesus." After hearing the prayer, Mona Dobrich – a Jewish parent and former student – decided to ask that the District not use the name of Jesus at school events.

Mona appealed to the School Superintendent and the President of School Board, and she bravely spoke against school-sponsored prayer at several School Board meetings. She was consistently rebuffed or ignored, and was the subject of verbal attacks at School Board meetings, at which Defendants actively encouraged a revival meeting atmosphere. When the District subsequently adopted formal policies regarding school prayer, Mona (through her attorneys) wrote letters to the School Board pointing out that the policies (including the District's policy on School Board prayer) were constitutionally deficient and that the District was failing to implement them. At the December 2004 School Board meeting, Mona publicly urged the School Board to respond to her letters. Finally, on February 28, 2005, Plaintiffs filed this lawsuit seeking damages and injunctive relief for the pattern and practice of unconstitutional behavior of the School Board, the District and District employees.

## ARGUMENT

### I.  THE SUMMARY JUDGMENT MOTION IS MOOT

In its August 2 Opinion, this Court held that the practice of opening public School Board meetings with a prayer is constitutional under the United States Supreme Court's holding in <u>Marsh v. Chambers</u>, 463 U.S. 783 (1983). (Aug. 2 Op. at 20-21) ("Plaintiffs cannot prevail on a claim based on a prayer being said before a School Board meeting. As the <u>Marsh</u> decision makes clear, the practice of opening legislative sessions with a prayer is acceptable under the Constitution.").

For some reason, however, Helms seeks a second opinion from this Court on the same issue. Helms is not entitled to a second victory when he has already had one. The Summary Judgment Motion is moot. <u>Johnson v. DaimlerChrysler Corp.</u>, C.A. No. 02-69-GMS, 2003 WL 1089394 (D. Del. Mar. 6, 2003) (attached hereto as Exhibit A).

From the outset of his Opening Brief, Helms attacks the idea that opening prayers must be "non-sectarian" to be constitutional. (See Op. Br. at 15-16) Helms posits that requiring prayer to be "non-sectarian" constitutes impermissible viewpoint discrimination. (Op. Br. at 15-16) According to Helms, mandating that prayer be "non-sectarian" causes "more problems than it solves," because government actors would have to determine whether a given prayer is "sectarian" or "non-sectar-

5

ian," a decision that hopelessly entangles them in the twists and turns of theological debate. (Op. Br. at 25-26)

Presumably, Helms seeks an opinion from this Court declaring that a policy that permits sectarian prayer is constitutional. But it is not clear who Helms is arguing against. He is not arguing against Plaintiffs, to whom the "sectarian" versus "non-sectarian" debate is purely academic. The Court has already held that the Indian River School Board's practice of opening its public meetings with a prayer is constitutional, and Helms has no justiciable reason to debate the merits of "sectarian" versus "non-sectarian" prayer policies now, when he has already won his point. The Motion for Summary Judgment is moot.

## II. THE SUMMARY JUDGMENT MOTION IS PREMATURE

Even if the Summary Judgment Motion were not moot, the Court should deny it as premature, or hold it in abeyance until Plaintiffs have had an adequate opportunity to conduct discovery to substantiate their merits-based opposition. Federal Rule of Civil Procedure 56(f)[2] allows a court to deny a summary judgment motion or to continue the hearing on the motion "if the nonmoving party

---

[2]  Rule 56(f) provides that:
> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

6

has not had an opportunity to make *full* discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (emphasis added). The Rule exists to prevent a party from being "'railroaded' by a premature motion for summary judgment." Id.[3]

The rule against premature summary judgment motions takes on added force where, as here, the parties have had no opportunity to conduct discovery on critical, factual disputes. Metallgesellschaft AG v. Foster Wheeler Energy Corp., 143 F.R.D. 553, 559 n.8 (D. Del. 1992) (explaining that summary judgment is inappropriate "unless the nonmoving party has been given the opportunity to pursue discovery in connection with the issues addressed by the summary judgment motion"); see also Farris v. Moeckel, 664 F. Supp. 881, 890 (D. Del. 1987)(summary judgment was "neither warranted nor appropriate" where "[n]o discovery has taken place"); Argus Inc. v. Eastman Kodak Co., 552 F. Supp. 589, 600 (S.D.N.Y. 1982) (denying defendants' motions for summary judgment "since no discovery has yet been had regarding the [. . .] claim" due to the court's limitations on discovery); Contractors Ass'n of E.

