ONE RODNEY SQUARE

BOX 636

WILMINGTON, DELAWARE 19899-0636

(302) 651-3000

April 26, 2006

**VIA E-FILE AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
844 North King Street
Lock Box 27
Wilmington, Delaware 19801

RE:    Dobrich, et al., v. Walls, et al., D. Del. No. 05 - 120

Dear Judge Farnan:

Enclosed for this Court's review is a proposed scheduling order (the "Scheduling Order") on all remaining issues (the "Remaining Issues") other than the constitutionality of the Indian River School Board's (the "School Board") Prayer Policy as written and as applied. Plaintiffs and Defendants, the Indian River School District (the "District") and the School Board, have reached agreement on all the provisions of the Scheduling Order except for whether:

(1) Paragraph 3(d) should allow for sixty depositions, thirty of which would last no longer than three hours;

(2) Paragraph 3(g)(3) in the Scheduling Order should provide that "Any examination must take place: (i) for a Dobrich plaintiff, within either New Castle County, Delaware, or Philadelphia, Pennsylvania; and (ii) for a Doe plaintiff, within either Sussex County, Delaware, or Washington, D.C."; and

(3) Paragraph 6 of the Scheduling Order should require that "Plaintiffs as a group and defendants as a group shall each be limited to one case dispositive motion on the Remaining Issues."

As discussed more fully below, Plaintiffs respectfully request that the court should adopt the Scheduling Order with the above modifications.

The Honorable Joseph J. Farnan, Jr.
April 26, 2006
Page 2

**I.    BECAUSE DEFENDANTS HAVE DISPUTED VIRTUALLY EVERY ALLEGATION IN THE COMPLAINT, PLAINTIFFS WILL NEED TO DEPOSE MANY DISTRICT EMPLOYEES AND STUDENTS, PARENTS AND COMMUNITY MEMBERS WHO WOULD OTHERWISE BE UNWILLING TO TESTIFY VOLUNTARILY.**

Almost without exception, Defendants have disputed every fact that would go to demonstrating that the District has had a custom and practice of school-sponsored prayer. Therefore, Plaintiffs will need to depose many District employees and students, parents and community members who would otherwise be unwilling to testify voluntarily so that Plaintiffs can develop the factual record they need in order to meet their burden of proof.

**A.    Defendants Cannot Establish The Necessary Basis Under Rule 26(b)(2) To Restrict Deposition Discovery.**

Local Rule 26.1(b) provides that "[u]nless otherwise ordered by the Court, there shall be no limitation upon the permissible number of . . . depositions. . . ." According to the Third Circuit, "[o]nly if one of the factors in Federal Rule[] of Civil Procedure 26(b)(2) is present should the Court limit the number of depositions." *Pacitti v. Macy's*, 193 F.3d 766, 778 (3d Cir. 1999) (holding that the trial court erred by limiting deposition discovery).

Here, none of the factors enumerated in Rule 26(b)(2) apply. Specifically, as discussed below, the deposition discovery Plaintiffs anticipate will not be unreasonably cumulative or duplicative, nor is it available from a more convenient, less burdensome or less expensive source. Plaintiffs have had no opportunity to conduct formal discovery to obtain information on the Remaining Issues. Nor does the burden or expense of the proposed discovery outweigh its likely benefit given the important constitutional issues at stake and the importance of the depositions in resolving the disputed facts. See Fed. R. Civ. P. 26(b)(2).

**B.    The Complaint Alleges - And Defendants Deny – A Longstanding Custom And Practice Involving Dozens Of Discrete Incidents, Each With Their Own Participants And Witnesses.**

In rejecting Defendants' attempt to dismiss Plaintiffs' allegations related to the District's past conduct, the Court recognized that Plaintiffs will have an opportunity to prove their claims that the District has had a "persistent ongoing pattern of school sponsored prayer." (D.I. 57 at 13) The custom and practice of school-sponsored prayer that Plaintiffs challenge was and remains widespread. School officials and community religious leaders delivered prayers at events and meetings organized by the District. (Compl. ¶ 22) Prayers began and ended athletic banquets, academic banquets, school potlucks, school baccalaureate services,

The Honorable Joseph J. Farnan, Jr.
April 26, 2006
Page 3

graduation exercises and school board meetings. (*Id.*) District coaches led their sports teams in prayer before practices and games. (Compl. ¶¶ 40-42) School officials led Bible Club activities in District schools and actively encouraged student attendance by awarding Bible Club members preferential treatment. (Compl. ¶¶ 31-33) School officials pressured parents to encourage their children to attend Bible Club. (Compl. ¶ 36) District schools participated in Bible distributions to their students. (Compl. ¶¶ 37-39)

