IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONA DOBRICH, *et al.*, | : | Case No. 05-120-JJF |
| Plaintiffs, | : | |
| | : | |
| | : | **DEFENDANT REGINALD L. HELMS' MOTION TO RECONSIDER THE COURT'S APRIL 28, 2006 ORDER (D.I. 100)** |
| HARVEY L. WALLS, *et al.*, | : | |
| Defendants. | : | |

Defendant Reginald L. Helms, by and through the undersigned counsel, Moves for reconsideration, withdrawal and/or vacation of this Court's order of April 28, 2006 (D.I. 100), because it was entered without briefing and consideration of the governing legal authority. In support of this motion he alleges and avers as follows:

1. On March 23, 2006, the Court held a Rule 16 scheduling hearing. At that hearing the issue concerning the representation of Defendant Helms was raised by counsel for the Defendant Indian River School Board. Counsel for Defendant Helms reiterated Defendant Helms' position at that hearing that Helms desired to be represented by The Neuberger Firm as to the claims against him in his official capacity. The Court did not resolve the issue at that time, but requested that the attorneys involved meet to resolve the issue and report to the Court by March 31. The Court also stated that if the issue could not be resolved, Defendant Helms would be called before the Court to be examined so the Court could make a decision on the issue. The Court did not ask for any briefing on the issue.

2. On March 31, 2006, Defendant Helms submitted his declaration reiterating his desire to

be represented by The Neuberger Firm in this action (D.I. 90).  Defendant Helms based his decision on the success of The Neuberger Firm in obtaining the dismissal of the claims against him in his individual capacity, his total satisfaction with the services performed for him by The Neuberger Firm, and the fear that the plaintiffs will obtain an injunction that will infringe upon his exercise of First Amendment rights.  The declaration also stated that Defendant Helms does not want the attorneys obtained by the School Board's insurance carrier, John Balaguer and John Cafferky, or the firm of those attorneys to represent him.  Helms' desire not to be represented by the School Board's current attorneys is based upon statements by other Board members of their dissatisfaction with the performance of those attorneys.

    3.  In a letter filed with the Court March 31, Attorney Balaguer took no position on whether "Mr. Healms" (misspelling in original) may be represented separately on the official capacity claims against him (D.I. 89).

    4.  In a letter ostensibly addressing a proposed scheduling order, counsel for the plaintiffs argued that The Neuberger Firm should not participate in this action because they do not represent a real party in interest and cited court decisions to support their position(D.I. 92).

    5.  On April 12, Defendant Helms, through The Neuberger Firm, responded to the proposed scheduling order and also addressed plaintiffs' claim that Defendant Helms was not allowed to be represented by the attorney of his choice. (D.I. 94).  Counsel pointed out that, in accord with the Court's query as to who Defendant Helms wished to represent him and explicit intent to question Helms in this regard before making a decision (see Transcript of Sch. Conference at 15), Helms had filed a declaration requesting he be represented by The Neuberger Firm.  Counsel also noted that if the Court wished for briefing on the matter, the Helms would be more than happy to submit such briefing.  But in light of the Court's decision to address the issue based upon Helms' wishes following

questioning by the Court, that the Court's wishes would of course be respected. (D.I. 94 at 2-3).

6. On April 28, without formal briefing the Court entered an order (D.I. 100) denying Defendant Helms' request to have counsel separate from counsel retained by the School Board to litigate issues in this action on his behalf. On May 2, the Court entered a Memorandum Opinion (D.I. 114) setting forth the reasons for the Order.

7. Defendant Helms requests that this Court reconsider its April 28 Order because it was made without allowing Defendant Helms to respond to the legal authority cited by the plaintiffs and without questioning Defendant Helms about his desires respecting legal representation. By not allowing Defendant Helms the opportunity to state his legal arguments on this matter, "the court has patently misunderstood" Helms' position and made an error of "apprehension." See Karr v. Castle, 768 F.Supp. 1087, 1090 (D.Del. 1991).

