# EXHIBIT D



Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 1558531 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
TRUEPOSITION, INC. & KSI, INC., Plaintiffs/
Counterclaim Defendants,
v.
ALLEN TELECOM, INC. Defendant/
Counterclaim Plaintiff.
**No. CIV.A.01-823 GMS.**

July 16, 2002.

Motion was filed to amend patent infringement complaint to add claims of infringement regarding four additional patents relating to the same subject matter. The District Court, Sleet, J., held that amendment was not precluded on grounds of bad faith or prejudice to defendant.

Motion granted.

West Headnotes

**[1] Patents 291 ☞310.11**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k309 Pleading
       291k310.11 k. Amended and
Supplemental Pleadings. Most Cited Cases
Motion to amend patent infringement complaint to add claims of infringement regarding four additional patents relating to the same subject matter was not in bad faith, where it was in compliance with the deadline imposed by the scheduling order, despite contentions that plaintiff filed its initial complaint with the knowledge that the asserted patents were invalid and that it sought discovery of accused products in connection with patents that were not mentioned in the complaint. Fed.Rules Civ.Proc. Rule 15(a), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞834**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(E) Amendments
      170Ak834 k. Injustice or Prejudice. Most
Cited Cases
The scope of the court's inquiry as to bad faith on motion to amend is limited to whether the motion to amend itself is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith, and inquiry focuses on the plaintiff's motives for not amending the complaint earlier. Fed.Rules Civ.Proc. Rule 15(a), 28 U.S.C.A

.

**[3] Patents 291 ☞310.11**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k309 Pleading
       291k310.11 k. Amended and
Supplemental Pleadings. Most Cited Cases
Amendment of patent infringement complaint to add claims of infringement regarding four additional patents was not precluded on ground of prejudice to defendant, despite contention that amendment would increase the complexity of the action and unnecessarily delay its conclusion to the prejudice of defendant's business relationships, where discovery was in its earliest stages, the patents which plaintiff sought to add were substantially similar to the patents contained in the original complaint, and it would be economically beneficial to the parties to resolve all the issues in a single proceeding, as well as being in the interest of judicial economy. Fed.Rules Civ.Proc. Rule 15(a), 28 U.S.C.A.

MEMORANDUM AND ORDER
SLEET, District J.

I. INTRODUCTION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2002 WL 1558531 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**\*1** On December 11, 2001, the plaintiffs, Trueposition, Inc. and KSI, Inc. (collectively " Trueposition") filed a complaint against the defendant, Allen Telecom, Inc. ("Allen"). In the complaint, Trueposition alleges that Allen has infringed three of its patents, namely U.S. Patent No. 4,728,959 ("the '959 patent"), U.S. Patent No. 6,108,555 ("the '555 patent"), and U.S. Patent No. 6,119,013 ("the '013 patent"). Each of these patents discloses a technology for locating cellular phones.

The court held a scheduling conference on March 7, 2002. During the scheduling conference, Trueposition asked the court to set a July 15, 2002 deadline for filing motions to amend. Trueposition stated that they needed until that time in order to complete "adequate discovery to determine whether we've asserted all the patents that we should." (D.I. 20, March 7, 2002 Scheduling Conference Transcript at 3:17-4:20.) In its April 3, 2002 scheduling order, the court set a May 31, 2002 deadline for motions to amend pleadings. The case is still in early stages of discovery, with fact discovery related to liability scheduled to close on November 1, 2002. The other stages of discovery have not yet commenced.

Presently before the court is Trueposition's motion to amend the complaint, which was filed on May 31, 2002 in accordance with the deadline set by the court. Trueposition seeks to add claims of infringement regarding four additional Trueposition patents. The four newly asserted patents also disclose technology for locating cellular phones. Allen contends that the motion should be denied because Trueposition has acted in bad faith and Allen will be prejudiced by the amendment. The court finds that Trueposition has not acted in bad faith and Allen will not be prejudiced by the proposed amendment. Therefore, the court will grant Trueposition's motion to amend the complaint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint "by leave of court . .. and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Although the trial court has discretion to grant or deny leave to amend, leave should be freely granted in accordance with Rule 15(a) unless there is an apparent or declared reason for denial. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Sufficient reasons include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of amendment. *Foman,* 371 U.S. at 182.

## III. DISCUSSION

Allen argues that leave to amend the complaint should be denied because Trueposition is acting in bad faith, and that granting leave to amend would be highly prejudicial to Allen.[FN1] The court will now address each of these assertions in turn.

> FN1. Allen has not made any argument suggesting that either undue delay or futility would support denial of the motion. Furthermore, the record reveals no basis for such contentions. Therefore, the court will not consider these factors.

### A. Bad Faith

**[1][2]** Allen argues that Trueposition has acted in bad faith for two reasons. First, Allen claims that Trueposition filed its initial complaint with the knowledge that the asserted patents were invalid. Second, Allen alleges that Trueposition sought discovery of accused products in connection with patents that were not mentioned in the complaint. Regardless of whether these allegations are true, they are not relevant to the court's determination of whether leave to amend should be granted.

**\*2** Allen has misconstrued the meaning of "bad faith," as it was contextualized in *Foman.* When considering a motion for leave to amend, the court should grant leave unless "the *motion* is being made in bad faith." *U.S. ex rel. B & R, Inc. v. Donald Lake Const .,* 19 F.Supp.2d 217, 220 (D.Del.1998) (emphasis added). The scope of the court's inquiry

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 1558531 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

is therefore limited to whether the motion to amend *itself* is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 614 (3d Cir.1987) ("[T]he question ... of bad faith, requires that we focus on the plaintiff's motives for not amending their complaint earlier"). *See also Foman,* 371 U.S. at 182. (coupling "bad faith" together with "dilatory motive").

Allen has presented no evidence which would support the claim that Trueposition's motion to amend was made in bad faith or with dilatory motive. To the contrary, the record indicates that Trueposition filed its motion to amend in compliance with the May 31 deadline imposed by the court. Therefore, the court will not deny the motion to amend on the basis of bad faith.

### B. Prejudice

[3] Allen argues that the addition of four patents to this action will increase the complexity of this action and unnecessarily delay its conclusion to the prejudice of Allen's business relationships. These vague and mild assertions of prejudice do not amount to the level of prejudice necessary under current law. To show undue prejudice, Allen must demonstrate that it will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence" unless leave to amend is denied. *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989).

Since discovery is in its earliest stages, amendment of the complaint will not deprive Allen of the opportunity to present facts or evidence or otherwise prepare and present its case. In fact, since the patents which Trueposition seeks to add are substantially similar to the patents contained in the original complaint, it would be economically beneficial to the parties to resolve all the issues in a single proceeding. Allen has thus failed to demonstrate that it will be unduly prejudiced by Trueposition's proposed amendments.

Moreover, granting leave to amend will benefit the

court. Where the additional patents are closely related to the already asserted patents and the patents involve similar technology, it is clearly in the interest of judicial economy to dispose of all of the claims between the parties in one proceeding. *See Jenn-Air Products Co. v.. Penn Ventilator, Inc.,* 283 F.Supp. 591, 594 (E.D.Pa.1968). Since the accused products are the same, the technology is the same, and the parties remain the same, the facts and the issues will substantially overlap. Granting the motion to amend will therefore enable the court to address all of these related issues simultaneously. Conversely, if the motion to amend were denied, Trueposition could institute a second action against Allen for infringement of the additional patents. The court, therefore, finds that judicial economy weighs in favor of granting the motion to amend.

### IV. CONCLUSION

**\*3** The court concludes that Trueposition has not acted in bad faith in bringing this motion. The court further finds that since discovery is still in its earliest stages and the newly asserted patents relate to the same accused products and technology as the originally asserted patents, Allen will not be unduly prejudiced if Trueposition's motion to amend is granted.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. Trueposition's motion seeking leave to file an amended complaint (D.I.37) is GRANTED.

D.Del.,2002.
Trueposition, Inc. v. Allen Telecom, Inc.
Not Reported in F.Supp.2d, 2002 WL 1558531 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E



Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Thomas B. MONAHAN, Mayna Santiago, Danny
Silva, Andrea Janvier and All Other Similarly
Situated Employees of the Wilmington Police
Department, Plaintiffs,
v.
CITY OF WILMINGTON, a political subdivision
of the State of Delaware, Captain Gilbert Howell,
individually and in his official capacity, Inspector
James Stallings, individually and in his official
capacity, Chief Michael Boykin, individually and in
his official capacity, Corporate Black Employees
Network, an unincorporated association, Linda
Morris, Lynn Tucker-King, and Wilmington
Fraternal Order of Police, Lodge # 1, Defendants.
**No. Civ.A. 00-505 JJF.**

Jan. 30, 2004.

Victor F. Battaglia, Sr., of Biggs & Battaglia,
Wilmington, Delaware, for Plaintiffs.
Jan A.T. van Amerongen, Jr., of Jan A.T. Van
Amerongen, LLC, Wilmington, Delaware, for
Defendants Michael Boykin and James Stallings.
William W. Erhart, of William W. Erhart, P.A.,
Wilmington, Delaware, for Defendant Gilbert
Howell.
Daniel B. Rath, of Landis, Rath & Cobb, LLP,
Wilmington, Delaware, for Defendant City of
Wilmington.
Kathleen Furey McDonough, of Potter Anderson &
Corroon, LLP, Wilmington, Delaware, for
Defendants Corporate Black Employees, Linda
morris, and Lynn Tucker King.
Jeffrey M. Weiner, of Law Offices of Jeffrey M.
Weiner, Wilmington, Delaware, for Defendant
Wilmington Fraternal Order of Police, Lode # 1.

*OPINION*

FARNAN, J.

*1 Presently before the Court is Plaintiffs' Motion
To Amend Complaint And Prospective Plaintiffs'
Motion For Joinder And Intervention. (D.I.74.) For
the following reasons, the Court will grant
Plaintiffs' Motion in part.

BACKGROUND

On July 23, 2001, by Memorandum Opinion and
Order, the Court denied Plaintiffs' motion for class
certification. Plaintiffs moved for a stay pending
appeal of the Court's Order, which the Court
granted. On appeal, the Third Circuit affirmed the
Court's denial of class certification and the Court
subsequently lifted the stay on March 28, 2003. By
their Motion (D.I.74), Plaintiffs request the Court to
grant them leave to amend their Complaint to add
prospective plaintiffs (the "proposed plaintiffs") to
the instant action.

DISCUSSION

I. Parties' Contentions

Plaintiffs contend that under the liberal standards
provided by Federal Rule of Civil Procedure 15, the
Court should grant their Motion. Plaintiffs contend
that their amendment is not futile because the
tolling of the statute of limitations continued from
the time they filed their Complaint through appeal.
Further, Plaintiffs contend that even without
continued tolling during appeal, the Court should
grant leave to amend because under Rule 15(c) the
proposed plaintiffs' claims arose from the same
transactions set forth in the Complaint. Plaintiffs
contend that Defendants had notice of the proposed
plaintiffs.

In response, Defendants contend that the proposed
plaintiffs' claims are time barred under the
applicable statute of limitations periods, and thus,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

should be denied as futile. Defendants contend that the tolling of the statute of limitations for the proposed plaintiffs' claims ended once the Court denied Plaintiffs' class certification. Defendants also contend that the Court should not permit an amendment adding the proposed plaintiffs pursuant to Rule 15(c) because Plaintiffs cannot demonstrate that, but for a mistake, the proposed plaintiffs would have joined the instant lawsuit. In addition, Defendants contend they did not have notice of the proposed plaintiffs, and therefore, would suffer undue prejudice if the Court grants Plaintiffs' Motion.

### II. Legal Standard

Federal Rule of Civil Procedure 15 permits a court to freely grant a party leave to amend his or her pleadings "when justice so requires." Fed.R.Civ.P. 15. The decision of whether to grant a motion to amend is within the discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). However, a court should deny leave to amend if the moving party is guilty of undue delay, bad faith, dilatory motive, prejudice, or his or her amended claims are futile. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Defendants contend that the Court should deny Plaintiffs' Motion because it is both unduly prejudicial and futile.

### III. Analysis

#### A. *Whether The Proposed Plaintiffs' Claims Should Be Denied As Futile*

**\*2** Defendants contend the Court should deny Plaintiffs' Motion as futile because the proposed plaintiffs' claims are untimely. An amendment to a pleading is deemed futile if it could not withstand a motion to dismiss. *Satellite Fin. Planning Corp. v. First Nat'l Bank,* 646 F.Supp. 118, 120 (D.Del.1986).

