# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MONA DOBRICH, et al., | x<br>:<br>: |  |
| Plaintiffs, | :<br>: |  |
| v. | :<br>: | Civil Action No. 05-120-JJF |
| INDIAN RIVER SCHOOL DISTRICT, et al., | :<br>: |  |
| Defendants. | :<br>: |  |
|  | x |  |

## **PROTECTIVE ORDER**

WHEREAS, on March 24, 2006, the Court divided discovery in this litigation into: (1) the constitutionality of the Prayer Policy of the Indian River School Board (the "School Board") as written and as applied (the "School Board Prayer Issue"), and (2) all remaining issues (the "Remaining Issues"); and

WHEREAS, discovery on the School Board Prayer Issue will be completed before discovery on the Remaining Issues will commence; and

WHEREAS, on May 25, 2006, the Court ordered that, on the School Board Prayer Issue, "the Does' identities to initially be revealed only to counsel for the School Board and the School District, pursuant to a jointly negotiated protective order"; and

WHEREAS, on June 1, 2006, the Court ordered the parties to negotiate and submit a confidentiality order governing disclosure of the Does' identities by June 21, 2006; and,

WHEREAS, pursuant to the Court's May 25 and June 1 orders, the parties have submitted this jointly negotiated Protective Order to limit disclosure of the Does'

identities and information that could reasonably lead to disclosure of their identities (collectively, the "Identifying Information");

NOW THEREFORE, IT IS HEREBY ORDERED this ___ day of June 2006, that:

1.    During discovery on the School Board Prayer Issue, Identifying Information (including but not limited to the Does' address, telephone number and employer, and the schools that the Does have attended, currently attend, have sought or seek to attend, or will attend) shall be available only to the attorneys of record and counsel for the School Board and the Indian River School District (the "School District," and together with the School Board, "Defendants") in this litigation (the "Attorneys of Record"), who shall not disclose or permit disclosure of Identifying Information to anyone, except to their law partners, associates and persons employed in the law offices of such attorneys.

2.    During discovery on the Remaining Issues, and only after discovery on the School Board Prayer Issue has been completed, Identifying Information shall be available only to the Attorneys of Record, who shall not disclose or permit disclosure of Identifying Information to anyone except to their law partners, associates and persons employed in the law offices of such attorneys, and to the following persons:

(a)    *Bona fide* outside experts and their employees, not on the staff of any party, consulted by such attorneys in the prosecution or defense of the claims herein;

(b)    Court reporters employed in connection with this litigation;

- 2 -

(c)    The employees, officials or representatives of Defendants who have first-hand knowledge of the facts alleged in the complaint, or as it may be amended, concerning the Does' individual claims for past damages;

(d)    A person whose deposition is to be taken in this action, but only to the extent necessary for the deposition; and

(e)    Any person who possesses information that is relevant to the Does' individual claims for past damages or Defendants' defense to the Does' individual claims for past damages, exclusive of those described in paragraphs 2(a) through (d) above.

3.    Before receiving any Identifying Information: each person to whom the identity of the Does is to be disclosed pursuant to paragraphs 2(a) through (e) of this Protective Order shall:

(a)    Execute the "Agreement To Be Bound By Protective Order" attached as Exhibit A to this Order;

(b)    Agree not to disclose Identifying Information to any person not entitled to know or possess Identifying Information under this Protective Order; and

(c)    Agree not to use Identifying Information except in connection with the prosecution or defense of the claims herein.

4.    **BEFORE** information is disclosed to any person pursuant to paragraph 2(e) of this Protective Order, counsel for Defendants must confer with counsel for the Does as to whether such person possesses information relevant to the Does' individual claims for past damages.  If agreement cannot be reached in writing as to

whether those persons fall within paragraph 2(e), the matter shall be determined by the Court.

5.      Notwithstanding anything to the contrary in this Protective Order, **under no circumstances** will the names of the Does, the employers of the Does, and the schools that the Does have attended, currently attend or will attend, be disclosed to Reginald Helms.  Further, **under no circumstances** will Identifying Information be made available to Thomas Neuberger or anyone associated with the Neuberger Firm, representatives of the Rutherford Institute or any attorney purporting to represent Mr. Helms.  If, notwithstanding this paragraph, Reginald Helms, Thomas Neuberger or anyone associated with the Neuberger Firm, representatives of the Rutherford Institute or any attorney purporting to represent Helms receives Identifying Information, that person shall be subject to the provisions of this Protective Order.

6.      During discovery on the School Board Prayer Issue, and notwithstanding anything to the contrary in this Protective Order, **under no circumstances** will Identifying Information be made available to third parties, including the members of the School Board or other employees of the School District, or to any attorneys (the "Personal Attorneys") representing those individuals in either an individual or official capacity so long as those attorneys are not the Attorneys of Record.  If, notwithstanding this paragraph, members of the School Board, other employees of the School District or the Personal Attorneys receive Identifying Information, those individuals shall be subject to the provisions of this Protective Order

7.      If Defendants believe that it is necessary in the defense of the claims herein for them to disclose Identifying Information to persons other than those specified in

this Protective Order, **counsel for Defendants shall communicate with counsel for the Does** and, if agreement cannot be reached in writing, the matter shall be determined by the Court.

8.    Attendance at any part of any deposition at which Identifying Information is disclosed shall be limited to persons to whom disclosure of Identifying Information can be made pursuant to this Protective Order, and only after such persons have complied with the terms of this Protective Order. Individual School Board members, employees of the School District or the Personal Attorneys may not attend the deposition of any plaintiff during discovery on the School Board Prayer Issue.

9.    Identifying Information may be disclosed to the Court and its employees, pursuant to the terms of this Protective Order. All papers (including affidavits and memoranda of law) including Identifying Information that are filed with the Court shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an identification of the contents of such sealed envelope or container, the words "HIGHLY CONFIDENTIAL MATERIAL" as appropriate, and an explanation that the information contained therein is protected by this Protective Order and shall not be disclosed by the Clerk or any other person except upon further order of this Court.

10.    In the event additional parties join or are joined in this litigation, they shall not have access to Identifying Information until the newly joined party by its counsel has executed and filed with the Court its agreement to be fully bound by this Protective Order.

11.    The parties agree to be bound by the terms of this Protective Order
pending the entry by the Court of this Protective Order, or an alternative thereto that is
satisfactory to all parties, and any violation of its terms shall be subject to the same
sanctions and penalties, as if this Protective Order had been entered by the Court.

12.    The provisions of this Protective Order shall, absent written
permission of the parties or further order of the Court, continue to be binding throughout
and after the conclusion of this litigation, including, without limitation, any appeals
therefrom. Within thirty (30) days after receiving notice of the entry of an order, judgment,
or decree finally disposing of all litigation in which Identifying Information is permitted to
be used, including the exhaustion of all possible appeals, all persons having received
Identifying Information shall, upon request of any party, either return all materials
containing Identifying Information to counsel for the party that produced it or destroy all
such material containing Identifying Information. Outside counsel for the parties shall be
entitled to retain court papers, depositions and trial transcripts and attorney work product
(including discovery material containing Identifying Information), provided that such
outside counsel, and employees of such outside counsel, shall maintain the confidentiality
thereof and shall not disclose such court papers or attorney work product to any person
except pursuant to court order or agreement by the parties.

13.    If any person covered by this Protective Order who has received
Identifying Information (the "Receiver") is subpoenaed in another action or proceeding,
and such subpoena seeks Identifying Information, the Receiver shall (a) give prompt
written notice by hand or facsimile transmission within three (3) business days of receipt of
such subpoena to counsel for the Does and (b) refrain from communicating Identifying

- 6 -

Information in response to such a subpoena until the earlier of (i) receipt of written notice from the parties that they do not object to the disclosure of Identifying Information or (ii) resolution of any objection asserted by the Does either by agreement or by final order of the court with jurisdiction over the objection of the Does. The burden opposing the enforcement of any subpoena seeking Identifying Information shall fall solely upon the Does. Compliance by the Receiver with any court order directing the disclosure of Identifying Information shall not constitute a violation of this Protective Order.

14.    The Does will be referred to as John Doe, Jane Doe, Jordan Doe or Jamie Doe in all depositions, motions, pleadings and other documents related to this litigation, and the Does shall be allowed to endorse documents related to this litigation (including affidavits) using the pseudonyms: John Doe, Jane Doe, Jordan Doe or Jamie Doe.

15.    In all proceedings held before this Court, all counsel, witnesses and court personnel shall refer to the Does by their pseudonyms: John Doe, Jane Doe, Jordan Doe or Jamie Doe.

16.    In all proceedings held before this Court, the Does' photographs shall not be taken by members of the media and the Does' pictures shall not be drawn by the courtroom artists.

17.    Nothing in this Protective Order shall prevent the Does from filing a subsequent protective order with regard to public access at trial.

18.    **FAILURE OF ANY PERSON TO ABIDE BY THE EXACT TERMS OF THIS ORDER SHALL SUBJECT THE VIOLATOR TO A CIVIL OR CRIMINAL PENALTY, AT THE DISCRETION OF THE COURT.**

19.    [Omitted.]

