# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONA DOBRICH, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 05-cv-00120-JJF |
| | : | |
| HARVEY L. WALLS, et al., | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' INTERROGATORIES DIRECTED TO DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 33, plaintiffs, Mona Dobrich, Marco Dobrich, Alexander Dobrich, Jane Doe, John Doe, Jordan Doe and Jamie Doe, by and through their attorneys of record, hereby request and demand that defendants Indian River School District and the Indian River School Board (the "Defendants") answer under oath the following interrogatories in accordance with the instructions and definitions set forth below. Answers to these interrogatories should be served upon plaintiffs at One Rodney Square, 7th Floor, Wilmington, Delaware 19801, within twenty-one (21) days from the date of service of these interrogatories on the Defendants.

## INTERROGATORIES

1.      Describe the content of any and all School Board Prayers.

2.      Describe any and all instances in which the School Board or a School Board Member has invited, instructed or asked a student to attend a School Board Meeting.

3.      Identify the person(s) responsible for preparing the agendas for School Board Meetings.

4.      Describe how the agendas for School Board Meetings are prepared.

5.      Identify the religious faith or denomination of any and all School Board Members.

6.      Describe any and all communications with Media concerning School Board Prayer, the Litigation or the Settlement Agreement.

## DEFINITIONS

For purposes of this discovery request, the following words will have the meaning indicated below:

1.      "Complaint" shall mean the complaint filed by plaintiffs in this action.

2.      "District" shall mean the Indian River School District.

2

3.    "Litigation" shall mean the case captioned *Mona Dobrich, et al. v. Indian River School District, et al.*, 05-120-JJF (D. Del.), which was commenced by the filing of the Complaint.

4.    "Media" shall mean any newspaper, magazine, journal, television station, radio station or any other medium or entity, and their employees, used for the dissemination of information.

5.    "Religious Activity" shall mean any activity, conduct, expression, observance, practice or path concerning religion or religious beliefs, including and without limitation: designation of religious days in District or School calendars; distribution of religious Documents; performance of religious music; performance of religious plays; presentations concerning religion; prayer; religious clubs; and religious study.

6.    "School" shall mean any school within the District.

7.    "School Board" shall mean the school board authorized to administer and to supervise the free public schools of the District  under 14 Del. C. § 1043.

8.    "School Board Meeting" shall mean any official meeting of the School Board sufficient to establish a quorum so that the School Board could transact business under 14 Del. C. § 1048.

3

9.     "School Board Members" shall mean all past and current persons duly elected or appointed to the School Board.

10.     "School Board Prayer" shall mean any prayer, invocation or other Religious Activity made at a School Board Meeting by a School Board Member or the Representative of the School Board or a School Board Member.

11.     "Settlement Agreement" shall mean the settlement voted on by the School Board on February 27, 2006.

12.     "Student" shall mean any past or current student attending any School.

13.     The terms "all" and "each" shall be construed as "all and each."

14.     The term "all" or "any" shall mean any and all.

15.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1.     Unless otherwise specified in a particular interrogatory, the relevant time period shall be September 1, 1991 to the present. Should Defendants contend that any conduct specified in a particular interrogatory predates September 1,

4

1991, then the time period covered by that particular interrogatory shall extend back to the earliest date that Defendants claim the conduct first occurred.

2.     The use of the word "including" or "includes" is used in the broadest sense of the term and specification of a particular matter in an interrogatory is not meant to exclude any other information that might be responsive to a specific interrogatory.

3.     Wherever in these interrogatories you are asked to identify a person, you shall state the person's: (a) name and present or last known residence; (b) present or last known business address; (c) present or last known occupation, title and employer; and (d) telephone, internet and e-mail contact information and address.

4.     These interrogatories shall be deemed continuing so as to require supplemental responses if further or different information responsive to any interrogatory is discovered or obtained at any time prior to trial, to the full extent provided in Federal Rule of Civil Procedure 26(e).

5.    All objections to the interrogatories, or to the definitions or instructions contained herein, shall be made in writing and delivered within twenty-one (21) days of service hereof at One Rodney Square, 7th Floor, Wilmington, Delaware 19801.

Dated: April 20, 2006

By: _Richard S. Horvath, Jr._

Thomas J. Allingham II (#0476)
Robert S. Saunders (#3027)
Richard S. Horvath, Jr. (#4558)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiffs

# Exhibit B

BDA.1

## BOARD PRAYER AT REGULAR BOARD MEETINGS

1.  In order to solemnify its proceedings, the Board of Education may choose to open its meetings with a prayer or moment of silence, all in accord with the freedom of conscience of the individual adult Board member.

2.  On a rotating basis one individual adult Board member per meeting will be given the opportunity to offer a prayer or request a moment of silence. If the member chooses not to exercise this opportunity, the next member in rotation shall have the opportunity.

3.  Such opportunity shall not be used or exploited to proselytize, advance or convert anyone, or to derogate or otherwise disparage any particular faith or belief.

4.  Such prayer is voluntary, and it is among only the adult members of the Board. No school employee, student in attendance, or member of the community in attendance shall be required to participate in any such prayer or moment of silence.

5.  Any such prayers may be sectarian or non-sectarian, denominational or non-denominational, in the name of a Supreme Being, Jehovah, Jesus Christ, Buddha, Allah, or any other person or entity, all in accord with the freedom of conscience, speech and religion of the individual Board member, and his or her particular religious heritage.

Adopted 10/19/04

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONA DOBRICH, et al.,                    )
                                          )
                    Plaintiffs,           )
                                          )
vs.                                       )        Civil Action No. 05-cv-00120-JJF
                                          )
HARVEY L. WALLS, et al.,                  )
                                          )
                    Defendants.           )
                                          )

### DEFENDANTS INDIAN RIVER SCHOOL BOARD AND INDIAN RIVER SCHOOL DISTRICT'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST INTERROGATORIES

Defendants Indian River School Board and Indian River School District

("Defendants"), by counsel and pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure hereby serve the following Objections and Responses to Plaintiffs' First

Interrogatories to Defendants propounded in the above-captioned action:

### General Objections

1.      Defendants object to the definitions and instructions to the extent they are

overly broad, unduly burdensome and purport to impose obligations beyond the scope of

Rule 26 of the Federal Rules of Civil Procedure, and/or beyond the scope of the Court's

March 24, 2006 Order ("Court's Order") limiting discovery to only the School Board

Prayer issue in this phase of the case. Specifically, Defendants object to Definition Nos.

5 and 10 as overly broad and beyond the scope of the Court's Order to the extent they

attempt to expand the definition of School Board Prayer beyond the ordinary meaning of

that phrase and beyond the limited issue as defined by the Court for discovery in this

phase of the case. Defendants object to Definition No. 9 as overly broad, and encompassing numerous individuals not within the employment or control of Defendants.

2.    Defendants object to these requests to the extent they seek personally identifiable information regarding other students, since this information is confidential and protected by the Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. §1232g.

3.    Defendants object to the discovery to the extent it seeks the disclosure of information and communications protected by attorney/client privilege, attorney work product doctrine, and/or other privileges and immunities.

4.    Subject to theses general and the following specific objections, when responding to these Interrogatories, Defendants expressly reserve the right: (a) to object to the admissibility at trial of any information produced in connection with such responses, and (b) to modify any of the said responses at a later date if further factual development or analysis warrants such a modification.

Defendants' General Objections are incorporated by reference into each specific interrogatory response.

## Objections and Responses to Specific Interrogatories

1.    Describe the content of any and all School Board prayers.

**RESPONSE**: The Board's prayer policy, including the nature of the prayers which may be delivered, is set forth in Policy BDA.1. The content of specific prayers is contained in some of the audio or videotapes of Board meetings, as well as in some of the documents produced in response to Plaintiffs' requests for production, though the tapes do not record many of them. Additional information concerning the nature or content of Board opening prayers is contained in paragraphs 3, 4 and 5 of the Declaration of Reginald Helms dated August 4, 2005, filed with the Court.

2

2.    Describe any and all instances in which a School Board member or the

School Board has invited, instructed or asked a student to attend a School Board meeting.

**RESPONSE**:   Students are not instructed or required to attend any School Board meetings.  Individual School Board members do not invite or ask students to attend School Board meetings.  Students may be invited by their school principal to attend in recognition of some honor or achievement.  For younger students, that invitation may be made by the principal to the student's parents.  In addition, during some portions of the school year, a representative of the student government for the high schools may be invited by the principal to provide a brief update of activities to the School Board at its regular meeting.  On a few occasions, students have been invited by the Superintendent to briefly perform a piece of music or some other work before the Board.  In all of these situations, attendance of the students or his or her parents is completely optional.