---

[3] In the Third Circuit, a party seeking the denial or continuance of a summary judgment motion must submit an affidavit stating "'with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained.'" Miller v. DaimlerChrysler Corp., 219 F.R.D. 331, 332 (D. Del. 2003) (quoting St. Surin v. V.I. Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994)); see also Contractors Ass'n of E. Pa., Inc. v. Philadelphia, 945 F.2d 1260, 1266 (3d Cir. 1991). District courts in the Third Circuit should grant properly filed Rule 56(f) motions almost "as a matter of course." St. Surin, 21 F.3d at 1314 (quoting Costlow v. U.S., 552 F.2d 560, 564 (3d Cir. 1977)).

7

Pa., 945 F.2d at 1260, 1267 (district court abused its discretion when it denied party's Rule 56(f) motion when discovery was still outstanding).

Here, the Court has stayed discovery in deference to the mediation process, and, aside from exchanging initial disclosures, the parties have conducted no discovery whatsoever.[4] Helms now asks the Court to declare the School Board's written policy regarding prayer at School Board meetings constitutional. (See Op. Br. at 9 ("The question is – is this policy as written constitutional?")). As explained below, if the Court chooses to consider the Summary Judgment Motion on the merits, Plaintiffs will have no choice but to ask the Court to lift the stay of discovery.

A.  **Two Of The Marsh Factors Remain In Dispute**

For Helms to prevail, he must show that the prayer Plaintiffs challenge meets the three criteria established in Marsh v. Chambers, 463 U.S. 783 (1983).[5]

---

[4]  Plaintiffs need an opportunity to "obtain facts to support the factual allegations stated in the Complaint." Farris, 664 F. Supp. at 890.

[5]  In Lemon v. Kurtzman, 403 U.S. 602 (1971), the Supreme Court established "a three part test to determine if a government practice offends the Establishment Clause." ACLU v. Black Horse Pike Reg'l. Bd. of Educ., 84 F.3d 1471, 1483 (3d Cir. 1996). A government practice is unconstitutional if (1) it has a non-secular purpose; (2) its principal or primary effect advances or inhibits religion; or (3) it creates excessive entanglement with religion. Lemon, 403 U.S. at 612-13; see also ACLU, 84 F.3d at 1483. Despite criticism over the years, "this test remains the law of the land, and [the Third Circuit is] obligated to consider it until instructed otherwise by a majority of the Supreme Court." Id. at 1484. Helms does not appear to dispute the suggestion that the School Board's prayer policy is problematic under Lemon. Instead, he argues
(continued...)

8

First, the prayer must open sessions of legislative or other deliberative public bodies. Marsh, 463 U.S. at 786. Second, the recipients of the prayer must be "adult[s] . . . not readily susceptible to 'religious indoctrination' or peer pressure." Id. at 792.[6] Third, there must be "*no indication* that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." Id. at 794-95 (emphasis added). (Op. Br. at 35) Helms contends that the School Board's prayer satisfies the Marsh test.

Assuming this Court determined the first factor in its August 2 Opinion, Helms must show that 1) the recipients of the prayer are adults not readily susceptible to religious indoctrination or peer pressure and 2) there is no indication that the prayer opportunity has been exploited to proselytize, advance or disparage any one faith. But all Helms submits in support of his Summary Judgment Motion is a single affidavit -- consisting of a page and a half of testimony and six and a half pages of legal rhetoric -- which does nothing to shed light on the two Marsh factors

---

[5]  (...continued)
that the Board's policy meets the criteria for the legislative prayer exception to Lemon that the Supreme Court articulated in Marsh v. Chambers, 463 U.S. 783 (1983).

[6]  Compare Lee v. Weisman, 505 U.S. 577, 592 (1992) ("prayer exercises in public school carry a particular risk of indirect coercion" because "in a school context [prayer exercises] may appear to the nonbeliever or dissenter to be an attempt to employ the machinery of the State to enforce a religious orthodoxy").