In response, Defendants have contested virtually every allegation in the Complaint. Defendants refused to respond to or denied some of the critical allegations regarding Bible Clubs, school Bible distributions and prayer at athletic events. (Defendants' Answer ¶¶ 33-51) Elsewhere in their answer, Defendants directly disputed the allegations in the Complaint. (*See, e.g.*, Defendants' Answer ¶¶ 23, 26)

In short, this is not a case where the conduct in question is undisputed and the only question for the Court is its constitutionality. On the contrary, because Defendants dispute the alleged conduct, this case will be decided on its facts. Those facts require discovery, and that discovery will require that a large number of administrators, teachers, counselors, parents, students and others, be deposed. Further, to the extent Plaintiffs have tried to interview parents, students and other community members, Plaintiffs have faced an almost universal wall of silence out of fear from retaliation.

As alleged in the Complaint, the District's unconstitutional practices occurred in distinct settings, involved different school officials, different teachers and coaches, and different students in a number of different schools. Depositions of the individuals involved will not be duplicative or unreasonably cumulative because each of the alleged practices made its own separate contribution to the District-wide environment of religious exclusion.

To give just one example, the Complaint specifically alleges that three different employees at Selbyville Middle School led three different Bible Clubs – one each for the sixth, seventh and eighth grades. (Compl. ¶ 32) Each Bible Club involved different students, and each Bible Club had its own impact on the environment at Selbyville Middle School. Plaintiffs should be able to test through discovery Defendants' denials about what happened at the Bible Clubs. Plaintiffs should be able to question the school official who announced at lunch that Bible Club would meet and the witnesses who observed the preferential treatment Bible Club members received. (Compl. ¶ 33) Plaintiffs should be able to question at least some parents about the effect of the Bible Clubs on their children and how District officials treated their complaints. Plaintiffs should be able to question District

The Honorable Joseph J. Farnan, Jr.
April 26, 2006
Page 4

employees who received complaints about whether those complaints were handled appropriately. (Compl. ¶ 36)

And Bible Club is only one of the many practices Defendants deny and that Plaintiffs must therefore pursue through discovery. The list of potential deponents is equally long (if not longer) for the other school-sponsored religious practices set out in the Complaint. For instance, Plaintiffs should be able to depose at least several of the literally hundreds of people (parents, students and community members) who attended the school board meetings in July and August of 2004.

Many of Defendants' factual contentions only intensify the need for these depositions. For instance, Plaintiffs assert that school officials invited clergy to deliver an invocation and benediction at the 2004 Sussex Central High School graduation ceremonies. (Compl. ¶¶ 23, 26) Defendants dispute this claim, instead asserting that students – not District officials – invited clergy members. (Defendants' Answer ¶¶ 23, 26) Resolution of this factual dispute will require, not only the testimony of the school officials who may have been responsible for inviting speakers to graduation ceremonies, but also the students whom Defendants claim invited clergy members to give an invocation and a benediction.

Moreover, evidence in the case will not be limited to a small number of people with global knowledge of the District's practices. The Complaint alleges distinct practices at different schools. As a result, individuals who can testify to one aspect of the District's custom and practice of school-sponsored prayer are not likely to be able to testify as to the others (e.g., deponents who can explain the District's policy regarding the selection of graduation speakers at Sussex Central High school are unlikely to be able to testify about the effect of Bible Clubs at Selbyville Middle School).

Further, in their Rule 26(a)(1) initial disclosures, Defendants have identified nineteen individuals, beyond those appearing in this case in their official capacity, who are likely to have discoverable information that Defendants may use to support their defenses. However, Defendants' proposal would limit each side to only twenty depositions – which would unduly prejudice Plaintiffs by requiring them to spend nineteen of Defendants' proposed twenty depositions deposing Defendants' potential witnesses, in addition to the District employees and otherwise uncooperative students, parents and community members that Plaintiffs will need to depose so they can prove their case.

In sum, a large number of distinct practices combined to form the alleged unconstitutional custom and practice, and discovery regarding those distinct practices and their effects will require the deposition of numerous of individuals,

The Honorable Joseph J. Farnan, Jr.
April 26, 2006
Page 5

each of whom will assume particularized importance related to the distinct conduct they witnessed.

### C.    Deposition Discovery Will Likely Be The Most Important Method of Discovery.

The evidence Plaintiffs seek to discover through depositions is not likely to be available through document discovery. Documents are unlikely to memorialize what occurred during Bible Club, or what happened in District classrooms or athletic fields. Here, where the parties dispute almost every fact relating to a longstanding custom and practice involving a large number of different occurrences witnessed by many individuals, and where deposition testimony will likely be the critical medium for discovery, sixty depositions (half of which will be no longer than three hours) would be appropriate.