8. The Memorandum Opinion supporting this Order reasoned that because the claims against Defendant Helms in his individual capacity have been dismissed, Defendant Helms "'does not have a personal stake in the outcome of the litigation.'" (D.I. 114; quoting Bender v. Williamsport Area School District, 475 U.S. 534, 543 (1986)). But this action seeks, inter alia, to force, by way of a prohibitory injunction, the members of the Indian River School District School Board and Defendant Helms, to pray or refrain from praying in a particular way. The assertion that a person does not have a stake in litigation which may force him to affirm or disaffirm beliefs that are contrary to his deeply-held religious beliefs and conscience is contrary to any understanding of the rights to free speech and free exercise of religion safeguarded by the First Amendment to the United States Constitution. The Court's Order ignores these fundamental rights and is an overbroad extension of the authority the Court relies upon, and so should be reconsidered, withdrawn, and vacated.

9. Reliance upon the decision in Bender v. Williamsport Area School District, is wholly

misplaced because the factual context and claims involved there are clearly distinguishable from the instant case. In Bender, the Supreme Court held that a school board member did not have standing to appeal a district court judgment that the district was required to allow a religious student group to meet on school property after the board as a whole voted not to pursue an appeal. Although the Court wrote that "as a member of the School Board sued in his official capacity Mr. Youngman has no personal stake in the outcome of the litigation and therefore did not have standing to file the notice of appeal," the Court relied upon the principle that official-capacity suits under 42 U.S.C. § 1983 represent a way of pleading an action against the entity of which the officer is an agent. The board member in Bender was found to have no personal stake in the action so as to allow him to act individually because any liability in the case ran only as to the school board as a whole.

    10. Bender is distinguishable from the instant case on a number of significant grounds. First, the Supreme Court stressed in Bender, 475 U.S. at 539, that the district court in that case did not enter any injunction but only entered a declaration that the board's attorney was incorrect in advising that the student group should not be allowed to meet on school property. Thus, the district court did not require the school board to take any affirmative act or refrain from acting in any way. Second, the board member who sought to appeal was acting contrary to the desires of the school board as a whole, which had decided to accept the district court's declaratory judgment. "Generally speaking," the Court wrote, "members of collegial bodies do not have standings to perfect an appeal the body itself has declined to take." Id. at 544. In the instant case, Helms litigation position is consistent with the School Board's position as embodied in the prayer policy. Finally, the term of office of the board member who sought to appeal in Bender had expired while the case was pending before the Court of Appeals.

    11. The contrasting situation of Helms demonstrates that, unlike the board member in

Bender, he has a personal stake in the outcome of the litigation as regards his official capacity. The plaintiffs here are seeking injunctive relief and seek to have the board take or refrain from taking particular action. With respect to the prayer policy, this would involve either an affirmative vote to rescind the policy or a requirement that board members, such as Helms, refrain from praying according to their religious beliefs and consciences or give a prayer the content of which is mandated by a revised policy requiring "nonsectarian prayer." Coercive injunctive relief may thereby require Helms to act, in his official capacity as a School Board member, in a way that is contrary to his oath of office or his personal convictions.

12. This same kind of interest was found to be sufficient to confer standing on school board members in Board of Education v. Allen, 392 U.S. 236 (1968), a case cited with approval in Bender. In Allen, local school board members challenged the constitutionality of a state statute requiring districts to lend school books free of charge to private schools as violative of the Establishment Clause. Finding that the board members had standing to bring the action, the Court wrote as follows:

> Appellants have taken an oath to support the United States Constitution. Believing § 701 to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step - - refusal to comply with § 701 - - that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that appellants thus have "personal stake in the outcome" of this litigation.

Allen, 392 U.S. at 241. If the instant prayer policy is not upheld, Helms may similarly be required when acting in his official capacity as a School Board member to act in a manner that violates his conscience, religious convictions, and oath. This threatened injury gives him standing in his capacity as a school board member.