#### 1. *Whether The Statute Of Limitations Tolled*

#### *Following The Court's Stay Of The Action And Pending Appeal*

It is settled that the filing of a class action complaint tolls the statute of limitations period for putative plaintiffs. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 2395-96 (1983). However, at issue in the instant action is whether the statute of limitations continues to toll during an appeal of a district court's denial of class certification. Defendants contend that the statute of limitations on the proposed plaintiffs' claims resumed following the Court's denial of class certification. In support of their contention, Defendants rely upon the Third Circuit's decision in *Nelson v. county of Allegheny,* 60 F.3d 1010 (3d Cir.1995). For the following reasons, the Court finds Defendants' reliance upon *Nelson* to be misplaced.

In *Nelson,* the Third Circuit held that the statute of limitations does not continue to toll pending an appeal of a district court's denial of class certification. *Id.* at 1013. The Third Circuit reasoned that, as distinguished from the relevant state law that treated a denial of class certification to be a final order, a "[d]enial of class certification by a federal court ... is interlocutory and ordinarily not immediately appealable." *Id.* (citation omitted). Therefore, the Third Circuit concluded that permitting the statute of limitations to toll until final resolution on appeal of *all claims* would "result in a substantial extension of the tolling period" that would violate the state's intent in limiting certain actions. *Id.; see also Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1390 (11th Cir.1998) (characterizing as unreasonable the tolling of the statute of limitations pending an appeal of a denial of class certification prior to the enactment of Rule 23(f) because of the "uncommon and rarely successful" nature of interlocutory appeals).

In December of 1998, subsequent to *Nelson,* subsection (f) of Rule 23 was enacted in order to add a "permissive interlocutory appeal procedure." Fed.R.Civ.P. 23(f) advisory committee notes to the 1998 Amendments. Although the Third Circuit has not addressed the impact of subsection (f) on the continued vitality of *Nelson,* in the Court's view,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3

Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

subsection (f) grants a district court the ability to toll the statute of limitations pending an appeal of its denial of class certification, provided the appealing party requests and is granted a stay by the district court.

In *Nat'l Asbestos Workers Medical Fund v. Philip Morris, Inc.,* 2000 WL 1424931 (E.D.N.Y. Sept. 26, 2000), the court evaluated the effect of Rule 23(f). The court noted that Rule 23(f) "was designed to accommodate the need for quick appellate review of class certification decisions." *Id.* at *2 (citation omitted). Therefore, unlike prior practice, Rule 23(f) provides a reasonable basis for putative class plaintiffs to continue to rely upon a filed class action to redress their individual claims pending an appeal of a denial of class certification. *Id.; Armstrong,* 138 F.3d at 1390 n. 35 (noting that then proposed Rule 23(f) may "significantly increase[ ] the frequency of interlocutory appeals of class certification orders," and therefore, "might allow continued tolling of statutes of limitations during the pendency of an appeal"). Based upon these considerations, the Court considers the danger resulting from "a substantial extension of the tolling period," *Nelson,* 60 F.3d at 1014, to be significantly reduced. The Court agrees with the rationale put forth in *Nat'l Asbestos,* and concludes that the enactment of Rule 23(f) signals the now "permissive" nature of class certification appeals. Accordingly, the Court concludes that its stay of the proceedings pending appeal of the denial of class certification continued the tolling of the statute of limitations for the proposed plaintiffs' claims.

### 2. *Whether The Proposed Plaintiffs' Claims Are Futile Because They Are Untimely*

*3 Section 1981, 1983, and 1985 claims are characterized as personal injury claims, and therefore, courts apply relevant state statute of limitations provisions. *Calhwood v. Questel,* 883 F.2d 272, 274 (3d Cir.1989). Delaware law provides a two year statute of limitations for personal injury claims. 10 Del. C. § 8119. Section 1986 claims have a one year statute of limitations. 42 U.S.C. § 1986. In a Title VII action, if the Equal Employment Opportunity Commission (the "EEOC"

) has not filed an action in one hundred-eighty days from the filing of a charge, a plaintiff has ninety days from the receipt of a notice of a right to sue upon which to file suit. 42 U.S.C. § 2000e-5(f)(1); *Figueroa v. Buccaneer Hotel Inc.,* 188 F.3d 172, 176 (3d Cir.1999) (stating that courts treat the ninety day requirement as a statute of limitations period). In Delaware, a breach of contract claim has a three year statute of limitations period. 10 Del. C. § 8106.

#### a. *The Proposed Plaintiffs' Section 1981, 1983, And 1985 Claims*

In their Amended Complaint (D.I.74), the proposed plaintiffs allege that Defendants violated their rights on or about two time periods, July 15, 1998 and April 26, 2000. *Id.* at 9, 10. Based upon the Court's calculations, the Court finds that the proposed plaintiffs' Section 1981, 1983, and 1985 claims alleged to have occurred on July 15, 1998 are timely.[FN1] Therefore, the Court finds that permitting Plaintiffs' to amend their Complaint and add the proposed plaintiffs' Section 1981, 1983, and 1985 claims alleged to have occurred in 1998 and 2000 will not lead to the amendment of futile claims.

> FN1. In computing the time for the statute of limitations, the Court included only the time from the Court's denial of Plaintiffs' certification to the day Plaintiffs filed their motion to stay. The Court did not add the time between the date of filing to the date of the Court's grant of the stay.

#### b. *The Proposed Plaintiffs' Section 1986 Claims*

Based upon the Court's calculations, the proposed plaintiffs' Section 1986 claims arising from the denial of employment in 1998 are time barred, and therefore, the Court will deny an amendment adding these claims because permitting such amendment would be futile.

#### c. *The Proposed Plaintiffs' Title VII Claims*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

Based upon the Court's calculations, Ms. Buhrman's, Mr. Chaffin's, and Mr. Chorlton's Title VII claims were filed within the statute of limitations period provided by 42 U.S.C. § 2000e-5(f)(1), and therefore, are not futile. However, without a relation back to the filing of the Complaint under Rule 15(c)(3), Mr. Bluestein's and Mr. Browne's Title VII claims are untimely.

To amerliorate the running of the statute of limitations, Rule 15(c)(3) imposes three conditions, all of which must be met for a party to successfully relate back an amended complaint adding a new plaintiff. *See Singletary v. Pennsylvania Depot of Corrections,* 266 F.3d 186, 193-94 (3d Cir.2001) (describing the three elements of Rule 15(c)(3)); *see also Nelson,* 60 F.3d at 1014 n. 7 (noting that the relation back of amendments applies equally to amendments changing and adding plaintiffs). The three elements of Rule 15(c)(3) are whether 1) the claim arose out of the same conduct, transaction, or occurrence set forth in the original pleading, 2) whether the defendant had notice of the action within the period provided by Rule 4(m) and will not be prejudiced in maintaining a defense, and 3) the newly named plaintiffs failed to add their names to the complaint because of a mistake. Fed.R.Civ.P. 15(c)(3); *Nelson,* 60 F.3d at 1015.

**\*4** In the instant case, only the second and third elements are disputed. As discussed below, *see infra* Section III(B), the Court finds that in the circumstances of this case Defendants had notice of Mr. Browne and Mr. Bluestein and will not be prejudiced in maintaining a defense to their Title VII claims. With respect to the third element, the Court finds that the facts in the instant case demonstrate that but for Mr. Bluestein's and Mr. Browne's mistake, they would have been named in the Complaint. Fed.R.Civ.P. 15(c)(3)(B). The Complaint was filed as a class action and it was not until after the Court denied class certification and subsequent appeal that Mr. Browne and Mr. Bluestein could have reasonably known that a class action was the incorrect method by which to pursue their claims. Therefore, the Court finds that Mr. Bluestein's and Mr. Browne's failure to add their names to the Complaint was due to mistake. In sum,

the Court concludes that under Rule 15(c)(3) Mr. Bluestein's and Mr. Browne's Title VII claims are entitled to relate back to the filing of the Complaint. Accordingly, their Title VII claims are not futile.

### d. *The Proposed Plaintiffs' Breach Of Contract Claims*

Based upon the Court's conclusion that the stay pending appeal tolled the statute of limitations, the Court finds that the proposed plaintiffs' breach of contract claims are timely.

### B. *Whether Defendants' Are Unduly Prejudiced By The Proposed Plaintiffs' Claims*

Defendants contend that the Court should deny Plaintiffs' Motion because they had no notice of the proposed plaintiffs, and therefore, will be unduly prejudiced if the Court grants Plaintiffs' Motion. In the Third Circuit, a party opposing a motion to amend a complaint "must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." ' *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) (citations omitted). Applying the *Bechtel* standard, the Court finds Defendants' unsupported lack of notice objection to be unconvincing, particularly because the Complaint was filed as a class action. A class action complaint obviously places defendants on notice of other potential plaintiffs alleging substantially similar causes of action. Further, the proposed plaintiffs have not plead any claims that were not included in the Complaint; therefore, the Court finds that Defendants will not be unduly prejudiced in maintaining new defenses.

### CONCLUSION

For the reasons discussed, the Court will grant Plaintiffs' Motion to Amend (D.I.74) with regard to 1) the proposed plaintiffs' Section 1981, 1983, and 1985 claims; 2) the proposed plaintiffs' Section 1986

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

claims from the year 2000; and 3) the proposed plaintiffs' Title VII claims. The remaining claims in Plaintiffs' Motion will be denied.

An appropriate Order will be entered.

### *ORDER*

**\*5** At Wilmington, this 30th day of January, 2004, for the reasons discussed in the Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiffs' Motion To Amend Complaint And Prospective Plaintiffs' Motion For Joinder And Intervention (D.I.74) is *GRANTED* with respect to:
1) The proposed plaintiffs' Section 1981, 1983, and 1985 claims;
2) The proposed plaintiffs' Section 1986 claims from the year 2000; and
3) The proposed plaintiffs' Title VII claims.
4) The remaining claims in Plaintiffs' Motion (D.I.74) are denied.

D.Del.,2004.
Monahan v. City of Wilmington
Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00505 (Docket) (May. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F



Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
**(Cite as: Not Reported in F.Supp.2d)**

C

United States District Court, D. Delaware.
CENTERFORCE TECHNOLOGIES, INC.,
Plaintiff,
v.
AUSTIN LOGISTICS INC., Defendant.
**No. CIV. A. 99-243 MMS.**

March 10, 2000.

Patricia Smink Rogowski, Esquire, and Francis
DiGiovanni, Esquire, Connolly, Bove, Lodge &
Hutz LLP, Wilmington, Delaware; Of Counsel:
William E. Wallace III, Esquire, Gregory S. Lewis,
Esquire, Tyler R. Goodwyn, IV, Esquire, Margaret
S. Izzo, Esquire, and Melvin L. Barnes, Jr., Esquire,
of Morgan, Lewis & Bockius LLP, Washington,
D.C.; Attorneys for Plaintiff.
Richard D. Kirk, Esquire, and Gretchen A. Bender,
Esquire, of Morris, James, Hitchens & Williams
LLP, Wilmington, Delaware; Of Counsel: Robert
Neuner, Esquire, of Baker & Botts, L.L.P., New
York, New York, Patrick O. Keel, Esquire, and
Robert W. Holland, Esquire, Baker & Botts, L.L.P.,
Austin, Texas; Attorneys for Defendant.

MEMORANDUM OPINION
SCHWARTZ, Senior District J.

I. Introduction

**\*1** CenterForce Technologies, Inc. ("CenterForce")
is the owner by assignment of three patents relating
to methods for optimizing telephone campaigns. Its
U.S. Patent No. 5,436,965 (the '965 patent), filed on
November 16, 1993 and entitled "Method and
System for Optimization of Telephone Contact
Campaigns," issued on July 25, 1995. CenterForce
filed a continuation-in-part application of the '965
patent application on June 7, 1995, which resulted
in the second patent, U.S. Patent No. 5,621,790 (the
'790 patent), issued on April 15, 1997. On April 14,

1997, CenterForce filed a continuation of the '790
patent application, which resulted in the issuance of
the third patent, U.S. Patent No. 5,889,799 (the '799
patent), on March 30, 1999.

CenterForce filed a complaint against Austin
Logistics Inc. ("ALI") on April 13, 1999, alleging
that ALI had infringed the '799 patent, that ALI
engaged in false patent marking, and that ALI made
false and misleading representations in violation of
the Lanham Act, 15 U.S.C. § 1051, *et seq.* Docket
Item ("D.I.") 1. ALI filed an answer and
counterclaim on May 24, denying CenterForce's
allegations and seeking a declaratory judgment that
the '799 patent is invalid, unenforceable, and not
infringed. D.I. 14. ALI subsequently amended its
counterclaim to assert a Lanham Act claim against
CenterForce. D.I. 46.