20.    The Court retains jurisdiction in perpetuity to enforce the terms of this Protective Order.


_____    _____
DATE    UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|                                         |   |                              |
|-----------------------------------------|---|------------------------------|
|                                         | x |                              |
| MONA DOBRICH, et al.,                   | : |                              |
|                                         | : |                              |
| Plaintiffs,                             | : |                              |
|                                         | : |                              |
| v.                                      | : | Civil Action No. 05-120-JJF  |
|                                         | : |                              |
| INDIAN RIVER SCHOOL DISTRICT, et al.,   | : |                              |
|                                         | : |                              |
| Defendants.                             | : |                              |
|                                         | x |                              |

## AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I hereby certify (i) my understanding that Identifying Information will be provided to me pursuant to the terms and restrictions of the Protective Order entered by the United States District Court for the District of Delaware in the above-captioned action, and (ii) that I have read the Protective Order. I understand the terms of the Protective Order, I agree to be fully bound by the Protective Order, and I hereby submit to the jurisdiction of the United States District Court for the District of Delaware for purpose of enforcement of the Protective Order. I understand that any violation of the terms of the Protective Order shall subject me to a finding of civil or criminal contempt, the penalty for which may include incarceration.

Dated: _____        Signature:_____

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | x | |
| MONA DOBRICH, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 05-120-JJF |
| | : | |
| HARVEY L. WALLS, et al., | : | Filed Under Seal |
| | : | |
| Defendants. | : | |
| | x | |

**AFFIDAVIT OF JANE DOE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Jane Doe, being duly sworn, deposes and says:

       1.     I submit this affidavit in support of my family's motion for a

protective order.

       2.     My children, Jordan and Jamie Doe, are both minors. Jamie

currently attends an elementary school in the Indian River School District (the "District"),

and Jordan plans to attend a District high school.

       3.     John, Jane, Jordan and Jamie Doe (collectively, my "Family") are

not our real names, and we fear that disclosure of our identities would result in retaliation,

harassment and stigmatization by District officials and employees, and members of the

community opposed to the suit.

       4.     My Family resides in the District, REDACTED

REDACTED

5.      I am aware of the retaliation directed against the Dobriches after their complaints against the District were made public and reported on by the media.

6.



REDACTED

7.      I have always been concerned about protecting my Family's identity. I insisted that my Family's identity be protected by a confidentiality agreement and that the proposed settlement agreement in this action contain a confidentiality provision protecting my Family's identity. Negotiations on the confidentiality agreement ceased once we began mediation with the District, and the confidentiality provision was rejected when the District rejected the settlement agreement. I have not made any disclosures that have resulted in any news media reporting my Family's identity.

8.      The settlement agreement that the Indian River School Board (the "School Board") rejected would have required my Family to dismiss with prejudice all of our claims against the School Board. There was nothing in the settlement agreement that would have prevented the School Board from opening its meetings with prayer.

9.      I am also aware of the Stop the ACLU Coalition's website that claims to list the Dobriches' identities. I am concerned that if my Family's identity is publicly disclosed, then my Family's identity would be published by this or another website and that our safety could be jeopardized.

10.      I am concerned that if my Family's identity is publicly disclosed, my children would be ostracized and harmed by the retaliation that could follow such disclosure.

2

11.    REDACTED           REDACTED

REDACTED              REDACTED

12.    REDACTED           REDACTED

REDACTED           REDACTED

13.    I also wish to maintain the privacy of my Family's personal religious beliefs. I understand that we might have to disclose our personal religious beliefs in prosecuting this action. I do not wish for my children to be subject to any negative community responses just because of their sincerely held beliefs.

14.    Before my Family's identity is disclosed to the defendants, especially the School Board members or District employees, I must be assured that my Family's identity is disclosed only to those people who are essential to the prosecution or defense of this case, and no further.

15.    For the reasons listed above, my Family might not be willing to proceed with this lawsuit if our identities were publicly disclosed.

16.    Finally, my Family has not had any personal or direct contact with Reginald Helms.  My Family has never communicated directly with Mr. Helms.

_____
Jane Doe

Subscribed and sworn to before me, a Notary Public, this 15th day of May, 2006.


_____        Notary

My Commission Expires:

04-15-2008

[SEAL]

LETHA K COMEGYS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires  April 15, 2008

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | x | |
| MONA DOBRICH, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 05-120-JJF |
| | : | |
| HARVEY L. WALLS, et al., | : | |
| | : | |
| Defendants. | : | |
| | x | |

## AFFIDAVIT OF MONA DOBRICH IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Mona Dobrich, being duly sworn, deposes and says:

       1.      I submit this affidavit in support of the Does' motion for a protective order.

       2.      My family has already faced retaliation for challenging the policies on prayer and religion of the Indian River School District (the "District") and the Indian River School Board (the "School Board").

       3.      I made the first public complaint against the District's practices at a June 15, 2004 School Board meeting. By the August 24 School Board meeting at Frankford Elementary School, community tension over my complaint had reached a fever pitch. The crowd was so large it had to be divided into two rooms.

       4.      Harold Johnson, a former School Board member, suggested at the August 24 School Board meeting that, as a result of my complaints, I might just

"disappear" like Madalyn Murray O'Hair, the named plaintiff in the Supreme Court case that ended mandatory recitation of Bible verses in the public schools. Ms. O'Hair, her son and her granddaughter disappeared in 1995 and were presumed dead. One of their killers led authorities to their dismembered bodies in 2001.

5.    When my then-twelve year old son Alexander stood up to speak at the School Board meeting, someone shouted at him, "take your yarmulke off."

6.    When Drewry Fennel from the American Civil Liberties Union spoke, she was greeted with boos and catcalls. Others called out "Go back to Wilmington," and "Go back up North."

7.    After I complained about the District's practices and policies regarding prayer, a community member called our house to warn us that the Ku Klux Klan was meeting nearby.

8.    A man approached my daughter Samantha while she was working at her summer job and gave her a tape praising the name of Jesus.

9.    On several occasions, Alexander came home to our house crying because schoolmates had openly teased him by calling him "Jew Boy."

10.    We began to receive harassing phone calls on a daily basis.

11.    The events terrified my family and made our lives miserable. We thought someone was going to burn down our home. In the mornings, we would check outside to see if someone had burned a cross in our front yard.

12.    My son and I ultimately left the District following the harassment. But even after my son and I moved to Wilmington, the harassing phone calls kept coming.

2

They called our home in Sussex County, and they started calling our new apartment in Wilmington. Finally, we had to get an unlisted number.

13.     I know members of the community who are afraid to speak out against the District because they saw what happened to my family when I complained.

14.     All I did was complain to the School Board. Based on my family's experience in the District, I believe the Does will be subject to intimidation and retaliation from members of the community opposed to this suit if their identities are made public.

15.     After the School Board rejected the settlement, I learned that a group calling itself the "Stop the ACLU Coalition" published a website with what the website claims is my family's contact information. In fact, that contact information is for Alexander's grandparents who still live in Sussex County and not for my husband, Marco, or myself. Alexander's ability to spend time with his grandparents has been impacted because I have become concerned for his safety now that his grandparent's address has been published nationwide in connection with this lawsuit.

_Mona Dobrich_
Mona Dobrich

Subscribed and sworn to before me, a Notary Public, this _16th_ day of _May_, 2006.

_Letha K. Comegys_     Notary

My Commission Expires:

_04-15-08_

[SEAL]

LETHA K. COMEGYS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires April 15, 2008

# EXHIBIT D

Stop the ACLU Coalition :: Working Hard to Keep America Safe Fr...    http://www.stoptheaclu.org/index.php?option=com_content&task=v...



www.stoptheaclu.org

# Stop the ACLU Coalition

**Coalition Information    The Community**

Home    News    Legal News    Delaware School District Stands up to the ACLU

**STOP THE ACLU**

- Home
- News
- Links
- Contact Us
- Search
- About Us
- How We Do It
- Marriage Cases
- Hall of Shame
- ACLU Letter
- ACLU Windfalls
- Get Involved
- Our Store
- Events
- Press Releases
- Expose Plaintiffs
- Petitions

## Delaware School District Stands up to the ACLU

User Rating: ●●●●● / 2

Poor ○ ○ ○ ○ ● Best

Written by Nedd
**Thursday, 02 March 2006**

The ACLU likes to "hail" rulings when they go their way. Well, there is no ruling to "hail" here for us but we can "hail" the Indian River, Delaware School District for standing tall and strong against the ACLU. The Daily Times of Delmarva has more on this case here and here which the school board unanimously rejected paying six figures to the ACLU.

The Indian River School District deserves a standing ovation from us for boldly and unanimously rejecting the ACLU's claims of monetary extortion and intimidation in trying to persuade them from public prayer before their meetings. The case began in 2004 which you can read here and here (the 5th item down under "Free Speech").

There were two cases here, one against the school district for a prayer said at a graduation service and another for prayer said prior to the opening of school board meetings. The former case is ongoing which is what the school board agreed to do in rejecting this ACLU offer of settlement. The latter case was dismissed in August 2005.

It is extremely heartening that even in the heavily liberal northeast part of America, there are still some public officials and citizens who will tell the ACLU where to go. The fact that there was patriotic and Christian music sung at the meeting is encouraging at a time where religious freedom is under ACLU assault more than ever.