3.    Identify the person(s) responsible for preparing the agendas for School

Board Meetings.

**RESPONSE**:  The persons responsible for preparing the agendas for School Board meetings include the Superintendent, Board President, Board Vice President, and Board Secretary.  Currently those individuals are:

> 1)  Lois M. Hobbs, Superintendent
>      31 Hosier Street
>      Selbyville, DE 19975

> 2)  Charles M. Bireley, Board President
>      31500 Norma Lee Court
>      Dagsboro, DE 19339

> 3)  John M. Evans, Vice President
>      24359 Gravel Hill Road
>      Georgetown, DE 19947

> 4)  Janet Hearn, Board Secretary
>      31 Hosier Street
>      Selbyville, DE 19975

4.  Describe how the agendas for School Board Meetings are prepared.

**RESPONSE**:  The Superintendent prepares the initial agenda draft after consulting with the staff.  The basic outline of the agenda is taken from previous meetings and generally does not change.  It begins with a Call to Order, then Roll Call, Approval of Agenda, Presentation of Colors and Approval of Minutes from previous meeting.  The remaining

3

portions of the agenda change with each specific meeting. Those sections may include, for example, lists of Visitors and Staff in Attendance, Public Comments, Old Business and New Business, Committee Reports, Admin Reports, Financial Reports, Board Communications, Staff Issues, Executive Session Agenda, Deferred Agenda Items, and Student Hearing Reviews which consist of a Board review of actions taken in earlier disciplinary hearings conducted by an administrative hearing officer. The Superintendent then submits the draft agenda to the Board President and Vice-President. The Board President and Vice-President communicate any suggested changes to the Superintendent, the agenda is then finalized, and is then posted.

     **5.**    Identify the religious faith or denomination of any and all School Board Members.

**OBJECTION:** Defendants object to this request as overly broad and not relevant or reasonably related to discovery of information admissible to any of the issues in this phase of the case, in accordance with the Court's March 24, 2006 Memorandum Order, which limits discovery to the School Board Prayer issue.

     **6.**    Describe any and all communications with Media concerning School Board Prayer, the Litigation or the Settlement Agreement.

**RESPONSE:** Defendants object to this interrogatory to the extent it is overly broad and beyond the scope of the Court's March 24, 2006 Memorandum Order, which limits discovery to the School Board prayer issue only at this time. Defendant further objects to this request as overly broad, unduly burdensome and vague to the extent it does not specify or limit the individual speakers about whom it seeks information.

Some information concerning contacts of Board members by members of the media concerning the issue of Board prayer is contained in the articles being produced by Defendants, although the references to statements by Board members contained therein are not complete or necessarily accurate.

                       INDIAN RIVER SCHOOL BOARD
                       INDIAN RIVER SCHOOL DISTRICT

                       By: _____
                       Charles M. Bireley,
                       Board President

STATE OF DELAWARE

COUNTY OF SUSSEX, to wit:

     I hereby certify that on this __th day of May, 2006, personally appeared Charles M. Bireley, known to me to be the person who executed the foregoing Respones to Plaintiffs' First Set of Interrogatories and having been duly sworn states that he is an official authorized to execute these responses on behalf of the Indian River School Board and Indian River School District, and that they are true and correct to the best of his knowledge and belief.

Notary Public

My Commission Expires:

2/13/2009

**JANET L. HEARN**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
**CCION EXPIRES 2/13/2009**

By: _____
    Counsel

    John D. Balaguer (Bar I.D. 2537)
    824 North Market Street, Suite 902
    P.O. Box 709
    Wilmington, Delaware 19899-0709
    (302) 467-4501

5

05-17-2006   09:06   From-SUPERINTENDANT                    +                    T-471   P.007/008   F-598

John F. Cafferky, Esq.
William B. Porter, Esq.
Andrea D. Gemignani, Esq.
BLANKINGSHIP & KEITH
4020 University Drive, Suite 300
Fairfax, VA 22030

*Counsel for Defendants the Indian
River School Board, and the Indian
River School District*

Dated:  May 15, 2006

6

## Certificate of Service

I certify that on the 12th day of May 2006, a copy of the foregoing Objections was sent by electronic mail to :

>Thomas J. Allingham II, Esq.
>Robert S. Saunders, Esq.
>One Rodney Square, P.O. Box 636
>Wilmington, Delaware, 19899
>*Counsel for Plaintiffs*

By: _____
         Counsel

7

# Exhibit D

ONE RODNEY SQUARE

BOX 636

WILMINGTON, DELAWARE 19899-0636

(302) 651-3000

DIRECT DIAL
(302) 651-3035
EMAIL ADDRESS
RHORVATH@PROBONOLAW.COM

June 28, 2006

**BY E-MAIL AND FIRST-CLASS MAIL**

Jason P. Gosselin
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

RE:    Dobrich, et al., v. Indian River School District, et al.

Dear Mr. Gosselin:

        I write in response to your e-mail of June 27, 2006, regarding discovery in connection with the constitutionality of the Indian River School Board's Prayer Policy as written and as applied (the "School Board Prayer Issue") in the above-captioned matter.

**I.    DEFENDANTS' AND PLAINTIFFS' AVAILABILITY FOR DEPOSITIONS**

        Although Plaintiffs have scheduled thirteen witnesses for depositions, your e-mail proposes to schedule all those depositions over four days in July. This compressed schedule is unrealistic, particularly because the thirteen depositions potentially could take as much as 77 hours combined and the parties have not agreed to take any depositions outside of normal business hours. Please provide us with *every* date on which your clients will be available for deposition. If you persist in seeking to impose artificial restrictions, such as *seriatim* depositions, we will renotice or subpoena your clients to be deposed at a time and place of our choosing.

        Once you have provided us with the dates that your clients are available for deposition, we will provide you with potential dates for the depositions of Mona Dobrich, Marco Dobrich, Jane Doe and John Doe.

Jason P. Gosselin
June 28, 2006
Page 2

## II.    DEFENDANTS' RESPONSES TO PLAINTIFFS' DOCUMENT REQUESTS AND INTERROGATORIES

          Defendants' responses to Plaintiffs' First Request for the Production of Documents from Defendants Indian River School District and Indian River School Board (the "Document Requests") and Plaintiffs' Interrogatories Directed to Defendants (the "Interrogatories") are inadequate.[1] "Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D. N.Y. 1984). "Moreover, actions alleging violations of § 1983 require especially generous discovery." *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D. N.Y. 1997). "A most important factor to be considered in the determination as to whether particular evidence should be discovered is the importance of the evidence to the plaintiffs' case." *Rebideau*, 102 F.R.D. at 128. Ultimately, the School Board Prayer Issue will depend almost exclusively on Defendants' conduct. *Cf. Doe v. Barrow County, Georgia*, 219 F.R.D. 189, 194 (N.D. Ga. 2003) (so long as plaintiff had standing, outcome of case challenging government's religious conduct turned solely on legal question). Defendants' counsel initially told Plaintiffs that there were at least *twenty linear feet* of documents pertaining to School Board Meetings,[2] yet Defendants have produced roughly *five inches* of documents. These obviously incomplete responses to the Document Requests and Interrogatories are inconsistent with the federal policy favoring broad discovery into unconstitutional governmental activity and must be supplemented without delay.

### A.    All Documents Related to School Board Meetings

          Document Requests Nos. 5, 6, 7, 8, 13 and 17 are designed to obtain evidence relevant to the School Board Prayer Issue or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). As demonstrated in *Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 380-83 (6th Cir. 1999), and *Doe v. Tangipahoa Parish Sch. Bd.*, C.A. No. 03-2870, 2005 WL 517341, at *7-9 (E.D. La. Feb. 24, 2005), whatever transpires at a School Board Meeting is relevant to the question of whether prayer before such a meeting is constitutional. Further, documents and communications concerning attendance at School Board Meetings are discoverable because they naturally would lead to the discovery of eyewitnesses to School Board Prayer whose names might otherwise be omitted from Defendants' responses.

---

[1]  Because of the inadequate responses and the factual record that needs to be developed, Plaintiffs will not prematurely limit the time they spend deposing School Board Members or District employees.

[2]  Capitalized terms shall have the same meaning as those found in the Interrogatories and Document Requests, unless this letter otherwise provides.