9

that remain in dispute. Even if the Helms affidavit squarely addressed those factual issues, Plaintiffs have not had any opportunity for discovery, and at this stage of the proceedings they need not take Helms at his word.[7]

### B. Plaintiffs Need Discovery On Helms's Assertion That The Recipients Of The School Board's Prayer Are Not Susceptible To Religious Indoctrination

To satisfy Marsh, Helms must demonstrate that the recipients of the School Board's prayer are not susceptible to religious indoctrination. Marsh, 463 U.S. at 792. In his affidavit and opening brief, he has manifestly failed to do so. According to Helms, the School Board's invocations "are for and on behalf of the Board itself - all of whom are adults." (Op. Br. at 36) "No school employee, student in attendance or member of the community in attendance [is] required to participate in any such prayer or moment of silence," and "[v]isitors remain free to temporarily remove themselves from the meeting if they are offended by the invocation." (Id.)

---

[7] Plaintiffs have submitted an affidavit (the "Allingham Affidavit") that establishes with specificity the particular information sought, including records of School Board meetings, depositions of School Board members and drafting notes and legislative history behind the School Board's policy on School Board Prayer at Regular School Board Meetings (the "Policy"). The Allingham Affidavit establishes that Plaintiffs have been unable to obtain this discovery because of this Court's order staying discovery. Moreover, the Allingham Affidavit, together with the following legal analysis, demonstrates that Plaintiffs' ability to respond to the Summary Judgment Motion will be prejudiced absent the specified discovery.

10

Helms's self-serving assertion that the recipients of School Board prayer are adult members of the School Board flies in the face of Plaintiffs' allegations that school children are among the recipients of School Board prayer. (Compl. ¶¶ 53-69) For instance, Plaintiffs allege (and the Non-Helms Defendants admit) that students attend School Board meetings to receive awards, to appear as representatives of student government, to speak on matters important to their education and to give demonstrations in front of the School Board. (Compare Compl. ¶¶ 53, 55, 56, 59, 60, 63 and 126 with Non-Helms's Answer ¶¶ 53, 55, 56, 59, 60, 63 and 126)[8] Plaintiffs allege that student attendance at School Board meetings is in some instances mandatory. (Compl. ¶ 53)

Helms does nothing to settle these factual disputes in his opening brief or his affidavit. Instead he argues that "the occasional presence of children is not a determinative factor in deciding whether Marsh governs School Board Prayer." (Op. Br. at 38) But the Helms affidavit does not establish that children are present only "occasionally." Nor does it dispute that their attendance is sometimes mandatory.

Even if it did, Plaintiffs would be entitled to depose past and current

---

[8] Defendant Helms claimed that he lacked "knowledge or information sufficient to form a belief" as to some of those allegations, while admitting others. (Compare Helms's Answer ¶¶ 55, 56 and 63 with Helms's Answer ¶¶ 53, 59, 60 and 126)

11

School Board members and other District officials to test Helms's assertions.[9] Plaintiffs are entitled to documents and deposition testimony that demonstrate the history and custom of student attendance at School Board meetings (including invitations to students) as well as other information that is solely in Defendants' possession. See Temple Univ., 656 F. Supp. at 110 (permitting discovery pursuant to Rule 56(f) where the basis for a motion for partial summary judgment was solely in the possession of the moving party).

C. **Plaintiffs Need Discovery To Show That The School Board Has Exploited The Prayer Opportunity To Proselytize Or Advance A Particular Faith**

To successfully invoke Marsh, Helms must also demonstrate that the School Board has not exploited the opportunity to pray at the beginning of its meetings to proselytize or advance a particular religion. But according to Defendants' own pleadings, the School Board chooses to open its non-public meetings without prayer. (Non-Helms Answer ¶ 52)  The difference between public and non-public meetings is telling. See McCreary County v. ACLU of Ky., 125 S. Ct. 2722, 2740 (2005). If the School Board members were not interested in spectacle, and instead prayed solely

---

[9]  At the very least, Plaintiffs should be able to depose Defendant Helms (and any other parties implicated by his affidavit) so that Plaintiffs can adequately state their opposition. G-I Holdings, Inc. v. Baron & Budd, 213 F.R.D. 146, 149 (S.D.N.Y. 2003) ("[D]efendants should have learned from the last denial of their motion for summary judgment that untested affidavits are not acceptable"); see also Temple Univ. v. Salla Bros., Inc., 656 F. Supp. 97, 110 (E.D. Pa. 1986) (granting defendants an opportunity to depose individuals whose affidavits formed the basis of plaintiff's summary judgment motion).