## II.    THE PLAINTIFFS HAVE PROPOSED LOCATIONS FOR ANY POSSIBLE EXAMINATION THAT WOULD NOT BE UNDULY BURDENSOME.

Plaintiffs have proposed that any examination of either the Dobrich or the Doe plaintiffs pursuant to paragraph 3(g) in the Scheduling Order would occur within geographic areas that would not otherwise be unduly burdensome. *Cf. Geroski v. Betton*, C.A. No. 02C-02-012, 2003 WL 21001033 (Del. Super. Ct. Apr. 8, 2003) (Exhibit A). In *Geroski*, the Superior Court of Delaware applied Delaware Superior Court Civil Rule 35 – which is substantively identical to Federal Rule of Civil Procedure 35 – and held that a plaintiff should submit to an independent medical examination under Rule 35 where the examination was to take place in Philadelphia, Pennsylvania. *Id.*, 2003 WL 21001033, at *1. The Court held that "inconvenience" was to be one factor in determining a motion for a Rule 35 examination. *Id.*

Here, Plaintiffs' version of paragraph 3(g)(3) would allow Defendants to conduct examinations of the Dobrich plaintiffs in either New Castle County, Delaware, or Philadelphia, Pennsylvania, and the Doe plaintiffs in either Sussex County, Delaware, or Washington, D.C. As the retaliation and the hostility that has been directed against the Dobrich plaintiffs demonstrates, the Dobriches should not be required to return to Sussex County in order to submit to an examination that Defendants might require. Conducting any examination of the Dobriches in Philadelphia, which is home to premier institutions such as the University of Pennsylvania School of Medicine, should be more than enough to meet Defendants' possible needs.

Further, if the Does would have to travel in order to submit to any possible examination, then they should be able to do so where they could make

The Honorable Joseph J. Farnan, Jr.
April 26, 2006
Page 6

reasonable accommodations in the event that they have to stay over night. Washington, D.C. presents them with that option that Defendants' proposal for conducting those examinations in Philadelphia or Baltimore lacks.

Defendants should also be able to find qualified examiners to examine the Dobriches or Does in either Philadelphia or Washington, D.C. And if Defendants cannot find any examiners in those metropolitan areas, then Defendants should make arrangements to bring those examiners to either location instead of further inconveniencing the Dobrich or Doe plaintiffs.

## III. TO AVOID INEFFICIENCY, THE COURT SHOULD LIMIT PLAINTIFFS AS A GROUP AND DEFENDANTS AS A GROUP TO ONE DISPOSITIVE MOTION ON THE REMAINING ISSUES.

Plaintiffs' proposal to limit each side to one dispositive motion on the Remaining Issues would prevent "needless duplication of judicial effort." *Winward v. Hill*, C.A. No. 92-2116, 1999 WL 782516, at *1 (E.D. Pa. Sept. 27, 1999) (Exhibit B). Further, the only issue preventing Plaintiffs and Defendants' agreement on Plaintiffs' proposed limitation results from the ongoing dispute as to Reginald Helms's and his attorneys involvement in this case. This issue comes down to the fact that Mr. Helms is not the Defendants, and the Defendants are not Mr. Helms. "As a member of the School Board sued in his official capacity Mr. [Helms] has no personal stake in the outcome of the litigation. . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543-44 (1986). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . [T]he real party in interest is the entity." *Id.* at 544 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Of course, Defendants should have resolved this dispute among themselves, and their failure to do so should not stand in the way of this Court from entering an order that would prevent needless duplication of this Court's effort.

The Honorable Joseph J. Farnan, Jr.
April 26, 2006
Page 7

    For the foregoing reasons, Plaintiffs request that the Court enter the proposed Scheduling Order with the following additions:

    (1) Paragraph 3(d) should allow for sixty depositions, thirty of which would last no longer than three hours;

    (2) Paragraph 3(g)(3) in the Scheduling Order should provide that "Any examination must take place: (i) for a Dobrich plaintiff, within either New Castle County, Delaware, or Philadelphia, Pennsylvania; and (ii) for a Doe plaintiff, within either Sussex County, Delaware, or Washington, D.C."; and

    (3) Paragraph 6 of the Scheduling Order should require that "Plaintiffs as a group and defendants as a group shall each be limited to one case dispositive motion on the Remaining Issues."

    Respectfully,

    *Robert S. Saunders / RSH*

    Robert S. Saunders (#3027)
    Richard S. Horvath, Jr. (#4558)
    One Rodney Square
    P.O. Box 636
    Wilmington, Delaware 19899
    (302) 651-3000
    Attorneys for Plaintiffs

cc:  John D. Balaguer, Esquire (by e-file)
    Thomas S. Neuberger, Esquire (by e-file)