13. This conclusion is also supported by Sheriff/Coroner Jay Printz v. United States, 854 F. Supp. 1503 (D. Mont. 1994), an action by a sheriff in his official capacity challenging the constitutionality of provisions of the Brady Handgun Violence Prevention Act which was eventually

reviewed by the U.S. Supreme Court.[1] Although the government challenged the standing of the sheriff to sue in his official capacity, the court held that the case was controlled by the Allen decision, not Bender, writing as follows:

> The present case is analogous to Board of Education in that Plaintiff believes he is forced to choose between violating his oath or violating the Act, and in either case, possibly subjecting himself to contempt proceedings. In these circumstances, there is no doubt that Plaintiff has a personal stake in the outcome of the litigation such that he has standing in this action.

Id. at 1508.

14. Otherwise, Bender is not controlling because Helms is not acting contrary to the expressed desires of the School Board as a whole. His decision to defend the prayer policy is in all respects consistent withe the School Board's official position. Helms position in his official capacity does not contradict the policies or positions of the School Board.

15. Bender also is not controlling because in that case the member who sought to appeal was no longer on the school board while the appeal was pending. Obviously, a person who is no longer a member of a public body cannot maintain an action or defense that concerns the future conduct of the body if he or she is no longer a member of the body. By contrast, Helms conduct as a member of the School Board will be affected by the outcome of the instant case and so he has a concrete interest in being heard and being represented in this case.

16. Thus Bender is not controlling here because it was decided in a totally different factual and legal context. Reggie Helms clearly has a personal stake in the outcome of this litigation, which threatens to force actions on this part that are contrary to his religious beliefs and oath of office. As

---

[1]The District of Montana's decision was reversed by the Ninth Circuit, Mack v. United States, 66 F.3d 1025 (9th Cir. 1995), which was in turn reversed by the Supreme Court in Printz v. United States, 521 U.S. 898 (1997). Neither the Ninth Circuit nor the Supreme Court raised the issue of standing or questioned the sheriff's standing.

such, the First Amendment also protects his right to be represented by counsel of his choice. Helms has an absolute First Amendment right to the attorney of his choice. This right finds its origins in a well known line of Supreme Court cases. See NAACP v. Button, 371 U.S. 415 (1963); Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1 (1964); United Mine Workers of Amer. v. Ill. State Bar Ass'n, 389 U.S. 217 (1967); United Transp. Union v. State Bar of Michigan, 401 U.S. 576 (1971); In re Primus, 436 U.S. 412 (1978). In these cases, the Supreme Court "speaks ... of an inviolate First Amendment right to be represented by counsel...." Freeman and Bass, P.A. v. State of N.J. Commission of Investigation, 359 F.Supp. 1053, 1056 (D.N.J. 1973) (Judge Garth). Underlying these cases "was the Court's concern that the aggrieved receive information regarding their legal rights and the means of effectuating them." Bates v. State Bar of Arizona, 433 U.S. 350, 376 n.32 (1977).[2]

17. Although it appears that the Third Circuit has not had opportunity to address this issue, numerous other Courts of Appeals have. Indeed, as the Seventh and Ninth Circuits have recently held, "[t]he right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." Denius v. Dunlap, 209 F.3d 944, 953 (7th Cir. 2000); accord Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 611 (9th Cir. 2005). Similarly, in the Tenth Circuit's words, "[t]he right to retain and consult with an attorney ... implicates ... clearly established First Amendment rights of association and free speech." DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990); accord Poole v. County of Otero, 271 F.3d 955, 961 (10th Cir. 2001), overruled on other grounds, Hartman v. Moore, 2006 U.S. LEXIS 3450 (U.S. Apr. 26, 2006). As

[2] "This concern applies with at least as much force to aggrieved individuals as it does to groups." Id.; accord Denius v. Dunlap, 209 F.3d 944, 954 (7th Cir. 2000) ("the First Amendment protects the right of an individual or group to consult with an attorney on any legal matter"); Freeman and Bass, 359 F.Supp. at 1057 ("the existence of the associational *group* right necessarily implies a like right for individuals") (emphasis in original).