On October 26, 1999, CenterForce moved for leave
to file an amended complaint. D.I. 80. In the
amended complaint, CenterForce seeks to allege
infringement of the '965 patent, and to add a claim
for willful infringement of both the '799 and '965
patents. CenterForce also seeks recovery of treble
damages. ALI opposes CenterForce's motion to
amend. For the reasons set forth below, the Court
will grant CenterForce's motion to amend the
complaint.

II. Factual Background

The three CenterForce patents describe methods
and systems for enhancing telephone contact
campaigns by scheduling calls based on
probabilities of right party contact with the targeted
individual in order to enhance the rate of correct
party contact and operator productivity.
CenterForce markets and sells its telephone
scheduling systems under the name "Optimizer," to,
for example, debt collection and telemarketing
firms.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
**(Cite as: Not Reported in F.Supp.2d)**

ALI is also in the business of selling call optimization systems. ALI markets its "CallTech" system, previously known as "Stalker," in competition with CenterForce's Optimizer system.

CenterForce's president and chief operating officer, Robert F. Kelly, learned of the Stalker system as early as November 1994 when he was employed by EIS International. Kelly had received two documents, a facsimile of a brochure cover or data sheet describing Stalker and a two-page general product overview. D.I. 91, at B-9-11. Early in 1995, Kelly met with representatives of ALI to discuss ALI's product development generally, but "no technical specifics" were discussed. *Id.* at B-15.

In July 1995, representatives of CenterForce, then known as Automated Systems and Programming, Inc. ("ASPI"), obtained a copy of a Stalker brochure at a trade show. *Id.* at B-23. By a letter dated July 28, 1995, CenterForce's attorney wrote to ALI stating that the Stalker system as described in the brochure was "very similar to ASPI's [CenterForce's] Campaign Optimizer product." *Id.* at B-25. The letter went on to assert that "important aspects of the Campaign Optimizer are protected by the ['965 patent]" and that CenterForce had another patent application pending. *Id.* The letter closed with a warning that "ASPI [CenterForce] intends to enforce its patent rights vigorously and will not license potential competitors such as ALI. ALI should ensure that its products do not incorporate ASPI's [CenterForce's] patented technology." *Id.*

**\*2** ALI's attorney responded in a letter dated October 12, 1995 asserting that "the ALI system cannot be considered as conflicting with [the] 965 Patent." *Id.* at B-34. The letter stated in pertinent part:
Although ALI's scheduling system is proprietary and I can, therefore, not disclose to you specifically what ALI's system does, I can set forth for you generally what the ALI system does not do relative to your client's 965 Patent. First, the ALI process does not prioritize accounts into relative priorities according to contact priority. The ALI system also does not allocate accounts in descending order of contact probability. Also, the ALI system does not create demographic profiles representative of

contact probability.

*Id.* Enclosed with the letter were several pages of additional descriptive information including flow charts. *Id.* at B-36-43.

On January 30, 1996, CenterForce's attorney responded to the October 12, 1995 letter, acknowledging receipt of the materials describing Stalker and stating:
These materials, like the publicly-available information about the Stalker product that we reviewed earlier, suggest that the Stalker infringes claims of ASPI's [CenterForce's] U.S. Patent No. 5,436,965. However, you decline to provide further detail on the operation of the product on the grounds that the information is proprietary, and we lack sufficient independent information about the product to form a definitive infringement conclusion. We must therefore rely on the representations in your October 12 letter that the product does not meet the claim limitations that you identified.

*Id.* at B-44. The letter concluded by stating that CenterForce would "let this matter rest" until its next patent issued or "until [CenterForce] receive [d] additional information indicating that the '965 patent is infringed." *Id.*

On June 4, 1996, ALI's attorney wrote to CenterForce's attorney, expressing concern that certain CenterForce representatives had been representing in the marketplace that ALI's CallTech product infringed a CenterForce patent and demanding that such representations cease. CenterForce responded by letter dated June 25, 1996, stating that "in light of ALI's published material and your May 10 letter, and since ALI has refused to provide sufficient information to permit us to perform a definitive infringement analysis, [CenterForce] remains concerned that ALI is infringing one or more claims of [the '965] patent. Accordingly, [CenterForce] has expressed its concerns to others." *Id.* at B-45.

By letter dated July 7, 1997, CenterForce's attorney informed ALI that the '790 patent recently had issued. *Id.* at B-59. The letter asserted, "[m]any of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
(Cite as: Not Reported in F.Supp.2d)

the claims of the '790 patent are directed to features of CenterForce's software that were not specifically claimed in the '965 patent and which may be used in ALI's product. Other claims are directed to the same features as were claimed in the '965 patent and which CenterForce remains unsatisfied are not infringed by ALI's product." *Id.* In conclusion, CenterForce renewed its "demand that ALI explain why its CallTech product does not infringe CenterForce's patent rights." *Id.*

*3 At least one of CenterForce's salesmen continued during 1998 to make representations to customers that CenterForce had "three broad based patents" covering the Optimizer and, therefore, it was " virtually impossible for ALI to be selling the same type of product." *Id.* at B-47, 50, 57.

On September 1, 1998, ALI received a patent for its CallTech system, U.S. Patent No. 5,802,161 (the '161 patent). The patent specification references the use of "scorecards" and "characteristics" in the specification and description of the preferred embodiment. *Id.* at B-68.

On April 15, 1999, CenterForce's president wrote ALI's president, announcing the issuance of the '799 patent on March 30, 1999, and advising ALI that CenterForce had filed this suit for alleged infringement of the '799 patent. *Id.* at B-82. In August 1999 the parties exchanged responses to document requests and interrogatories, and in September and October 1999 the parties engaged in depositions.

On December 14-15, 1999, the court held a *Markman* [FN1] hearing regarding construction of disputed claim terms of the '799 patent.

    FN1. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996).

### III. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleadings by " leave of the court" and that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P.

15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997) (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 622 (1st Cir.1996)). This Rule "embodies a liberal pleading policy of the federal rules." *Barkauskie v. Indian River School Dist.,* 951 F.Supp. 519, 527 (D.Del.1996). A policy of favoring decisions on the merits, rather than on the technicalities, underlies this Rule. *Foman,* 371 U.S. at 181-82. While a trial court has the discretion to grant or deny leave to amend, leave to amend should be freely granted, as the Rule requires, unless there is sufficient reason to deny leave. *See id.* at 182; *Burlington Coat Factory,* 114 F.3d at 1434. Sufficient reasons include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, failure to cure deficiencies in former amendments, and futility of amendment. *See Foman,* 371 U.S. at 182; *Burlington Coat Factory,* 114 F.3d at 1434. The Third Circuit Court of Appeals has further elaborated on the exceptions to the policy of liberally granting leave to amend, stating that "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir.1984), *cert. denied,* 469 U.S. 1122 (1985); *see also Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 125 F.R.D. 405, 409 (D.Del.1987) ("a showing of undue prejudice or unfair disadvantage to the nonmovant is required before delay provides an adequate basis for denial" (citations omitted)). Thus, " 'prejudice to the non-moving party is the touchstone for the denial of an amendment." ' *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978)).

### IV. Discussion

*4 The Court now turns to consideration of the factors relevant [FN2] to determining whether to grant the motion to amend.[FN3]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
(Cite as: Not Reported in F.Supp.2d)

FN2. There is no indication, and ALI has made no argument, that CenterForce's proposed amendments would be futile or that, by this amendment, CenterForce seeks to cure deficiencies it failed to make in former amendments. Therefore, the Court will not further consider these factors.

FN3. As an initial matter, ALI urges that CenterForce's motion should be denied because it is not supported by any evidence, particularly affidavits of a CenterForce witness to support the assertions in the motion to amend about what CenterForce knew and when it knew it. In *Barkauskie,* 951 F.Supp. at 527-28, this Court found a letter from the plaintiff's treating psychiatrist supported her motion to amend her complaint. However, the Court knows of no authority that would require the filing of an affidavit to support a motion to amend. Moreover, as CenterForce points out, because the depositions which gave CenterForce comfort in filing the motion to amend were designated by ALI as "Attorneys Eyes Only," CenterForce's counsel could not show or discuss the contents of these depositions with CenterForce executives.

A. Undue Delay

Delay in of itself will not serve as a basis for denying a motion to amend unless the defendant is prejudiced. *See Proctor & Gamble Co.,* 125 F.R.D. at 409; *Jenn-Air Products Co., Inc. v. Penn Ventilator, Inc.,* 283 F.Supp. 591, 594 (E.D.Pa.1968). However, "[b]ecause ... a showing of long delay may ameliorate the degree of prejudice which a nonmovant must establish in order to defeat the proposed amendment," the Court will address the parties contentions regarding when CenterForce was in possession of sufficient information upon which to base a claim of infringement of the '965 patent. *Proctor & Gamble Co.,* 125 F.R.D. at 410.

CenterForce asserts that it did not unduly delay

amending the complaint to include infringement of the '965 patent, but rather quickly sought to amend when it received sufficient evidence of infringement through discovery in this case. CenterForce contends that it had concerns as early as 1995 that ALI's Stalker system, the predecessor to CallTech, infringed CenterForce's '965 patent and conveyed those concerns to ALI. D.I. 91, at B-44 & -45. However, CenterForce asserts it did not file and could not have filed a claim against ALI for infringement of the '965 patent earlier because, based on publicly available information about the Stalker product, ALI's refusal to provide additional product information on the ground such information was proprietary, and ALI's representations regarding the differences between the two products, *id.* at B-34, CenterForce could not form a definitive conclusion as to whether the product infringed the '965 patent. *Id.* at B-44 & 45. CenterForce maintains that it obtained sufficient information to form a good faith belief that ALI's products infringed the '965 patent through discovery in this case relating to the '799 infringement claim. In particular, CenterForce contends that, among the 30,000 pages of documents produced by ALI in August 1999, four technical documents relating to CallTech evidenced a possibility that ALI's CallTech infringed the '965 patent. CenterForce asserts it was not until October 4-8, 1999, however, during the depositions of ALI's President, Alexander N. Svoronos, and Vice-President, Daniel N. Duncan, that it received sufficient information regarding the functionality of the CallTech product, which furthered its understanding of the documents produced in August, to enable it to determine that CallTech infringed the '965 patent. In particular, CenterForce contends that CallTech infringes independent claim 4 and dependent claims 5 and 7 of the '965 patent, which involve the creation and use of a "demographic profile" representative of right party contact. Also after these depositions, CenterForce updated its claim chart regarding the '799 patent to assert that claim 9, which also references "demographic profile," is also infringed.

*5 ALI counters that CenterForce unduly delayed in bringing its claim for infringement of the '965 patent because it had the necessary information to make the infringement determination prior to filing the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
**(Cite as: Not Reported in F.Supp.2d)**

original complaint. In particular, ALI contends that the information CenterForce claims to have learned in discovery was already known to CenterForce through the following materials: (1) brochures on the Stalker system given to Robert Kelly in 1994; (2) a brochure on CallTech obtained by CenterForce at a trade show in 1995; (3) the October 12, 1995 letter from ALI's counsel accompanied by a product description and flow charts; and (4) ALI's '161 patent. ALI maintains these materials indicated that its system used "scorecards" and "characteristics" to determine right party contact probabilities and that CenterForce should have been well aware that the scorecards could be determined based on characteristics that included demographic data representative of right party contact.

"The issue of undue delay is inherently ambiguous. Any consideration of it frequently necessitates an inquiry into the applicability of Rule 11 [of the Federal Rules of Civil Procedure] and the incidental issues of dilatory motive, unfair surprise or bad faith. It is difficult, even through the gift of hindsight, for the Court to determine precisely when counsel possessed sufficient information upon which to base an amendment." *Proctor & Gamble Co .,* 125 F.R.D. at 411. Rule 11 mandates that upon signing a pleading, an attorney is "certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances," the claims and allegations therein are well grounded in fact and warranted by law. Fed.R.Civ.P. 11(b). CenterForce contends that it was following the requirements of Rule 11 on advice of counsel by waiting for the discovery process to reveal whether or not there was sufficient basis to assert a claim that CallTech infringed the '965 patent.

In light of Rule 11's mandate, the Court cannot conclude that CenterForce unduly delayed asserting a claim for infringement of the '965 patent. Here, correspondence between attorneys for ALI and CenterForce, beginning as early as 1995, indicates a consistent position by CenterForce that it was concerned that ALI's product infringed the '965 patent, but that it did not have sufficient information to make a definitive infringement interpretation.