The fact that churches were actively supporting the school board is something we need more of. The Coalition has a program to get churches involved with us and we are willing to go and speak at churches who want to be educated on the ACLU and its agenda.

If you are a pastor and located within a 2 hour radius of Metro Chicago and want to have the Coalition address your congregation, please contact me to schedule a date. Please note - you can invite us to speak to your church without ever having your tax status jeopardized.

Kudos to Pastor John Betts for his support of the school board and to Pastor David Bennett for telling the ACLU where to go. This is what we need from ministers across America. This is why the Coalition has a passion to enlist churches to this cause. Sadly, very few are willing to go outside their 4 walls of their churches which is partly why America is in moral disarray as it is.

Delaware and Maryland (since the district is located at the state line) residents, express your appreciation to the Indian River School District. Their contact information and board members can be found here. They need to hear from you since it is not easy to stand up to the legal thugs of the ACLU. And the Rutherford Institute needs our support and thanks as well.

If you wish to reach Pastor Bennett, his church is located at Route 334 in Dagsboro, phone (302) 732-9462. Pastor Betts church is at 20488 Donovans Rd in Georgetown, phone (302) 856-2252.

If you contact either of the churches and/or the school district, please express our heartfelt thanks and support and encourage them to contact us and join the Stop the ACLU Coalition. We're hoping and praying for a favorable ruling later in the year and to put an end to the ACLU's meddling.

This case is a good time to introduce our "Expose the ACLU Plaintiff" project and here's how it goes. When an individual, group or even church (yes, there are churches that support the ACLU) is using the ACLU (or similar groups like Americans United, People for the (Anti) American Way, Freedom from Religion Foundation and American Atheists) to facilitate removal of a cross, the 10 Commandments or other religious symbols or the ceasing of prayer from a school or government entity, we want the community to know about it. We will start with the Dobrich family which is largely responsible for this case being taken. We are offended that the Dobrich's want to impose their atheism at the expense of the vast majority of community members who aren't offended. We will let all of

**SEARCH US**

---

**LATEST NEWS**

Stop the ACLU Rally in Champaign, Illinois
ACLU - Free Speech for all but pro-lifers
The Truth is in: The ACLU is hostile to Christianity
Turn the key. Start a revolution - against the ACLU
ACLU "Singles" out Wisconsin School

---

**STOP THE ACLU POLL**
**What ACLU issue or Group Concerns You the Most?**

○ Abortion on Demand
○ Same Sex Marriage
○ Assault on Boy Scouts
○ NAMBLA
○ Legal Action Against the 10 Commandments/Pledge
○ Legal Action Against Prayer in Schools/Government
○ Illegal Immigration
○ Undermining the War on Terror
○ Death Penalty Opposition
○ Legal Action Against Christmas

 

**SYNDICATE**

RSS 0.91
RSS 1.0
RSS 2.0
ATOM 0.3
OPML SHARE IT

Stop the ACLU Coalition :: Working Hard to Keep America Safe Fr...    http://www.stoptheaclu.org/index.php?option=com_content&task=v...

Delaware know who used the ACLU to sue this school district.

For our first case, we will leave the information here where the Dobriches reside. Here it is, according to Switchboard.com.

Mario and Mona Dobrich
Woodland Rd.
Seaford, DE 19973
(302) 629-4125

Our policy regarding this project is as follows:

1. If it's a 10 Commandments, cross or religious symbols case, you may call only if you live in the jurisdiction. If the suit is against a county, you may call if you reside in that county. If the suit is against a city, you may call only if you live in that city.
2. If it's a school that's involved such as in this one, you may call if you live in the district or have a student attending the school there or if you have a family member working there.
3. If #s 1 and 2 do not apply, please only write a letter. We will also post e-mail addresses if they can be found.
4. In all your communications, written or verbal, do not harass and do not be rude. You can be firm and angry but do not use profanity and under no circumstances should you threaten the party involved. Your outrage is fully understood and shared but harassment and threats serve only to harm us and could even get the police involved which we don't want. Remember, you represent the Coalition.
5. Get others involved.

If you want to be involved in research for this project or have any questions, contact me and I will get you started. I would like a couple individuals to start working on this ASAP. But please note - for this project, we're only looking for individuals, small groups and churches. Major companies and corporations supporting the ACLU like Progressive Insurance and Ford do not fit this project. We want specific plaintiffs in specific cases.

Thank you.

Nedd

**Next >**

**[ Back ]**

© 2005 Stop the ACLU.

**MOST POPULAR**
Huge Legal Blow to the ACLU
Anti-ACLU Petitions
Stop the ACLU Bonfire
Why The ACLU Doesn't Deserve Your Tax Dollars
ICLU: Criminal Rights More Important than Religious Rights

4/10/2006 3:34 PM

# EXHIBIT E

2

Serving the Heart of Sussex County          The Sussex Post, December 22, 2006

# Indian River board to ponder settlement offer

## Could end court case over prayer issue

By James Diehl
Sussex Post

SELBYVILLE — A six-figure settlement offer is on the table in the ongoing court battle over prayer in the Indian River School District.

"It's time for Christians to stand up for our rights and I think the public supports us in that. I feel we're obligated to them to stand up and see this through."

— Reginald Helms,
Indian River board of education member

But board member Reginald Helms wants no part of it.

The former board vice president said Tuesday that it's time for Christians to finally draw a line in the sand.

"It's time for us to stand up for our rights and I think the public supports us in that," Mr. Helms said. "I feel we're obligated to them to stand up and see this through."

Mr. Helms is represented in the case by Thomas S. Neuberger of the Neuberger Institute, a nonprofit civil liberties organization committed to defending constitutional and humanist rights.

Mr. Neuberger recommended to Mr. Helms that he and the entire Indian River board of education vote against the recommendation of the district's insurance company of a global settlement.

"The insurance company's kids ... are trying to get the settlement approved and Reggie is doing just the opposite," Mr. Neuberger said.

Mr. Helms confirmed on Tuesday that the Indian River board has tentatively scheduled a meeting for Jan. 9, at which time they are expected to vote on the settlement proposal.

"I'm afraid that if we make any kind of settlement that they'll feel they got want they wanted," Mr. Helms said. "I just think this needs to be settled by the court once and for all."

Earlier this year, Mona and Marco Dobrich and their 12-year-old son, Alexander, and two other unnamed parents and their children filed a lawsuit against the district seeking monetary damages and injunctive relief.

The lawsuit claims that during a June 2004 Indian River High School graduation ceremony, a local minister delivered a prayer in the name of Jesus Christ, and that the invocation was decidedly Christian, complete with a prayer at her daughter's Sussex Central High School graduation ceremony.

In response, the Indian River board issued new policies governing commencement and baccalaureate services which stated students initiated, student-delivered voluntary messages were permissible during such ceremonies.

Throughout the debate, the board of education continued its custom of beginning board meetings with voluntary prayer by a board member, despite a request by the American Civil Liberties Union to stop praying at meetings. The debate has become a hot topic issue in the district, culminating last August when several hundred people packed Frankford Elementary School for the board of education's monthly board meeting.

By the several people who participated spoke out in favor of the district, including one who was Rep. Gerald Hocker, R-Ocean View.

"You have the public behind you," Rep. Hocker said at that meeting. "If you do not do something, the public will take you out, not the ACLU."

In June 2004, Mr. Dobrich, a district parent whose family is Jewish, complained about the Christian, complete with the several several several several several several several several several several several several several several several several several several.

The formal discussion on the issue in early January will be held behind closed doors. The vote, however, will be in open session.

"Even though we are Christians, we have rights also and I just feel that sometimes they want to take our rights away from us," Mr. Helms said. "When we had a meeting at the beginning of this issue, there was overwhelming support for the board in their stance on prayer before board meetings. Our public is in support figures."

Mr. Neuberger would not give any specifics on the settlement offer, except to say that it was "six figures."

Judge Joseph Farnan to rule on the case could open the school district to further litigation in the future.

"What this [would do] is prevent the judge from issuing his legal ruling on the pending legal matter, this [a] Gay was Rep. Gerald Hocker, R-Ocean View.

"You have the public behind you," Rep. Hocker said at that meeting. "If you do not do something, the public will take you out, not the ACLU."

Mr. Neuberger said, "it prevents any legal precedent from being established which would protect the board from other public bodies elsewhere in the country."

Earlier this year, Judge Farnan granted a defense motion dismissing all claims against individual Indian River School District board of education members.

The case against the district is still open, however, pending the possible settlement.

Have James Diehl can be reached at 629-5505 or jdiehl@newszap.com.

Exhibit F

School prayer lawsuit tentatively settled



http://delawareonline.com/apps/pbcs.dll/article?AID=/20060105/NEWS/601050345/1006

# School prayer lawsuit tentatively settled

Indian River board president offers no details

**BY SEAN O'SULLIVAN**
**THE NEWS JOURNAL**
01/05/2006

Two families that filed a federal lawsuit over Christian prayers at Indian River School District events have reached a tentative six-figure settlement with the district, the Sussex County school board's president said Wednesday.