Jason P. Gosselin
June 28, 2006
Page 3

For the foregoing reasons, Defendants must produce *any and all* documents beyond those documents already identified in Defendants' responses to Document Requests Nos. 5, 6, 7, 8, 13 and 17. All documents and communications sought in Document Requests Nos. 5 and 6 – not just the correspondence that Defendants claim might contain a reference to "School Board prayer"[3] – are related to the School Board Prayer Issue. Further, because there has been an ongoing custom and practice of School Board Prayer, *any and all* documents sought by Document Requests Nos. 7 and 17 concerning the Districts' past policies or procedures with respect to: (1) complaints from Students, Parents, Residents or District Representatives; and (2) disciplinary action against any Student, District Administrator, School Administrator or District Representative, are relevant to the School Board Prayer Issue. Likewise, *any and all* documents identified in Document Request No. 8, beyond those documents that Defendants believe might refer to "School Board prayer," are relevant to the School Board Prayer Issue. Finally, *any and all* documents sought by Document Request No. 13 with respect to media coverage of School Board Meetings – and not just press releases regarding "School Board prayer" – are relevant to the School Board Prayer Issue, or are likely to lead to the discovery of admissible evidence.

## B.    Religious Activity, the Litigation and the Settlement Agreement

Defendants' objections to Document Requests pertaining to Religious Activity, the Litigation and the Settlement Agreement lack merit. In their statements to the press, School Board members have linked the School Board and School Board Prayer to Religious Activity, the Litigation and the Settlement Agreement. *See, e.g.,* James Diehl, *Indian River Board to Ponder Settlement,* SUSSEX POST, Dec. 22, 2005 (School Board Member expresses desire to reject Settlement Agreement and to litigate School Board Prayer issue, stating that "it's time for Christians to stand up for our rights and I think the public supports us in that"); *see also* Molly Murray, *Indian River Refuses Deal On Prayer,* NEWS JOURNAL, Feb. 28, 2006 (School Board Member states: "Our court case, where we have been standing up to the ACLU, provides the opportunity for the federal government to permanently uphold my right not to be treated as a second class citizen, or to have to move to the back of the bus"). Therefore, Document Requests Nos. 3, 4, 9, 10, 11, and 13, along with Document Request Definitions 13 and 22, are designed to obtain evidence relevant to the School Board Prayer Issue or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

---

[3]    Because Defendants have objected to Plaintiffs' definition of School Board Prayer, the term "School Board prayer" (in quotes) shall have the limited meaning used by Defendants in their responses to the Document Requests and Interrogatories.

Jason P. Gosselin
June 28, 2006
Page 4

### C.    School Board Prayer

Apparently relying on the limited term "School Board prayer,"
Defendants appear not to have produced *any and all* documents concerning School
Board Prayer. Because School Board Prayer concerns conduct "made *at a School
Board Meeting* by a School Board Member or the Representative of the School
Board or a School Board Member," Document Request Definition 22 (emphasis
added), *any and all* documents concerning School Board Prayer are relevant to the
School Board Prayer Issue. Therefore, Document Request No. 1 requires
Defendants to produce *any and all* documents concerning School Board Prayer, and
not just those documents that might reference "School Board prayer." Further, in
response to Document Request No. 2, Defendants must produce *any and all*
communications concerning School Board Prayer and not just those documents
referencing the School Board Prayer Issue.

### D.    Documents

Rule 34 of the Federal Rules of Civil Procedure permits any party to
serve a document request to produce any designated document, "including writings,
drawings, graphs, charts, photographs, phonorecords, and other data compilations
from which information can be obtained, translated, if necessary, by the respondent
through detection devices into reasonably usable form. . . ." Document Request
Definition 9 is consistent with Rule 34. Defendants must produce all documents in
accordance with Document Request Definition 9.

### E.    Educational Records

The Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. §
1232g , exempts from the definition of "educational records" all "[r]ecords of
instructional, supervisory, and administrative personnel and education personnel
ancillary thereto which are in the sole possession of the maker thereof and which are
not accessible or revealed to any other person except a substitute." 20 U.S.C. §
1232g(a)(4)(B); *see also Owasso Indep. Sch. Dist. v. Falvo*, 534 U.S. 426, 435
(2002) ("education records are institutional records kept by a single central
custodian"). Therefore, FERPA does not apply to communications, documents or
information responsive to Document Requests Nos. 5, 6, 8 and 17 or the
Interrogatories if they are not kept in a central location. Further, any document that
Defendants may have legitimately withheld because it is a confidential educational
record protected by FERPA can be produced by redacting the information that is
"*directly* related to a student." 20 U.S.C. § 1232g(a)(4)(A)(i); *see also* Document
Request Instruction 7. Plaintiffs can then determine, based on the redacted
documents, whether to seek a subpoena to obtain the redacted information. *See*

Jason P. Gosselin
June 28, 2006
Page 5

*Victory Outreach Ctr. v. City of Philadelphia*, 233 F.R.D. 419 (E.D. Pa. 2005); *see also* 20 U.S.C. § 1232g(b)(1)(J)(ii).

### F.    Representatives and Definitions 6, 7, 14 and 21

The Document Requests require Defendants to produce documents within the possession, custody or control of Defendants and their Representatives. Defendants cannot use the fact that a Representative, or those individuals identified in Document Request Definitions 6, 7, 14 and 21, may have ceased their employment or association with the District as a reason for withholding any documents over which Defendants currently have possession, custody or control. Further, any documents and information within the possession of Defendants' former attorneys, including John Balaguer and John Cafferky, fall within the scope of the Document Requests and Interrogatories because Rule 1.16(d) of the Delaware Lawyers' Rules of Professional Conduct requires those attorneys to "surrender[] papers and property to which a client is entitled."

### G.    Document Request Instruction 6

For all documents claimed to be privileged or otherwise protected from production, Rule 26(b)(5) of the Federal Rules of Civil Procedure requires that the party "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable [the opposing party] to assess the applicability of the privilege or protection." Plaintiffs will construe Defendants' refusal to provide a privilege log as a waiver of privilege and any other protection claimed (including any based on FERPA), and Plaintiffs will move to compel production of those documents.

### H.    Document Request Instruction 8

Document Request Instruction 8 is a standard demand for information pertaining to any destroyed, lost or discarded documents that would otherwise be responsive. Defendants have known about the possibility of this litigation since August 2004, and therefore should have preserved all documents pertaining to the Litigation, Religious Activity, the Settlement Agreement and School Board Prayer since that time.

### I.    Procedures for Monitoring Public Statements or News Coverage of the District

School Board Members have made many comments to the media and in public about the Litigation, Religious Activity, School Board Prayer, the

Jason P. Gosselin
June 28, 2006
Page 6

Settlement Agreement and other aspects of this case. Defendants' procedures for
monitoring public statements or news coverage could cause Plaintiffs to discover
other statements by Defendants or School Board Members that are relevant to the
School Board Prayer Issue. Therefore, Document Request No. 14 is designed to
obtain evidence relevant to the School Board Prayer Issue, or reasonably calculated
to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

### J.    Procedures for Monitoring and Storing Documents and Communications

Defendants' procedures for monitoring and storing documents and
communications are relevant to whether Defendants have retained documents
pertaining to this Litigation and the School Board Prayer Issue once they became
aware of the possibility of litigation. Please confirm that Defendants have no other
documents that are responsive to Document Requests Nos. 15 and 16. Unless such
confirmation is received, Plaintiffs will construe Defendants' silence as an admission
that Defendants have other documents that are responsive to Document Requests
Nos. 15 and 16. Should Plaintiffs subsequently learn that Defendants have lost or
destroyed documents that would otherwise be responsive to Plaintiffs' Discovery
Requests, Plaintiffs will seek the strongest available discovery sanctions based on
Defendants' failure to produce documents responsive to Document Requests Nos. 15
and 16.

Further, documents responsive to Document Requests Nos. 15 and 16
will enable Plaintiffs to determine the location(s) of responsive documents within
Defendants' possession, custody or control otherwise omitted from Defendants'
production. Plaintiffs can then proceed accordingly. Finally, Document Requests
Nos. 15 and 16 are relevant to determine whether Defendants have legitimately
withheld documents as "educational records" under FERPA. Therefore, Document
Requests Nos. 15 and 16 are designed to obtain evidence relevant to the School
Board Prayer Issue, or reasonably calculated to lead to the discovery of admissible
evidence. Fed. R. Civ. P. 26(b)(1).

### K.    Student Disciplinary or Employee Grievance Hearings

Responses to Document Request No. 17 should be limited to those
hearings occurring from the earlier of either: (1) September 1, 1991; or (2) the date
that Defendants claim School Board Prayer first occurred. For the reasons stated
above, such information is relevant to what transpires at a School Board Meeting
and, thus, to the School Board Prayer Issue.