12

to invoke divine guidance, surely they would pray at both public and non-public School Board meetings. Instead, they take time to pray only when they have an audience of school children, parents and District employees. This discrepancy deserves an explanation that only discovery can provide.[10]

According to Helms, the Court should grant summary judgment because "there is no evidence" that the Board is "trying to indoctrinate or coerce any adults or the occasional school child who happens to be present for meetings." (Op. Br. at 38) But the absence of evidence cannot be grounds for granting summary judgment at this stage of the proceedings. The parties have had no opportunity to conduct discovery.

Plaintiffs are entitled to the depositions of past and current School Board members as well as the District's records – including minutes and audio or video recordings of past School Board meetings – to test Helms's claim that the School Board members are not using the prayer opportunity to advance a particular religious belief. Plaintiffs are also entitled to the District's current and former policies

---

[10]  This is not the only publicly available suggestion that the School Board uses the prayer opportunity to proselytize. One School Board member has been quoted as saying that the Board "represent[s] the people and that's what [it's] tying to do....This is a traditional thing for this area and this area is Christian." Laren Hughes, "Federal Judge: School Board Not Liable," DELAWARE WAVE, Aug. 10, 2005. Available at:
http://www.delmarvanow.com/bethanybeach/stories/20050810/2189748.html

13

on School Board prayer, including notes, memorandum, correspondence and draft copies related to those policies.

Once Helms and his colleagues have stood for their depositions, and once the Board members and the District have responded to Plaintiffs' discovery requests, Helms can renew his claim that the absence of evidence warrants summary judgment. Until then, his motion is premature.

### D. The Court Must Lift The Stay Of Discovery Before It Permits Briefing On The Summary Judgment Motion To Proceed

Discovery is essential to any merits-based opposition to the Summary Judgment Motion, and if this Court proceeds to order briefing on the motion, Plaintiffs will have no choice but to ask the Court to lift the stay of discovery. The ensuing discovery will not only burden Helms, but also the Non-Helms Defendants who have not joined his motion.

This Court has gone out of its way to promote the mediation of this dispute. Plaintiffs and the Non-Helms Defendants have made substantial progress toward negotiating a productive resolution to many (if not all) of the issues in this case. A key factor driving the parties toward settlement is the stay of discovery. The Court should not let Helms compromise that stay and hijack a dispute resolution process that may save both sides of this debate the costs of a devastating court battle.

14

### III. THE COURT SHOULD NOT ACCEPT HELMS'S INVITATION TO LITIGATE THIS CASE PIECEMEAL

By means of his Motion for Summary Judgment, Helms has invited the Court and the parties to litigate this case piecemeal. But a decision on the constitutionality of School Board prayer will not dispose of any of Plaintiffs' claims in this case. Nor will it dismiss any of the remaining Defendants. See Winward v. Hill, C.A. No. 92-2116, 1999 WL 782516, at *1 (E.D. Pa. Sept. 27, 1999) (noting that summary judgment on a portion of a claim would "promote piecemeal summary adjudication" and cause "needless duplication of judicial effort") (attached hereto as Exhibit B); see also RePass v. Vreeland, 357 F.2d 801, 805 (3d Cir. 1966).

Even if this Court were to deny Plaintiffs' Rule 56(f) motion, order briefing on the merits, and find Helms's Summary Judgment Motion meritorious, the parties would face another round of summary judgment briefing at some point in the future. A decision on Helms's Summary Judgment Motion would not even significantly limit the scope of permissible discovery. The events at School Board meetings will remain central to the debate over the School Board's knowledge and alleged indifference to ongoing constitutional violations in the District. Furthermore, the events at the School Board meetings in June, July and August remain critical to Plaintiffs' claims for damages, and discovery regarding those School Board meetings will occur regardless of the outcome of this Summary Judgment Motion.

15

Briefing Helms's Summary Judgment Motion now, on the merits, without the benefit of any discovery, will increase the already significant burden this litigation has imposed on all the parties. Especially where the possibility of an award of attorneys' fees threatens not only Helms, but other Defendants who have not joined in the Summary Judgment Motion, wasting time and money on piecemeal litigation makes no sense.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny or continue the Summary Judgment Motion.

Thomas J. Allingham II (#476)
Robert S. Saunders (#3027)
Rosemary S. Goodier (#3585)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
Attorneys for Plaintiffs

DATED: August 19, 2005