the D.C. Circuit has observed, individuals "have an undeniable right to retain counsel to ascertain their legal rights." Martin v. Lauer, 686 F.2d 24, 32 (D.C.Cir. 1982); American Airways Charters, Inc. v. Regan, 746 F.2d 865, 873 (D.C.Cir. 1984); see Doe v. District of Columbia, 697 F.2d 1115, 1119 (D.C.Cir. 1983) ("every litigant has a powerful interest in being able to retain and consult freely with an attorney").[3]

18. In this case, Helms has exercised this fundamental right by choosing The Neuberger Firm as his attorneys. As demonstrated by Helms' previously filed declaration (D.I. 90), this decision was made after careful consideration of the circumstances, including the comparative quality of the representation by The Neuberger Firm and the attorneys that were chosen for the School Board by its insurance company. At stake here is Helms' most fundamental rights-- to act according to his religious beliefs and conscience and to be represented by the counsel of his choice.

19. The threat posed by the instant case to Helms' rights requires that he be allowed to have separate, independent representation during all phases of this case. It is an empty assurance to allow Helms to seek relief from the court after an injunction has been issued against him and others and the record has been fully developed by discovery and trial. By then it will be too late to assert the factual and legal theories necessary to successfully defend the present case. Indeed, the record to date shows that it was Helms who took the main oar in the defense of the Board prayer policy thus far. To deny him the opportunity to carry that defense through to a conclusion with counsel of his choice will effectively deprive him of his best opportunity to defend his rights to free speech and religious belief in this case. After the animals have escaped from the barn is not the time to close the barn door. Nor is the best time for Mr. Helms to be heard on the merits after this case has been tried and decided by

[3] Other courts have held the same. See Cipriani v. Lycoming County Hous. Auth., 177 F.Supp.2d 303, 323-24 (M.D.Pa. 2001); Jones v. Sheahan, 2002 WL 959814, *3 (N.D.Ill. May 9, 2002); In re TI.B., 762 A.2d 20, 28 (D.C.App. 2000).

the court.

19. Defendant Reginald Helms waives the right to file an opening brief in support of this motion.

Wherefore, because there was no briefing on this issue and the court apparently misapprehended that there was, Defendant Reginald L. Helms respectfully requests that this Court reconsider, withdraw and vacate its prior order denying him separate counsel on the claims against him in his official capacity and instead order that The Neuberger Firm may fully participate in this action as attorney and counsel for Defendant Helms.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: May 8, 2006

Attorneys for Defendant Reginald Helms

# Unreported Opinions



Not Reported in F.Supp.2d
Page 1
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Kedron JONES Jr., Plaintiff,
v.
Micheal SHEAHAN, Ernesto Velasco, B. Goodwin, John Doe Mail Room Employes, Defendants.
**No. 01C6548.**

May 9, 2002.

MEMORANDUM OPINION AND ORDER

PLUNKETT, District J.
***1** Plaintiff Kedron Jones Jr., a pretrial detainee at Cook County Jail, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. Defendants Cook County Sheriff Michael Sheahan, Executive Director Ernesto Velasco, and Beatrice Goodwin have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Jones has filed a response, and defendants have filed a reply. For the following reasons, the court grants in part and denies in part defendants' motion to dismiss.

FN1. Plaintiff has misspelled defendant Michael Sheahan's first name in the caption. The court will use the correct spelling of defendant's name.

I. Standard of Review on a Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir.1999). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir.1999), *cert. denied,* 530 U.S. 1234 (2000). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 378 (7th Cir.1988).

However, while it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School,* 144 F.3d 448, 455 (7th Cir.1998) (*quoting Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984)). All plaintiffs-whether *pro se* or represented-must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla v. Klapper,* 743 F.Supp. 1284, 1285 (N.D.Ill.1990).

II. Facts

In line with the foregoing authorities, the following factual statement is drawn from Jones's complaint.