ALI refused CenterForce's requests for additional information on its product, citing its proprietary nature. ALI also asserted that its product did not infringe the '965 patent, citing differences, including a representation in the October 12, 1995 letter that " the ALI system does not create demographic profiles representative of contact probability." B-34. Moreover, as far as the Court can determine, the brochures and other information available to CenterForce, including ALI's '161 patent, while indicating that the Stalker and CallTech systems used "scorecards" and "characteristics," do not explicitly reference use of demographic information in calculating contact probabilities. ALI argues that anyone with any sort of expertise in the credit collection business would understand that a credit scoring system, like ALI's product, necessary used demographic data. D.I. 134, Transcript 2/2/00, at 27-29. However, in light of the fact that ALI was clearly on notice of CenterForce's position that it did not have sufficient information to make a definitive infringement analysis, ALI's refusal to provide additional information, and ALI's explicit representation that its product did not create demographic profiles, the Court concludes CenterForce did not unduly delay in asserting the claim for infringement of the '965 patent.[FN4]

> FN4. ALI cites *DRR, L.L.C. v. Sears, Roebuck & Co.,* 171 F.R.D. 162 (D.Del.1997) to support its argument that CenterForce unduly delayed in asserting a claim for infringement of the '965 patent. The Court finds *DRR* to be distinguishable from the present case. In *DRR,* of primary importance to the court's finding of undue delay and undue prejudice was the fact that the plaintiff sought leave to amend the complaint to add a new legal theory after summary judgment had been granted, more than two and one-half years after the original complaint was filed. *Id.* at 167-68. In the present case, by contrast, fact discovery has yet to close and there have been no determinations on the merits. Moreover, in *DRR,* unlike the present case, the plaintiff offered no explanation for its failure to assert the new legal theory before

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
**(Cite as: Not Reported in F.Supp.2d)**

summary judgment was entered against it. *Id.* at 167.

### B. Undue Prejudice

*6 CenterForce contends the proposed amendment would not be prejudicial to ALI because the '965 patent is the grandparent of the '799 patent and the claims of the two patents are substantially similar. CenterForce asserts the addition of the '965 patent would not introduce any new claim terms, that extensive discovery has been taken already on the '965 patent, and, therefore, that little additional discovery will be required. Finally, CenterForce maintains it would be preferable for all concerned to dispose of the '965 patent infringement claims in one proceeding, rather than forcing CenterForce to file a separate lawsuit, given the substantial similarity between the patents, the claims involve the same infringing product, and the substantial overlap in discovery.

ALI maintains that permitting amendment of the complaint would unduly prejudice ALI because the additional claims and the additional defenses to such claims would necessitate additional discovery regarding the '965 patent and claim terms. ALI further asserts that it would have excellent grounds for defending the new claim on the basis of laches and equitable estoppel. Although ALI may have affirmative defenses to the '965 infringement claim based upon the doctrine of estoppel and laches, this can only be determined after adjudication on the merits including the required factual findings regarding the elements of these defenses. *See Jenn-Air Products Co., Inc.,* 283 F.Supp. at 594. In addition, ALI may need to conduct additional discovery related to these defenses, as well as the defense of advice of counsel to the willful infringement claim that CenterForce seeks to add.

" 'Prejudice' for the purpose of Rule 15(a) does not concern potential prejudice resulting from the nature of the claims sought to be added; it concerns only the prejudice resulting from the fact of adding new claims at a late date." *Barkauskie,* 951 F.Supp. at 528. While the Court agrees with ALI that some additional discovery will be needed, the Court does not believe this need for additional discovery

creates "undue prejudice" within the meaning of *Foman,* 371 U.S. at 182. *See id.* As was the case in *Barkauskie,* a trial date has not been set in this case, and defendants will be able to conduct discovery with respect to the additional claims and defenses. *See id.* Moreover, prejudice to ALI is diminished because the claims relate to the same product, the patents are substantially similar, and significant discovery regarding the '965 patent has been conducted already in this litigation.

ALI also maintains that any delay of the case by extending scheduling order deadlines would unduly prejudice ALI because it would extend CenterForce's ability to use this litigation "as a club against ALI in the marketplace." D.I. 90, at 14. This argument is not persuasive. Were this Court to deny CenterForce's motion to amend the complaint, CenterForce would be entitled to file a separate suit for infringement of the '965 patent (and would then, presumably, have a very good argument for consolidation of that action with this one). It would seem that, were the Court to deny the motion to amend and CenterForce were to file a separate suit, as it asserts it would, it would extend even longer CenterForce's ability to use infringement litigation " as a club in the marketplace against ALI." ALI counters that resolution of the '799 claim will essentially end the litigation for all practical purposes .[FN5] At this point, however, the Court has no way of knowing whether this is correct. Therefore, because discovery has not yet closed, the '965 patent is closely related to the '799 patent, both claims involve the same product, the trial of this case has not been set, and, if CenterForce's instant motion is denied, CenterForce could, and represents it would, institute a separate action against ALI, the Court concludes ALI will not be unduly prejudiced by allowing the motion to amend.

> FN5. At the hearing on the motion to amend, ALI also put forth the following argument: ALI asserts that the claims of the '799 patent are drawn more broadly than those of the '965 patent and, therefore, if CenterForce were to prevail on its claim for infringement of the '799 patent, it would get the same relief as it would under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
(Cite as: Not Reported in F.Supp.2d)

Page 7

the '965 patent because CenterForce is claiming the benefit of the earlier filing date. D.I. 134, at 41. However, if CenterForce were to prevail on a claim for infringement of the '965 patent, which issued in 1995, it would appear to be eligible for four additional years of damages than it would be were it to prevail only on the '799 patent, which issued in 1999. *See generally* 5 DONALD S. CHISUM, CHISUM ON PATENTS § 16.04[2]-[3] (1999) (liability and remedy for infringing acts only during term of patent, which begins when patent issues) and cases cited therein.

### C. Bad Faith or Dilatory Motive

*7 Finally, ALI makes two arguments that CenterForce has brought this motion in bad faith. First, ALI contends that CenterForce's conduct in the marketplace, in particular assertions by sales representatives that ALI's CallTech system infringes the '965 and '799 patents, demonstrates CenterForce's bad faith. Second, ALI asserts CenterForce is adding the claim for infringement of the '965 patent because it has come to realize that its case regarding the '799 patent is weak.

Regarding the representations of the CenterForce sales representative that ALI's system may infringe CenterForce's patents, the Court finds it hard to relate this action to any bad faith in bringing the motion to amend. ALI is essentially arguing their Lanham Act claim against CenterForce as their argument for bad faith, and the ultimate success of the parties' claims on the merits is not properly before the Court at this procedural juncture. *See Proctor & Gamble Co.,* 125 F.R.D. at 412. Moreover, in most instances, infringement litigation is a stronger "club" in the marketplace than a salesman's assertions that a competitor's products " may" violate CenterForce's patent rights. It follows it would make sense for CenterForce to assert its patent infringement claims as soon as possible, rather than delay.

Second, ALI argues that CenterForce is now seeking to assert a claim for infringement of the

grandparent '965 patent because it made some bad decisions during the course of the current lawsuit and that during the course of discovery, CenterForce has been educated as to the weakness of its case regarding the '799 patent. D.I. 90, at 15; D.I. 134, at 39, 43-44. The success or failure of CenterForce's original claims is an issue for trial and cannot be decided on a motion to amend. *See Proctor & Gamble Co.,* 125 F.R.D. at 412. Other than ALI's bald assertions, the Court has no indication at this stage of the proceedings that the original claims are unsupported. *See id.*

Finally, there is no evidence to indicate that motion to amend is simply a delaying tactic by CenterForce. CenterForce has argued that there is no need to change the current schedule, that very little, if any additional discovery would be necessitated by the additional claims. In sum, the Court cannot conclude there was bad faith or dilatory motive on the part of CenterForce.

### V. Conclusion

The Court concludes that CenterForce did not unduly delay in asserting a claim for infringement of the '965 patent, nor was the motion to amend brought in bad faith. In view of the fact that discovery has not yet closed, the '965 patent is closely related to the '799 patent, both claims involve the same product, and the trial of this case has not been set and ALI will have time to prepare its defenses to these new claims before the case is scheduled for trial, ALI will not be unduly prejudiced by granting the motion to amend. " Moreover, if plaintiff's motion were denied[,] ... a separate action against the defendant could be instituted[,] and, in the absence of creating undue complications at trial, it is clearly preferable to dispose of all the contentions between these parties in one proceeding." *Jenn-Air Products Co.,* 283 F.Supp. at 594. Therefore, an order will be issued granting CenterForce's motion to amend and addressing case management concerns.

D.Del.,2000.
CenterForce Technologies, Inc. v. Austin Logistics Inc.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 8

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2000 WL 652943
(D.Del.), 55 U.S.P.Q.2d 1124

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G



Not Reported in F.Supp.                                                              Page 1

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
UNITED STATES OF America, Plaintiff,
v.
Robert L. TEEVEN, Paul L. Teeven, USA Training
Academy, Inc., Teeven Holding Company, RKJ
Corporation, Newark Business Center, Inc., Mary
Jane Teeven, Louise G. Teeven, Robert F. Teeven,
Dina M. Teeven, Kelly Ann Teeven and Jeffrey L.
Teeven, Defendants.
**Civ. A. No. 92-418 LON.**

Oct. 27, 1992.

Patricia C. Hannigan, Dept. of Justice, Wilmington,
DE, Joan E. Hartman (argued), Dept. of Justice,
Washington, DC, for plaintiff.
Steven D. Goldberg, Theisen, Lank, Mulford &
Goldberg, Wilmington, DE, Martin D. Minsker
(argued), Randall J. Turk (argued) and Cynthia
Thomas Calvert, Miller, Cassidy, Larroca & Lewin,
Washington, DC, for Robert L. Teeven, Teeven
Holding Co., RKJ Corp. and Newark Business
Center, Inc.
Gerard F. Treanor, Jr., and Nancy Voisin, Venable,
Baetjer, Howard & Civiletti, Washington, DC,
Karen L. Pascale, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Paul L. Teeven and
Louise G. Teeven.
James W. Garvin, Jr., USA Training Academy, Inc.,
Newark, DE, for USA Training Academy, Inc.
Richard G. Elliott, Jr. and David L. Finger (argued)
Richards, Layton & Finger, Wilmington, DE, for
Mary Jane Teeven, Robert F. Teeven, Dina M.
Teeven, Kelly Ann Teeven and Jeffrey L. Teeven.
Gerard A. Chamberlain, Wilmington Trust Co.,
Wilmington, DE, for Garnishee Wilmington Trust
Co.
Linda A. Blanchfield, Delaware Trust Co.,
Wilmington, DE, for Garnishee Delaware Trust Co.
Piet E. VanOgtrop, Daley, Erisman, VanOgtrop &

Hudson, Wilmington, DE, for Martin L. Whiteman
and Susan Whiteman.

*OPINION*
LONGOBARDI, Chief Judge.
**\*1** Presently before the Court is a motion for
reconsideration of the Court's order of August 20,
1992, filed by Defendants Robert L. Teeven,
Teeven Holding Company, RKJ Corporation and
Newark Business Center, Inc. Motion for
Reconsideration, Docket Item ("D.I.") 118. By a
letter filed with the Court on August 28, 1992,
Defendants Paul L. Teeven and Louise G. Teeven
joined in the motion. D.I. 132. The Court's order
(the "Order") of August 20, 1992 amended by
substitution a prior order of the Court issued August
14, 1992, D.I. 95. Order, D.I. 107. Briefing was
completed on the motion prior to a hearing held by
the Court on September 2, 1992 pursuant to 28
U.S.C. § 3101(d)(2). [FN1] Upon consideration of
the briefs and arguments of counsel, and for the
reasons stated herein, the Court denies the instant
motion.

*BACKGROUND*

On July 17, 1992, the United States of America (the
"Government") filed a complaint initiating this
action against the Defendants, USA Training
Academy, Inc., Robert L. Teeven and Paul L.
Teeven, under the False Claims Act and the
common law. The "remaining defendants [were]
sued as transferees of wrongfully obtained funds
pursuant to 28 U.S.C. §§ 3301-3308 and under the
common law of unjust enrichment." Complaint,
D.I. 1. Shortly thereafter, the Government filed an
*ex parte* application for prejudgment attachment,
garnishment and sequestration under the Federal
Debt Collection Procedure Act ("FDCPA"), 28
U.S.C. §§ 3001-3308. Application, D.I. 3.
Specifically, the Government applied for
prejudgment remedies against the Defendants
pursuant to 28 U.S.C. § 3101.[FN2] An affidavit

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 2

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

sworn to by LaRoss C. Campbell, a Special Agent
with the Inspector General of the United States
Department of Education, accompanied the
application. The affidavit alleges that the "USA
Training Academy, Inc., Robert L. Teeven and Paul
L. Teeven are indebted to the United States in a
single damages amount of at least $220,000,000,
together with statutory multiples of these damages,
civil penalties, interest and costs." Affidavit ¶ 2
(attached to D.I. 3).