Mona and Marco Dobrich and an unnamed second family filed the lawsuit in February. Mona Dobrich, who is Jewish and attended Indian River schools as a child and had children in the district, alleged officials created "an environment of religious exclusion" through prayers at public meetings and events and by offering preferential treatment for Christian clubs.

The payments and an undisclosed agreement will be presented by attorneys at a special meeting of the Indian River School Board on Monday. At least one school board member, Reginald L. Helms, opposes any out-of-court settlement.



**Mona Dobrich said the district gave Christian clubs special treatment and created "an environment of religious exclusion."**

At Monday's meeting at Sussex Central High School, the board will vote in public on whether to accept the settlement. School Board President Charles M. Bireley said the attorneys will make their presentation, and the board will discuss it, in private.

The public will not have an opportunity to comment at the special meeting, but may do so at the board's regular meeting Jan. 24 at Indian River High School.

Bireley said a meeting to discuss a settlement originally was scheduled in November but was postponed twice and may be postponed again.

He said one of the district's attorneys recently told the board that the plaintiff's attorneys have not yet provided him with needed information.

Bireley added that no school board member has seen details of the settlement offer, so he could not comment.

Thomas J. Allingham II, attorney for both plaintiffs, would not comment Wednesday.

School prayer lawsuit tentatively settled

In recent published reports, board member Helms said he is opposed to settling with the Dobrich family and wants the issue to go to trial.

He told the Delaware Wave, "We need to take this through the court system, let them make a ruling and take that through the future."

On Wednesday, Helms said his attorney, Thomas S. Neuberger, has advised him not to comment further, "because evidently the mediation judge wants to talk to him and I."

But he said his previous statements are "still my opinion."

Neuberger on Wednesday said he could not discuss the case.

In previously published reports, Neuberger said he is encouraging the board to turn down the settlement offer and take the case to trial in order to establish a legal precedent.

Neuberger is representing Helms through a conservative civil rights group, The Rutherford Institute.

Allingham is representing the plaintiffs through the American Civil Liberties Union.

The district's other attorney, John D. Balaguer, who was hired by the district's insurance company, also would not comment Wednesday.

*Contact Sean O'Sullivan at 324-2777 or sosullivan@delawareonline.com.*

**Copyright © 2006, The News Journal. Use of this site signifies your agreement to the Terms of Service and Privacy Policy (updated 10/3/2005)**

Exhibit G

**010506-5-ATKINS1**

[COMMERCIAL]

**DAN GAFFNEY**:   644 ON WGMD RADIO.  WE ARE JOINED BY 41ST DISTRICT STATE REPRESENTATIVE JOHN ATKINS.  JOHN ATKINS IS THE ELECTED REPUBLICAN AND HE IS, YOU KNOW, VOTED IN TWICE NOW.  HE IS IN HIS 2ND TERM AND HAPPY TO HAVE HIM HERE.  WE'RE GOING TO TALK ABOUT A COUPLE OF THINGS.  WE'RE GOING TO TALK ABOUT THE INDIAN RIVER SCHOOL PRAYER ISSUE WITH JOHN IN JUST A SECOND.  I WANT TO ASK HIM ABOUT SOMETHING ELSE.  I WANT TO GIVE PEOPLE AN UPDATE.  YESTERDAY WE TALKED ABOUT...I BROUGHT TO LIGHT THE FACT THAT THERE WAS A TAVERN IN THE REHOBETH AREA THAT WAS ADVERTISING THAT THEY WERE STARTING TO RENT OUT A ROOM IN THE...IT WAS CALLED A "PLAY SPACE" THEY CALLED IT.  AND IT WAS EQUIPPED WITH BONDAGE GEAR.  THIS IS A BAR THAT CATERS TO...LEATHER, SEXUAL FETISHES, SADOMASOCHISTIC TYPE FETISHES.  AND THEY ARE RENTING OUT THIS ROOM BY THE NIGHT, A 2 NIGHT MINIMUM UP TO A WEEK AND IT'S EQUIPPED WITH CHAINS, LEATHER SLINGS, CAGES, SECURING DEVICES, ALL THIS KIND OF STUFF AND THEY HAVE PICTURES OF IT AND THEY WERE ADVERTISING THAT IT WAS FOR RENT. THE . . . LOOK THE . . . [LAUGHING IN BACKGROUND]  WHAT DID YOU SAY?  DO YOU WANT TO SAY THAT ON THE RADIO?  IS IT SOMETHING YOU CAN SHARE WITH US?

**UNKNOWN**:   I SAID IT BRINGS A WHOLE NEW MEANING TO ROMPER ROOM BUDDY! [LAUGHTER]

**DAN GAFFNEY**:   WELL, ANYWAY.  I THOUGHT, YOU KNOW, IF THEY'RE ALLOWED TO DO THAT AND THEY MAY BE ALLOWED TO, WHAT'S TO STOP ANY BUSINESS FROM OPENING UP SOME SORT OF FETISH ROOM OR RENTAL OR WHATEVER ANYWHERE ELSE?  I MEAN WHAT'S TO STOP THAT KIND OF THING?  YOU HEARD THAT DISCUSSION JOHN ATKINS, WHAT DO YOU THINK OF ALL THAT?

**JOHN ATKINS**:   WELL I CERTAINLY AGREE WITH YOU AND MOST OF YOUR CALLERS.  I HAVEN'T HEARD ANYBODY IN SUPPORT OF IT YET.  AFTER THE SHOW YESTERDAY, I CONTACTED THE FIRE COMMISSIONERS OFFICE.  I THINK YOU HEARD FROM THEM ALSO.  I JUST QUESTION SOME OF THE LEGALITY LIKE YOURSELF.

**DAN GAFFNEY**:   WELL THE FIRE MARSHALL . . . I TALK TO EVERYBODY YESTERDAY.  BECAUSE I DON'T JUST TALK ABOUT IT, I MEAN, I ACT IF I AM A MEMBER OF THE COMMUNITY AND I THINK SOMETHING IS QUESTIONABLE, I ACT ON IT.  I MEAN, AND YOU SHOULD DO THE SAME THING.  THAT'S WHAT BEING COMMUNITY INVOLVED IS ALL ABOUT.  BUT I CALLED THE STATE TO SEE IF THEY WERE LICENSED HOTEL/MOTEL LICENSE SO THEY'RE PAYING THE HOTEL/MOTEL TAX.  THEY CLAIM NOT TO HAVE THEM LISTED, THEY WERE GOING TO INVESTIGATE.  THE ALCOHOL BEVERAGE CONTROL COMMISSION WAS VERY INTERESTED AND VERY RESPONSIVE AND SAID "WE'RE GOING TO CHECK

**1**

IT OUT RIGHT AWAY" BUT THEY DID PUT A CAVEAT IN THAT IF IT'S SEPARATE FROM THE TAVERN THEN THERE MAY NOT BE ANYTHING THEY CAN DO ABOUT IT BUT THEY WERE GOING TO LOOK AT IT. AND I EVEN CALLED THE FIRE MARSHALL AND A FEW OTHER PEOPLE. FIRE MARSHALL CLAIMED THEY WEREN'T INTERESTED. THEY WERE NOT . . . SAID "WE DON'T . . . WE'RE NOT INTERESTED."

**JOHN ATKINS**:   WELL THAT'S . . . I DON'T KNOW IF THEY WEREN'T INTERESTED. I JUST DON'T THINK THERE WAS ANY VIOLATIONS. ALTHOUGH I WAS TOLD, YOU KNOW, IN THE CASE OF A FIRE AND YOU KNOW ONE OF THESE MEN WAS TIED UP IN A CAGE OR LEATHER STRAPS, YOU KNOW, I MEAN ANYTHING CAN HAPPEN. IF THE PLACE DID BURN DOWN, YOU KNOW, I WAS TOLD THAT THE, YOU KNOW THE DOUBLE L BAR PROBABLY COULD BE HELD LIABLE FOR SUPPLYING THE RESTRAINTS AND CONVICTED OF MANSLAUGHTER.

**DAN GAFFNEY**:   RIGHT, I HEARD THE SAME THING. THEY DID SAY THAT. YOU'RE ON WGMD. GOOD MORNING, IT'S 6:48.

**CALLER #1**:   GOOD MORNING DAN. I JUST WANTED TO WISH MY WIFE A HAPPY BIRTHDAY, HER 62ND BIRTHDAY.

**DAN GAFFNEY**:   ALRIGHT, AND HOW OLD IS SHE?

**CALLER #1**:   62 TODAY

**DAN GAFFNEY**:   OK. WHAT IS HER NAME. GO AHEAD.

**CALLER #1**:   KAREN

**DAN GAFFNEY**:   OK. HAPPY BIRTHDAY KAREN

**CALLER #1**:   KAREN ZORULLO

**DAN GAFFNEY**:   ALRIGHT. VERY GOOD. HAPPY BIRTHDAY. THANKS FOR CALLING. THE . . . SO ANYWAY [BUZZER SOUNDS] THANK YOU. WE ARE WONDERING IF . . . CAN YOU . . . YOU KNOW DO YOU THINK ANY ESTABLISHMENTS SHOULD BE ABLE TO START RENTING OUT ROOMS LIKE THIS?