Jason P. Gosselin
June 28, 2006
Page 7

### L.     Rutherford Institute and Alliance Defense Fund

The Rutherford Institute, through Thomas Neuberger, represented
School Board Member Reginald Helms and not the entire School Board. The School
Board had been separately represented by the Alliance Defense Fund prior to the
School Board's retention of White & Williams LLP and Blankingship & Keith, PC.
Based on these separate representations, communications that Helms had with the
Alliance Defense Fund, and communications that the non-Helms School Board
Members had with Thomas Neuberger or the Rutherford Institute, may not be
privileged. To the extent Defendants claim privilege with respect to these
communications, Plaintiffs demand that Defendants produce appropriate privilege
logs for the documents otherwise responsive to Document Requests Nos. 10 and 11.

### M.     Defendants' Answers to Plaintiffs' Original Complaint

Document Requests Nos. 18 and 19 seek documents that Defendants
relied on to draft their answers to those paragraphs in the Complaint filed on
February 28, 2005, concerning School Board Prayer. Therefore, Defendants cannot
claim that such documents do not relate to the School Board Prayer Issue. Further,
once Defendants have answered Plaintiffs' First Amended Complaint, Rule 26(e)(2)
of the Federal Rules of Civil Procedure may require Defendants to supplement their
discovery responses. Document Requests Nos. 18 and 19 are designed to obtain
evidence relevant to the School Board Prayer Issue, or reasonably calculated to lead
to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

Therefore, Defendants must produce *any and all* documents
responsive to Document Requests Nos. 18 and 19, and not just Defendants' limited
production identified in Defendants' responses to Document Requests Nos. 1, 2, 5, 6,
7, 8, 9, 12, 13, 15, 16 and 17.

### N.     Closed Meetings

Defendants have stated that closed meetings, as opposed to regular
meetings, do not open with prayer. (D.I. 29 at ¶ 52) Therefore, what transpires at
closed meetings is relevant to whether the School Board has exploited the prayer
opportunity. As such, Document Request No. 8 is designed to obtain evidence
relevant to the School Board Prayer Issue, or reasonably calculated to lead to the
discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

### O.     Interrogatory Definitions 5 and 10

For the reasons stated above in connection with Document Request
Definitions 13 and 22, Interrogatory Definitions 5 and 10 are designed to obtain

Jason P. Gosselin
June 28, 2006
Page 8

evidence relevant to the School Board Prayer Issue, or reasonably calculated to lead
to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

### P.    Interrogatory Definition 9

Plaintiffs seek information within the possession, custody or control
of School Board Members. The possibility that a particular School Board Member
may have ceased his or her employment or association with the District is not an
appropriate basis for withholding information covered by the Interrogatories if
Defendants currently have possession, custody or control of that information.

### Q.    Interrogatory No. 1

Interrogatory No. 1 required Defendants to "[d]escribe the content of
any and all School Board Prayers." To the extent Defendants have possession,
custody or control of information concerning the content of any and all School Board
Prayers, Defendants are required to describe that content. Defendants' bare reference
to paragraphs 3, 4 and 5 of Reginald Helms's August 4, 2005, declaration does not
answer the Interrogatory. Mr. Helms's only mention of the content of those prayers
is that they are "brief" and "non-proselytizing." Whether a prayer is brief or non-
proselytizing – or for that matter, has been used to advance a religious faith – is a
determination to be made by the Court. *See, e.g., Wynne v. Town of Great Falls,
South Carolina*, 376 F.3d 292, 300-302 (4th Cir. 2004) (after reviewing the *content*
of prayers said before town council meetings, court determined that the prayers
impermissibly advanced a particular religious faith). Defendants wanted to litigate
the School Board Prayer Issue, and this Litigation will follow the maxim that "suits
under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather
than a determination that the truth shall remain hidden." *Rebideau*, 102 F.R.D. at
128.

### R.    Interrogatory No. 2

Plaintiffs remind Defendants of their obligation under Rule 26(e)(2)
of the Federal Rules of Civil Procedure to supplement Interrogatory No. 2 in the
event that Defendants recall or discover any instance in which a School Board
Member or the School Board invited, instructed or asked a student to attend a School
Board Meeting.

### S.    Interrogatory No. 5

Pursuant to the School Board Prayer Policy, only a School Board
Member may open a School Board Meeting with prayer. Thus, the religious faith of
each School Board Member is relevant to the School Board Prayer Issue. *See, e.g.,*

Jason P. Gosselin
June 28, 2006
Page 9

*Wynne*, 376 F.3d at 294 ("First, the court found that 'Town Council meetings always open with prayer,' that *the Mayor and all Council Members are Christian,* and that Council Member John Broom 'often' leads the prayer.") (emphasis added). Therefore, Interrogatory No. 5 is designed to obtain evidence relevant to the School Board Prayer Issue, or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

### T.    <u>Interrogatory No. 6</u>

As shown above, School Board Members have linked School Board Prayer to the Litigation and Settlement Agreement. Therefore, School Board Members' communications with the Media concerning School Board Prayer, the Litigation or the Settlement Agreement are relevant to the School Board Prayer Issue. Thus, Interrogatory No. 6 is designed to obtain evidence relevant to the School Board Prayer Issue, or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

As you know, the Court has ordered discovery on the School Board Prayer Issue to be completed by July 28, 2006. As a result, Defendants must act quickly to correct and supplement their responses to Plaintiffs' Document Requests and Interrogatories. Should Defendants delay, discovery deadlines may have to be extended and Plaintiffs may be forced to depose your clients a second time on the School Board Prayer Issue.

Please let me know if you have any questions or comments.

Very truly yours,

*Richard S. Horvath, Jr.*

Richard S. Horvath, Jr.

# Exhibit E

# DrinkerBiddle&Reath
L L P

Jeffrey M. Boerger
215-988-2912
jeffrey.boerger@dbr.com

*Law Offices*

One Logan Square
18TH and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700
215-988-2757 fax
www.drinkerbiddle.com

NEW YORK
WASHINGTON
LOS ANGELES
SAN FRANCISCO
CHICAGO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

July 17, 2006

**VIA FIRST-CLASS MAIL AND E-MAIL**

Richard S. Horvath, Jr., Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

RE:    *Dobrich, et al. v. Indian River School District, et al.*

Dear Mr. Horvath:

I write in response to your June 28, 2006 letter regarding defendants' responses to plaintiffs' document requests and interrogatories. It is my understanding that Jason Gosselin has addressed the topic of depositions with you separately.

## A.    The Volume of Documents Produced

I would like to first address your expectation that we would produce "at least twenty linear feet of documents pertaining to School Board Meetings," based on your conversations with prior counsel for the defendants. You expressed your dismay at our production of only "roughly five inches" of documents in response to your document requests related to the School Board Prayer Policy issue.

While we are not aware precisely what prior counsel may have stated to you, your expectation with respect to the volume of relevant and responsive documents appears to be based on a misunderstanding or miscommunication. The "twenty linear feet" of documents referred to by prior counsel appears to be a complete set of school board meeting binders containing all publicly available agendas, minutes, and other documents related to school board meetings dating from 1968 through the present. While prior counsel may have been prepared to produce all of this material for your reading enjoyment, we could not in good faith produce this large volume of documents that are, for the most part, both irrelevant and non-responsive. In particular, much of this material relates to the 23-year period prior to September 1991, the earliest date for which you have requested information or documents. Moreover, most of the remaining material is not relevant to any of the plaintiffs' claims whatsoever, let alone relevant to the School Board Prayer Policy issue, to which discovery is currently limited by order of the Court.

To our knowledge, there simply do not exist *twenty linear feet* of relevant and responsive documents. While some additional volume of documents in these binders may be relevant and responsive to your requests in the upcoming Remaining Issues phase of discovery, I can assure you that, in addition to audio and video recordings (which do

*Established*
*1849*

PHLIT\5671651\2

DrinkerBiddle&Reath
L L P

Richard S. Horvath, Jr., Esquire
July 17, 2006
Page 2

not lend themselves easily to the same measure of volume), the "five inches" worth of
documents produced represents the sum of all non-privileged documents responsive to
your document requests and relevant to the School Board Prayer Policy issue.

**B.    Documents Related to School Board Meetings**

        With respect to your Document Requests Nos. 5 and 6, all relevant non-privileged
documents responsive to these requests have been produced.  In responding to these
document requests, we described the documents produced, which include attendance or
sign-in sheets for school board meetings related to the School Board Prayer issue,
minutes related to such meetings (in which select attendees are often named), and
correspondence referencing the author's or other individuals' attendance at such
meetings.  To our knowledge, there are no additional relevant and responsive non-
privileged documents.