Jones has been seeking *pro bono* legal representation in a capital murder case from July 2000 until April 2001. During this time, he has mailed five to ten letters a week through the Cook County Jail mail room to law firms. The letters have been clearly marked privileged mail and sealed. However, this privileged mail has been opened by mail room employees.

Jones's incoming mail from the law firms to whom he has written has been opened outside of his presence and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

has been delivered to him days and sometimes weeks after the date of the postmark.

***2** Some of Jones's privileged mail has been opened, read, and stamped "return to sender, detainee discharged." Jones discovered that his privileged mail was being returned to sender when his incoming mail slowed from five to six letters a week to one or two.

Jones has made defendants aware of the situation by filing grievances. He claims that defendants have effectively halted his search for *pro bono* or any other kind of legal representation in a capitol case, which has forced him to accept legal representation from the Public Defenders' program.

Books, magazines, and stamped envelopes have been taken from his mail on different occasions. He has received books, magazines, and legal pads soiled and with pages or articles missing.

III. Analysis

Jones makes three claims: (1) that his First Amendment right of free speech and association were violated; (2) that his Sixth Amendment right of access to the courts and Sixth Amendment right to seek counsel of one's choice were violated; and (3) that items mailed to him were stolen or damaged without due process of law as required by the Fourteenth Amendment.

A. First Amendment Right of Free Speech and Association

Prison officials may open a prisoner's legal mail in his presence. *Wolff v. McDonnell,* 418 U.S. 539, 577 (1974). However, repeated instances of an inmate's legal mail being opened outside of his presence are actionable. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1431-32 (7th Cir.1996) (allegations that legal mail was repeatedly opened and sometimes stolen stated claims); *Castillo v. Cook County Mail Room Dept.,* 990 F.2d 304, 306-07 (7th Cir.1993) (allegations that inmate's legal mail was opened outside of his presence stated claim).

In regard to his outgoing mail, Jones states that he mailed five to ten privileged letters a week from July 2000 until April 2001, that is, approximately 180 to 360 privileged letters in a nine-month period. He claims that mail room employees have been opening and reading this mail. In regard to his incoming mail, Jones states that he received five to six letters a week, that is, 180 to 216 letters during the nine-month period, which slowed to one to two letters a week when his mail was being returned to sender. In his response to the motion to dismiss, Jones attached nine pieces of mail that he claims were legal mail that was opened outside of his presence.

Defendants point out in their reply that of these nine letters, only four are truly privileged. The court agrees that the two letters from the Clerk of the U.S. District Court and the letter from the Clerk of the Circuit Court of Cook County are not privileged mail, although they had been stamped "LEGAL MAIL-OPEN IN PRESENCE OF INMATE." *See Antonelli,* 81 F.3d at 1431; *Martin v.. Brewer,* 830 F.2d 76, 78 (7th Cir.1987); *Stone-El v. Fairman,* 785 F.Supp. 711, 716 (N.D.Ill.1991) (letters from the Clerk of the Court and the like are not privileged and may be opened); Tit. 20, Ill. Admin. Code, Ch. I, Subch. F, Pt. 701(f) (incoming privileged mail means mail from sources identified in subsection (e) except for clerks of courts). The letters from the United States Postal Service, the City of Chicago Department of Police, and the Attorney Registration and Disciplinary Commission also do not fit within any of the categories of privileged mail enumerated in Title 20.

FN2. Title 20, Chapter 1, Subchapter F, Part 701, of the Illinois Administrative Code reads in pertinent part:
e) Outgoing Privileged Mail
Outgoing letters from detainees to persons or organizations listed below which are clearly marked as "privileged" are considered privileged and may be sealed by the detainee prior to submission for mailing. Such letters shall not be opened by the jail staff before mailing and shall be dispatched promptly.
1) Federal or Illinois legislators; Judges of any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**
Page 3

court or the Illinois Court of Claims or clerks of courts; the Attorney General of the United States and Illinois; the Director of the Federal Bureau of Prisons; and the Governor of the State of Illinois.