Upon review of the application and accompanying
affidavit, and an initial determination that the
Government had met the requirements of the
prejudgment remedies section of the FDCPA
authorizing the issuance of *ex parte* writs, 28 U.S.C.
§ 3101(e),[FN3] the Court issued a writ of attachment
and sequestration, D.I. 4, and a writ of garnishment,
D.I. 5. These writs were thereafter executed by a
Deputy United States Marshal. D.I. 9-44, 57-69.

On July 28, 1992, the Defendants requested a
hearing pursuant to 28 U.S.C. § 3101(d)(2) to
challenge the issuance of the prejudgment remedies.
In conjunction with their request for a hearing, the
Defendants moved to quash all prejudgment writs
and the parties briefed the matter. D.I. 72-75, 78,
82 and 86. The grounds for the Defendants' motion
to quash were "1) there is no need for prejudgment
remedies in this case because no property has been
or is about to be converted in a manner prejudicial
to the United States with the effect of hindering,
delaying, or defrauding the United States; and 2)
the government has not made the requisite
particularized showing ... of the government's
likelihood of success of the merits." D.I. 72. *See
generally* D.I. 73 for supporting arguments. Thus,
the Defendants' arguments raised issues under 28
U.S.C. §§ 3101(b) and (c) respectively,[FN4] as to
the grounds alleged by the government to establish
compelling need for prejudgment remedies and
whether the affidavit met the particularity
requirement for pleading under the statute.

**\*2** The Court held a section 3101(d)(2) hearing on
August 5, 1992. [FN5] At the post-issuance hearing,
the Defendants made clear that they were
challenging the substance of the Government's
affidavit, *i.e.*, the probable validity of the debt,

under section 3101(c)(1). *See United States v.
Teeven,* No. 92-418, slip op. at 4 (D.Del. Aug. 14,
1992) (the "Memorandum Opinion") (D.I. 94).

On August 14, 1992, the Court issued an order
quashing the writs. D.I. 95. The basis for
quashing the writs was the Government's failure to
substantially comply with the statutory requirements
for prejudgment remedies pursuant to the FDCPA.
*See Teeven,* No. 92-418, slip op. at 22-23. As a
preliminary matter, the Government failed to
comply with the statutory requirement to make the
application under oath.[FN6] *Id.* at 9. The Court
noted, however, that the noncompliance in this
instance may have been "*de minimis* and not fatal to
issuance of the writs if the Government had
otherwise substantially complied with the statutory
requirements." *Id.* Second, the Court held that
"the affidavit does not establish *with enough
particularity* facts supporting the probable validity
of the Government's claim, does not present facts
sufficient to enable the Court to determine whether
the 'information and belief' allegations are '
reliable and reasonably necessary' and does not
explain with particularity the basis for the
averments connected with a specific Defendant." [FN7]

*Teeven,* No. 92-418, slip op. at 22. Underlying the
decision was the Court's finding that averments in
the affidavit failed to provide a sufficient basis for
the Court to determine whether the conclusions
were reasonable. *Id.* at 19. Additionally, based on
the averments in the affidavit, the Court was unable
to determine the reliability of persons who provided
information to the affiant. *Id.* at 21-22.

Subsequent to the issuance of the order quashing
the writs, D.I. 95, on August 17, 1992 the
Government filed a motion to amend (the "Motion
to Amend") the Court's order of August 14, 1992
and to permit the United States until August 17,
1992 to amend its application for prejudgment
attachment. D.I. 96. The Government also moved
the Court, *inter alia*, to stay implementation of its
order quashing the writs pending receipt and
approval of the amended application and affidavit
(the "Amended Application and Affidavit"). *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                        Page 3

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Upon receipt of the Government's Motion to Amend and Amended Application and Affidavit, the Court held a telephone conference with all parties on August 17, 1992 to discuss the Government's pending motion and amended application. *See* Transcript, D.I. 123. The Court held a second telephone conference with the parties on August 19, 1992. During the August 19, 1992 telephone conference, the parties were advised that the Court would grant the Government's Motion to Amend and would consider the Amended Application and Affidavit a part of the original pleadings in the case. *See* Transcript, D.I. 104 at 11. Further, based on a review of the Government's Amended Application and Affidavit, the parties were advised that the Court would issue an order amending its previous order of August 14, 1992 and denying the motions by the Defendants to quash the writs. *Id.* The Court advised the Defendants that they again were entitled to a hearing pursuant to 28 U.S.C § 3101(d)(2). *Id.* Although requesting a hearing, the Defendants waived the statutory requirement that it be held within five days of their request.[FN8] D.I. 104 at 12, 15. A briefing schedule was established and a hearing was scheduled for September 2, 1992.

*3 On August 20, 1992, the Court issued its Order amending by substitution "[t]he Court's Order of August 14, 1992, quashing all writs issued on July 20, 1992, D.I. 95." Order, D.I. 107. The Court ordered that the Government's Amended Application and Affidavit were deemed filed as of July 20, 1992, *nunc pro tunc. Id.* Further, the Court approved the writs as originally issued based on the amendments. Supplementary to the reauthorization of the prior writs, and based on its determination that the Amended Application and Affidavit met the statutory requirements of 28 U.S.C. § 3101(a), (b) and (c), the Court also granted the Government the right to the issuance of new writs. *Id.*

Subsequent to the Court's Order of August 20, 1992, the Defendants filed various motions,[FN9] including the Defendants' motion for reconsideration. The Defendants' remaining motions are resolved in a separate memorandum opinion issued concurrently with this opinion. The instant opinion does not address issues raised by the

Defendants in the briefs in support of the motion for reconsideration which are more appropriately addressed in the Court's opinion resolving the Defendants' motion to quash and motion for alternative remedies.

Defendants Robert L. Teeven, Teeven Holding Company, RKJ Corporation, Newark Business Center, Inc., Paul L. Teeven and Louise G. Teeven (hereinafter, the "Defendants") raise four arguments in support of their motion for reconsideration: (1) that the Government may not revive the illegally-obtained writs by amending its initial application and affidavit, (2) that the use of a *nunc pro tunc* order to support the writs was improper, (3) that the Government was not entitled to have the writs remain in effect pending resolution of the motions and (4) that the Defendants were entitled to be heard on the merits of the Government's Motion to Amend prior to the *ex parte* re-issuance of the writs. The Court will not address the Defendants' third argument, that the Government was not entitled to a stay of the Court's August 14, 1992 order, D.I. 95, pending resolution of the motions. The issue of the Government's entitlement to a stay of the Court's August 14, 1992 order is moot because the Court did not grant the Government's motion for a stay, and instead issued its Order of August 20, 1992 amending the Court's August 14, 1992 order by substitution.[FN10]

### DISCUSSION

#### I. *Amendment of Application and Affidavit*

The initial argument raised by the Defendants in support of their motion for reconsideration is that the Government is not permitted under the FDCPA and the Constitution to amend its application and affidavit for prejudgment remedies. Further, the Defendants argue that the Government's Motion to A mend its application and affidavit was made without legal authority and should have been denied. D.I. 119 at 2-3.

#### A. *Amendment under Section 3101(a)(1) of the*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 4

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

### FDCPA

In determining whether the Government was entitled to amend its application and affidavit under the FDCPA, or alternately, whether the Court had discretion to permit the Government to amend, the Court must look to the plain language of the statute as the starting point of its analysis. The Court in this instance is writing on a clean slate as the issue has yet to be addressed by federal courts in cases involving the FDCPA.[FN11] Contrary to the Defendants' assertion that no statutory authority exists in the FDCPA permitting amendment of applications, after a considered analysis, the Court concludes that the statute contains at least two sections which provide bases for the Government's amendment of its application and affidavit for prejudgment remedies.[FN12]

*4 The first basis is contained in the language of the section authorizing applications for prejudgment remedies by the United States. Section 3101(a), entitled "Application," provides that "(1) *[t]he United States may, in a proceeding in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt, make application* under oath to a court to issue any prejudgment remedy." 28 U.S.C. § 3101(a)(1) (emphasis added). The language empowers the United States to make an application "at any time" after the filing of a civil action on a claim for a debt. This language plainly is not limiting, and in fact gives the United States some latitude in making applications for prejudgment remedies. Such a reading is supported by the legislative history of the statute, which states that subsection (a) of section 3101 "authorizes the United States to apply for such a [prejudgment] remedy at any time from filing an action to obtaining judgment." H.R.Rep. No. 736, 101st Cong., 2d Sess. 31, *reprinted in* 1990 U.S.C.C.A.N. 6630, 6639 ("House Report 736").

The broad language of the section likewise supports a construction that the Government may *amend* its application at any time after the filing of a civil action on a claim for a debt. As the Court stated in its Order of August 20, 1992, the FDCPA does not expressly prohibit the filing of successive applications for prejudgment remedies by the

Government. D.I. 107. Instead, as set forth above, the plain language of the FDCPA supports the filing of successive applications by the Government. A construction of the statute which would prohibit the filing of an "amended" application while permitting successive applications is manifestly unreasonable and illogical.

The procedural history of the Government's filing of its Amended Application and Affidavit comports with the language of section 3101(a)(1). The Government filed its complaint against the Defendants on July 17, 1992. Pursuant to the FDCPA, the Government filed its original application and affidavit on July 20, 1992, subsequent to the filing of the action against the Defendants. Again subsequent to the filing of the action, the Government submitted its Amended Application and Affidavit on August 17, 1992. Thus, the two filings by the Government comply with the express language of section 3101(a)(1).

Further, such a reading is supported by construing section 3101(a)(1) in conjunction with the section under the "General Provisions" subchapter of the FDCPA related to discovery. Discovery as to the debtor's financial condition in an action for prejudgment remedies is authorized under section 3015 of the FDCPA, in accordance with the Federal Rules of Civil Procedure.[FN13] A reasonable assumption is that the Government may, through discovery procedures, obtain information about additional assets owned by debtors which potentially are subject to prejudgment attachment under the FDCPA. If through discovery the Government locates additional assets of a debtor which are subject to prejudgment attachment, there would exist the necessity of filing an amended application and affidavit. To permit discovery under the FDCPA for the express purpose of determining the debtor's financial condition, *i.e.,* locating assets of a debtor of the Government, only to prohibit the amendment of applications to add newly discovered assets which are subject to prejudgment attachment, is an inconsistent and unwarranted reading of the FDCPA.

*5 The primary purpose behind the prejudgment remedies subchapter of the FDCPA is to provide the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

United States with an *ex parte* mechanism for attaching assets of debtors when the Government shows a court reasonable cause to believe that the debtor is about to dispose of the assets or otherwise deal with them in such a manner as to cause prejudice to the United States.[FN14] It is untenable that a statutory construction of the FDCPA would require the Government to conduct discovery pursuant to section 3015 *prior* to filing an application for prejudgment remedies under section 3101. By so doing, the Government would place the debtor on notice of the imminent attachment proceedings, thus giving the debtor the opportunity to dispose of or otherwise conceal assets prior to attachment and thereby defeating the purpose behind prejudgment remedies.

In comporting with the purpose behind prejudgment remedies under the FDCPA, clearly the Government will in most situations conduct discovery *after* an application for prejudgment remedies is made to the court. To prohibit the Government from then amending its application under the plain language of section 3101(a)(1), after the discovery of assets subject to prejudgment attachment, renders the prejudgment remedies provisions of the statute of little effect. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809 (1989) (citing *United States v. Morton,* 467 U.S. 822, 828 (1984)).

The Defendants contend that because the FDCPA does not explicitly permit the Government to amend an application and affidavit, the Government's amended filing was prohibited. In support of their argument, the Defendants rely on cases construing state laws governing procedures for amendment in attachment and garnishment proceedings. *See, e.g., Tilton v. Cofield,* 93 U.S. 163, 166 (1876) (local statute of Territory of Colorado authorized amendment of writ of garnishment); *Jones v. Preuit & Mauldin,* 851 F.2d 1321, 1329 n. 14 (11th Cir.1988), *vacated on other grounds,* 489 U.S. 1002 (1989) (Alabama law authorized amendment of affidavit, bond or attachment to cure any defect of form or substance); *Tanko v. Saperstein,* 149

F.Supp. 317, 325 (N.D.Ill.1957) (Illinois law permitted amendment of affidavit, writ of attachment or bond); *In re Chemical Separations Corp.,* 29 B.R. 240, 245 (Bankr.E.D.Tenn.1983) (Tennessee law authorized amendment of any defect of form in affidavit, bond, attachment or other proceedings); *Erdrich v. Amory,* 184 N.Y.S. 490 (N.Y.App. Term 1920) (New York Code of Civil Procedure permitted amendment of affidavits in support of attachment to cure defects).