**JOHN ATKINS**:   NO. I MEAN, PERSONALLY, I DON'T, YOU KNOW. I'VE BEEN IN DOVER JUST THREE YEARS AND WE'VE PASSED A LOT OF LAWS TO . . . FOR INSTANCE TONGUE SPLITTING. YOU KNOW, I CAN'T BELIEVE, YOU KNOW, WE GO TO DOVER AND WE PASS LAWS WHERE YOU HAVE TO BE LICENSED TO SPLIT YOUR TONGUE OR GET A TATTOO BUT, YOU KNOW, THE COUNTY AND THE STATE COULD BE ALLOWING THIS TO GO ON.

**DAN GAFFNEY**:   ALRIGHT. LET'S TAKE A CALL HERE. HI, WGMD, GOOD MORNING!

**CALLER #2**:    GOOD MORNING DAN. DAN THE OTHER DAY YOU GAVE A LIST OF WORDS THAT OUGHT TO BE ELIMINATED FROM THE LANGUAGE AND I WAS JUST WONDERING IN THIS FETISH HOUSE BUSINESS, DOES THIS GIVE A NEW MEANING TO "TYING ONE ON?"

**DAN GAFFNEY**:    [LAUGHS] ALRIGHT. EVERYBODY'S A COMEDIAN. EVERYBODY'S A COMEDIAN. ALRIGHT. SO . . . SO THERE YOU GO. AND IN TERMS OF LEGALITY YOU DON'T KNOW. YOU DON'T KNOW IF IT'S LEGAL OF NOT.

**JOHN ATKINS**:    NO I . . . I'M ALSO IN TOUCH WITH THE ALCOHOL BEVERAGE COMMISSION AND HAVEN'T YOU KNOW HAVEN'T HEARD BACK FROM THEM YET. BUT I TOOK YOUR ADVICE YESTERDAY AFTER LISTENING TO YOU AND I WENT TO THE WEBSITE AND LOOKED AT THE PICTURES AND FOR THOSE LISTENERS THAT DIDN'T I MEAN THERE'S FULL STEEL CAGES . . . CAGES THAT KIND OF RESEMBLE A DOG CAGE WHERE SOMEONE WOULD HAVE TO GET IN ON THEIR HANDS AND KNEES AND STAY TO SHUT THE DOOR, YOU KNOW THE CHAINS AND THE SHACKLES AND LIKE YOU SAID YESTERDAY IT LOOKS LIKE SOMETHING RIGHT OUT OF ABU GHRAIB PRISON. YOU KNOW I'M A LITTLE DISAPPOINTED IN THE I GUESS THE LACKADAISICAL . . . I GUESS FOR USE OF A BETTER WORD . . . YEAH ATTITUDE IN THE COMMUNITY. ANYTHING LIKE THAT I MEAN IF THIS HAD BEEN THE CANTON INN AND THEY WERE RENTING OUT ROOMS OVER IN SEAFORD LIKE THIS YOU KNOW FOR ANOTHER LACK OF A BETTER WORD IT PROBABLY BE YOU KNOW CALLED A WHOREHOUSE BASICALLY AND WERE ALLOWING THIS TO GO ON.

**DAN GAFFNEY**:    RIGHT. ALRIGHT, I AGREE WITH YOU JOHN. WGMD, GOOD MORNING.

**CALLER #3**:    GOOD MORNING. I WAS WONDERING WHERE SCHWARZKOPF WAS ON THIS ISSUE.

**DAN GAFFNEY**:    PETE IS OUT OF . . .

**CALLER #3**:    NORMALLY HE IS RIGHT DOWN THERE AND [HE'S TIED UP]

**DAN GAFFNEY**:    [LAUGHS] PETE IS A LITTLE TIED UP RIGHT NOW AND HE'S NOT IN TOWN, SO WE'LL TALK TO HIM ABOUT IT WHEN HE COMES BACK SIR, ALRIGHT? ALRIGHT, ANOTHER ISSUE . . . 9-4-5-9-2-9-2 THE TELEPHONE NUMBER. ANOTHER ISSUE THE INDIAN RIVER SCHOOL DISTRICT WAS SUED BECAUSE OF A PRAYER AT A GRADUATION, WE'VE HEARD THAT STORY. THEN THE ACLU WANTED TO FILE SUIT AND TELL THE SCHOOL BOARD THAT THEY COULD NOT START THEIR SCHOOL BOARD MEETING WITH A PRAYER AND THE WORD IS, AND JOHN YOU CAN CONFIRM THIS, I HAVE HEARD FROM DIFFERENT MEMBERS OF THE SCHOOL BOARD WHO I WILL NOT NAME BECAUSE THEY HAVE BEEN ASKED NOT TO SPEAK BUT IT LOOKS LIKE THE LAWYERS FOR THE INSURANCE COMPANY ARE WORKING TO SETTLE THIS LAWSUIT, THESE LAWSUITS COMBINED NOW, WITH THE ACLU AND THEY'RE HEARING RUMBLINGS THAT

THE ACLU, ON BEHALF OF THEIR CLIENTS, WANT A SIX FIGURE SETTLEMENT AND THAT THE INSURANCE COMPANY LAWYERS ARE ASKING THE SCHOOL BOARD MEMBERS NOT TO SPEAK, AND THEY SHOULDN'T BE ALLOWED TO SPEAK OUT TO THE PUBLIC ABOUT THIS BUT, THERE ARE SOME MEMBERS OF THE SCHOOL BOARD WHO ARE NOT IN FAVOR OF SETTLING THIS CASE AND YOU FOLLOWED IT CLOSELY MAYBE BRING OUR LISTENERS UP TO SPEED WITH SOME MORE FACTS, JOHN.

**JOHN ATKINS**:    I'VE TALKED TO AT LEAST 3 OR 4 OF THE SCHOOL BOARD MEMBERS THAT I AM CLOSEST WITH AND THOSE 4 ARE READY NOT TO SETTLE. REGGIE HELMS, WHO I'LL MENTION BY NAME, WAS QUOTED IN THE PAPER. HE THINKS IT'S TIME THAT WE DRAW A LINE IN THE STAND.

**DAN GAFFNEY**:    I AGREE WITH HIM TOO BY THE WAY. BECAUSE YOU CAN'T . . . WHY JUST SETTLE IF YOU THINK YOU'RE IN THE RIGHT?  THEY WOULD WANT MONEY **AND** DIFFERENT CONDITIONS. THEY DON'T KNOW WHAT THOSE CONDITIONS ARE. I COULD GUESS THEY WOULD MEAN STOP PRAYING, YOU KNOW.

**JOHN ATKINS**:    RIGHT, AND I'VE HEARD FIGURES ANYWHERE FROM $100,000 TO $400,000 FOR THIS SETTLEMENT. I'VE YET TO SEE WHERE ENDING A SCHOOL GRADUATION WITH A LINE "IN JESUS NAME, WE PRAY" WOULD OFFEND SOMEBODY OR WHERE THEY WOULD BE OUT FINANCIALLY. I THINK YOU'RE JUST OPENING A BOX OF CONTINUING LAWSUITS, FRIVOLOUS LAWSUITS AND ,YOU KNOW, I'LL BE HONEST THE "MERRY CHRISTMAS", THE "IN GOD WE TRUST", THE "IN JESUS NAME, WE PRAY" AT A SCHOOL GRADUATION, YOU KNOW, I QUESTION YOU KNOW IS THAT REALLY OFFENDING SOMEBODY WHERE THEIR AT A FINANCIAL LOSS, YOU KNOW. I MEAN $100,000 TO $400,000 – SIX FIGURES FOR ENDING A SCHOOL GRADUATION WITH THAT LINE IS RIDICULOUS AND I WOULD HOPE THAT THE INDIAN RIVER SCHOOL BOARD WOULD YOU KNOW DRAW A LINE IN THE SAND. I THINK THE PUBLIC SENT A CLEAR AND LOUD MESSAGE TO THEM PROBABLY 2 YEARS AGO. REPRESENTATIVE HOCKER AND MYSELF SPOKE AT THE SCHOOL BOARD MEETING, AS YOU RECALL THERE WAS PROBABLY WELL OVER A THOUSAND PEOPLE IN SUPPORT OF THE INDIAN RIVER SCHOOL BOARD AND I WOULD JUST HOPE THAT, YOU KNOW, THEY WOULDN'T FORGET US.

**DAN GAFFNEY**:    RIGHT. AND ARE YOU HEARING THE SAME THING THAT I'M HEARING THAT IT'S THEIR OWN ATTORNEYS FOR THE INSURANCE COMPANY, THAT REPRESENTS THE SCHOOL, MAKING THIS DEAL IN TRYING TO GET THEM TO SETTLE.

**JOHN ATKINS**:    RIGHT. IT'S THE EASY WAY OUT. LET THE COURTS DECIDE AS SCHOOL BOARD MEMBER REGGIE HELMS STATED IN THE PAPER. YOU KNOW, IF THE COURTS DECIDE THAT THE INDIAN RIVER SCHOOL BOARD OWES IT THAT'S ONE THING. BUT JUST TO CAVE IN, I THINK IS WRONG TO THE ACLU.