        With respect to your Document Requests Nos. 7 and 17, all relevant non-
privileged documents responsive to these requests have been produced.  In particular, the
Indian River School District policy manual was produced.  To our knowledge, there are
no additional relevant and responsive policies or procedures.

        With respect to your Document Request No. 8, all relevant non-privileged
documents responsive to this request have been produced.  In responding to this
document request, we described the documents produced, which include agendas,
minutes, attendance or sign-in sheets, correspondence, audio recordings, and other
documents.  To our knowledge, there are no additional relevant and responsive non-
privileged documents.

        With respect to your Document Request No. 13, all relevant non-privileged
documents responsive to this request and not readily obtainable from other sources have
been produced.  In particular, we have produced certain press releases in the possession
of the defendants.  We have not produced media reports that are publicly available and to
which the plaintiffs' have reasonably convenient access.  To our knowledge, there are no
additional relevant and responsive non-privileged documents.

**C.    Religious Activity, the Litigation, and the Settlement Agreement**

        With respect to your various document requests seeking information or
documents regarding religious activity in general, this litigation, or the settlement
agreement previously contemplated by the parties, such documents are simply not
relevant to the School Board Prayer Policy issue, to which discovery is currently limited
by order of the Court.  With respect to your Interrogatory No. 6, information regarding

DrinkerBiddle&Reath
LLP

Richard S. Horvath, Jr., Esquire
July 17, 2006
Page 3

this litigation or the settlement agreement is likewise not relevant to the School Board
Prayer Policy issue.

**D.     Documents related to School Board Prayer**

With respect to your concerns related to the definitions of "School Board Prayer"
and "documents," all non-privileged documents responsive to your document requests
and relevant to the School Board Prayer Policy issue have been produced.

**E.     Privileged documents withheld from production**

With respect to your concerns regarding Document Request Instruction No. 6,
production of a privilege log is forthcoming, as previously discussed.

**F.     Documents containing student information**

With respect to relevant and responsive documents containing directory
information[1] concerning students, we have forwarded for your review a proposed
stipulated protective order restricting the use of any such information to litigating this
case only.  Documents containing personally identifiable information[2] other than
directory information will be appropriately redacted or withheld and described in the
forthcoming privilege log.

**G.     Document retention policies**

With respect to your Document Requests Nos. 15 and 16, all non-privileged
documents responsive to these requests have been produced.  In particular, we have
produced the Indian River School District Records Retention Schedule.  To our
knowledge, there are no additional relevant and responsive non-privileged documents.

**H.     Documents related to closed executive session proceedings**

With respect to your concerns regarding the withholding of documents pertaining
to closed executive session, such documents are protected by the deliberative process
privilege and under the Delaware Freedom of Information Act, 29 Del. C. § 10001 *et
seq.*, and will not be produced.

---

[1] *See* 34 C.F.R. § 99.3 (defining "directory information").
[2] *See id.* (defining "personally identifiable information").

DrinkerBiddle&Reath
L L P

Richard S. Horvath, Jr., Esquire
July 17, 2006
Page 4

## I.    The content of any and all School Board prayers

With respect to your Interrogatory No. 1, the content of prayers recited at school board meetings is evident from audio and video recordings of the open session portions of such meetings. Audio and video recordings of school board meetings relevant to the School Board Prayer Policy issue are forthcoming, as previously discussed.

## J.    The religious faith or denomination of individual school board members

With respect to your Interrogatory No. 5, the specific religious faith or denomination of each individual school board member is not relevant to the School Board Prayer Policy issue. As we understand the plaintiffs' claims with respect to the School Board Prayer Policy issue, all that is relevant is whether prayer has occurred at school board meetings, the identity of the person speaking or leading the prayer, and whether the prayer invokes the name of Jesus Christ or the Christian faith in general.

The remaining points raised in your letter do not appear to require response. If you have any further questions or comments, please feel free to contact me.

Sincerely yours,

Jeffrey M. Boerger

JMB

Exhibit F

Westlaw.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,M.D. Pennsylvania.
Tammy KITZMILLER, et al., Plaintiffs
v.
DOVER AREA SCHOOL DISTRICT, et al.,
Defendants.
No. 04CV2688.

Sept. 22, 2005.

Alex J. Luchenitser, Ayesha Khan, Richard B. Katskee, Americans United for Separation of Church and State, Washington, DC, Benjamin M. Mather, Eric J. Rothschild, Joseph M. Farber, Stephen G. Harvey, Stacey I. Gregory, Pepper Hamilton LLP, Christopher J. Lowe, Philadelphia, PA, Mary Catherine Roper, American Civil Liberties Union of Pennsylvania, Philadelphia, PA, Paula Kay Knudsen, American Civil Liberties Union of Pennsylvania, Thomas B. Schmidt, III, Pepper Hamilton, LLP, Harrisburg, PA, Witold J. Walczak, American Civil Liberties Union of PA, Pittsburgh, PA, for Plaintiffs.
Stephen S. Russell, Stock & Leader, York, PA, Ronald A. Turo, Turo Law Offices, Carlisle, PA, Leonard G. Brown, Clymer & Musser, P .C., Lancaster, PA, for Defendants.

### MEMORANDUM AND ORDER

JOHN E. JONES III, District Judge.
*1 THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court are numerous Motions in Limine filed by Defendants and one Motion in Limine filed by Plaintiffs in response to Defendants' Application for Use of Deposition Testimony pursuant to Fed.R.Civ.P. 32(a)(3)(E) (doc. 191). We will address the various Motions and Defendants' Application in turn.

### A. Defendants' Motions in Limine

### I. Preclude Plaintiffs From Using or Introducing at Trial Statements Made by Individual Board Members

In the Motion, Defendants move the Court to prohibit Plaintiffs from using or introducing at trial any evidence regarding statements made by individual board members. In that regard, Defendants assert that the statements of individual board members that Plaintiffs seek to introduce at trial are irrelevant, improper character evidence, improper evidence of religious beliefs and opinions, and Defendants argue, even if relevant, the statements constitute evidence that is more prejudicial than probative. Finally, Defendants maintain that the evidence would also be inadmissible if the school board's policy were construed under Pennsylvania law.

In response, Plaintiffs argue that the caselaw is clear that evidence shedding light on the religious purposes of individual Board members, including their statements made during Board meetings or in the broader course of the debate over the biology curriculum is relevant in assessing the purpose of the policy and "that evidence shedding light on the history of the development of intelligent-design creationism is relevant in assessing what a reasonable observer would understand about the scientific *bona fides, vel non,* of that theory, and accordingly of the purpose and effect of the edict." (Pls.' Br. Opp. Defs.' Mot. Limine at 10).

In this part of their Motion, Defendants are seeking to exclude statements allegedly made by former board members at public school board meetings. After a thorough review of the submissions and applicable caselaw, we do not find that Plaintiffs should be precluded from using or introducing at trial any evidence regarding statements made by individual board members or administrators to the extent provided below, for the reasons that follow.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)                                                                Page 2
(Cite as: Slip Copy)

Federal Rule of Evidence 801 provides that "hearsay"
is "a statement, other than one made by the declarant
while testifying at the trial or hearing, offered in
evidence to prove the truth of the matter asserted."
Fed.R.Evid. 801(c). Federal Rule of Evidence 801 goes
on to explain that admissions by a party-opponent are
statements which are not hearsay, and provides, in
pertinent part, as follows:
(d) Statements which are not hearsay. A statement is not
hearsay if-
(2) The statement is offered against a party and is (D)
a statement by the party's agent or servant concerning a
matter within the scope of the agency or employment,
made during the existence of the relationship[.]

Fed.R.Evid. 801(d)(2)(D).

*2 We initially note that we find Defendants' argument,
concerning the fact that the category of party-opponent
admissions is inapplicable to this case as the individual
school board members have not been sued and are not
parties to this action, unconvincing and erroneous.
Named Defendants in this action are the Dover Area
School District and the Dover Area School District
Board of Directors. As Plaintiffs submit in the sur-reply
brief, Fed.R.Evid. 801(d)(2)(D) does not require that
the individuals making the statements actually be
parties to the action, instead it requires that they be
agents of employees of a party to the action. Moreover,
as Plaintiffs accurately assert, numerous courts have
held that statements made by school-board members
and administrators acting as agents for school districts
are not hearsay and are admissible as statements by
party opponents. *See, e.g., Wilkerson v. Columbus
Separate Sch. Dist.*, 985 F.2d 815, 818 (5th Cir.1993)
(considering statements by school-board members as
evidence against the defendant school district because
the board members were the school district's agents);
*Biver v. Saginaw Township Cmty. Sch.*, 1986 U.S.App.
LEXIS 32878, *22-23 (6th Cir.1986) (holding that
statements of school superintendent at school-board
meeting were not hearsay because they were within
scope of his agency and were admissible as admissions
against party opponent).