2) The Director, Deputy Directors, or Assistant Deputy Directors of the Illinois Department of Corrections; the Chief of the Jail and Detention Standards Unit of the Illinois Department of Corrections; members of the Illinois Prisoner Review Board; and county sheriffs.

3) Chief Executive Officers of the Federal Bureau of Investigation, the Drug Enforcement Administration, the Criminal Division of the Department of Justice, and the United States Customs Service.

4) The John Howard Association.

5) Registered attorneys.

6) Any organization which provides direct legal representation to detainees, but not including organizations which provide referrals to attorneys, such as bar associations.

f) Incoming Privileged Mail

Incoming privileged mail means mail from sources identified in subsection (e) of this Section except for clerks of courts. Incoming privileged mail which is clearly marked as “privileged” may be opened only for the purpose of verifying the recipient and the sender and to ascertain that nothing other than privileged mail is enclosed. Privileged mail shall be opened in the presence of the detainee.

***3** Citing *Morgan v. Montanye,* 516 F.2d 1367, 1370-71 (2nd Cir.1975), defendants argue that the opening of these four letters are isolated incidents, which state a claim of constitutional significance only if the inmate alleges he suffered some damage as a result of the interference with his mail. Defendants have a major problem with their argument: they have mushed together Jones's First Amendment right of free expression and association and his Sixth Amendment right of access to the court.

The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association, and petition. *Denius v. Dunlap,* 209 F.3d 944, 953-54 (7th Cir.2000). Jones claims that his outgoing privileged mail, in which he was seeking *pro bono* representation, has been opened and read. Although he did not attach any examples to his response, his allegations are sufficient to state a claim at this stage of the litigation. *See* *Antonelli v. Sheahan,* 81 F.3d 1422, 1431-32 (7th Cir.1996) (allegations that legal mail was opened, delayed for an inordinate amount of time and sometimes stolen was sufficient to state claim). As noted earlier, the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Considering the number of letters that Jones admits to mailing, he will need to demonstrate, not merely allege, how many of these 180 to 360 letters were actually opened and read before being sent on to the addressees.

As to Jones's incoming mail, he has attached four privileged letters that were opened outside of his presence. However, of the approximately 180 to 216 letters he received, he does not state that these were the only letters that were opened outside of his presence. Jones will be given an opportunity to demonstrate that the opening of his mail constituted an ongoing activity.

The court notes that Jones has come close to pleading himself out of court. A plaintiff can plead himself out of court by alleging additional facts showing that a conclusory allegation is not true. *Jackson v. Marion County,* 66 F.3d 151, 153-54 (7th Cir.1995); *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993), *cert. denied,* 114 S.Ct. 1837 (1994); *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992); *Greer v. Roth,* 1995 WL 476594 *1 (N.D.Ill. Aug. 9, 1995). Also, where allegations are inconsistent with a document provided by that party, the document will override the allegation. *See* *Beam v. IPCO Corp.,* 838 F.2d 242, 245 n. 3 (7th Cir.1988).

In light of the number of letters that Jones states that he mailed out and that he received, if these four letters are all that he can muster up, he will be hard pressed to demonstrate that defendants tampered with his mail. Jones relies on *Bieregu v. Reno,* 59 F.3d 1445 (3rd

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

Cir.1995). In that case, the plaintiff contended that on 15 occasions, legal mail was opened outside his presence, and he supplied evidence of five instances during a three-month period in which his legal mail was opened. *Id.* at 1452. The opinion does not reveal how many letters the plaintiff actually mailed or received or what kinds of procedures were in place for dealing with inmates' mail. Likewise, in *Castillo v. Cook County Mail Room Department,* 990 F.2d 304, 306 (7th Cir.1993), the plaintiff alleged that three privileged letters had been opened in a nine-month period. The Court of Appeals reflected that a fact-finder faced with this meager record could not determine whether all of the plaintiff's mail had been opened or merely a fraction. On a more developed record, Jones will need to demonstrate that the alleged tampering with his legal mail went far beyond a few isolated instances.