Cases construing state laws related to prejudgment remedies provide no authority for statutory construction of the FDCPA and are irrelevant for this purpose in light of the FDCPA's legislative history. According to House Report 736, the remedial purpose behind the enactment of the FDCPA
*6 "is to create a comprehensive statutory framework for the collection of debts owed to the United States Government. Creation of a uniform federal framework for the collection of Federal debts in the Federal courts will improve the efficiency and speed in collecting those debts, thereby lessening the effect of delinquent debts on the massive federal budget deficit...."

House Report 736 at 23, 1990 U.S.C.C.A.N. at 6631. *See id.* at 27, 1990 U.S.C.C.A.N. at 6635. The report further states that "[d]ifferences and conflicts in various provisions of State law that treat the subject of collection of government-owned debts have presented a number of obstacles to the efficient monitoring and implementation of federal debt collection efforts by the Department of Justice." *Id.* at 23, 1990 U.S.C.C.A.N. at 6631. References to difficulties created by the differing or overlapping state law provisions previously used to collect debts owed to the United States, too numerous to mention, abound throughout the legislative history. *See id.* at 23-28, 1990 U.S.C.C.A.N. at 6631-36.

As a consequence of the legislative framework, cases construing state laws related to collection procedures are inapplicable to a statutory construction of the FDCPA, precisely because the motivating purpose behind the enactment of the FDCPA was to preempt the patchwork of state laws

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

governing collection procedures and substitute uniform federal procedural standards. The FDCPA enunciates this purpose in part in its preemption provision.[FN15]

### B. *Amendment under Section 3003(f) of the FDCPA and the Federal Rules of Civil Procedure*

The legislative history's focus on uniform procedural standards for federal debt collection triggers the second basis for the Government's amendment of its application and affidavit for prejudgment remedies. Section 3003(f), related to rules of construction for the FDCPA, provides that the Federal Rules of Civil Procedure shall apply with respect to actions and proceedings under the statute.[FN16] Referring to the Federal Rules of Civil Procedure, Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, ... [o]therwise ... by leave of court ... and leave shall be freely given when justice so requires."

The Defendants rely on a wooden interpretation of Rule 15(a) which they assert renders the rule inapplicable to FDCPA proceedings. According to the Defendants, Rule 7(a) of the Federal Rules of Civil Procedure sets forth the only forms of pleadings which may be amended pursuant to Rule 15(a). Under Fed.R.Civ.P. 7(a), pleadings are defined as follows:
There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

*7 Thus, the Defendants argue that an application and accompanying affidavit filed pursuant to section 3101 of the FDCPA does not constitute a pleading subject to amendment under the Federal Rules of Civil Procedure.[FN17]

The Court rejects such an inflexible construction of

the Federal Rules of Civil Procedure as applied to collection actions under the FDCPA. Such a construction would render Fed.R.Civ.P. 15 a nullity as applied to subchapters B and C of the statute,[FN18] which contain no prejudgment or postjudgment collection mechanisms involving forms of pleading as defined in Fed.R.Civ.P. 7(a).
At no place in the plain language of the statute is there authority for the proposition that Rule 15 of the Federal Rules of Civil Procedure is inapplicable to prejudgment and postjudgment proceedings under the FDCPA. In fact, the legislative history of the statute emphasizes that the [Judiciary] Committee was acutely aware of the need to avoid potential conflicts between the procedures in the FDCPA and those which are generally applicable under the Federal Rules of Civil Procedure. House Report 736 at 23, 1990 U.S.C.C.A.N. at 6631. A statutory construction which permits the amendment of applications and affidavits pursuant to Fed.R.Civ.P. 15 is not inconsistent with this goal.

In essence, an application by the United States for prejudgment remedies pursuant to section 3101 of the FDCPA is a pleading within a larger pleading, the larger pleading being the complaint filed against the debtor to collect debts owed to the United States. As the Government stated at oral argument, the application under the FDCPA requires the Government to submit facts under oath and requires the Government to delineate those facts which support the probable validity of the claim and the compelling circumstances for prejudgment remedies. Transcript, D.I. 149 at 28. In all respects, it is similar to a complaint. As a type of pleading, standing independently, the Court construes a Government application as a pleading within the meaning of Rule 15(a).[FN19]

"[C]ourts have shown a strong liberality in allowing amendments under Rule 15(a)." 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 15.08 [2] (2d ed. 1992) (citation omitted). Further, the Supreme Court has directed that leave to amend under Rule 15(a) should be freely granted. *Foman v. Davis,* 371 U.S. 178, 182 (1962). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Kiser v. General Elec. Corp.,* 831 F.2d 423, 427 (3d Cir.1987), *cert. denied,* 485 U.S. 906 (1988) (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)).

Moreover, "[t]he clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses." Moore, *supra,* ¶ 15.08[3] (citations omitted). The Government's Motion to Amend presented a straightforward situation where the pleading party sought to amplify previously alleged claims. While there were defects in the Government's original application and affidavit, they nonetheless were defects which could be cured by amplification, *i.e.,* pleading with sufficient particularity. In its Memorandum Opinion of August 14, 1992, D.I. 94, the Court explained the bases for granting the Defendants' motions to quash the writs:

**\*8** the affidavit does not establish *with enough particularity* facts supporting the probable validity of the Government's claim, does not *present facts sufficient* to enable the Court to determine whether the 'information and belief' allegations are ' reliable and reasonably necessary' and does not *explain with particularity* the basis for averments connected with a specific Defendant.

*United States v. Teeven,* No. 92-418, slip op. at 22 (D.Del. Aug. 14, 1992) (emphasis added). The Government moved the Court to allow amendment in order to meet the pleading requirements established by the Court in quashing the writs. D.I. 96.

The Third Circuit has routinely held that leave to amend should be freely granted when pleadings lack the requisite factual specificity for a particular cause of action. *See, e.g., Saporito v. Combustion Eng'g, Inc.,* 843 F.2d 666, 675 (3d Cir.1988), *vacated on other grounds,* 489 U.S. 1049 (1989) (civil RICO claim); *District Council 47, Am. Fed'n of State Employees, etc. v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986) (civil rights claim under 42 U.S.C. § 1983 ); *Darr v. Wolfe,* 767 F.2d 79, 81 (3d Cir.1985) (civil rights claim); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir.1976) (civil rights

claim). In its Amended Application and Affidavit, the Government remedied the defects by pleading with sufficient particularity the factual basis for conclusory averments contained in the original affidavit.[FN20]

In the present case, the Government submitted its Motion to Amend and Amended Application and Affidavit without delay. The Motion to Amend and amended papers were filed on August 17, 1992, a Monday, following the issuance of the Court's order quashing the writs the previous Friday. Any contention by the Defendants that they were prejudiced by the delay is belied by the Defendants' failure to object to the Court's authority to grant the amendments during two telephone conferences held with the parties immediately after the Government's submissions.[FN21] Accordingly, the Court concludes that the Government's Motion to Amend was properly granted under Third Circuit precedent and the liberal amendment policy of the Federal Rules of Civil Procedure as incorporated into the FDCPA.

### C. *Amendment under Section 3013 of the FDCPA*

The Government cites a third basis in the FDCPA, section 3013, for the Court's authority to allow amendment of the Government's application. D.I. 134 at 5. Section 3013, entitled "Modification or protective order; supervision of enforcement," provides that "[t]he court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013.

By its explicit language, section 3013 provides a broad grant of power to the Court. Unfortunately, the statute's legislative history provides no guidance for construing the appropriate breadth of the section. Such a determination is not essential, however, to resolving whether the Government was properly granted its Motion to Amend because the Court concludes that there are sufficient alternative bases in the FDCPA, discussed *supra,* empowering

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 8

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

the Court to grant the Government's Motion to Amend.

### D. The Court's Inherent Power to Grant Amendment

**\*9** The Government additionally cites common law authority empowering the Court to grant the Motion to Amend, asserting that "this Court also had inherent power to allow the amendment." D.I. 134 at 2. *See, e.g., Mitchell v. Overman,* 103 U.S. 62, 64 (1881) (court had inherent power to enter a judgment or a decree, *nunc pro tunc,* as of a date anterior to that on which it was in fact rendered); *Tilton v. Cofield,* 93 U.S. 163, 166 (1876) (court had discretion, incidental to the exercise of all judicial power, to permit amendment of writ of garnishment).

The Defendants refute that *Tilton* supports a court's inherent power to grant an amendment of a writ of garnishment, contending that a local statute allowed amendment of writs and the decision rested on this ground. The Court notes, however, that the *Tilton* decision was not so limited. Rather, the Supreme Court observed that the amendments in question were within the equity, *if not the letter,* of the amendment statute. *Tilton,* 93 U.S. at 166 (emphasis added). The Supreme Court reasoned that even "[w]here no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others. Cases of this kind, too numerous to be cited, may be found, in which amendments in the most important particulars were permitted to be made." *Id.* at 167.

The Government's proposition that the Court's inherent authority supported the Court's granting of the Government's Motion to Amend is not without validity. It has been asserted that "even in the absence of statutory authority, a court has inherent power to grant amendments before trial." 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 15.08[1] (2d ed. 1992) (citation omitted). The Supreme Court recently acknowledged that the power of lower and appellate courts to grant amendments derives from the common law. *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 834 (1989).

Significantly, Fed.R.Civ.P. 15, granting courts discretionary power over the amendment of pleadings, derived from federal practice at law and equity. Moore, *supra,* ¶ 15.02[1].

### E. Constitutionality of Amendment

The Defendants additionally assert that the Government's amendment of its application and affidavit was improper on constitutional grounds. The Defendants argue that due process concerns dictate that the Government's justification for seeking the extraordinary prejudgment remedy must be demonstrated to the Court *before* writs may be issued, relying in part on the Court's "compelling circumstances" analysis in its Memorandum Opinion of August 14, 1992. D.I. 119 at 7.

The Court agrees that the Government's justification for prejudgment remedies must be demonstrated to the Court before the issuance of such remedies. *See* 28 U.S.C. § 3101(b). The Defendants' argument is misplaced, however, because the Court in fact held in its Memorandum Opinion that the Government's original *ex parte* application and affidavit satisfied the constitutional requirement of compelling circumstances in the context of prejudgment remedies. [FN22] *United States v. Teeven,* No. 92-418, slip. op. at 14 (D.Del. Aug. 14, 1992). The Government's amendments went solely to correct *other* defects which the Court outlined in its Memorandum Opinion.[FN23] Accordingly, the Court concludes that it properly exercised discretion in granting the Government's Motion to Amend where the Government's prior constitutional showing remained intact.

### II. Relation Back of Amendments

**\*10** In its Order of August 20, 1992, the Court ruled that the Government's Amended Application and Affidavit were deemed filed as of July 20, 1992, *nunc pro tunc,* and also authorized the issuance of new writs. The Defendants contend that the use of a *nunc pro tunc* or relation back procedure was improper. The Court rejects this argument.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

The FDCPA incorporates the Federal Rules of Civil Procedure,[FN24] and as the Court's previous analysis demonstrates, Fed.R.Civ.P. 15 is applicable to the amendment of applications and affidavits for prejudgment remedies under section 3101. Fed.R.Civ.P. 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

In the instant action, the Government's Amended Application and Affidavit contained claims arising out of "the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." The purpose behind the amendments was to correct deficiencies in the original pleadings related directly to the same conduct, transactions or occurrences alleged in the original. The Government raised no new claims in its amended papers.

The Defendants acknowledge as much. First, in their brief in support of the motion for reconsideration, the Defendants concede that "the Government presented no new evidence in its amended application and affidavit ... but merely attempted to correct the deficiencies in its moving papers noted by the Court." D.I. 119 at 22. Second, in their reply brief, the Defendants submit that "the government presented essentially the same evidence to the Court...." D.I. 142 at 13.

The Government's amendments plainly met the requirement for relation back under Fed.R.Civ.P. 15(c)(2). Thus, the Court had the power to order the amendments to relate back to the filing date of the original application.

The Court's use of the term *"nunc pro tunc "* in its Order of August 20, 1992, as requested by the Government in its Motion to Amend and memorandum in support thereof, was perhaps improvident. The Court's analysis and the effect of the Court's Order, however, remain unchanged. The literal meaning of *nunc pro tunc,* "now for then, " *Black's Law Dictionary* 964 (5th ed. 1979), aptly describes the relation back of an amended pleading

to the filing date of the original pleading under Fed.R.Civ.P. 15(c). Indeed, the Court used the term for the specific purpose of ordering the relation back of the Government's Amended Application and Affidavit. D.I. 107.