4

**DAN GAFFNEY**:    NOW MONDAY WERE TOLD THAT THE . . . AT SUSSEX CENTRAL HIGH SCHOOL, THE BOARD WILL VOTE ON WHETHER TO ACCEPT THIS SETTLEMENT OFFER.  BUT, APPARENTLY, IT'S GOING TO BE DISCUSSED WITH THE ATTORNEYS IN PRIVATE AND THAT THE PUBLIC WILL NOT HAVE AN OPPORTUNITY TO COMMENT AT THIS MEETING.  THAT'S WHAT THEY'RE SAYING IN THE NEWSPAPER.  BUT THEY WILL HAVE A CHANCE TO DO SO AT THE BOARD'S REGULAR MEETING ON JANUARY 24TH.  IT'S TOO LATE AT THAT POINT. I THINK THE PUBLIC NEEDS TO SAY SOMETHING, SOMEHOW, AT LEAST EVEN IN JUST SHOWING UP BECAUSE HOW CAN YOU TALK ABOUT SOMETHING AFTER THE FACT, YOU KNOW?

**JOHN ATKINS**:    YEAH AND I, YOU KNOW . . . I'D RECOMMEND THAT THE PUBLIC AND THE TAXPAYERS OF INDIAN RIVER SCHOOL DISTRICT CALL YOUR SCHOOL BOARD MEMBER.  IF YOU DON'T KNOW WHO THEY ARE CALL THE DISTRICT OFFICE GET THEIR PHONE NUMBERS AND LET THEM KNOW HOW YOU FEEL ABOUT THIS ISSUE.

**DAN GAFFNEY**:    ALRIGHT . . . 9-4-5-NINETY-2-NINETY-2, THE TELEPHONE NUMBER AT WGMD.  YOU'RE RIGHT.  REGGIE . . . REGINALD HELMS SAID HE IS ASKED . . . HE WAS ASKED NOT TO COMMENT PUBLICLY ANYMORE UNTIL THE JUDGE IN THE CASE SPEAKS TO HIM.  YOU KNOW, THEY'RE PUTTING PRESSURE ON THESE SCHOOL BOARD MEMBERS NOT TO LET TOO MUCH INFORMATION OUT TO THE PUBLIC.  WELL, I THINK IT'S DIRTY, BY THE WAY.  DIRTY TRICK. THE PUBLIC HAS A RIGHT TO KNOW EVERY SINGLE STEP OF THIS THING BECAUSE IT'S PUBLIC MONEYS WE'RE TALKING ABOUT.

**JOHN ATKINS**:    RIGHT AND I HAD TALKED TO REGGIE, I GUESS, THE DAY AFTER HIS ARTICLE IN THE LOCAL NEWSPAPERS AND THE STATE NEWS, PROBABLY ABOUT 2 WEEKS AGO AND, I GUESS, SINCE HE'S HAD THAT GAG ORDER MAYBE PLACED UPON HIM.

**DAN GAFFNEY**:    YOU'RE ON WGMD WITH ANY QUESTIONS OR COMMENTS

**CALLER #4**:    YES, I GRADUATED FROM SUSSEX CENTRAL AND SO DID MY HUSBAND AND I HAVE 3 KIDS IN THE INDIAN RIVER SCHOOL DISTRICT AND I'M ASHAMED.  I AM ABSOLUTELY ASHAMED.  I FEEL LIKE TAKING MY KIDS OUT.  I DON'T KNOW IF THEY REALIZE THAT THEIR SCHOOL CHOICE AND THIS PRECEDENCE THAT THEY'RE GOING TO OPEN UP IS ABSOLUTELY RIDICULOUS.

**DAN GAFFNEY**:    WAIT A MINUTE MA'AM.  WAIT A MINUTE, YOU MIGHT BE A BIT PREMATURE HERE.  WHAT ARE YOU ASHAMED OF?

**CALLER #4**:    I'M ASHAMED THAT THEY WOULD EVEN ENTERTAIN THE **THOUGHT** OF PAYING FOR THAT.

**DAN GAFFNEY**:    OH, O.K.

**CALLER #4**:    I AM ASHAMED.

**DAN GAFFNEY**: WELL, IT'S NOT THEIR . . . NECESSARILY THEIR CHOICE, THIS IS WHAT THE ATTORNEYS ARE TRYING TO COME UP WITH AND THE DEAL THEY'RE TRYING TO MAKE. THEY VERY MAY WELL TURN THIS WHOLE THING DOWN, THAT'S WHY YOU NEED TO SHOW UP AT THAT MEETING I THINK ON MONDAY.

**CALLER #4**: I THINK, I THINK THERE SHOULD BE A WALKOUT AT THE SCHOOL. I THINK EVERY PARENT THAT ISN'T SUPPORTIVE OF NOT PAYING FOR THIS SHOULD TAKE THEIR KIDS OUT FOR A DAY OR 2 AND SHOW THEIR SUPPORT AGAINST PAYING HER AND I WANT TO KNOW IF SHE'S GOING TO SPEND THE MONEY, THE MONEY HAS "IN GOD WE TRUST" ON IT. IS SHE GOING TO SPEND THAT? WHAT'S THE PURPOSE OF GETTING THE MONEY?

**DAN GAFFNEY**: WELL, IN MY OPINION, MOST OF IT GOES TO THE ACLU ATTORNEYS, I WOULD GUESS. HI, YOU'RE NEXT ON WGMD, GO AHEAD PLEASE. TURN YOUR RADIO DOWN. HELLO.

**CALLER #5**: GOOD MORNING GAFFNEY. I GOT A BUNCH OF WEBS FILLED IN MY HEAD OVER ALL THIS AND I NEED SOME EDUCATION. THIS ACLU PEOPLE THEY'RE DOING ALL THIS FOR MY BENEFIT IS THAT RIGHT? MY NAME IS JOHN Q. PUBLIC AND THEY'RE DOING THAT FOR MY BENEFIT? AND . . .

**DAN GAFFNEY**: THAT'S WHAT THEY CLAIM. YES, TO PROTECT THE FREEDOMS THAT WE ENJOY, SIR. THAT'S WHAT THEIR CLAIM IS.

**CALLER #5**: BUT THEY DON'T, BUT THEY DON'T . . . AND I ELECTED THESE OFFICIALS TO DO THIS THING BUT THEY DON'T WANT THE OFFICIALS TO TELL ME WHAT THEY'RE DOING OR TO SAY ANYTHING ABOUT IT? NOW I . . . THIS ACLU THING...HOW COME THEY WANT IT TO BE SECRET IF IT'S FOR MY BENEFIT . . . I'M NOT SUPPOSED . . . CAN YOU EXPLAIN ALL THAT?

**DAN GAFFNEY**: I DON'T KNOW. JOHN?

**JOHN ATKINS**: YEAH, I MEAN I CERTAINLY AGREE. IT'S BEING PAID FOR BY TAXPAYERS' MONEY I THINK WE SHOULD BE IN THE LIGHT THE WHOLE STEP OF THE WAY.

**DAN GAFFNEY**: YOU'RE NEXT ON WGMD. GOOD MORNING. HELLO, YOU'RE ON WGMD.

**CALLER #6**: GOOD MORNING. I HAVE TWO POINTS TO MAKE ABOUT THE SCHOOL AND THE PRAYER. SIMPLY, NUMBER ONE, WE'RE SUPPOSED TO BE TEACHING OUR CHILDREN MOST IMPORTANTLY TO DO WHAT'S RIGHT AND TO DO IT AND TO FIGHT FOR WHAT YOU BELIEVE IN. I THINK SIMPLY WE SHOULD DO THAT. AND THE SECOND THING SIMPLY IS IT'S ALL ABOUT MONEY AND IF THE SCHOOL DISTRICT DOES SETTLE IT'S MOST LIKELY WILL BE BECAUSE THEY FEEL THEY CAN'T AFFORD TO FIGHT. I'D BE WILLING TO PUT UP $100 AND I'M NOT EVEN IN THE INDIAN RIVER SCHOOL DISTRICT TO SUPPORT THE FIGHT

AGAINST THE ACLU NUMBER ONE AND NUMBER TWO I CAN'T IMAGINE THERE'S NOT AN ATTORNEY OR A HANDFUL OF ATTORNEYS IN THIS COUNTY THAT WILL AT LEAST FIGHT THE BATTLE FOR FREE.

**DAN GAFFNEY**:    WELL THERE ARE . . .

**CALLER #6**:    WE CAN BEAT THEM.  PUT THE MONEY UP AND LET'S TAKE THEM.

**DAN GAFFNEY**:    WELL THE RUTHERFORD INSTITUTE IS ON THE CASE ON BEHALF OF SOME OF THE SCHOOL BOARD MEMBERS, I UNDERSTAND, RIGHT?

**JOHN ATKINS**:    YES THEY ARE.  I THINK THEY ARE, YES.

**DAN GAFFNEY**:    I THINK NEUBERGER WORKS WITH THEM AND WE GOT TO GO. STICK AROUND JOHN ATKINS IS MY GUEST.  HE'LL BE WITH US AFTER THE NEWS AT 7.  WE'RE BROUGHT TO YOU BY ATLANTIC CELLULAR YOU'RE AUTHORIZED AGENT FOR VERIZON WIRELESS AND MORE DETAILS ON CARS WITH LEN SIMON COMING UP WE'RE LIVE AT BROWSE ABOUT BOOKS WGMD REHOBETH BEACH.