We hold that to the extent that statements by members
of the Dover Area School Board or administrators were

made at Dover Area School Board meetings, those
statements are relevant pursuant to Fed.R.Evid. 401,
probative to a central issue in this case, and admissible
non-hearsay as a party-opponent admission pursuant to
Fed.R.Evid. 801(d)(2)(D). An agency relationship
existed between the individual Dover Area School
Board members and the Dover Area School District
such that members of the Board who spoke in their
official capacities at board meetings and administrators
who acted in their official capacities were doing so as
agents of the Defendant school district concerning a
matter (a policy related to the teaching of biology),
within the scope of the agency relationship. The subject
speech and acts were made during the existence of the
relationship. *See* Fed.R.Evid. 801(d)(2)(D).

Accordingly, to the extent that statements were made by
members of the Board and administration while acting
within the scope of the agency relationship and made
during the existence of the relationship, such statements
are party-opponent admissions and therefore admissible
evidence. Defendants' Motion in Limine to preclude
Plaintiffs from using or introducing at trial any evidence
regarding statements made by individual board
members is denied as provided herein.

### ii. Preclude Plaintiffs From Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon

*3 In the Motion, Defendants move the Court to
prohibit Plaintiffs from using or introducing at trial any
evidence relating to the Discovery Institute, including
its so-called "Wedge Document" and "Wedge
Strategy," the Foundation for Thought and Ethics
("FTE"), including drafts and versions of the text *Of
Pandas and People* ("*Pandas* "), Jon Buell, Charles
Thaxton, Phillip Johnson, Percival Davis, and Dean
Kenyon, as such evidence is irrelevant, hearsay, and
even if relevant, is more prejudicial than probative
pursuant to Fed.R.Evid. 402, 403, 801, and 802.

We are in agreement with Plaintiffs' submission to the
extent that Defendants place undue weight on the text

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Page 3

of the Board's resolution itself to show the "purpose" of the Board's change to the biology curriculum and evidence showing the effect of that policy on ninth-grade biology students, to the exclusion of other relevant, probative evidence that the Court may consider to assess the constitutionality of the instant policy. Although Defendants are clearly seeking to persuade the Court that the Board's purpose cannot be illuminated either by its members' own statements in adopting the policy or by consideration of the historic context in which and from which intelligent design emerged, we find that position to be unconvincing and unreasonably restrictive after reviewing applicable, compelling caselaw cited by Plaintiffs. Moreover, as Plaintiffs accurately submit, it is notable that the term "intelligent design" is not defined in the policy. Any relevant evidence that will aid the Court in understanding the concept of "intelligent design" in general and as it applies to the policy shall be admissible so long as that evidence is otherwise permissible under the applicable Federal Rules of Evidence.

Accordingly, the instant Motion in Limine is denied to the extent that Plaintiffs shall not be precluded from using or introducing at trial evidence related to the Discovery Institute, including the "Wedge Document" and "Wedge Strategy," FTE, drafts and versions of the text *Pandas,* Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon at this juncture. We will note that this ruling will not of course act as blanket permission to allow all portions of these publications and subjects into evidence, and Defendants reserve the right to reassert specific objections to the instant material and with regard to the aforementioned individuals at the time of trial.

### iii. Preclude Plaintiffs From Using or Introducing at Trial News Materials

In the Motion, Defendants move the Court to prohibit Plaintiffs from using or introducing at trial newspaper articles, letters to the editor, editorials, and any other news material (collectively referred to as "news materials") as they are hearsay, irrelevant, and more prejudicial than probative pursuant to Fed.R.Evid. 402,

403, 801, and 802.

Just prior to rendering this opinion we received a Joint Motion for Contempt (doc. 197) filed by Defendants and counsel for non-party subpoenaed witnesses, Heidi Bernard-Bubb and Joseph Maldonado (collectively "the Reporters"), in which counsel informed the Court that despite our September 12, 2005 Order limiting the subject matter of the Reporters' depositions, such Reporters will not attend any scheduled depositions in this matter prior to exhaustion of their appeal rights. (Rec. Doc. 197 at ¶¶ 9-10). It is therefore readily apparent to the Court that substantial questions exist as to whether the Reporters will be deposed individually and whether they will testify at the time of trial in Plaintiffs' case-in-chief. As it is unsettled regarding whether the Reporters will testify in any capacity in the case *subjudice,* it would be imprudent and premature to rule upon the instant Motion in Limine. Accordingly, Defendants' Motion in Limine to Preclude Plaintiffs From Using or Introducing at Trial News Materials is deferred until the time of trial.

### iv. Exclude the Testimony of Barbara Forrest, Ph.D.

**\*4** In the Motion, Defendants move the Court to exclude the testimony and expert reports, including the data upon which they are based, of Barbara Forrest, Ph.D., a witness who intends to testify as an expert on behalf of Plaintiffs, pursuant to Federal Rules of Evidence 401, 403, 702, and 703. Defendants argue that Dr. Forrest brings no scientific, technical, or other specialized knowledge to this case and accuses Plaintiffs of using her as a "Trojan Horse" to bring into the courtroom impertinent matters to prejudice the Dover Area School Board ("DASB"). (Defs.' Br. Supp. Mot. Limine at 12). In response, Plaintiffs assert that Dr. Forrest's proffered expert testimony goes directly to the issue of the origins of intelligent-design creationism, that she is qualified to testify as an expert pursuant to Fed.R.Evid. 702, that her methodology is reliable, and that her testimony "fits" the issues in this case.

An initial issue to address is Defendants' contention that Dr. Forrest is not qualified to give an expert opinion in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
(Cite as: Slip Copy)

the case *subjudice*. As Defendants submit, Fed.R.Evid. 702 provides, as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. We first recognize that there may be few experts with the particular area of expertise held by Dr. Forrest concerning the "nature and strategy of the intelligent design creationist movement." In fact, Dr. Forrest may be the only such expert. Accordingly, there is no particular touchstone in existence regarding an individual with Dr. Forrest's qualifications and the concept of "specialized knowledge," as there would be for example with an expert who is an accident reconstructionist specialist or one who is versed in the medical field. However, we find nothing in the submissions to indicate at least at this preliminary stage that Dr. Forrest is not an appropriate expert witness in this case. We are in agreement with Plaintiffs that Dr. Forrest's report makes clear that she has "specialized knowledge" on the nature and strategy of the intelligent design creationist movement, and possesses the ability to assimilate information and research topics intimately involved with the concept of intelligent design pursuant to Fed.R.Evid. 702.

Therefore, at this juncture, given Dr. Forrest's credentials, extensive research, and writings on the subject of intelligent design and the intelligent design creationist movement, we will permit her to testify at the time of trial, subject to the opportunity by defense counsel to conduct a voir dire examination on her qualifications. We reserve as we must ultimate judgment concerning her ability and the extent to which she can testify until the trial in this case.

*5 The second pertinent rule to consider for purposes of this inquiry is Fed.R.Evid. 703. Federal Rule of Evidence 703 provides, in relevant part, as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed.R.Evid. 703. We recognize that Fed.R.Evid. 703 permits experts to rely on hearsay in expert reports; however, the hearsay statements present in Dr. Forrest's report may be problematic because without more, we are unable to verify the accuracy of the statements at issue, nor can we determine whether the individual statements have been taken out of context. Accordingly, in an effort to be equitable, to balance competing concerns, and after a careful review of the submissions, we hold that to the extent that Dr. Forrest testifies and such testimony references hearsay statements found in her report, we direct Plaintiffs' counsel to stand ready to provide the Court and defense counsel with any pertinent material cited by Dr. Forrest. In particular, we are concerned with quotations within her report attributed to certain individuals, which purport to have been taken from books and publications. Counsel can either provide the Court and defense counsel with the entire article or section, for example, or a verifiable portion thereof with the quotation at issue clearly marked for inspection. This process will allow for any statement(s) taken from publications to be verified for accuracy purposes and to ascertain whether such statement was taken out of context. Finally, we are in agreement with Plaintiffs inasmuch as they assert that Dr. Forrest's testimony should be allowed in these areas as Defendants are free to cross-examine her concerning any and all inaccuracies present in her characterization of intelligent-design writings.