***4** The court accordingly denies defendants' motion to dismiss as to this claim.

B. Sixth Amendment Right of Access to the Courts and Sixth Amendment Right to Seek Counsel of One's Choice

Prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977). In order to state a claim, a prisoner must demonstrate that the deprivation he suffered hindered his efforts to pursue a legal claim and resulted in actual injury. *Lewis v. Casey,* 518 U.S. 343, 351 (1996) (an injury exists, for example, where inadequacies at the law library might cause a plaintiff's complaint to be dismissed for failure to satisfy some technical requirement, or where he was unable even to file a complaint).

Jones claims that he was effectively halted in his search for *pro bono* representation and thus was forced to accept legal representation from the Office of the Public Defender.

"[A] defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." *Wheat v. United States,* 486 U.S.153, 159 (1988). Thus, the right to counsel of choice does not extend to an indigent receiving public representation. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 (1989); *United States v. Childress,* 58 F.3d 693, 736 (D.C.Cir.1995), *cert. denied,* 516 U.S. 1098 (1996). However, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." See *Caplin,* 491 U.S. at 624-25.

Although the court has been unable to locate any case law discussing an indigent criminal defendant's right to seek *pro bono* counsel, it would appear that such a right would flow from the Sixth Amendment. The court emphasizes that the right to seek *pro bono* counsel does not translate into a right to be represented by counsel of one's choice if the indigent criminal defendant is unsuccessful in his search. In light of *Lewis v. Casey,* Jones will need to demonstrate actual prejudice to his search for *pro bono* representation. Considering the number of letters that Jones admits to mailing and the number of responses he received, this will be a high burden. Jones will have to come forward with more than speculation that he could have secured *pro bono* representation if no mishaps had happened to either his outgoing or incoming mail. However, at this stage of the litigation, the court finds it premature to dismiss this claim.

FN3. Presumably all the lawyers and firms that Jones approached and whose responses he received declined to represent him or else he would not have been forced to accept representation from the Office of the Public Defender.

The court accordingly denies defendants' motion to dismiss as to this claim.

C. Loss of Property

Jones claims that books, magazines, and stamped envelopes have been taken from his mail on different

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**
Page 5

occasions and that he has received books, magazines, and legal pads in a damaged condition. A loss of property, such as alleged here, does not constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment if the government provides an adequate postdeprivation remedy for the loss. *See Hudson v. Palmer,* 468 U .S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 543-44 (1981). Illinois, in fact, provides a remedy for the tort of conversion. See 705 ILCS 505/8(d)(1999); *Clark v. Stahl,* 2000 WL 631306 (N.D.Ill.); *Heimberger v. Village of Chebanse,* 124 Ill.App.3d. 310 (1984). Therefore, any Section 1983 claim regarding the items allegedly taken or damaged cannot stand. *See Bullock v. Barham,* 957 F.Supp. 154, 157 (N.D.Ill.1997); *Slaughter v. Anderson,* 673 F.Supp. 929, 930 (N.D.Ill.1987).

***5** The court accordingly grants defendants' motion to dismiss as to this claim.

D. Official Capacity Liability

Defendants argue next that even if the court finds that Jones has stated a claim of constitutional magnitude, they can be held liable in neither their official nor individual capacities.

As defendants pointed out in their motion to dismiss, Jones does not specify whether he is suing defendants in either their official or individual capacities, or both. Based on the presumption in *Baker v. City of Chicago Police Department,* No. 99 C 1821 2000 WL 556619 (N.D.Ill.), defendants addressed both defendants; official and individual capacities.

FN4. When a plaintiff fails to indicate whether he is suing defendants in their individual or official capacities or both, normally there is a presumption that complaints against public officials are official capacity claims. *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985). This presumption is overcome when it is clear that the *pro se* plaintiff may not understand the technicalities of pleading Section 1983 liability. *See Hill v. Shelander,* 924 F.2d 1370, 1373 (7th Cir.1991).