The Defendants' arguments, while creative, incorrectly characterize the Court's Order as a *nunc pro tunc* order which retroactively ratified illegally-obtained writs. D.I. 119 at 10, 12. Rather, in its Order, the Court, *inter alia,* granted the Government's Motion to Amend, held that the Amended Application and Affidavit satisfied the FDCPA requirements at 28 U.S.C. § 3101(a), (b) and (c) for *ex parte* writs, reauthorized the issuance of the writs and amended by substitution its order of August 14, 1992 quashing the writs. D.I. 107.

*\*11 The Court's power to order the substitution of an order which no longer is of any effect is incidental to the Court's inherent power to manage its docket. *Cf. Landis v. North American Co.,* 299 U.S. 248, 254 (1936) (inherent power of court to stay proceedings); *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 561 (3d Cir.1985) (in bank) (inherent power of district court to impose sanction on attorney for misconduct). "[I]n the absence of contrary legislation, courts under their inherent powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results." *Eash,* 757 F.2d at 564.

The Third Circuit discussed this principle in *United States v. Jerry,* 487 F.2d 600, 604 (3d Cir.1973), in relation to the power of a district court to rescind four days later its order permitting a criminal defendant to withdraw a guilty plea. There was no rule of criminal procedure addressing the question. The court went on to observe that "[a]t common law, the general rule, in criminal as well as civil cases, was that judgments, decrees, and orders were within the control of the court during the term at which they were made, and they could be [amended,] modified, vacated, or set aside by that court." *Id.* at 604 (quoting *United States v. Benz,* 282 U.S. 304, 306-07 (1931)). Further, the court explained that although a rule of civil procedure, Fed.R.Civ.P. 60(b), generally covered this power of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 10

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

the federal courts, the inherent power of courts to set aside and reconsider interlocutory orders was nevertheless held not to be precluded or limited by the rule. *Jerry,* 487 F.2d at 605.

Similarly, the Supreme Court recently held that the courts' inherent power to impose sanctions for bad faith conduct is not displaced by the federal sanction scheme of statutes and rules. *See Chambers v. NASCO, Inc.,* 111 S.Ct. 2123, 2134 (1991). In *Chambers,* the Supreme Court recognized that courts' inherent powers are " governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 2132 (quoting *Link v. Wabash R.R.,* 370 U.S. 626, 630-31 (1962)).

For the above reasons, the Court concludes that its Order of August 20, 1992, amending its order of August 14, 1992 by substitution and granting the relation back of the Government's Amended Application and Affidavit was within its power.

### III. *The Debtors' Entitlement To a Hearing*

The Defendants' final argument is that they were entitled to be heard on the merits of the Government's Motion to Amend prior to the *ex parte* re-issuance of the writs. D.I. 119 at 18. In reality, the Defendants' assertion is nothing more than a disguised attempt to again argue that the Court must read a requirement into the FDCPA that debtors are entitled to a hearing prior to the Court's issuance of *ex parte* writs. The Court disagrees.

**\*12** The Court notes that the Defendants initially attempt to frame the issue differently, *i.e.,* that they were denied the opportunity to be heard on whether the FDCPA authorized amendment of applications for prejudgment remedies before this Court granted the Motion to Amend. They assert that the Court " granted the government's motion to amend *nunc pro tunc* without affording the Defendants the opportunity to present the Court *with the matters addressed in this Motion* [for Reconsideration]...." D.I. 119 at 18-19 (emphasis added). The "matters" referred to by the Defendants, discussed at length in

the previous sections, relate to the procedural aspects of the amendment, that is, whether amendment was proper under the FDCPA. Based on the history of the present proceedings, the Defendants' framing of the issue is puzzling to the Court. Further, the Defendants' actions or lack thereof after the Government filed its Motion to Amend fail to support their framing of the issue.

The Court in fact afforded the Defendants two opportunities to be heard on the issue of whether the Government could amend its application, prior to the Court's ruling that it would permit the amendments. During telephone conferences on August 17, 1992 and August 19, 1992 with the parties, the Government's Amended Application and Affidavit were discussed at length. Indeed, the Defendants at no time squarely raised the issue of whether the FDCPA authorized amendment, as evidenced by the transcripts of the conferences. FN25 D.I. 123 and 104. When the Court ruled at the conclusion of arguments at the second conference that it would grant the motion, the Defendants again did not question the Court's power to do so. The Defendants' contention that the Court denied them the opportunity to be heard regarding the Government's Motion to Amend is plainly unwarranted.

The Court's subsequent issuance of ex parte writs without first affording the Defendants an opportunity for a hearing fully comports with the statutory requirements of the FDCPA. After the Government filed its Amended Application and Affidavit, the Court reviewed the amended pleadings pursuant to section 3101(e) of the FDCPA. Section 3101(e) sets forth the standard under which a court may issue ex parte writs. The standard provides that upon a court's determination that the requirements of subsections (a), (b) and (c) of section 3101 have been met, the Court is authorized to "issue all process sufficient to put into effect the prejudgment remedy sought." 28 U.S.C. § 3101(e).

Upon the Court's review, it concluded that the Government's amendments remedied the defects detailed in the Court's Memorandum Opinion. See United States v. Teeven, 1992 WL 683683 at *7-8,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 11

1992 U.S.Dist. LEXIS 22191, No. 92-418, slip. op. at 22-23 (D.Del. Aug. 14, 1992). Further, the Court determined that the Government's Amended Application and Affidavit satisfied the statutory requirements at 28 U.S.C. § 3101(a)-(c). The Court's Order of August 20, 1992 confirms that such a determination was made. D.I. 107. Having made its determination, the Court was authorized under the FDCPA to issue the ex parte writs.

Subsequent to the Court's Order reauthorizing the writs, the Defendants received their rightful hearing under the FDCPA. This entitlement arises pursuant to section 3101(d)(2). The section states in relevant part that "by requesting, at any time before judgment on the claim for a debt, the court to hold a hearing, the debtor may move to quash the order granting such remedy. The court shall hold a hearing on such motion as soon as practicable, or, if requested by the debtor, within 5 days after receiving the request for a hearing or as soon thereafter as possible." 28 U.S.C. § 3101(d)(2). According to the section's plain meaning, the debtor's right to a hearing arises only after the " order granting such [prejudgment] remedy." In the instant case, therefore, the Defendants' entitlement to a hearing did not arise until after the Court granted the Government's Motion to Amend, determined that the Amended Application and Affidavit satisfied the FDCPA's statutory requirements and ordered the writs reissued.

During the August 19, 1992 telephone conference, the Court notified the Defendants of its determination that the Government's Amended Application and Affidavit complied with the FDCPA's requirements and informed them that the Court would issue an order amending its prior order quashing the writs. D.I. 104 at 11. The Court immediately apprised the Defendants of their right to a new hearing on the reissuance of the writs. Id. The Defendants requested a hearing, but waived their right to a hearing within five days of the request. Id. at 12, 15. The Court's Order was issued on August 20, 1992 and a hearing was held on September 2, 1992, the date agreed upon by the parties. Accordingly, the Defendants' right to a prompt post-deprivation hearing under the FDCPA was satisfied. Having concluded that the

Defendants received all process due them under the FDCPA, the Court must now address the Defendants' thinly veiled constitutional argument. Contrary to the Defendants' assertion, the Court concludes that it need not read a requirement into the FDCPA that debtors are entitled to a pre-deprivation hearing prior to the Court's issuance of ex parte writs.

The Defendants' reliance on *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), is misplaced. Doehr stands for the more narrow proposition that, by failing to provide a preattachment hearing without at least requiring a showing of some exigent circumstances, the Connecticut statute at issue fell short of the demands of due process. Id. at 2116. In Doehr, the United States Supreme Court stated that a properly supported claim that a defendant "was about to transfer or encumber his real estate or take any other action ... that would render his real estate unavailable to satisfy a judgment" could constitute an "exigent circumstance." Id. at 2115 (dictum).

As set forth in this Court's Memorandum Opinion of August 14, 1992, Doehr's constitutional infirmity did not arise as to the Government's original FDCPA ex parte application and affidavit. There, the Court held that the Government had satisfied Doehr's requirement that it demonstrate " compelling circumstances" before ex parte writs could issue on the basis of its original ex parte application and affidavit.[FN26] United States v. Teeven, 1992 WL 683683 at *5, 1992 U.S.Dist. LEXIS 22191, No. 92-418, slip op. at 14 (D.Del. Aug. 14, 1992). The Government's amendments did not affect that conclusion. Rather, the Court again determined that the Government had made the requisite showing of compelling circumstances in its Amended Application and Affidavit.

Moreover, as the Government points out in its brief in opposition, the FDCPA suffers from none of the shortcomings which have rendered unconstitutional various state statutes which provided for prejudgment remedies. The infirmities in those statutes are catalogued in a line of Supreme Court cases. See, e.g., *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606-607, 42 L.Ed.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Page 12

751, 95 S.Ct. 719 (1975) (statute failed to provide for notice, a detailed affidavit setting out the claim, the determination of a judicial officer or a prompt post-deprivation hearing); *Fuentes v. Shevin,* 407 U.S. 67, 73-78, 32 L.Ed.2d 556, 92 S.Ct.1983 (1972) (statutes permitted clerk to issue writ without judicial participation and failed to provide for notice or a prompt post-deprivation hearing); Sniadach v. Family Fin. Corp., 395 U.S. 337, 338-39, 23 L.Ed.2d 349, 89 S.Ct. 1820 (1969) (statute permitted clerk to issue writ without judicial participation and failed to provide for a prompt post-deprivation hearing). The Supreme Court upheld, however, a statute which required a prompt post-deprivation hearing, a judicial determination that there was a clear entitlement to the writ and a detailed affidavit which emphasized the lienholder's interest in preventing waste or alienation of the property in *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 615-20 (1974).

Clearly, the FDCPA's provision for a hearing within five days of a debtor's request after the issuance of prejudgment remedies under section 3101(d)(2), the FDCPA's requirement that the Government make a showing of compelling circumstances as to its grounds for prejudgment remedies under section 3101(b) and the FDCPA's judicial determination requirement under section 3101(e) fulfill the constitutional safeguards for due process outlined in the above cases. For the foregoing reasons, the Court concludes that the Defendants were not entitled to a hearing before the Court ordered the reissuance of the writs.

### CONCLUSION

The Defendants' motion for reconsideration is denied in its entirety.

FN1. See *infra* note 5.

FN2. 28 U.S.C. § 3101 provides in relevant part:
§ 3101. Prejudgment remedies
(a) Application.-(1) The United States may, in a proceeding in conjunction with

the complaint or at any time after the filing of a civil action on a claim for a debt, make application under oath to a court to issue any prejudgment remedy.
(2) Such application shall be filed with the court and shall set forth the factual and legal basis for each prejudgment remedy sought.
(3) Such application shall-
(A) state that the debtor against whom the prejudgment remedy is sought shall be afforded an opportunity for a hearing; and
(B) set forth with particularity that all statutory requirements under this chapter for the issuance of the prejudgment remedy sought have been satisfied.
(b) Grounds.-Subject to section 3102, 3103, 3104, or 3105, a prejudgment remedy may be granted by any court if the United States shows reasonable cause to believe that-
(1) the debtor-
(A) is about to leave the jurisdiction of the United States with the effect of hindering, delaying, or defrauding the United States in its effort to recover a debt;
(B) has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States;
(C) has or is about to convert the debtor's property into money, securities, or evidence of debt in a manner prejudicial to the United States with the effect of hindering, delaying, or defrauding the United States; or
(D) has evaded service of process by concealing himself or has temporarily withdrawn from the jurisdiction of the United States with the effect of hindering, delaying, or defrauding the United States; or
(2) a prejudgment remedy is required to obtain jurisdiction within the United States and the prejudgment remedy sought will result in obtaining such jurisdiction.
(c) Affidavit.-(1) The application under subsection (a) shall include an affidavit establishing with particularity to the court's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application.
(2) The affidavit shall state-
(A) specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt;
(B) one or more of the grounds specified in subsection (b); and
(C) the requirements of section 3102(b), 3103(a), 3104(a), or 3105(b), as the case may be.
(3) No bond is required of the United States.

FN3. 28 U.S.C. § 3101(e) provides that:
Issuance of writ.-On the court's determination that the requirements of subsections (a), (b), and (c) have been met, the court shall issue all process sufficient to put into effect the prejudgment remedy sought.

FN4. For the text of subsections (b) and (c), 28 U.S.C. § 3101, see *supra* note 2.