# EXHIBIT H



# Local News



**An August 2004 Indian River board meeting (above) saw 800-plus attendees as many spoke in favor of school prayer. Both sides in the lawsuit against the district are in court-ordered mediation.**

SPONSOR



You know you want it

So buy it... in the Sussex Countian classifieds

**CLICK HERE**

**IRSD settlement decision postponed**

**By Patrick Varine**
Staff Reporter
patrick@sussexcountian.com

It may be back to the mediation drawing board for both sides in the lawsuit against the Indian River School District (IRSD).

Or not.

No one is saying, as a verbal order has been issued by the mediating judge to prevent anyone involved from commenting, according to sources close to the case.

Regardless, a meeting originally scheduled for this past Monday, Jan. 9, where IRSD board members were to have reviewed the terms of the settlement in an

executive session and then potentially take a public vote on them – as well as a Jan. 11 teleconference between both sides' attorneys – was cancelled late last week.

The suit, filed against the district in late February by parent Mona Dobrich – along with her husband, son, daughter and another IRSD family, identified only as "the Does" – alleged that board members had adopted practices amounting to an establishment of religion within the district.

In August, U.S. District Judge Joseph Farnan, Jr. granted a motion to dismiss individual charges against all 10 board members as well as IRSD Superintendent Lois Hobbs and assistant superintendent Earl Savage, and also ruled that the board's practice of opening its meetings with a prayer – alleged to be unconstitutional by the plaintiffs – was not in violation of the Constitution.

Farnan likened the board's meetings to a legislative session, rather than a school function, as the plaintiffs had claimed.

Both sides were also ordered into mediation in late August, to iron out the remaining issues, and the situation appeared to be gravitating toward a settlement; attorneys on both sides indicated that something was in the works, but could not give details.

In terms of details, IRSD attorney John Balaguer said he was upset at what he called "so much incorrect information being printed, it really borders on irresponsible."

IRSD board member Reginald Helms, who has retained his own legal counsel, Wilmington attorney Thomas Neuberger, could not comment, but referred to earlier news reports where he had stressed his desire not to settle and get a ruling one way or the other.

In fact, much of the information Balaguer referred to came from IRSD board members, who he said were not subject to the negotiation but spoke freely to the media last week.

IRSD Board President Charles Bireley said last week that "We've got to get something to look at before January 11, because at that time, [Judge Farnan] will rule on whether we're going to proceed to court on the rest of the suit."

According to District Court officials in Wilmington, however, a status teleconference originally scheduled for Jan. 11 – at which attorneys for both sides were to discuss the current state of the mediation – was cancelled, rather than a court date.

Nothing pertaining to the continuation of the lawsuit in court has been filed publicly, and one District Court clerk said the suit "looks like it's in limbo right now," as the case file noted that nothing further needs filed unless so ordered by either the mediating judge or Judge Farnan.

News

The next scheduled meeting of the Indian River School Board is Jan. 24 at 7:30 p.m. at the Indian River High School.



Copyright 2005© The Dover Post Co. All Rights Reserved.

# EXHIBIT I

## Community rallies for prayer

*By James Diehl, Sussex Post*

GEORGETOWN — Sam Wilson is on a mission — a mission from God, so to speak.

The 67-year-old Georgetown resident is organizing a group of Indian River School District residents who are concerned over the topic of prayer, especially at monthly meetings of the board of education.

Specifically, they want to make sure the board is aware of their beliefs that they not accept what is reported to be a six-figure settlement offer from the district's insurance company.

That settlement offer stems from a 2005 case filed against the district concerning the issue of prayer at Indian River board of education meetings.

Acceptance of the offer would effectively end the nearly 19 month debate.

"I'm very confident the board will not cave in and vote for this settlement," Mr. Wilson said last week. "I just don't believe that one or two people can say what the other 99 percent can or can't do.

"We just want them to represent the people that elected them and we want them to stand up for what is right."

Mr. Wilson promises at least 1,000 people will be on hand when the board is finally able to debate the issue, which would top the number present during a meeting in August 2004, when an estimated 800 people packed Frankford Elementary School during a discussion of the issue.

The topic has become a rallying cry for certain segments of the community. Not only is Mr. Wilson organizing a group, but Pat Prince in nearby Dagsboro has taken the fight door to door.

Ms. Prince is literally walking the streets in Dagsboro and Millsboro obtaining signatures on a petition that she hopes to present to the board of education.

In it, she pleads for board members to vote against the reported settlement offer.

"I really believe that lawsuits are totally out of line and, if a person really, totally feels offended by a religious reference, then if they were going to sue on principle only, they would only sue for a dollar," Ms. Prince said. "I'm not only knocking on doors, but I'm also going to stop at local businesses and ask them if they will put a petition in their stores or restaurants.

"I think this has rallied the community. People are just saying that enough is enough is enough."

The board of education was scheduled to meet on Jan. 9 at Sussex Central High School to discuss the issue. However, papers had not been received from participating attorneys in time for that meeting.

That meeting will be rescheduled at a later date but, in the meantime, all parties involved in the case have been placed under a verbal order by the court not to discuss the issue.

However, before the gag order came down from the bench, board member Reginald Helms went on

record opposing the proposed offer of a large settlement.

"It's time for us to stand up for our rights and I think the public supports us in that," Mr. Helms said in an interview for the Dec. 22 edition of the Sussex Post. "I feel we're obligated to them to stand up and see this through."

And it seems members of the public, at least the ones who are publicly organizing, are on Mr. Helms' side.

"Accepting that offer would set a precedent. If they win this one, it just means a bigger one for them next time," Mr. Wilson said. "I don't care if it was a dollar, I still wouldn't want them to settle."

If the board were to vote to settle out of court, it's not clear where that money would come from. And the gag order prohibits anyone from speculating.

However, the Indian River School District is already facing a major shortfall for next fiscal year and a major payout in this case could put them in an even worse financial position.

"I think that school boards in our local towns are having enough problems with money and for a six-figure lawsuit to be thrown on the back of the Indian River School District…I just find that appalling," Ms. Prince said. "I support the school board and I think if they want to say a prayer, then they should say their prayer.

"We need to draw the line and I think the silent majority this time is no longer going to be silent."

The case all began when Mona and Marco Dobrich, who were concerned over a Christian prayer said at their daughter's Sussex Central High School graduation ceremony, filed a lawsuit against the district seeking monetary damages and injunctive relief.

The Dobrich family is of the Jewish faith.

In response, the Indian River board issued new policies governing commencement and baccalaureate services that stated student-initiated, student-delivered, voluntary messages were permissible during such ceremonies.

The board continued its custom of beginning board meetings with voluntary prayer by a board member, however, despite a request by the American Civil Liberties Union to discontinue that practice.

"We're supporting the school board and we're behind them," Mr. Wilson said. "But they need to recognize that they're there to support us and the people in their district want them to vote against this settlement.

"And I think we will say that by being there (for the meeting)," Mr. Wilson continued. "We'll stay there all night if we need to."

Earlier this year, Judge Joseph Farnan granted a defense motion dismissing all claims against individual members of the Indian River Board of Education.

The case against the district is still open, however, pending the possible settlement.

The board of education is required to give seven days notice before scheduling a meeting to discuss the issue.

News Editor James Diehl can be reached at 629-5505 or jdiehl@newszap.com.

# EXHIBIT J

# White and Williams LLP

**WW**

824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Phone: 302.654.0424
Fax: 302.654.0245

John D. Balaguer
Direct Dial: 302.467.4501
Direct Fax: 302.467.4551
balaguerj@whiteandwilliams.com

December 28, 2005

**VIA E-FILE**

Magistrate Judge Mary Pat Thynge
U.S. District Court
District of Delaware
844 North King Street, Lock Box 8
Wilmington, DE 19801

RE: **Dobrich v. The Indian River School Board, et al.**
      **C.A. No. 05-120 JJF**

Dear Judge Thynge:

I am disappointed to have to report to the Court a violation by one of the parties in this matter of that portion of the Court's June 20, 2005 Mediation Order dealing with confidentiality. I am enclosing a recent newspaper article which is self-explanatory.

I have not copied plaintiffs' counsel on this correspondence in an effort to keep from unnecessarily escalating this matter, however I am requesting Your Honor's assistance in preventing any further breaches of confidentiality. If Your Honor believes that Mr. Allingham should be notified of this communication, I will of course immediately make him aware.

I am of course available at the Court's convenience to address this matter further.

Respectfully,

WHITE AND WILLIAMS LLP

By: _John D. Balaguer_
     John D. Balaguer

JDB/abm
Enclosure
cc:   John F. Cafferky, Esquire (via facsimile (703) 691-3913)
      Thomas S. Neuberger, Esquire (via e-file)

*Allentown, PA • Berwyn, PA• Cherry Hill, NJ • New York, NY
Paramus, NJ • Philadelphia, PA • Pittsburgh, PA • Wilmington, DE*

# EXHIBIT K



http://www.delawareonline.com/apps/pbcs.dll/article?AID=/20060228/NEWS/602280365/1006/NEWS

# Indian River refuses deal on prayer
## Hymn-singing crowd praises Jesus after board's decision

**BY MOLLY MURRAY**
**THE NEWS JOURNAL**
02/28/2006

Arguing that "tolerance is a two-way street," Indian River School Board member Reginald L. Helms joined his colleagues in rejecting the proposed settlement of a lawsuit that claims the district nurtured Christianity in its schools and excluded those who don't practice it.