### v. Exclude the Testimony of Jeffrey Shallit, Ph.D.

In the Motion, Defendants move the Court to exclude the testimony and expert report of Plaintiffs' rebuttal witness, Jeffrey Shallit, Ph.D pursuant to Fed.R.Civ.P. 37.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Inasmuch as the parties agreed at oral argument on Defendants' previously filed Motion for Summary Judgment, conducted on September 9, 2005, that Plaintiffs will not present Dr. Shallit during Plaintiffs' case-in-chief and will instead reserve him as a rebuttal witness, if necessary, we will defer any further resolution of the issues presented in this Motion, until and if they are reasserted by defense counsel at the time of trial. We specifically note that Defendants reserve all arguments with respect to the suitability of Dr. Shallit's testimony as a rebuttal witness, if so called by Plaintiffs, until the time of his trial testimony.

## B. Plaintiffs' Motion in Limine

### I. Exclude Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker

*6 Defendants filed an Application for Use of Deposition Testimony Pursuant to Fed.R.Civ.P. 32(a)(3)(E) (doc. 191) in which they request permission to use designated portions of deposition testimony from former board members, Angie Yingling, Carol Brown, Jeff Brown, or science faculty employed by Dover Area School District, Bertha Spahr, Jennifer Miller, and Rob Linker. In support thereof, Defendants contend that this case presents extraordinary circumstances which support the use of the designated deposition testimony, including, for example the length of the trial which will involve detailed testimony from fact and expert witnesses and the fact that the aforementioned witnesses are adverse to Defendants. Defense counsel asserts that use of the designated testimony will serve the interest of justice with due regard for the importance of presenting the testimony of witnesses orally and in open Court, as this is a bench trial, and the designated testimony will be of material assistance to the Court.

In response, Plaintiffs filed a Motion in Limine to Exclude the Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker in which they assert that the Declarants' depositions are inadmissible hearsay and that no "exceptional circumstances" exist allowing the

designation deposition testimony to be admitted in evidence.

First, we note that the testimony Defendants seek to admit into evidence is hearsay as such testimony was offered at depositions and will be offered to prove the truth of the matter asserted. See Fed.R.Evid. 801; New Jersey Turnpike Auth. v. PPG Indus., 197 F.3d 96, 111-12 (3d Cir.1999); United States v. Kelly, 892 F.2d 255, 261 (3d Cir.1989). Second, as Plaintiffs submit, Fed.R.Evid. 804 provides hearsay exceptions and specifically contemplates deposition testimony. Such testimony is admissible only in limited circumstances. Federal Rule of Evidence 804(b) concerning hearsay exceptions, provides, in pertinent part, as follows:
**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
**(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b) (emphasis added). Accordingly, the party seeking admission of the out of court statement, Defendants, bear the burden of proving the unavailability of the declarant. See Kirk v. Raymark Indus., Inc., 61 F.3d 147, 165 (3d Cir.1995) (finding the admission of prior testimony to be in error because the plaintiff did not establish that the witness was unavailable). A witness is "unavailable" pursuant to Fed.R.Evid. 804(a) when he or she "is absent from the hearing and the proponent of a statement has been unable to procure his attendance ... by process or other reasonable means." [FN1] Fed.R.Evid. 804(a)(5).

FN1. The four remaining definitions of "unavailability of a witness" are not relevant to the disposition of Plaintiffs' Motion in Limine and Defendants' Application. Fed.R.Evid. 804(a)(1)-(4).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
(Cite as: Slip Copy)

**\*7** We hold that all of the Declarants at issue in Defendants' Application are "available" under Fed.R.Evid. 804 as they are all within the subpoena powers of the Court because they either live in the Middle District of Pennsylvania or are within 100 miles of the place of trial. *See* Fed.R.Civ.P. 45(b)(2) (Federal courts may issue subpoenas in the district in which that court sits or anywhere within 100 miles of the place of the trial); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F.Supp. 1190, 1249 (E.D.Pa.1980), *aff'd in part and rev'd in part on other grounds*, 723 F.2d 238 (3d Cir.1983) ("[I]t has long been the rule that inability to procure attendance by 'process or other reasonable means' is satisfied by demonstration of inability to serve a subpoena." In addition, the court found that Japanese citizens living in Japan were "unavailable" because they "are beyond the subpoena power of this court."). Moreover, Plaintiffs have subpoenaed all of the Declarants and four of the six witnesses, Carol Brown, Jeff Brown, Bertha Spahr, and Jennifer Miller, have been subpoenaed to testify at trial by Plaintiffs. We therefore find that the hearsay exceptions located in Fed.R.Evid. 804 are not applicable.

Finally, Defendants have advised the Court that they intend to invoke Fed.R.Civ.P. 32 to admit Declarants' deposition testimony into evidence. Federal Rule 32 addresses the use of deposition in court proceedings and allows the deposition of a witness to be used if the court finds that "exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." Fed.R.Civ.P. 32(a)(3)(F). After a careful review of the record and the submissions, contrary to Defendants' contentions, we hold that no exceptional circumstances are present that would prevent the Declarants from testifying at trial. As Plaintiffs accurately explain, the Declarants are all within the subpoena powers of this Court, thus not "unprocurable through a subpoena" or at a great distance from this Court. *See Illgen v. United States*, 909 F.2d 869, 876 (6th Cir.1990) (witness's position as a doctor was not enough to render him "unavailable"). Neither are the Declarant's deceased or unable to attend or testify because of age, illness, infirmity, or imprisonment.

Fed.R.Civ.P. 32(a)(3).

Accordingly, the deposition testimony that Defendants seek to admit into trial constitutes inadmissible hearsay statements which fail to satisfy any hearsay exception. Moreover, as previously noted, the Declarants are available to testify at trial, are within the subpoena powers of this Court, and four of the six Declarants will be testifying in Plaintiffs' case at trial. Plaintiffs' Motion in Limine to Exclude the Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker is therefore granted. Defendants' Application for Use of Deposition Testimony Pursuant to Fed.R.Civ.P. 32(a)(3)(E) is denied.

**\*8** NOW, THEREFORE, IT IS ORDERED THAT:

1. Defendants' Motion in Limine to Preclude Plaintiffs From Using or Introducing at Trial Statements Made by Individual Board Members (doc. 151) is denied as provided herein.

2. Defendants' Motion in Limine to Preclude Plaintiffs From Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon (doc. 156) is DENIED. We will note that this ruling will not of course act as blanket permission to allow *all* portions of these publications and subjects into evidence, and Defendants reserve the right to reassert specific objections to the instant material and with regard to the aforementioned individuals at the time of trial.

3. Defendants' Motion in Limine to Preclude Plaintiffs From Using or Introducing at Trial News Materials (doc. 148) is DEFERRED until the time of trial.

4. Defendants' Motion in Limine to Exclude the Testimony of Barbara Forrest, Ph.D. (doc. 158) is DENIED.

5. As the parties agreed at the September 9, 2005 oral argument on Defendants' previously filed Motion for Summary Judgment that Plaintiffs will not present Dr. Shallit during Plaintiffs' case-in-chief and will instead

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reserve him as a rebuttal witness, if necessary, we will defer any further resolution of the issues presented in Defendants' Motion in Limine to Exclude the Testimony of Jeffrey Shallit, Ph.D. (doc. 154), until if and when they are reasserted by defense counsel at the time of trial.

6. Plaintiffs' Motion in Limine to Exclude Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker (doc. 190) is GRANTED.