An official capacity claim is, in essence, a claim against the governmental entity that employs the defendant. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). Liability under 42 U.S.C. § 1983 can be imposed on governmental entities only if the underlying constitutional deprivation resulted from the execution of an official custom, policy or practice. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694 (1978). There are three ways in which a municipality can be found to have violated a person's civil rights through its policy or custom: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that is not authorized by written law or express municipal policy but is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy-making authority. *See Baxter v. Vigo Co. Sch. Corp.,* 26 F.3d 728, 734-35 (7th Cir.1994).

Jones argues that the repeated opening of his legal mail outside his presence constituted a widespread practice. If Jones is able to demonstrate at a later time that not only his legal mail but also all legal mail in general was deliberately tampered with or that no procedures were in place to deal with an inadvertent opening of legal mail, then he conceivably could hold defendants liable in their official capacities. The court accordingly will not dismiss the official capacity claim against defendants at this time.

E. Individual Capacity Liability

Individuals cannot be held liable in a Section 1983 action unless they caused or participated in the alleged constitutional deprivation. *Vance v. Washington,* 97 F.3d 987, 991 (7th Cir.1996), *cert. denied,* 520 U.S. 1230 (1997); *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995); *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir.1986) (*citing Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983)). Supervisors and others in authority also cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

doctrine of *respondeat superior* because that doctrine does not apply to § 1983 actions. *See Pacelli v. DeVito,* 972 F.2d 871, 877 (7th Cir.1992); *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988).

***6** However, to survive a motion to dismiss, "a pleading must only contain enough to 'allow the court and the defendant to understand the gravamen of the plaintiff's complaint,' " *Payton v. Rush Presbyterian-St. Luke's Med.* Ctr., 184 F.3d 623, 627 (7th Cir.1999) (*citing Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996)). *Antonelli v. Sheahan,* 81 F.3d 1422 (7th Cir.1996), gives further guidance as to whether Jones has sufficiently linked the defendants to the opening of his legal mail. In *Antonelli,* the Seventh Circuit recognized that high level officials cannot be held liable in their individual capacities by virtue of the doctrine of *respondeat superior* and explained that high level officials normally cannot be held liable for "clearly localized, non-systemic violations." *Id.* at 1428-29. However, high level officials are expected to have personal responsibility for systemic conditions. *Id.* at 1429.

At this stage of the litigation, it is difficult to tell if the problem is non-systemic or systemic. If unidentified employees are intentionally opening and reading Jones's legal mail, then it is clearly a non-systemic problem. If proper procedures have not been set up and are not being enforced for dealing with the large volume of mail that enters and leaves Cook County Jail, then it is clearly a systemic problem. The court accordingly finds it premature to dismiss any of the defendants at this time. Moreover, if the problem turns out to be unidentified employees who intentionally opened and read Jones's mail, then the supervisors will be in the best position to identify these employees. *See Antonelli,* 81 F.3d at 1428, *citing Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir.1981).

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. It is granted as to Jones's claim of stolen and damaged mail. It is denied as to Jones's claims that his First Amendment right of free speech and association and his Sixth Amendment right of access to the courts and Sixth Amendment right to seek counsel of one's choice were violated. It is denied as to defendants' claim that they should not be held liable in either their official or individual liabilities.

Defendants are given 20 days to answer or otherwise plead to the remaining claims in the complaint.

N.D.Ill.,2002.
Jones v. Sheahan
Not Reported in F.Supp.2d, 2002 WL 959814 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:01CV06548 (Docket) (Aug. 31, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on May 8, 2006, I electronically filed this **MOTION** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following individuals by the means indicated:

Thomas J. Allingham II, Esq.
Robert S. Saunders, Esq.
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(Via CM/ECF)

John D. Balaguer, Esq.
824 Market St., Suite 902
P.O. Box 709
Wilmington, DE 19899
(Via CM/ECF)

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**