FN5. 28 U.S.C. § 3101(d)(2) states that:
By requesting, at any time before judgment on the claim for a debt, the court to hold a hearing, the debtor may move to quash the order granting such remedy. The court shall hold a hearing on such motion as soon as practicable, or, if requested by the debtor, within 5 days after receiving the request for a hearing or as soon thereafter as possible. The issues at such hearing shall be limited to-
(A) the probable validity of the claim for the debt for which such remedy was granted and of any defense or claim of exemption asserted by such person;
(B) compliance with any statutory requirement for the issuance of the prejudgment remedy granted;
(C) the existence of any ground set forth in subsection (b); and
(D) the inadequacy of alternative remedies (if any) to protect the interests of the

United States.

FN6. The requirement that the application be made under oath is contained in 28 U.S.C. § 3101(a)(1). For the text of subsection (a), 28 U.S.C. § 3101, see *supra* note 2.

FN7. The requirement of particularity is contained in 28 U.S.C. § 3101(c)(1). For the text of subsection (c), 28 U.S.C. § 3101 , see *supra* note 2.
Specific affidavit requirements for FDCPA actions are contained in 28 U.S.C. § 3006, which provides:
Any affidavit required of the United States by this chapter may be made on information and belief, if reliable and reasonably necessary, establishing with particularity, to the court's satisfaction, facts supporting the claim of the United States.

FN8. The five day requirement is contained in 28 U.S.C. § 3101(d)(2). For the text of subsection (d)(2), 28 U.S.C. § 3101, see *supra* note 5.

FN9. Defendants Robert L. Teeven, Teeven Holding Company, RKJ Corporation and Newark Business Center, Inc. filed a motion to quash the reauthorized writs on August 24, 1992.
D.I. 113. Defendants Mary Jane Teeven, Robert F. Teeven, Dina M. Teeven, Kelly Ann Teeven and Jeffrey L. Teeven filed a motion to quash, or in the alternative, to modify the reauthorized writs on August 24, 1992. D.I. 108. Defendants Robert L. Teeven, Teeven Holding Company, RKJ Corporation and Newark Business Center, Inc. filed a motion to consider alternative remedies on August 24, 1992. D.I. 111. Defendants Paul L. Teeven and Louise G. Teeven joined the motions of Defendant Robert L. Teeven (Motion for Reconsideration, D.I. 118, Motion to Quash, D.I. 113, and Motion to Consider Alternative Remedies, D.I. 111) pursuant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

to a letter filed with the Court on August 28, 1992. D.I. 132. Briefing was completed prior to the hearing on September 2, 1992. D.I. 109-10, 112, 114-17, 120, 135, 137, 139-41 and 144-46.

FN10. In conjunction with its Motion to Amend, the Government moved the Court for a stay of its order of August 14, 1992, D.I. 95, quashing the writs issued by the Court on July 20, 1992. Motion to Amend, D.I. 96. The Government moved for the stay to provide the Court with the opportunity to review and approve the Amended Application and Affidavit submitted by the Government on August 17, 1992 pursuant to 28 U.S.C. § 3101. During the August 17, 1992 telephone conference with the parties, the Defendants objected to the issuance of a stay of the Court's order quashing the writs. D.I. 123 at 6-8, 12-13. The Court raised the issue of whether the automatic stay provision of Rule 62(a) of the Federal Rules of Civil Procedure might render moot the debate over a potential stay. *Id.* at 17. Fed.R.Civ.P. 62(a) provides in relevant part that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." "As used in this rule, 'judgment' means 'a decree and any order from which an appeal lies.' " 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2901 n. 5 (1973) (citing Fed.R.Civ.P. 54(a)). The Court did not issue the stay requested by the Government at that time or rule that the automatic stay provision applied in that instance. D.I. 123 at 17. Moreover, the Court ultimately did not reach a determination that Rule 62(a) applied to its August 14, 1992 order. D.I. 104 at 11. Thereafter, during the August 19, 1992 telephone conference with the parties, the Court effectively ruled that *the status quo would be preserved* pending the Court's issuance of an order which would amend the Court's August 14, 1992 order

quashing the writs, D.I. 95, and would deny the motions by the defendants to quash the writs. D.I. 104 at 11. The Court based its ruling on the Government's establishment of a compelling need to preserve the Defendants' assets as supported by the Government's Amended Application and Affidavit, and the Defendants' proffered need to disburse legal fees and other expenses from the assets subject to the writs. *Id.* at 11-12.
The next day, on August 20, 1992, the Court issued its Order in substitution of the August 14, 1992 order. In its Order of August 20, 1992, the Court reauthorized the writs and ordered that the filing date of the Government's Amended Application and Affidavit relate back to the original filing date of the Government's initial application and affidavit of July 20, 1992, thus rendering moot the issue of an automatic stay under Fed.R.Civ.P. 62(a).

FN11. On November 29, 1990, Congress passed the Federal Debt Collection Procedure Act of 1990 ("FDCPA"), Pub.L. No. 101-647, Title XXXVI, § 3611, 104 Stat. 4933 (codified at 28 U.S.C. §§ 3001-3308). The FDCPA became effective 180 days after its enactment, on May 29, 1991. *United States v. Gelb,* 783 F.Supp. 748, 751 (E.D.N.Y.1991).

FN12. Based on the Court's conclusion that the FDCPA supports an interpretation that the Court has authority to grant a motion to amend applications and affidavits in support of prejudgment remedies, the Court need not address squarely the Defendants' argument that because attachment is a statutory remedy, then authority to amend applications and affidavits in support of attachment can be granted only by statute.

FN13. 28 U.S.C. § 3015 provides in relevant part:
§ 3015. Discovery as to debtor's financial condition

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

(a) In general.- ... [I]n an action or proceeding under subchapter B [related to prejudgment remedies] ..., the United States may have discovery regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt.

FN14. *See* 28 U.S.C. § 3101(b)(1)(A)-(D).

FN15. 28 U.S.C. § 3003 provides in pertinent part:
§ 3003. Rules of construction
(d) Preemption.-This chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter.

FN16. 28 U.S.C. § 3003, entitled "Rules of construction," provides in relevant part:
(f) Applicability of Federal Rules of Civil Procedure.-Except as provided otherwise in this chapter, the Federal Rules of Civil Procedure shall apply with respect to actions and proceedings under this chapter.

FN17. The Defendants state that they have "found no cases in which a party even attempted to use Rule 15(a) to amend attachment papers-or indeed, any papers except the pleadings enumerated in Rule 7(a)-and the government has not cited any cases in which Rule 15(a) was used to amend attachment papers." D.I. 142 at 5. The Court, however, has found such cases. For example, in a federal case removed from state court, involving a motion to amend affidavits in garnishment, the court concluded that under Fed.R.Civ.P. 81(c), federal procedural rules applied to the resolution of the amendment issue after removal. *Robert W. Irwin Co. v. Sterling, Inc.,* 14 F.R.D. 250, 254 (W.D.Mich.1953) . The court held that under Fed.R.Civ.P. 15(a), amendment was permitted at the court's discretion, and the affidavits would be considered amended as of the date they were initially filed under Fed.R.Civ.P.

15(c). *Id.* at 257. *Cf. Tanko v. Saperstein,* 149 F.Supp. 317, 321-22 (N.D.Ill.1957) (Federal Rules of Civil Procedure, if controlling, would permit amendment of affidavit in support of writ of attachment). *Irwin* is cited by Professor Moore in his treatise discussion of Fed.R.Civ.P. 64 for the proposition that while state law, under Rule 64, determined the sufficiency of affidavits in attachment and garnishment proceedings, federal law determined the right to amend affidavits prior to the Federal Rules of Civil Procedure, and this rule continues under Fed.R.Civ.P. 15, so that the court, in its discretion, may permit them to be amended. 7 James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 64.07[2] (2d ed. 1992). Of course, Fed.R.Civ.P. 64 is not at issue in the present action, due to the enactment of the FDCPA and its application here.

FN18. Subchapters B and C of the FDCPA contain the prejudgment remedies provisions and postjudgment remedies provisions, respectively.

FN19. A similar construction has been reached for various types of pleadings in bankruptcy cases under federal bankruptcy rules. Federal Bankruptcy Rule 7015 provides that Fed.R.Civ.P. 15 applies in adversary proceedings, and Bankruptcy Rule 9014 extends Bankruptcy Rule 7015 to contested matters. Thus, Fed.R.Civ.P. 15 has been held applicable to the amendment of a creditor's proof of claim in a bankruptcy proceeding, *see, e.g., In re Unroe,* 937 F.2d 346, 349 (7th Cir.1991); *In re McLean Indus.,* 121 B.R. 704, 709-10 (Bankr.S.D.N.Y.1990); *In re KDI Corp.,* 119 B.R. 594, 599 (Bankr.S.D.Ohio 1990), as well as the amendment of an involuntary bankruptcy petition, *see, e.g., In re Christian & Porter Aluminum Co.,* 316 F.Supp. 1340, 1344-45 (N.D.Cal.1970) ; *Marshall v. Showalter,* 245 F.Supp. 365, 367 (D.Colo.1965), *aff'd,* 375 F.2d 529 (10th Cir.1967); *In re Ostrer,* 216 F.Supp.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

133, 135-36 (E.D.N.Y.1963), neither of which meet the technical definition of a pleading under Fed.R.Civ.P. 7(a).

FN20. As stated by the Defendants in their brief in support, "[t]he [G]overnment presented no new evidence in its amended application and affidavit, and pointed to no changed circumstances that presented more compelling need, but merely attempted to correct the deficiencies in its moving papers noted by the Court." D.I. 119 at 22. The Court determined that the Government's Amended Application and Affidavit indeed corrected the deficiencies in its original application. *See* Order, D.I. 107. For a more detailed analysis of the Government's Amended Application and Affidavit, see the Court's memorandum opinion resolving the Defendants' motion to quash issued concurrently with the instant opinion.

FN21. The Defendants participated in two telephone conferences where the Government's Amended Application and Affidavit were discussed at length, on August 17, 1992 and August 19, 1992. Prior to the August 17, 1992 telephone conference, the Defendants were served with the Government's Motion to Amend and amended papers. Further, the Court stated that the purpose of the conference was to "talk about the [amended] application made by the Government and the implications of it." D.I. 123 at 3. The Defendants at no time during the conference objected to the Government's Motion to Amend its application. *See* D.I. 123. While raising issues as to particular averments in the papers, the Defendants did not object to the procedural aspects of the amendment itself. *Id.* In concluding, the Court observed that remarks made by the Defendants' counsel "might even prompt some additional amendments by the Government." *Id.* at 16. The Defendants again raised no objections. The Defendants' counsel did question the

Government's filing of papers "which presumably they could have prepared to file 12 days ago." *Id.* at 6. However, the 12 day calculation by counsel began from the hearing on the original motions to quash on August 5, 1992. The Government first received notice that the writs were quashed upon the issuance of the Court's order on August 14, 1992. Thus, the 12 day delay referred to by the Defendants' counsel is incorrect. During the August 19, 1992 telephone conference, the Defendants' counsel requested "a fair opportunity to respond to these papers," but again did not object to the procedural aspects of the amendment. D.I. 104 at 4. At the conclusion of arguments by the parties, the Court ruled that the Government's Motion to Amend would be granted, and the amendments would be approved and considered a part of the original pleadings in the case. *Id.* at 11. The Court issued its corresponding Order on the following day, August 20, 1992.

FN22. In its Memorandum Opinion, the Court agreed with the Defendants that the Constitution and the legislative history of the FDCPA require that the Government show the Court "compelling circumstances " prior to seizures of property in the prejudgment stage. *United States v. Teeven,* No. 92-418, slip op. at 13 (D.Del. Aug. 14, 1992). The "compelling circumstances" analysis rests on the showing the Government must make for grounds for prejudgment remedies under section 3101(b) of the FDCPA. *See id.* at 13-14. While holding that the Government's application was deficient on other grounds (failure to make application under oath under section 3101(a)(1) and failure to meet the particularity requirements under section 3101(c)(1)), the Court concluded that the Government satisfied constitutional parameters for prejudgment remedies by demonstrating "a compelling need and exigent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 17

Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

> circumstances *when it made its ex parte*
> *application for prejudgment remedies."* *Id.*
> at 14.

> FN23. See *supra* note 22.

> FN24. See *supra* note 16.

> FN25. For additional details about the
> telephone conferences, see *supra* note 21.

> FN26. For a lengthier discussion of the
> Court's analysis, see supra note 22.

D.Del.,1992.
U.S. v. Teeven
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:92CV00418 (Docket) (Jul. 17, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.