The vote followed a closed-door session of more than an hour and a half, time in which a crowd of about 120 people gathered in the Sussex Central High School auditorium. Many held signs urging the board to keep prayer in school, and about an hour into the closed session, someone started to sing a hymn: "Take Everything to God in Prayer."

Then, they sang "God Bless America" and "My Country 'Tis of Thee," "Onward, Christian Soldiers" and "He's Got the Whole World in His Hands."

Sometimes they added little jokes about their disdain for the American Civil Liberties Union. Sometimes, they suggested that God should hold the school board in his hands.

By the time board members started to file in at 8:37, the singing had stopped. Board President Charles M. Bireley reconvened the open session and the board quickly voted to reject the settlement offer.

"Praise the Lord," a man in the audience shouted.

The crowd rose and gave the board a standing ovation and cheered.

Helms then said that he believed "my freedom of speech is too important to compromise or risk its loss. Our court case, where we have been standing up to the ACLU, provides the opportunity for the federal court to permanently uphold my right not to be treated as a second-class citizen, or to have to move to the back of the bus."

Buy this photo



SPECIAL TO THE NEWS JOURNAL/TED MATHIAS
**President Charles M. Bireley (left) leads the Indian River School Board into the auditorium of Sussex Central High School.**



**Indian River School Board member Reginald L. Helms said he had a right "not to be treated as a second-class citizen, or to have to move to the back of the bus."**



**Mona Dobrich brought the suit after her child's high school commencement, at which a Christian prayer was said.**

The settlement offer came from negotiations supervised by a court-appointed mediator after Mona and Marco Dobrich and a second, unnamed family, filed a lawsuit in U.S. District Court in Wilmington alleging "an environment of religious exclusion" in the district. Among their concerns: a Christian prayer offered at the 2004 Sussex Central High School graduation.

The Dobrich family, who had a daughter who graduated at the 2004 commencement, initially went to district officials to complain about the Christian graduation prayer.

Following that complaint, board officials banned any prayer at school functions where students are present. They still allow a prayer or moment of silence prior to board meetings.

The Dobriches' attorney, Thomas J. Allingham II, said he was disappointed with the board action on Monday. "We will now prepare to litigate our claims," he said.

No one is discussing the terms of the proposed settlement because of a court order that forbids it. But Allingham said he felt it was fair and reasonable.

John Betts, pastor at Abundant Life Church in Georgetown, said he attended the meeting because "I'm interested in what affects people's privilege to express their faith," he said. "You can take inclusiveness to the place where nobody can do anything."

The real issue, said Wilmington attorney Thomas S. Neuberger, is to stop the school board from opening its meetings with a prayer or moment of silence. Neuberger represents board member Helms in the court case.

"This is part of a nationwide plan to stop citizen legislators from opening their meetings by speaking or praying," he said.

*Contact Molly Murray at 856-7372 or mmurray@delawareonline.com.*

Copyright © 2006, The News Journal. Use of this site signifies your agreement to the Terms of Service and Privacy Policy (updated 10/3/2005)

# EXHIBIT L

**Entire Document Redacted**

# EXHIBIT M



Slip Copy                                                                                              Page 1

Slip Copy, 2006 WL 1173896 (D.Del.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Mona DOBRICH, et al., Plaintiffs,
v.
THE INDIAN RIVER SCHOOL DISTRICT, et al.,
Defendants.
**No. Civ.A. 05-120-JJF.**

May 2, 2006.

Thomas J. Allingham II, Robert S. Saunders, and
Rosemary S. Goodier, of Skadden Arps Slate
Meagher & Flom, LLP, Wilmington, Delaware, for
Plaintiffs.
John D. Balaguer, of White and Williams LLP,
Wilmington, Delaware, John F. Cafferky, William
Porter, and Andrea D. Gemignani, of Blankingship
& Keith, Fairfax, Virginia, for Defendants, the
Indian River School Board, the Members of the
Indian River School Board in their Official
Capacities, and the Indian River School District, of
counsel.
Thomas S. Neuberger, and Stephen J. Neuberger, of
the Neuberger Firm, P.A., Wilmington, Delaware,
John W. Whitehead, and Douglas R. McKusick, of
the Rutherford Institute, Charlottesville, Virginia,
Appearing on behalf of Defendant, Reginald L.
Helms, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.
**\*1** By Order dated August 2, 2005, the Court
concluded that the individual members of the Indian
River School Board (the "School Board") were
entitled to absolute immunity, and therefore, the
Court dismissed the Complaint as it pertained to the
School Board members in their individual
capacities. The School Board remains a party to this
action, and the members of the School Board are
parties to this action, in their official capacities only.

At the Scheduling Conference held on March 26,
2006, the parties raised a concern regarding the
representation of Defendant Reginald L. Helms.
The Court requested all parties to submit their
positions with respect to the representation of Mr.
Helms in his official capacity by counsel
independent of the School Board.

DISCUSSION

The School Board, as an entity, has retained
counsel. However, Mr. Helms seeks to have a
separately retained lawyer enter an appearance and
litigate on his behalf, independent of the School
Board. While Mr. Helms is permitted to seek the
advice of counsel he chooses on matters related to
this litigation, the Court concludes that Mr. Helms
is not entitled to have counsel participate on his
behalf in this action independent of the School
Board.

A lawsuit naming a person as a defendant in his/her
official capacity is an action against the entity of
which the individual is an agent or member. *Bender
v. Williamsport Area School District,* 475 U.S. 534,
544 (3d Cir.2003) (citing *Monell v. New York City
Dept. of Social Servs.,* 436 U.S. 658, 690 n. 55
(1978)). Because Mr. Helms is a party to this action
in his official capacity only as a member of the
School Board, he "does not have a personal stake in
the outcome of the litigation." [FN1] *Id.* at 543. Thus,
the Court concludes that the School Board is the
real party in interest in this case, and the attorneys
for the School Board are the attorneys the Court
must recognize as counsel of record. Accordingly,
the Court concludes that Mr. Helms may not have
counsel litigate on his behalf separately from the
School Board.

> FN1. Mr. Helms contends that the
> injunction sought against him by Plaintiffs
> may implicate his individual rights under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 1173896 (D.Del.)
**(Cite as: Slip Copy)**

the First Amendment. If, in the future, Mr. Helms believes an injunction entered against the School Board affects his individual rights under the United States Constitution, he can then seek relief from the Court.

An appropriate Order has been entered.

### ORDER

At Wilmington, this *28* day of April 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the request by Defendant Reginald L. Helms to have counsel separate from counsel retained by the School Board litigate issues in this action independently on behalf of Mr. Helms is *DENIED.*

D.Del.,2006.
Dobrich v. Indian River School Dist.
Slip Copy, 2006 WL 1173896 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2868076 (Trial Motion, Memorandum and Affidavit) Defendant Reginald L. Helms' Reply Brief in Support of his Motion to Strike Portions of Plaintiffs' Reply Brief (D.I. 69) for Failure to Comply with Local Rule 7.1.3 (Sep. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2868074 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response Brief in Opposition to Helms's Motion to Strike Portions of Plaintiffs' Reply Brief and Declaration in Support of Plaintiffs' Rule 56(f) Motion (Sep. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 2603671 (Trial Motion, Memorandum and Affidavit) Defendant Helms' Motion to Strike Portions of Plaintiffs' Reply Brief (D.I. 68) and Declaration (D.I. 69) for Failure to Comply With Local Rule 7.1.3 (Sep. 8, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 2603670 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Support of Their Motion to Deny Or Continue Helms's Motion

for Summary Judgment (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 2603668 (Trial Motion, Memorandum and Affidavit) Reply Brief of Defendants Walls, Isaacs, Evans, Cohee, Hastings, Bunting, Bireley, Hattier, Mccabe Hobbs and Savgae and the Indian River School Board and Indian River School District, in Support of Helms' Motion for Summary Judgment (Aug. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 2603669 (Trial Motion, Memorandum and Affidavit) Defendant Reginald L. Helms' Reply Brief in Support of His Motion for Summary Judgment on the Board's Voluntary Prayer Policy as Written and Answering Brief in Opposition to Plaintiffs' Motion to Deny or Continue Defendant Helms' Motion for Summary J udgment (Aug. 26, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 2603667 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opening Brief in support of Their Motion to Deny Or continue Helms's Motion for Summary Judgment (Aug. 19, 2005)
• 2005 WL 2385523 (Trial Motion, Memorandum and Affidavit) Defendant Reginald L. Helms' Opening Brief in Support of His Motion for Summary Judgment on the Board's Voluntary Prayer Policy as Written (Aug. 5, 2005) Original Image of this Document with Appendix (PDF)
• 1:05cv00120 (Docket) (Feb. 28, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT N

**Entire Document Redacted**