7. Defendants' Application for Use of Deposition Testimony Pursuant to Fed.R.Civ.P. 32(a)(3)(E) is DENIED.

M.D.Pa.,2005.
Kitzmiller v. Dover Area School Dist.
Slip Copy, 2005 WL 4147867 (M.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3136720 (Trial Motion, Memorandum and Affidavit) Memorandum of Law In Support of Admissibility of Editorials and Letters to the Editor in the York Daily Record and York Dispatch from the Period June 1, 2004, Through September 1, 2005 (Oct. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3136718 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Strike ""brief of Amici Curiae Biologists and Other Scientists in Support of Defendants" and ""Brief of Amicus Curiae, the Discovery Institute" (Oct. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3136716 (Trial Motion, Memorandum and Affidavit) Brief of Amicus Curiae, the Discovery Institute (Oct. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3628833 (Trial Motion, Memorandum and Affidavit) Brief of Amicus Curiae, the Discovery Institute (Oct. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3136714 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Objections to Defendants' Counter Designations of Deposition Testimony (Oct. 11, 2005) Original Image of this Document (PDF)

• 2005 WL 3628832 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Objections to Defendants' Counter Designations of Deposition Testimony (Oct. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3136712 (Trial Motion, Memorandum and Affidavit) Brief of Amici Curiae Biologists and Other Scientists in Support of Defendants (Oct. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 3628830 (Trial Motion, Memorandum and Affidavit) Motion to Quash Subpoenas or for Protective Order (Sep. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 3628831 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Joseph Maldonado and Heidi Bernhard-Bubb in Support of Motion to Quash Subpoenas or for Protective Order (Sep. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 3628826 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Sur-Reply in Opposition to Defendants' Reply Brief in Support of Its Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628827 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Motion in Limine to Exclude the Testimony of Barbara Forrest, Ph.D. (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628828 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Statements Made by Individual Board Members (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628829 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628825 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 20, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
(Cite as: Slip Copy)

Original Image of this Document (PDF)
• 2005 WL 3628824 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion Inlimineto Exclude the Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker (Sep. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 3628822 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLC in Support of Its Motion for Reconsideration of the Courts Memorandum and Order Dated September 7, 2005 (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 3628809 (Trial Motion, Memorandum and Affidavit) Defenda Ants' Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628810 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628811 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Statements Made By Individual Board Members (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628812 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Statements Made By Individual Board Members (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628813 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Exclude the Testimony of Jeffrey Shallit, PH.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628814 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Exclude the Testimony of Jeffrey Shallit, PH.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628815 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought

and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628816 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and De an Kenyon (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628817 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Exclude the Testimony of Barbara Forrest, Ph.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628818 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Exclude the Testimony of Barbara Forrest, PH.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628807 (Trial Motion, Memorandum and Affidavit) Unopposed Motion of Courtroom Television Network LLC to Intervene (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628808 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLc in Support of Its Unopposed Motion to Intervene (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628819 (Trial Motion, Memorandum and Affidavit) Unopposed Motion of Intervenor Courtroom Television Network LLC for Leave to Record and Telecast Trial Proceedings (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628820 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLC in Support of its Unopposed Motion for Leave to Record and Telecast Trial Proceedings (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628823 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLC In Support of Its Unopposed Motion for Leave to Record and Telecast Trial Proceedings (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628806 (Trial Motion, Memorandum and Affidavit) Reply Brief of Joseph Maldonado and Heidi Bernhard-Bubb in Support of Motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Reconsideration of Court Order Dated August 2, 2005 (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 3628805 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Reporters' Motion to Reconsider This Court's Order of August 2, 2005 (Aug. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 3628804 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion for Summary Judgment (Aug. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 3628802 (Trial Motion, Memorandum and Affidavit) Motion for Reconsideration (Aug. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3628803 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Joseph Maldonado and Heidi Bernhard-Bubb in Support of Motion for Reconsideration of Court Order Dated August 2, 2005 (Aug. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3628801 (Trial Motion, Memorandum and Affidavit) Opposition to Defendants' Motion for Summary Judgment (Aug. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 3628799 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Judgment Pursuant to ¢yFed. R. Civ. P. 56¢y¢r;0001;;LQ;USFRCPR56;1004365;¢r (Jul. 13, 2005) Original Image of this Document (PDF)
• 2005 WL 3628800 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion for Summary Judgment (Jul. 13, 2005) Original Image of this Document (PDF)
• 2005 WL 3628798 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Their Motion to Compel Nonparties, Maldonado, Bernhard-Bubb, York Dispatch, and York County Daily Record to Comply with Subpoenas (Jul. 1, 2005) Original Image of this Document (PDF)
• 2005 WL 3628797 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Defendants' Response in Opposition to Motion to Quash or for a Protective Order Filed By Joseph Maldonado and Heidi Bernhard-Bubb (Jun. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3628795 (Trial Motion, Memorandum and

Affidavit) Brief in Opposition to Defendants' Motion to Compel Nonparties to Comply with Subpoenas (Jun. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 3628796 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion to Compel Non-Parties Maldonado and Bernhard-Bubb, York Dispatch, and York County Daily Record, to Comply with Subpoenas (Jun. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 3628794 (Trial Motion, Memorandum and Affidavit) Defendants' Response in Opposition to Motion to Quash or for a Protective Order Filed by Joseph Maldonado and Heidi Bernhard-Bubb (Jun. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3628793 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion to Compel Nonparties, Maldonado, Bernhard-Bubb, York Dispatch, and York County Daily Record, to Comply With Subpoenas (Jun. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3628792 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Application to Intervene By Foundation for Thought and Ethics (Jun. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3628790 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Motion of Non-Parties Joseph Maldonado and Heidi Bernhard-Bubb to Quash Subpoena or for Protective Order (Jun. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 3628791 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Joseph Maldonado and Heidi Bernhard-Bubb in Support Of Motion to Quash Subpoena or For Protective Order (Jun. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 3406668 () (Partial Testimony) (May 25, 2005) Original Image of this Document (PDF)
• 2005 WL 3628787 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Defendants' Motion For A Protective Order (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 3628789 (Trial Motion, Memorandum and Affidavit) Non-Parties Foundation for Thought and Ethics and Jon A. Buell's Motion for Protective Order and/or to Quash Subpoenas and Brief in Support (May 9, 2005) Original Image of this Document (PDF)
• 2005 WL 3406667 () Declaration of Dr. Dick M. Carpenter, II (May 7, 2005) Original Image of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Document (PDF)
• 2005 WL 3628786 (Trial Motion, Memorandum and Affidavit) Defendants' Motion For A Protective Order (May 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3415842 () Declaration of Dr. Michael Behe (Mar. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 3628785 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Motion to Dismiss (Feb. 25, 2005) Original Image of this Document (PDF)
• 2005 WL 3628783 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss (Feb. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3628784 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support Of Application to Intervene as Defendants (Feb. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3628781 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Motion to Intervene (Feb. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3628782 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Proposed Intervenors' Application to Intervene as Defendants (Feb. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3628779 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Pursuant to ¢ y F e d . R . C i v . P . 12¢y¢r;0001;;LQ;USFRCPR12;1004365;¢r (Jan. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3628780 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion to Dismiss (Jan. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3628777 (Trial Motion, Memorandum and Affidavit) Application to Intervene as Defendants (Jan. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3628778 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Application to Intervene as Defendants (Jan. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3628788 (Trial Motion, Memorandum and Affidavit) Non-Party Foundation for Thought and Ethics' Memorandum In Support of Motion for Protective Order (2005) Original Image of this

Document (PDF)
• 2004 WL 3008270 (Trial Pleading) Complaint (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3646142 (Trial Pleading) Complaint (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3646143 (Trial Pleading) Answer (Jan. 3, 2004) Original Image of this Document (PDF)
• 2004 WL 3636945 () Oral deposition of Brian Alters. Ph.D., taken at the law offices of Pepper Hamilton, LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, Pennsylvania, on June 2, 2003, at 9:01 a.m., before Jennifer L. Beraudez, a Registered Professional Re porter, and Notary Public. pursuant to notice. (2004) Original Image of this Document (PDF)
• 2004 WL 3646144 (Trial Pleading) Answer in Intervention (2004) Original Image of this Document (PDF)
• 2004 WL 3646145 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum Of Law In Support Of Motion For A Protective Order (2004) Original Image of this Document (PDF)
• 2004 WL 3646146 (Trial Motion, Memorandum and Affidavit) Non-Party Foundation for Thought and Ethics' Motion for Protective Order (2004) Original Image of this Document (PDF)
• 2004 WL 3646147 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Application to Intervene By Foundation for Thought and Ethics (2004) Original Image of this Document (PDF)
• 2004 WL 3646148 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Compel Nonparties, Maldonado, Bernhard-bubb, York Dispatch, and York County Daily Record, to Comply With Subpoenas (2004) Original Image of this Document (PDF)
• 2004 WL 3646149 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Motion of Non-Parties Joseph Maldonado and Heidi Bernhard-Bubb to Quash Subpoena or for Protective Order (2004) Original Image of this Document (PDF)
• 2004 WL 3646150 (Trial Motion, Memorandum and Affidavit) Reply of Foundation for Thought and Ethics to Plaintiffs' and Defendants' Opposition to Fte's Application to Intervene (2004) Original Image of this Document (PDF)
• 2004 WL 3646151 (Trial Motion, Memorandum and Affidavit) Brief of Amici Curiae Biologists and Other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Scientists in Support of Defendants (2004) Original
Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.