# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONA DOBRICH, et al.,           :
                                :
            Plaintiffs,         :
                                :
      v.                        :  No. 05-cv-00120-JJF
                                :
HARVEY L. WALLS, et al.,        :
                                :
            Defendants.         :

PLAINTIFFS' FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS FROM DEFENDANTS
INDIAN RIVER SCHOOL DISTRICT AND INDIAN RIVER SCHOOL BOARD

Pursuant to Federal Rules of Civil Procedure 26 and 34, plaintiffs,

Monda Dobrich, Marco Dobrich, Alexander Dobrich, Jane Doe, John Doe, Jordan

Doe and Jamie Doe, by and through their attorneys of record, hereby request and

demand that defendants Indian River School District and the Indian River School

Board (the "Defendants") shall object or respond to this request within twenty-one

(21) days of the date of service hereof, and produce for examination, inspection and

copying within thirty (30) days of the date of service hereof, at One Rodney Square,

7th Floor, Wilmington, Delaware 19801, the documents and other things designated

below which are in their possession, custody or control, or in the possession, custody

or control of their School Board Members,[1] District Administrators, School Admin-

istrators, teachers, employees, attorneys, agents or others acting in concert with them

or on their behalf.

## DOCUMENTS TO BE PRODUCED

Any and all documents concerning, directly or indirectly, the follow-

ing:

    1.    School Board Prayer.

    2.    Communications concerning School Board Prayer.

    3.    Communications made by or to the School Board concerning:

        a.    Religious Activities;

        b.    The Litigation; and,

        c.    The Settlement Agreement.

    4.    Communications made by or to School Board Members

concerning:

        a.    Religious Activities;

        b.    The Litigation; and,

        c.    The Settlement Agreement.

---

[1]    See Definitions and Instructions infra.

2

5.    The attendance of any Parent, Student, Resident, District Administrator, School Administrator or District Representative at a School Board Meeting.

6.    Communications concerning the attendance of any Parent, Student, Resident, District Administrator, School Administrator or District Representative at a School Board Meeting.

7.    Any and all past or current District policies or procedures concerning complaints from Students, Parents, Residents or District Representatives.

8.    School Board Meetings, including but not limited to notes, agendas, minutes, presentations, audio recordings, video recordings or preparation materials.

9.    Communications concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings between the School Board, School Board Members or District Administrators with Media, including but not limited to:

        a.    Dan Gaffney or any other Representative of WGMD;

        b.    James Diehl or any other Representative of the Sussex Post;

        c.    Lauren Hughes or any other Representative of the Delaware Wave;

3

      d.      Sean O'Sullivan, Molly Murray or any other Represen-

              tative of the News Journal; and,

      e.      Any Representative of WBOC.

10.      Communications concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings between the School Board, School Board Members or District Administrators and the Rutherford Institute.

11.      Communications concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings between the School Board, School Board Members or District Administrators and the Alliance Defense Fund.

12.      The Dobriches.

13.      Media reports concerning the School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement or School Board Meetings.

14.      Procedures for monitoring any public statement or news coverage of the District.

15.      Procedures for monitoring, storing, preserving or retaining documents.

16.      Procedures for monitoring, storing, preserving or retaining communications.

4

17.    Past and current procedures concerning any disciplinary action that the School Board could take or has taken concerning any Student, District Administrator, School Administrator or District Representatives.

18.    Documents that Defendant contends support any answer concerning School Board Prayer in the Defendant's Answer To The Complaint With Affirmative Defenses Of Defendants Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe, Lois M. Hobbbs, And Earl J. Savage, In Their Official Capacity, And The Indian River School Board, And The Indian River School District.

19.    Documents that Reginald L. Helms contends support any answer concerning School Board Prayer in his Answer Of Defendant Reginald L. Helms In His Official Capacity.

20.    All documents used by Defendants to answer plaintiffs' interrogatories or requests for admission.

## DEFINITIONS

For purposes of this discovery request, the following words will have the meaning indicated below:

1.    "Alliance Defense Fund" shall mean the non-profit corporation incorporated in the State of Arizona, any attorneys employed or affiliated with

5

the Alliance Defense Fund, and each of their predecessors or successors and any of

their present and former parents, subsidiaries, affiliates, divisions, joint ventures or

Representatives.

2.    "Communication" shall include, without limitation, any trans-

mission or transfer of information of any kind, whether orally, electronically, in

writing, or in any other manner, at any time or place, and under any circumstances

whatsoever.

3.    "Complaint" shall mean the complaint filed by plaintiffs in

this action.

4.    "Concerning" shall mean reflecting, relating to, referring to,

describing, evidencing or constituting.

5.    "District" shall mean the Indian River School District.

6.    "District Administrators" shall mean the District's past or

current: superintendent; assistant superintendent; administrator of student services;

director of personnel; director of instruction; director of business and finance;

administrative assistant; supervisor of building and grounds; supervisor of food

services; supervisor of transportation; supervisor of secondary instruction; supervisor

of elementary instruction; and supervisor of special education.

7.    "District Representatives" shall mean Representatives of the District other than School Board Members, District Administrators or School Administrators.

8.    "Dobriches" shall mean Mona Dobrich, Marco Dobrich, Alexander Dobrich and Samantha Dobrich.

9.    "Document" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; communications; correspondence; memoranda; records; reports; books; records, reports and/or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings, whether audio, video or digital; tapes; microfilms; minutes, records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. "Document" also means all non-identical copies of original documents and non-identical copies thereof.

7

10.    "Litigation" shall mean the case captioned *Mona Dobrich, et al. v. Indian River School District, et al.*, 05-120-JJF (D. Del.), which was commenced by the filing of the Complaint.

11.    "Media" shall mean any newspaper, magazine, journal, television station, radio station or any other medium or entity, and their employees, used for the dissemination of information.

12.    "Parent" shall mean any parent or legal guardian of any Student.

13.    "Religious Activity" shall mean any activity, conduct, expression, observance, practice or path concerning religion or religious beliefs, including and without limitation: designation of religious days in District or School calendars; distribution of religious documents; performance of religious music; performance of religious plays; presentations concerning religion; prayer; religious clubs; or religious study.

14.    "Representative" as used herein with regard to a person or entity means and shall include, both collectively and individually, each and every present and former employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

8

15.    "Resident" shall mean anyone whose domicile or place of business is located within the geographical limits of the District.

16.    "Rutherford Institute" shall mean the non-profit corporation incorporated in the Commonwealth of Virginia, any attorneys employed or affiliated with the Rutherford Institute, and each of their predecessors or successors and any of their present and former parents, subsidiaries, affiliates, divisions, joint ventures, or Representatives.

17.    "School" shall mean any school within the District.

18.    "School Administrators" shall mean the principal, assistant principal(s), guidance counselor(s) or other administrators of any School.

19.    "School Board" shall mean the school board authorized to administer and to supervise the free public schools of the District under 14 Del. C. § 1043.

20.    "School Board Meeting" shall mean any meeting of the School Board sufficient to establish a quorum so that the School Board could transact business under 14 Del. C. § 1048.

21.    "School Board Members" shall mean all past and current persons duly elected or appointed to the School Board and their Representatives.

9

22.    "School Board Prayer" shall mean any prayer, invocation or other Religious Activity made at a School Board Meeting by a School Board Member or the Representative of the School Board or a School Board Member.

23.    "Settlement Agreement" shall mean the settlement voted on by the School Board on February 27, 2006.

24.    "Student" shall mean any past or current student attending any School.

25.    The terms "all" and "each" shall be construed as "all and each."

26.    The term "all" or "any" shall mean any and all.

27.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1.    You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Request. In addition, documents are to be produced in full and unexpurgated form.

2.      In responding to this Request for production, you shall produce all documents in your possession, custody or control, or in the possession, custody or control of your Representatives.

3.      Unless otherwise indicated, the time period covered by this Request is September 1, 1991 to the present.  Documents created prior to September 1, 1991 that have been examined, consulted or used in any way since September 1, 1991 shall be produced in response to this Request.  Should Defendants contend that any conduct predates September 1, 1991, then the time period covered by this Request shall extend back to the earliest date that Defendants claim the conduct first occurred.

4.      This Request shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its Representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

5.      You shall produce not only the originals or exact copies of the originals of all documents requested above, but also copies of such documents which bear any notations or markings not found on the originals and all preliminary, intermediate, final or revised drafts of such documents.

6.      If any document covered by this Request is withheld by reason of a claim of privilege, work product or other ground of nonproduction, you shall

11

state the following information by way of written response: specific description of the document, including its type or nature and general subject matter; date the document was created, executed and received; author(s); recipient(s); title of the document; location of the document and its custodian; type of privilege claimed as grounds for withholding the document (if work-product immunity is being asserted, identify the proceeding for which the document was prepared); and request for production to which such claim relates.

        7.     If a portion of an otherwise responsive document contains information that would otherwise be withheld by reason of a claim of privilege, work product or other ground of nonproduction, those portions of the document subject to the claim of privilege, work product or other ground of nonproduction shall be deleted or redacted from the document and the rest of the document shall be produced.

        8.     In the event that any document called for by this Request has been destroyed, lost, discarded or otherwise disposed of, any such document is to be identified as completely as possible, including, without limitation, the following information: general subject matter of the document; author(s); recipient(s); sender(s); subject matter; date prepared or received; date of disposal; manner of disposal; reason for its disposal; person(s) authorizing the disposal; person(s) currently in possession of the document; and person disposing of the document.

9.    The singular form of a word should be read in the plural, and

vice versa, so as to bring within the scope of these production requests each docu-

ment that might otherwise be outside the request.

Dated: April 20, 2006


By: *Richard S. Horvath, Jr.*
Thomas J. Allingham II (#0476)
Robert S. Saunders (#3027)
Richard S. Horvath, Jr. (#4558)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiffs

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MONA DOBRICH, et al.,                    )
                                         )
                    Plaintiffs,          )
                                         )
vs.                                      )    Civil Action No. 05-cv-00120-JJF
                                         )
HARVEY L. WALLS, et al.,                 )
                                         )
                    Defendants.          )
                                         )

### DEFENDANTS INDIAN RIVER SCHOOL BOARD AND
### INDIAN RIVER SCHOOL DISTRICT'S AMENDED RESPONSES TO
### PLAINITFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants Indian River School Board and Indian River School District

("Defendants"), by counsel and pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure hereby serve the following Revised Responses to Plaintiffs' First Request for

Production of Documents from Defendants propounded in the above-captioned action:

### General Objections

1.      Defendants object to the definitions and instructions to the extent they are

overly broad, unduly burdensome and purport to impose obligations beyond the scope of

Rule 26 of the Federal Rules of Civil Procedure, and/or beyond the scope of the Court's

March 24, 2006 Order ("Court's Order") limiting discovery to only the School Board

Prayer issue in this phase of the case. Specifically, Defendants object to Definitions Nos.

13 and 22 as overly broad and beyond the scope of the Court's Order to the extent they

attempt to expand the definition of School Board Prayer beyond the ordinary meaning of

that phrase and beyond the limited issue as defined by the Court for discovery in this

phase of the case. Defendants also object to Definition No. 9 to the extent it attempts to

1

define the term more broadly than provided by the Federal Rules of Civil Procedure. Defendants also object to Definition No. 14 and Instruction No. 2 to the extent they seek documents from Defendants beyond the scope of the Federal Rules of Civil Procedure.

2.    Defendants also object to the definitions and instructions to the extent to the extent they effectively constitute unnumbered additional subparts to every document request and/or constitute additional unnumbered interrogatories.   Specifically, Defendants object to Instructions Nos. 6 and 8 as constituting additional unnumbered interrogatories.

3.    Defendants object to the request to produce documents which concern the requests "indirectly" as vague and unclear.

4.    Defendants object to these  requests to the extent they seek personally identifiable information regarding other students, since this information is confidential and protected by the Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. § 1232g.

4.    Defendants object to Definition Nos. 6, 7, 14 and 21 as overly broad, and encompassing numerous individuals not within the employment or control of Defendants.

5.    Defendants object to the discovery to the extent it seeks the disclosure of information and communications protected by attorney/client privelege, attorney work-product doctrine, and/or other privileges and immunities.

6.    Subject to these general and the following specific objections, when responding to these Document Requests, Defendants expressly reserve the right: (a) to object to the admissibility at trial of any information produced in connection with such responses, and (b) to modify any of the said responses at a later date if further factual development or analysis warrants such a modification.

2

Defendants' General Objections are incorporated by reference into each specific response below. Without waiving any of the foregoing General Objections, Defendants provide the following specific objections to the individual requests for documents.

### <u>Responses to Specific Requests for Documents</u>

<u>DOCUMENTS REQUESTED:</u>

Any and all documents concerning, directly or indirectly, the following:

     1.     School Board Prayer.

**<u>RESPONSE</u>:** Defendants object to this request to the extent it seeks information and communications protected by attorney/client privilege and/or attorney work-product doctrine. Subject to the foregoing objections, Defendants will produce the following responsive documents: School Board Meeting agendas, minutes, attendance or sign-in sheets, correspondence, audio recordings, and other documents related to the School Board Prayer issue.

     2.     Communications concerning School Board Prayer.

**<u>RESPONSE</u>:** Defendants object to this request to the extent it seeks information and communications protected by attorney/client privilege and/or attorney work-product doctrine. Defendants further object that this request is vague and unclear inasmuch as it does not identify by whom the communications sought are made. Subject to the foregoing objections, Defendants will produce the following responsive documents: Correspondence related to the School Board Prayer issue.

3.     Communications made by or to the School Board concerning:
    a.     Religious Activities;
    b.     The Litigation; and,
    c.     The Settlement Agreement.

**RESPONSE:** Defendants object to this request as overly broad and beyond the scope of the Court's Order, which limits discovery in this phase of the case to the School Board Prayer issue. Defendants further object to this request to the extent it seeks information and communications protected by attorney/client privilege and/or attorney work-product.

4.     Communications made by or to School Board Members concerning:
    a.     Religious Activities;
    b.     The Litigation; and,
    c.     The Settlement Agreement.

**RESPONSE:** Defendants object to this request as overly broad and beyond the scope of the Court's Order, which limits discovery in this phase of the case to the School Board Prayer issue. Defendants further object to this request to the extent it seeks information and communications protected by attorney/client privilege and/or attorney work-product.

5.     The attendance of any Parent, Student, Resident, District Administrator, School Administrator or District Representative at a School Board Meeting.

**RESPONSE:** Defendants object to this request to the extent it is overly broad, inasmuch as it request documents concerning the attendance of Residents, Administrators, or District Representatives. Defendants further object to this request as beyond the scope of the Court's Order, which limits discovery to the School Board

4

Prayer issue in this phase of the case. Defendants also object to this request to the extent

it seeks personally identifiable information regarding other students since this

information is confidential and protected by FERPA. Defendants further object to this

request to the extent it seeks information and communications protected by

attorney/client privilege and/or attorney work-product. Subject to the foregoing

objections, Defendants will produce the following responsive documents: Attendance or

sign-in sheets for School Board Meetings related to the School Board Prayer issue;

School Board Meeting minutes listing persons in attendance for School Board Meetings

related to the School Board Prayer issue; correspondence referencing attendance at

School Board Meetings related to the School Board Prayer issue.


6.    Communications concerning the attendance of any Parent, Student,
Resident, District Administrator, School Administrator or District Representative at a
School Board Meeting.

**RESPONSE:** Defendants object to this request to the extent it is overly broad,

inasmuch as it request documents concerning the attendance of Residents,

Administrators, or District Representatives. Defendants further object to this request as

beyond the scope of the Court's Order, which limits discovery to the School Board

Prayer issue in this phase of the case. Defendants also object to this request to the extent

it seeks personally identifiable information regarding other students since this

information is confidential and protected by FERPA. Defendants further object to this

request to the extent it seeks information and communications protected by

attorney/client privilege and/or attorney work-product. Subject to the foregoing

objections, Defendants will produce the following responsive documents:

5

Correspondence referencing attendance at School Board Meetings related to the School Board Prayer issue.

7.    Any and all past or current District policies or procedures concerning complaints from Students, Parents, Residents or District Representatives.

**RESPONSE:** Defendants object to this request to the extent it is overly broad and beyond the scope of the Court's Order, which limits discovery to the School Board Prayer issue in this phase of the case. Defendants further object to this request to the extent it seeks information and communications protected by attorney/client privilege and/or attorney work-product. Subject to the foregoing objections, Defendants will produce the following responsive documents: Indian River School District policy manual.

8.    School Board Meetings, including but not limited to notes, agendas, minutes, presentations, audio recordings, video recordings or preparation materials.

**RESPONSE:** Defendants object to this request as overly broad and unduly burdensome and beyond the scope of the Court's Order, which limits discovery to the School Board Prayer issue in this phase of the case. Defendants also object to this request to the extent it seeks personally identifiable information regarding other students since this information is confidential and protected by the FERPA. Defendants further object to this request to the extent it seeks information and communications protected by attorney/client privilege and/or the attorney work-product doctrine. Defendants further object to producing materials pertaining to closed meetings which concern personnel or other sensitive and confidential matters. Subject to the foregoing objections, Defendants will produce the following responsive documents: School Board Meeting agendas,

6

minutes, attendance or sign-in sheets, correspondence, audio recordings, and other

documents related to the School Board Prayer issue.


9.      Communications concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings between the School Board, School Board Members or District Administrators with Media, including but not limited to:

        a.      Dan Gaffney or any other Representative of WGMD;
        b.      James Diehl or any other Representative of the Sussex Post;
        c.      Lauren Hughes or any other Representative of the Delaware Wave;
        d.      Sean O'Sullivan, Molly Murray or any other Representative of the News Journal; and,
        e.      Any Representative of WBOC.

**RESPONSE:** Defendants object to this request as overly broad and beyond the

scope of the Court's Order, which limits discovery to the School Board Prayer issue in

this phase of the case.  Subject to the foregoing objections, Defendants will produce the

following responsive documents: Press releases, correspondence, and/or notes of

conversation with Media related to the School Board Prayer issue, to the extent any such

documents are in the possession and/or control of Defendants.


10.     Communications concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings between the School Board, School Board Members or District Administrators and the Rutherford Institute.

**RESPONSE:** Defendants object to this request to the extent it is overly broad

and beyond the scope of the Court's Order, which limits discovery to the School Board

Prayer issue at this phase of the case.  Defendants further object that this request seeks

privileged attorney/client communications and/or attorney work-product.

7

11.    Communications concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings between the School Board, School Board Members or District Administrators and the Alliance Defense Fund.

**RESPONSE:** Defendants object to this request to the extent it is overly broad

and beyond the scope of the Court's Order, which limits discovery to the School Board

Prayer issue at this phase of the case. Defendants further object that this request seeks

privileged attorney/client communications and/or attorney work-product.

12.    The Dobriches.

**RESPONSE:** Defendants object to the extent this request seeks privileged

attorney/client communications and/or attorney work-product. Defendants further object

to this request since, read together with Definition No. 8, it is overly broad. Defendants

further object that this request does not comply with the Court's ordered limitation of

discovery to only the School Board Prayer issue in this phase of the case. Subject to the

foregoing objections, Defendants will produce the following responsive documents:

School Board Meeting agendas, minutes, attendance or sign-in sheets, correspondence,

audio recordings, and other documents related to the Dobriches and the School Board

Prayer issue.

13.    Media reports concerning the School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement or School Board Meetings.

**RESPONSE:** Defendants object to this request to the extent it is overly broad

and beyond the scope of the Court's Order, which limits discovery to the School Board

Prayer issue in this phase of the case. Defendants further object to the extent this request

seeks privileged attorney/client communications and/or attorney work-product.

Defendants also object to the extent this request seeks documents that are publicly

available to which Plaintiffs have reasonably convenient access. Subject to the foregoing

objections, Defendants will produce the following responsive documents: Press releases

related to the School Board Prayer issue, to the extent any such documents are in the

possession and/or control of Defendants.


14.    Procedures for monitoring any public statement or news coverage of the
District.

**RESPONSE:** Defendants object to this request on the ground that the

information sought is not relevant to the claim or defense of any party to this action, nor

is it reasonably calculated to lead to the discovery of admissible evidence. Defendants

further object to this request as beyond the scope of the Court's Order, which limits

discovery to the School Board Prayer issue in this phase of the case. Defendants object

to the extent this request seeks privileged attorney/client communications and/or attorney

work-product.


15.    Procedures for monitoring, storing, preserving or retaining documents.

**RESPONSE:** Defendants object to this request as beyond the scope of the

Court's Order, which limits discovery to the School Board Prayer issue in this phase of

the case. Subject to the foregoing objections, Defendants will produce the following

responsive documents: Indian River School District Records Retention Schedule.


9

16.    Procedures for monitoring, storing, preserving or retaining communications.

**RESPONSE:** Defendants object to this request as beyond the scope of the Court's Order, which limits discovery to the School Board Prayer issue in this phase of the case. Subject to the foregoing objections, Defendants will produce the following responsive documents: Indian River School District Records Retention Schedule.

17.    Past and current procedures concerning any disciplinary action that the School Board could take or has taken concerning any Student, District Administrator, School Administrator or District Representatives.

**RESPONSE:** Defendants object to this request as beyond the scope of the Court's Order, which limits discovery to the School Board Prayer issue in this phase of the case. This request is substantially over broad in potentially encompassing ever student discipline hearing or employee grievance hearing that the School Board has ever held. Defendants also object to this request to the extent it seeks personally identifiable information regarding other students since this information is confidential and protected by the FERPA. Defendants further object to the extent this request seeks privileged attorney/client communications. Subject to the foregoing objections, Defendants will produce the following responsive documents: Indian River School District policy manual.

18.    Documents that Defendant contends support any answer concerning School Board Prayer in the Defendant's Answer To The Complaint With Affirmative Defenses Of Defendants Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, M. Elaine McCabe, Lois M. Hobbs, And Earl J. Savage, In Their Official Capacity, And The Indian River School Board, And The Indian River School District.

**RESPONSE:** Defendants object to the extent this request seeks attorney work-product. Defendants object to this request as beyond the scope of the Court's Order, which limits discovery to the School Board Prayer issue in this phase of the case. Defendants further object to the extent that this request is premature because Defendants have not yet filed an answer to the Plaintiffs' First Amended Complaint. Subject to the foregoing objections, Defendants will produce responsive documents as described in paragraphs 1, 2, 5, 6, 7, 8, 9, 12, 13, 15, 16, and 17 above.

19.    Documents that Reginald L. Helms contends support any answer concerning School Board Prayer in his Answer Of Defendant Reginald L. Helms In His Official Capacity.

**RESPONSE:** Defendants object to the extent this request seeks attorney work-product. Defendants object to this request as beyond the scope of the Court's Order, which limits discovery to the School Board Prayer issue in this phase of the case. Defendants further object to the extent that this request is premature because Defendants have not yet filed an answer to the Plaintiffs' First Amended Complaint. Subject to the foregoing objections, Defendants will produce responsive documents as described in paragraphs 1, 2, 5, 6, 7, 8, 9, 12, 13, 15, 16, and 17 above.

20.    All documents used by Defendants to answer plaintiffs' interrogatories or requests for admission.

**RESPONSE:** Defendants object to the extent this request seeks privileged attorney/client communications and/or attorney work-product. Subject to the foregoing

11

objections, Defendants will produce responsive documents as described in paragraphs 1,

2, 5, 6, 7, 8, 9, 12, 13, 15, 16, and 17 above.

*Jason P Gosselin*

Warren T. Pratt (DE Bar I.D. #4334)
Jason P. Gosselin (*pro hac vice*)
Jarrod D. Shaw (*pro hac vice*)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Suite 1000
Wilmington, DE  19801-1243
(302) 467-4200
(302) 467-4201 fax

*Attorneys for the Defendants*
*Indian River School Board, and*
*Indian River School District*

Dated: June 26, 2006

12

## Certificate of Service

I, Jeffrey M. Boerger, certify that on the 26th day of June, 2006, a true and correct copy of the attached Amended Responses to Plaintiffs' First Request for Production of Documents was served upon the following counsel by overnight courier:

> Thomas J. Allingham II, Esq.
> Robert S. Saunders, Esq.
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> Wilmington, DE  19899
> *Attorneys for Plaintiffs*

Jeffrey M. Boerger, Esquire

13

# Exhibit C

# DrinkerBiddle&Reath L L P

Jeffrey M. Boerger
215-988-2912
jeffrey.boerger@dbr.com

*Law Offices*

One Logan Square
18TH and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700
215-988-2757 fax
www.drinkerbiddle.com

NEW YORK
WASHINGTON
LOS ANGELES
SAN FRANCISCO
CHICAGO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

July 17, 2006

**VIA FIRST-CLASS MAIL AND E-MAIL**

Richard S. Horvath, Jr., Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

RE:    *Dobrich, et al. v. Indian River School District, et al.*

Dear Mr. Horvath:

I write in response to your June 28, 2006 letter regarding defendants' responses to plaintiffs' document requests and interrogatories. It is my understanding that Jason Gosselin has addressed the topic of depositions with you separately.

## A.    The Volume of Documents Produced

I would like to first address your expectation that we would produce "at least twenty linear feet of documents pertaining to School Board Meetings," based on your conversations with prior counsel for the defendants. You expressed your dismay at our production of only "roughly five inches" of documents in response to your document requests related to the School Board Prayer Policy issue.

While we are not aware precisely what prior counsel may have stated to you, your expectation with respect to the volume of relevant and responsive documents appears to be based on a misunderstanding or miscommunication. The "twenty linear feet" of documents referred to by prior counsel appears to be a complete set of school board meeting binders containing all publicly available agendas, minutes, and other documents related to school board meetings dating from 1968 through the present. While prior counsel may have been prepared to produce all of this material for your reading enjoyment, we could not in good faith produce this large volume of documents that are, for the most part, both irrelevant and non-responsive. In particular, much of this material relates to the 23-year period prior to September 1991, the earliest date for which you have requested information or documents. Moreover, most of the remaining material is not relevant to any of the plaintiffs' claims whatsoever, let alone relevant to the School Board Prayer Policy issue, to which discovery is currently limited by order of the Court.

To our knowledge, there simply do not exist *twenty linear feet* of relevant and responsive documents. While some additional volume of documents in these binders may be relevant and responsive to your requests in the upcoming Remaining Issues phase of discovery, I can assure you that, in addition to audio and video recordings (which do

*Established*
*1849*

DrinkerBiddle&Reath

Richard S. Horvath, Jr., Esquire
July 17, 2006
Page 2

not lend themselves easily to the same measure of volume), the "five inches" worth of documents produced represents the sum of all non-privileged documents responsive to your document requests and relevant to the School Board Prayer Policy issue.

**B.    Documents Related to School Board Meetings**

With respect to your Document Requests Nos. 5 and 6, all relevant non-privileged documents responsive to these requests have been produced. In responding to these document requests, we described the documents produced, which include attendance or sign-in sheets for school board meetings related to the School Board Prayer issue, minutes related to such meetings (in which select attendees are often named), and correspondence referencing the author's or other individuals' attendance at such meetings. To our knowledge, there are no additional relevant and responsive non-privileged documents.

With respect to your Document Requests Nos. 7 and 17, all relevant non-privileged documents responsive to these requests have been produced. In particular, the Indian River School District policy manual was produced. To our knowledge, there are no additional relevant and responsive policies or procedures.

With respect to your Document Request No. 8, all relevant non-privileged documents responsive to this request have been produced. In responding to this document request, we described the documents produced, which include agendas, minutes, attendance or sign-in sheets, correspondence, audio recordings, and other documents. To our knowledge, there are no additional relevant and responsive non-privileged documents.

With respect to your Document Request No. 13, all relevant non-privileged documents responsive to this request and not readily obtainable from other sources have been produced. In particular, we have produced certain press releases in the possession of the defendants. We have not produced media reports that are publicly available and to which the plaintiffs' have reasonably convenient access. To our knowledge, there are no additional relevant and responsive non-privileged documents.

**C.    Religious Activity, the Litigation, and the Settlement Agreement**

With respect to your various document requests seeking information or documents regarding religious activity in general, this litigation, or the settlement agreement previously contemplated by the parties, such documents are simply not relevant to the School Board Prayer Policy issue, to which discovery is currently limited by order of the Court. With respect to your Interrogatory No. 6, information regarding

DrinkerBiddle&Reath
L L P

Richard S. Horvath, Jr., Esquire
July 17, 2006
Page 3

this litigation or the settlement agreement is likewise not relevant to the School Board
Prayer Policy issue.

**D.    Documents related to School Board Prayer**

With respect to your concerns related to the definitions of "School Board Prayer"
and "documents," all non-privileged documents responsive to your document requests
and relevant to the School Board Prayer Policy issue have been produced.

**E.    Privileged documents withheld from production**

With respect to your concerns regarding Document Request Instruction No. 6,
production of a privilege log is forthcoming, as previously discussed.

**F.    Documents containing student information**

With respect to relevant and responsive documents containing directory
information[1] concerning students, we have forwarded for your review a proposed
stipulated protective order restricting the use of any such information to litigating this
case only. Documents containing personally identifiable information[2] other than
directory information will be appropriately redacted or withheld and described in the
forthcoming privilege log.

**G.    Document retention policies**

With respect to your Document Requests Nos. 15 and 16, all non-privileged
documents responsive to these requests have been produced. In particular, we have
produced the Indian River School District Records Retention Schedule. To our
knowledge, there are no additional relevant and responsive non-privileged documents.

**H.    Documents related to closed executive session proceedings**

With respect to your concerns regarding the withholding of documents pertaining
to closed executive session, such documents are protected by the deliberative process
privilege and under the Delaware Freedom of Information Act, 29 Del. C. § 10001 *et
seq.*, and will not be produced.

---

[1] *See* 34 C.F.R. § 99.3 (defining "directory information").
[2] *See id.* (defining "personally identifiable information").

DrinkerBiddle&Reath
L L P

Richard S. Horvath, Jr., Esquire
July 17, 2006
Page 4

**I.      The content of any and all School Board prayers**

With respect to your Interrogatory No. 1, the content of prayers recited at school board meetings is evident from audio and video recordings of the open session portions of such meetings. Audio and video recordings of school board meetings relevant to the School Board Prayer Policy issue are forthcoming, as previously discussed.

**J.      The religious faith or denomination of individual school board members**

With respect to your Interrogatory No. 5, the specific religious faith or denomination of each individual school board member is not relevant to the School Board Prayer Policy issue. As we understand the plaintiffs' claims with respect to the School Board Prayer Policy issue, all that is relevant is whether prayer has occurred at school board meetings, the identity of the person speaking or leading the prayer, and whether the prayer invokes the name of Jesus Christ or the Christian faith in general.

The remaining points raised in your letter do not appear to require response. If you have any further questions or comments, please feel free to contact me.

Sincerely yours,

Jeffrey M. Boerger

JMB

# Exhibit D

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 1994 WL 319171 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware, Sussex County.
Sabrina BECKETT, Plaintiff,
v.
Bernard TRICE, Merit Services, Ltd., a Delaware
corporation, Wells Fargo & Company, a Delaware
corporation, Townsends, Inc., a Delaware
corporation, and Borg Warner Corporation, a
Delaware corporation, Defendants.
**Civ. A. No. 92C-08-029.**

Submitted: April 20, 1994.
Decided: June 6, 1994.

A. Dean Betts, Jr., Dept. of Justice, Wilmington,
and Georgetown, for John R. Garey.
Edward C. Gill, Georgetown, for plaintiff.
David M. Lukoff, Wilmington, for defendant
Bernard Trice.
Barry M. Willoughby, Wilmington, for defendant
Townsends, Inc.
W. Wade W. Scott, Wilmington, for defendants
Wells Fargo, Merit Services, Ltd. and Borg Warner
Corp.

MEMORANDUM OPINION

LEE, Judge.
*1 The pending action is one which plaintiff
Sabrina Beckett ("Beckett") has brought against the
various defendants alleging, amongst other claims,
malicious prosecution, abuse of process,
harassment, invasion of privacy, and intentional
and/or negligent infliction of emotional harm. In
connection with this litigation, Beckett noticed the
deposition of John R. Garey, a Deputy Attorney
General with the Department of Justice of the State
of Delaware. Mr. Garey has filed a motion seeking
a protective order which would prevent the taking
of his deposition testimony. This is the Court's

decision on the pending motion.

### FACTS

Beckett alleges the following in her complaint.[FN1]
Defendant Townsends, Inc. ("Townsends") hired
defendants Wells Fargo & Co., Merit Services, Ltd.
and Borg Warner Corporation to provide an
employee to Townsends to conduct drug
investigations. The employee these defendants
supplied Townsends was defendant Bernard Trice ("
Trice"). Trice began working at Townsends, and
he befriended and ultimately bedded Beckett.
Beckett alleges Trice befriended, dated, bedded,
and moved in with her as a part of Trice's
employment and investigation. Trice then solicited
marijuana from plaintiff, and as a result thereof,
Beckett was arrested and charged with delivery of
marijuana and maintaining a dwelling for the
purchases and delivery of drugs. The State
ultimately nolle prossed the charges.

> FN1. The defendants dispute most of these
> allegations.

Beckett alleges no probable cause existed to
institute the investigation and actions against her,
and defendants' actions were intentional and taken
with malice. She claims that as a result of
defendants' actions, she lost her job, incurred
attorney's fees in defending criminal charges and in
expunging her criminal record, and suffered
embarrassment, mental anguish, emotional harm,
and damage to her reputation.

As noted earlier, Beckett scheduled the deposition
of John R. Garey. Mr. Garey filed the pending
motion for protective order, and in connection
therewith, submitted an affidavit. In that affidavit,
Mr. Garey states the following. He was the
prosecutor assigned to the State's criminal case
against Beckett. After receiving the evidence in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 319171 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

case, he decided not to proceed to trial and, on or about March 26, 1991, he filed a notice of nolle prosequi with the Court. Mr. Garey did not personally involve himself in the criminal investigation. Rather, the investigating Delaware State Police Officer, Detective William West, provided to Mr. Garey all the facts and other evidence he relied upon for his decision. Mr. Garey states he made the decision to nolle prosse the charges in his official capacity as Deputy Attorney General assigned to the case.

Mr. Garey further asserts in his affidavit that, based upon conversations with Beckett's attorney, it is his understanding that the purpose of the deposition is to question him on: 1) his decision not to prosecute the charges against plaintiff; 2) his reasoning for this decision; and 3) the underlying facts on which he relied. Finally, Mr. Garey asserts that requiring him to reveal this information would hamper him in his future performance of his duties as a Deputy Attorney General because he would not be able to perform his duties if he has to worry that every decision he makes can be examined and questioned in a subsequent civil proceeding.

**\*2** Mr. Garey seeks the protective order on several grounds. He argues that the "deliberative process privilege" would protect any discretionary decisions. He also argues he cannot be compelled to be an expert witness on behalf of a litigant. Finally, he asserts he is entitled to invoke the governmental privilege.

In her response to this motion for protective order, Beckett does not submit any affidavit; she merely makes assertions. She asserts that Trice wrongfully instituted the prosecution by sleeping with her in order to investigate her; that she believes Trice did not give this information to the police and prosecutor, and instead, is shifting the blame for the prosecution to the Magistrate, the police and the prosecutor; Mr. Garey's testimony is necessary to show Trice's story is not correct; and his testimony may show the charges against Beckett were dropped once Mr. Garey learned about Trice's conduct.

Beckett represents she will not inquire into Mr. Garey's discretionary deliberative process but will

inquire as to what facts and information were brought to Mr. Garey's personal knowledge regarding the events of the case. Beckett contends the disposition of the criminal charges is an element of the civil action and therefore, relevant. She also argues the deposition testimony is necessary to show defendants wrongfully withheld information from the police and prosecutor and the charges were dropped when this information came to the prosecutor's attention. Finally, she contends Mr. Garey waived any privilege when he voluntarily disclosed certain information to her counsel. However, because Beckett did not submit an affidavit to support this assertion, the Court ignores it.

### DISCUSSION

In Super.Ct.Civ.R. 26(c), it is provided in pertinent part:
Upon motion ... by the person from whom discovery is sought, and for good cause shown, the Court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) That the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the Court; (6) that a deposition after being sealed be opened only by order of the Court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the Court.

Since Mr. Garey clearly has standing to seek a protective order under this rule, the issue before the Court is whether he has shown good cause for such.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                        Page 3

Not Reported in A.2d, 1994 WL 319171 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**\*3** I begin with Mr. Garey's contention that he is
protected by the "deliberative process privilege".
Beckett has represented that she does not intend to
question him regarding his discretionary decision
making process, and therefore, this issue is moot.
However, I note, as an aside, that the "deliberative
process privilege" does not exist in Delaware.

Next is Mr. Garey's contention that he cannot be
compelled to testify as an expert witness for
Beckett. Such a situation would occur if Beckett
sought Mr. Garey's opinion on whether the
investigation was legally proper. Mr. Garey's
contention is correct, particularly where Beckett has
not made any showing that Mr. Garey is a material
witness. *State v. McLaughlin,* Del.Super., 514 A.2d
1139 (1986).

However, Beckett contends she is seeking to depose
Mr. Garey only as a fact witness. She wants to
determine what people told him regarding the
events of the case and when they gave him this
information. Mr. Garey asserts a governmental
privilege with regard to any questions seeking
factual information.

In Delaware Rules of Evidence ("D.R.E.") 508, it is
provided:
(a) Claim of Privilege. If the law of the United
States creates a governmental privilege that the
courts of this State must recognize under the
Constitution of the United States, the privilege may
be claimed as provided by the law of the United
States.
(b) Recognition of Privilege. A governmental
privilege existing at common law, or created by the
Constitution, statute or court rule of this State, shall
be recognized.
(c) Effect of Sustaining Claim. If a claim of
governmental privilege is sustained and it appears
that a party is thereby deprived of material
evidence, the court shall make any further orders
the interests of justice require, including striking the
testimony of a witness, declaring a mistrial, finding
upon an issue as to which the evidence is relevant or
dismissing the action.

In Delaware, the law is that the attorney general

may "not be required to disclose facts coming to his
knowledge for the use of the state in its prosecution
of the accused." *State v. Brown,* Del.Oyer and
Term., 36 A. 458, 463 (1896). Communications
between witnesses and the prosecutor
are regarded as secrets of state, or matters the
disclosure of which would be prejudicial to the
public interests. They are therefore protected, and
all evidence thereof excluded, from motives of
public policy.

*Id.* at 463-64. *Accord Lepkowski v. Handsberry,*
Del.Super., C.A. No. 84C-NO-117, Bifferato, J.
(July 23, 1986). Thus, a common law
governmental privilege exists here.[FN2]

> FN2. There is relatively little law in
> Delaware dealing with governmental
> privilege. In the case of *Morris v.
> Avallone,* Del.Super., 272 A.2d 344 (1970)
> , a governmental privilege was found to
> exist by way of mandate which a state
> executive body promulgated pursuant to a
> legislative general enabling statute. On
> the other hand, in *Lefferts v. J.C. Penney
> Company,* Del.Super., C.A. No.
> 85C-JN-87, Balick, J. (August 3, 1989), no
> governmental immunity was found to exist,
> thereby precluding the application of
> D.R.E. 508(b).

Once a privilege is found to exist under D.R.E.
508(b), then the Court must determine the
applicability of D.R.E. 508(c). The Court may
make further orders necessary with regard to
problems posed by the privilege if it appears a party
may be deprived of material evidence upon the
Court's sustaining the privilege. Before making
such an order, however, the non-privileged party
has the duty to establish it is deprived of material
evidence due to the assertion of the privilege.
*Greenspan v. State,* N.J.Super.A.D., 416 A.2d 449
(1980).

**\*4** Here, Beckett's position is not well-developed.
She has not established that the evidence she seeks
from Mr. Garey is material evidence to her case.
Furthermore, she has not established that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 4

Not Reported in A.2d, 1994 WL 319171 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

evidence, if material, cannot be obtained from any
other source. It is only upon the establishment of
such that this Court can consider making any order
which takes the privilege into account.

Based on the foregoing, the Court holds that the
testimony Beckett seeks from Mr. Garey is
privileged and accordingly, enters an order
prohibiting the taking of his deposition testimony.

IT IS SO ORDERED.

Del.Super.,1994.
Beckett v. Trice
Not Reported in A.2d, 1994 WL 319171
(Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

Westlaw.

Not Reported in A.2d                                                                    Page 1

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

▷

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware, Kent County.
CHEMICAL INDUSTRY COUNCIL OF
DELAWARE, INC., a Delaware corporation; E.I.
du Pont de Nemours & Co., Inc., a Delaware
corporation, Georgia Gulf Corporation, a Delaware
corporation; Occidental Chemical Corporation, a
foreign corporation; Standard Chlorine of
Delaware, Inc., a Delaware corporation; Star
Enterprise, a general partnership; Sun Company,
Inc., a Delaware corporation; City of Wilmington,
a Delaware municipality; Oceanport Industries,
Inc., a Delaware corporation; and Delmarva Power
& Light Company, a Delaware and Virginia
corporation, Plaintiffs,
v.
STATE COASTAL ZONE INDUSTRIAL
CONTROL BOARD; Delaware Department of
Natural Resources and Environmental Control; and
Christophe A.G. Tulou, in his capacity as Secretary
of the Delaware Department of Natural Resources
and Environmental Control, Defendants.
**Civ. A. No. 1216-K.**

Submitted: Feb. 2, 1994.
Decided: May 19, 1994.

F. Michael Parkowski, Jeremy W. Homer and
Jonathan Eisenberg, of Parkowski, Noble &
Guerke, P.A., Dover, DE for plaintiffs Chemical
Industry Council of Delaware, Inc., E.I. du Pont de
Nemours & Co., Inc., Georgia Gulf Corp.,
Occidental Chemical Corp., and Standard Chlorine
of Delaware, Inc.
David S. Swayze and Richard A. Forsten, of Duane,
Morris & Heckscher, Wilmington, DE, for plaintiffs
City of Wilmington, Oceanport Industries, Inc., and
Sun Co., Inc.
Somers S. Price, Jr., of Potter, Anderson &
Corroon, Wilmington, DE, and Dale G. Stoodley, of

Delmarva Power & Light Co., Wilmington, DE, for
plaintiff Delmarva Power & Light Co.
R. Judson Scaggs, Jr., of Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for plaintiff Star
Enterprise.
Marsha Kramarck, Deputy Atty. Gen., of Dept. of
Justice, Wilmington, DE for defendants.

*OPINION*

JACOBS, Vice Chancellor.
**\*1** This action, brought pursuant to the Delaware
Freedom of Information Act, 29 *Del.C.* ch. 100 ("
FOIA"), challenges the recently promulgated "
Coastal Zone Act Regulations" (the "Regulations"),
adopted in 1993 by the State Coastal Zone
Industrial Control Board (the "Board"). The
plaintiffs are (i) the Chemical Industry Council of
Delaware, Inc., an association of chemical
companies having facilities in Delaware ("CIC");
(ii) the City of Wilmington, which owns and
operates a bulk product transfer facility at the port
of Wilmington; and (iii) eight companies that own
and operate industrial plants within the Delaware
coastal zone, namely, E.I. du Pont de Nemours &
Co., Inc., Georgia Gulf Corporation, Occidental
Chemical Corporation, Standard Chlorine of
Delaware, Inc., Star Enterprise, Sun Company, Inc.,
Oceanport Industries, Inc., and Delmarva Power &
Light Company ("DP & L").

The original named defendants were the Board, the
Delaware Department of Natural Resources and
Environmental Control ("DNREC"), and the
Secretary of DNREC, Christophe A.G. Tulou.
Because DNREC and its Secretary were
subsequently dismissed from this action, the only
remaining defendant is the Board.

The plaintiffs filed their complaint on July 23,
1993, alleging that the Board had violated FOIA by
excluding the public from the rule-making process
by which the Regulations were adopted. The
plaintiffs ask this Court to declare the Regulations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 2

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
(Cite as: Not Reported in A.2d)

void as invalidly adopted, and to enjoin their enforcement. The plaintiffs also seek an order directing the Board to turn over to them certain documents, as well as tape recordings of executive sessions held as part of the Board's rule-making process. Lastly, the plaintiffs seek an award of costs and attorneys' fees.

On October 4, 1993, the plaintiffs moved for summary judgment. The defendants responded by filing a cross-motion for summary judgment on October 27, 1993. Shortly thereafter, DNREC moved to dismiss the action as to it by reason of improper joinder. At the oral argument held on February 1, 1994, the parties stipulated to the dismissal of DNREC as a defendant. Tr. at 3. [FN1]

> FN1. As cited in this Opinion, "Tr." refers to the transcript of the February 1, 1994 oral argument; "A" refers to the plaintiffs' Appendix; and "Def. A" refers to the defendant's Appendix.

Because no material facts are disputed, the case is appropriate for summary judgment disposition. This is the Opinion of the Court on the parties' cross-motions for summary judgment. For the reasons now discussed, I conclude that the plaintiffs' summary judgment motion will be granted and that the defendant's cross-motion for summary judgment will be denied.

## I. PERTINENT UNDISPUTED FACTS

### A. Background: The Regulations

The Regulations challenged here were adopted by the Board pursuant to the "Coastal Zone Act" (the " Act"), 7 Del.C. ch. 70, which was enacted in 1971 to control the location, extent and type of industrial development within Delaware's "coastal zone." Id. § 7001. In furtherance of that objective, § 7005(c) of the Act directed the Secretary of DNREC to: develop and propose a comprehensive plan and guidelines for the [Board] concerning types of manufacturing uses deemed acceptable in the

coastal zone and regulations for the further elaboration of the definition of "heavy industry" in a manner consistent with the purposes and provisions of this chapter. Such plan and guidelines shall become binding regulations upon adoption by the Board after a public hearing. The Board may alter said regulations at any time after a public hearing.

*2 Pursuant to that authority, the Board adopted a set of implementing regulations in December 1971. Those regulations consisted of five pages of which only one five-line provision addressed substantive matters. Although not comprehensive, those regulations remained in place for almost twenty-two years. A373.[FN2]

> FN2. In contrast, the recently-adopted Regulations challenged here consist of 26 pages plus appendices, and concern primarily substantive matters. A21. Certain substantive aspects of the Regulations are being separately challenged in five lawsuits pending in the Superior Court in and for Kent County. Tr. at 101, 119; P1 A594-95. The Superior Court actions were later consolidated and have been stayed pending the outcome of this FOIA action. Chemical Industry Council of Delaware, Inc. v. State Coastal Zone Ind. Control Board, Del.Super., C.A. Consolidated No. 93A-07-004.

In 1990, then-Governor Michael N. Castle established an Ad Hoc Committee to assist DNREC to develop more comprehensive regulations. Pl.Op.Br. at 4, Hugg Dep. at 19-20. Assisted by that Committee, DNREC transmitted a comprehensive set of proposed Regulations to the Board for its consideration on September 25, 1992. Def. A1. DNREC also advised the Board to hold public workshops and public hearings on the proposed Regulations as soon as possible. Id. at 2.

The Board consists of nine voting members, five of whom are appointed by the Governor. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

remaining four members are the Director of the Delaware Development Office and the chairpersons of the Planning Commissions for New Castle, Kent and Sussex Counties, respectively. 7 *Del.C.* § 7006 . The Board does not convene on a regular basis, but it does meet as needed to determine appeals from decisions of DNREC, or (as here) to consider the adoption of proposed regulations.

Dr. Donald F. Crossan was the Chairman of the Board during the period that the Regulations were under consideration and ultimately adopted. In that capacity Dr. Crossan attended every Board meeting that concerned the proposed Regulations, and has given uncontroverted deposition testimony on the Board's discussions and actions at those meetings.

### B. *The Board's Rule-Making Process*

To understand the FOIA claims being advanced, it is helpful to narrate chronologically the procedural steps by which the Board came to consider and ultimately adopt the challenged Regulations.

Between September 25, 1992 (when the Board received a set of proposed Regulations from the DNREC) until June 9, 1993 (when it adopted the Regulations), the Board held, *in toto,* two public hearings, one public workshop, four public sessions, and six executive sessions closed to the public. Since the Board did not have its own office, those meetings were held at the offices of DNREC.

The first public hearing took place on October 28, 1992. At that hearing, the Board solicited public comments about the proposed Regulations, and announced that written public comments would be accepted until November 15, 1992, after which the Board would meet privately with counsel and consider all comments. The Board explained that a private meeting with counsel was needed to ensure that the Board did not exceed its statutory authority. Def. A3.

The Board next met in closed executive session on November 23, 1992. The notices of that meeting, which were timely posted at the entrances of DNREC's building, disclosed the date and time of

the executive session and stated that its purpose was to:
deliberate upon the proposed new Regulations relating to the Coastal Zone Act, submitted by the Secretary of the [DNREC] and dated September 25, 1992. FOR MORE INFORMATION CONTACT ELLEN MORRIS at (302) 739-6444.

**\*3** A283. At the November 23, 1992 executive session, rule-making discussions on substantive matters took place,[FN3] and the Board actively discussed and debated the proposed Regulations. Crossan Dep. at 19, 24. After the Board members had "agreed in principle to most of the issues" discussed, they decided to return to public session " in order to vote [on] any [of] the suggestions." A291; Crossan Dep. at 25-27. The Board then voted unanimously to adjourn. A288.[FN4]

> FN3. For example, the Board discussed concepts such as "current product line," " net reductions or no net increase," and proposed definitions of statutory terms such as "manufacturing," "nonconforming use," "nonconforming bulk product transfer facility," and "nonconforming heavy industry use." A284-88.

> FN4. The plaintiffs argue that the Board recessed its November 23, 1992 executive session without adjourning, and that the December 21, 1992 executive session was a continuation of the November 23rd executive session. Def.Op.Br. at 3. The record clearly shows otherwise: the minutes of the November 23, 1992 executive session state that "the Board unanimously voted to adjourn the executive session." A288.

On December 21, 1992, the Board again met in executive session immediately before it convened in public session. The notice of both sessions was timely posted at entrances to DNREC's office, and stated that the meeting's purpose was to consider the proposed Regulations and the public's comments about them. The notice also stated that the Board " regularly moves into executive session for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

purpose of receiving advice of counsel, engaging in strategy sessions, considering personnel information, or for any other purpose provided by law." Def. A6. Although the notice disclosed a 10:30 a.m. starting time, it was unclear whether that starting time was for the executive or the public session. *Id.*

As had occurred in the November 23, 1992 executive session, the Board discussed substantive issues at the executive session held on December 21, 1992. A298-99; Crossan Dep. at 57. Immediately after it adjourned the executive session, the Board went into public session, and its members made corrections, additions, and deletions to the proposed Regulations with a view towards preparing a final draft. A301-04.

On February 22, 1993, the Board held its second public hearing, notice of which was timely posted at entrances to DNREC's office and published in two Delaware newspapers. Def. A10; Def.Op.Br. at 4. According to Chairman Crossan, the hearing's purpose was to receive public comment on the draft proposal, not to deliberate openly in front of the public. Crossan Dep. at 38-39. At the hearing's conclusion, the Chairman urged persons who had not submitted comments on the current draft of the proposed Regulations to do so promptly. He also advised that the Board would be considering the comments it had already received, and asked the Board members to remain and attend a brief executive session after the public hearing was adjourned. Def. A11. Thereafter, an executive session was held, but the record does not disclose what transpired there.

On April 5, 1993, the Board held another public session, again followed by an executive session. It appears that notice was posted only for the executive, but not the public, session. The notice stated that, "[t]he Board will meet to continue its deliberation in Executive Session upon the proposed new Regulations relating to the [Act]...." A307.

According to the minutes of the April 5, 1993 public session, the Board decided that a public workshop would be an "appropriate means of

gathering input from the Secretary [of DNREC] and industry," and would also afford the public an opportunity to ask questions of the DNREC staff. A308; Crossan Dep. at 40-41. At the conclusion of the April 5 public session, the Board voted to move into executive session in order to consult with counsel. *Id.* The minutes of that executive session disclose, however, that the Board's discussion was not limited to consulting with counsel, but included substantive aspects of the proposed Regulations not related to receiving legal advice. [FN5]

> FN5. During the executive session the Board discussed the definition of proposed statutory terms such as "Current Product Line," "Resource Recovery," "Research and Development Laboratories," " Facilities Crossing Coastal Zone Border," and "No Net Increase," and whether to reinstate the "Change of Ownership" section. A309-10. Some of those items had been placed on the agenda for the public workshop.

*4 On May 10, 1993, the public workshop was held, the notice of which was published in two newspapers. The notice disclosed the five topics upon which the Board would consider public comment (A314; Def.Op.Br. at 5.), and like its counterpart for the December 21, 1992 executive session, stated that the Board was "continuing to deliberate" upon the proposed Regulations, and that it may move into executive session "for the purpose of receiving advice of counsel, engaging in strategy sessions, considering personnel information, or for any other purpose provided by law." A314. At the workshop itself, the public was invited to comment on the proposed Regulations and to ask questions of the DNREC staff. Crossan Dep. 40-41. When the workshop concluded, Chairman Crossan told members of the public in attendance that immediately thereafter, the Board would convene in executive session to consult with counsel and set a date for another public hearing. A574-75.

During the ensuing executive session, the Board members were told that the comments generated by the May 10th workshop would be forwarded to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 5

Not Reported in A.2d, 1994 WL 274429 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

them for review. The minutes of the executive session also reflect that the Board decided to hold another public hearing to vote on the proposed Regulations, following their official publication for public review. A315; Crossan Dep. at 41. The Board then voted to recess (without adjourning) until the following month, at which time the Board would reconvene the executive session and discuss a final draft of the Regulations. A315.

The recessed May 10, 1993 executive session was reconvened on June 9, 1993. The notice of the reconvened session, which was timely posted at entrances to DNREC's office, stated that the Board was "continu[ing] deliberation upon the proposed new Regulations" and that it "may return to Public Session time permitting, at the conclusion of the Executive Session." A316. During the June 9 executive session, the Board continued to discuss the proposed Regulations until a point was reached where a majority of the Board members supported a specific draft proposal. A317-19; Crossan Dep. at 30, 76-77. An earlier draft of the proposed Regulations was then marked-up to reflect the language changes to which the majority of Board members had agreed. The Board then resolved to move into public session to vote on those agreed-upon Regulations. Crossan Dep. at 44-46, 51-52.

At the June 9 public session, which no member of the public attended, the Board voted to adopt each section of the Regulations previously formulated and agreed to in executive session. A317-19, 325-331; Crossan Dep. at 60-62. No debate or discussion of those Regulations took place, and no changes were made to the proposed Regulations previously agreed to. Crossan Dep. at 37-38, 52-55, 79-81. (Indeed, the marked-up draft reflecting the changes agreed to in the executive session, was used to type the final draft Regulations that the Board ultimately adopted. *Id.* at 52-54, 81.) According to the minutes of the June 9 public session, the Board concluded, despite its contrary representations to the public, that there was no need for another public hearing. The Board then voted to adopt the Regulations.[FN6] A331.

FN6. Although the plaintiffs argue that no final vote was ever held on the Regulations taken as a whole, Chairman Crossan testified (and I find) that the Board did vote on, and adopt, the Regulations in their entirety. Crossan Dep. at 61.

**\*5** Although the Regulations became effective on June 25, 1993, they are not currently being enforced, because the Board and DNREC have decided to await the outcome of both this and the Superior Court actions. Crossan Dep. at 49-50; Tr. at 96.

### C. *The Plaintiffs' FOIA Requests For Documents and Tapes*

On June 23, 1993, shortly after the plaintiffs learned that the Regulations had been adopted, plaintiff DP & L made a FOIA request for documents pursuant to 29 *Del.C.* § 10003. DP & L requested, *inter alia,* copies of the notice, agenda, notes, minutes and records of the votes taken at the June 9, 1993 public session; copies of the notices and agendas for all of public meetings held since October 1992; copies of the notices and agendas for all executive sessions; and a copy of the Regulations as finally approved by the Board. A393-95. The Board's counsel responded by advising DP & L that although its request would be "addressed as promptly as possible," the Board did:
not expect to be able to produce minutes of the June meetings by [DP & L's] requested deadline.... Moreover, records of Executive Sessions are confidential, pursuant to statute.

A396.

Next, on July 9, 1993, plaintiff CIC independently submitted a written FOIA request for copies of the minutes, notices, and agendas related to the Board's 1993 rule-making activities. A385. By letter dated July 16, 1993, the Board's counsel responded that the information sought by CIC pertained to pending or potential litigation, and therefore was protected from disclosure under FOIA. Counsel added that the Board was, nonetheless, compiling the requested documents in anticipation of being

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

directed to turn them over to the plaintiffs in the pending Superior Court actions. A387-88; *see supra* note 2. Thereafter, on August 13, 1993, the Board, as part of the discovery in connection with the pending Superior Court litigation, furnished the plaintiffs all the documents they previously requested under FOIA.

On August 24, 1992, during the deposition of Ms. Ellen Morris, the Board's administrative assistant, the plaintiffs learned for the first time that some of the minutes previously furnished to them had been prepared from tape recordings of the Board's meetings, long after those meetings had taken place. A234; 389; Pl.Op.Br. at 13. Accordingly, the plaintiffs wrote to the Board's counsel requesting access to those tapes.[FN7] The Board rejected, and continues to resist, that request.

> FN7. In an August 26, 1993 letter to the Board's attorney, counsel for the plaintiffs wrote:
> Given that the minutes provided us to date are edited versions of draft minutes prepared, in some cases, months after the original Board meetings, and then, in some cases, by a person not in attendance at the meeting; given that the Board has never approved or adopted any of the minutes; given the existence of two competing sets of purported minutes of the April 5, 1993 executive session; and finally, given the frequent contradictions between the minutes which were originally produced and the testimony of the witnesses, it is imperative that we have access to both the original tape recordings, secretary's notes, and the original draft minutes prepared by Ellen Morris.
> A389.

## II. *THE CONTENTIONS*

The thrust of the plaintiffs' position is that the Regulations should be declared void, not for substantive reasons, but on the procedural ground that the Regulations were adopted in violation of FOIA. The plaintiffs claim that FOIA was violated

in two distinct respects. First, they argue that the notices of the Board's meetings were invalid because they did not contain agendas of, or specify any lawful basis for holding, the sessions, as required by 29 *Del.C.* §§ 10004(e)(2) and 10002(f).[FN8] Second, the plaintiffs claim that the Board contravened FOIA by its wholesale use of executive sessions to deliberate upon and decide substantive matters in its rule-making process. In this regard, the plaintiffs argue that the Board failed to meet its burden to demonstrate that the executive sessions were permitted under one or more of the statutory exceptions to the FOIA's "open meeting" requirement. *See* 29 *Del.C.* §§ 10005(c) and 10004(b)(1)-(9). They claim that by conducting its substantive rule-making deliberations primarily in executive sessions, the Board deprived the public of its statutory right to observe and monitor those deliberations.

> FN8. Particularly egregious, plaintiffs argue, was the notice of the June 9, 1993 meeting, because it (i) failed to specify any of the nine statutorily authorized purposes for holding an executive session (*See* 29 *Del.C.* § 10004(b)(1)-(9)), and (ii) failed to disclose that a public session would be held at which the proposed Regulations would be voted upon, and possibly adopted.

*6 The plaintiffs also claim that the Board violated FOIA by denying their requests to inspect and copy the requested documents and tape recordings of the Board's executive sessions. Although the documents (but not the tapes) were later turned over, the plaintiffs nonetheless ask this Court to declare that the Board, as custodian of those documents, wrongfully denied them timely access. The plaintiffs claim that the tape recordings are "public records" as defined in § 10002(d), and as such are the subject of a mandated right to inspect and copy under § 10003.

Concerning relief, the plaintiffs argue that given the multitude and severity of the FOIA violations, the only appropriate remedy is for this Court to declare the Regulations void as invalidly adopted under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

FOIA. Only that remedy, plaintiffs contend, will vindicate the General Assembly's purpose in enacting FOIA and the public's statutory right to observe the Regulations being formulated. If granted, that relief would require the Board to conduct a new rule-making process. Finally, the plaintiffs claim that the nature of the FOIA violations justifies awarding them costs and attorneys' fees.

The Board vigorously resists these claims. It argues that all notices and agendas of the Board's meetings and hearings were proper, and that its use of executive sessions was lawful under the FOIA exemptions for (1) strategy sessions involving legal advice about pending or potential litigation (29 *Del.C.* § 10004(b)(4)), and (2) discussions of documents that are not "public records" (*Id.* § 10004(b)(6)). The Board further argues that once the executive sessions were called for a valid statutory purpose, it then became proper for the Board to conduct "incidental deliberations" on other subjects. Def.Rep.Br. at 4.

The Board also claims that it justifiably withheld the documents requested by DP & L and CIC, because they pertained to pending litigation, and were therefore exempt from disclosure under §§ 10002(d) and 10003. In any event, the Board says, the issue is moot, because the requested documents were eventually furnished to the plaintiffs, and the tape recordings need not be disclosed under § 10003 because they are not "public records" within the meaning of § 10002.

Finally, the defendant argues that voiding the Regulations would inflict great harm, because the Board would then have to deliberate and formulate the Regulations anew. That, it is urged, would be not only expensive and time-consuming, but also ultimately unproductive because of the high likelihood that any newly-adopted Regulations would be no different from those presently under attack. The Board further argues that, in any case, no costs and attorneys' fees should be awarded because it did not act in bad faith, the plaintiffs brought this action solely to further their own private economic interests, and any benefit to the public from voiding the Regulations would be either

nonexistent or, at best, minimal and speculative.

### III. *THE FOIA VIOLATIONS*

**\*7** I now consider the parties' contentions. In Part III of the Opinion, the Court concludes that the Board's rule-making process violated FOIA, both as to its notice requirements (Part III(B)) and because under FOIA a significant amount of the business transacted during the executive sessions should have been conducted in public session (Part III(C)). In Part IV the Court finds that the Board's withholding of the tape recordings is without justification. Finally, Part V addresses the appropriate remedy.

### A. *Applicable Legal Principles*

Any analysis of the FOIA claims must start with the applicable provisions of, and principles underlying, FOIA.

The policy that animates FOIA, Delaware's " sunshine law," is that all meetings of public bodies must be open to the public (29 *Del.C.* § 10004(a)), and all public records must be available to any citizen for inspection and copying (29 *Del.C.* § 10003(a)). That bedrock policy finds expression in 29 *Del.C.* § 10001, which states:
It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this state, this chapter is adopted, and shall be construed.

Such mandated openness is intended to ensure " governmental accountability, inform the electorate, and acknowledge that public entities, as instruments of government, should not have the power to decide what is good for the public to know." *Delaware*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 8

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
(Cite as: Not Reported in A.2d)

*Solid Waste Auth. v. The News Journal Co.,*
Del.Supr., 480 A.2d 628, 631 (1984) (citation
omitted).

This case implicates, broadly speaking, two issues
under FOIA. The first issue is whether the notices
provided for the public and executive sessions were
lawful. The second is whether the Board acted
lawfully by deliberating upon and formulating the
substance of the proposed Regulations in executive
sessions. The legal principles applicable to both
questions are established and not in dispute.

FOIA establishes a public right to attend all
meetings of all public bodies covered by the statute.
*Delaware Solid Waste Auth.,* 430 A.2d at 631.
Although FOIA authorizes a public body to meet in
executive session closed to the public, that may be
done *only* if the meeting is held for one (or more) of
the nine purposes enumerated by the statute. 29
*Del.C.* § 10004(b)(1)-(9); *Levy v. Board of
Education of the Cape Henlopen School District,*
Del.Ch., C.A. No. 1447, slip. op. at 6-7, Chandler,
V.C. (Oct. 1, 1990).[FN9] FOIA imposes upon the
public body the burden of justifying any decision it
makes to convene in executive session. 29 *Del.C.* §
10005(c). Consistent with that burden, FOIA is
liberally construed to assure open meetings, and
FOIA's closed "session" exceptions are strictly
interpreted to limit nonpublic meetings. *Delaware
Solid Waste Auth.,* 480 A.2d at 631. Minutes of
any closed session, and of any regular or emergency
meeting, must be kept and made available as public
records for public inspection. 29 *Del.C.* § 10004(f);
*Levy,* slip. op. at 7.

> FN9. 29 *Del.C.* § 10004(c) also pertinently
> provides that "[e]xecutive sessions may be
> held only for the discussion of public
> business, and all voting on public business
> must take place at a public meeting and the
> results of the vote made public."

*8 FOIA also requires a public body, such as the
Board, to post public notices of its meetings. 29
*Del.C.* § 10004(e).[FN10] Any notice must be given
at least seven days before the scheduled meeting
and must be accompanied by, or include, an agenda

(if available) which

> FN10. The plaintiffs contend that the
> Board violated FOIA by posting the
> notices of their meetings at only one
> location-the DNREC office in Dover.
> Under FOIA, a public notice need only be
> conspicuously posted at the principal
> office of the public body, or alternatively "
> *at the place where the meetings of the
> public body are regularly held* ...." 29
> *Del.C.* § 10004(e)(4) (emphasis added).
> Posting the notices at the entrances to
> DNREC's office where the Board regularly
> held its meetings satisfied that requirement.

shall include but is not limited to a general
statement of the major issues expected to be
discussed at a public meeting, as well as a statement
of intent to hold an executive session and the
specific ground or grounds therefor under
subsection (b) of § 10004....
29 *Del.C.* § 10002(f). If the agenda is not available
at the time of the initial posting of the public notice,
the agenda must be added to the notice at least six
hours before the meeting, together with a statement
of the reasons for the delay. *Id.* § 10004(e)(5);
*Levy,* slip op. at 7-8.

### B. *The Invalidity of the Notices*

I first consider the claim that the notices of all the
Board's    meetings-public    and    executive-were
deficient under FOIA. The notices of the public
meetings are said to be invalid primarily because
they did not include an agenda that complied with
the statute. In this connection, the plaintiffs argue
that the disclosure in the notices of the public
meetings, that the Board would be considering the
proposed Regulations, was insufficient to constitute
a "general statement of the major issues expected to
be discussed at [the] public meeting[s]" under §
10002(f).

The Board responds that the notices were proper
because they accurately stated that the purpose of
the public meetings was to consider the proposed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

Regulations. Nothing further was required, the Board argues, because had the agendas defined more narrowly the subjects to be addressed, the Board's ability to deliberate would have been limited to those narrower subjects. On one occasion, the May 10 workshop, the Board did specifically intend to limit the scope of its agenda, and the notice was drafted accordingly to narrow the particular topics to be discussed. A314. However, because no such limitation was intended for the public sessions, the general statement contained in the notices of those meetings satisfied the agenda requirements of § 10002(f). With one exception, I agree with the Board's position on this point.

An agenda should be worded in plain and comprehensible language and must directly state the purpose of the meeting. *See Andrews v. Independent Sch. Dist. No. 29,* Okla., 737 P.2d 929, 931 (1987). If a public body is uncertain as to what specific provisions or components of a complex proposal it will consider at an upcoming meeting, the agenda need not disclose each specific component of that proposal, so long as the agenda clearly and directly discloses the broader subject of which the components are a part. With one exception, that was done here. That is, consideration of the proposed Regulations was the "major issue" to be discussed at all but one of the public meetings, and the public was appropriately so notified. Therefore, the notices of those meetings were not deficient under FOIA.

**\*9** The one exception was the notice for the two sessions held on June 9, 1993. No agenda, general or specific, was included in the notice of the *public* session,[FN11] which stated only that:

> FN11. The plaintiffs argue, as a factual matter, that no agendas were prepared for any of the meetings, and rely on the testimony of Ms. Morris, the Board's administrative assistant, to that effect. Morris Dep. at 8. The argument, however, is misguided, because the term "agenda" is statutorily defined, and Ms. Morris's conclusory lay testimony would not be

controlling.

> The Board will meet in Executive Session to continue deliberation upon the proposed new Regulations to the [Act].... This meeting is a continuation of the Executive Session held May 10, 1993. The Board may return to Public Session, time permitting, at the conclusion of its Executive Session.

A316. Most important, the notice did not disclose what turned out to be the sole purpose for the public session-to vote on, and possibly adopt, the Regulations. The significance of that omission is underscored by the fact that at the May 10, 1993 workshop, the Board had told the public (incorrectly, in retrospect) that another public hearing would be held. A315; A574. Thus, the public had been given reasonable cause to believe that the Board would hold another public hearing at some later time before adopting any regulations. The public had no way of knowing that the Board had later changed its mind, and had instead decided to conclude its rule-making process by adopting the Regulations on June 9, 1993. As Vice Chancellor Chandler appropriately observed in *Levy:*

> it should not be incumbent upon the public to search out and discover meetings at which public business is to be considered and discussed.

*Levy,* slip. op. at 10. For those reasons, the notice of the June 9, 1993 public session clearly failed to comply with § 10002(f) of the statute.[FN12]

> FN12. The notice also violated 29 *Del.C.* § 10004(e)(5), which requires that if an agenda is not available as of the time of the initial posting of the public notice, it must be added to the notice at least six hours in advance of the meeting, together with a statement of the reasons for the delay in posting the agenda.

The plaintiffs also attack the notices of the November 23, 1992, April 5, 1993 and June 9, 1993 executive sessions for not disclosing any of the statutorily permitted grounds for holding an executive session, as § 10002(f) required. Plaintiffs additionally contend that the agendas

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                              Page 10

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
(Cite as: Not Reported in A.2d)

included in the notices of the December 21, 1992 and May 10, 1993 executive sessions were deficient, because they did not (i) contain a " statement of intent to hold" those sessions or (ii) identify the "specific ground or grounds" upon which the Board relied in deciding to hold the closed sessions. The Board disputes those claims.

It argues that those notices were adequate because they disclosed that the purpose of those sessions was to "[receive] legal advice, [engage] in strategy sessions, [consider] personnel information, or for any other purpose provided by law." Pl.Rep.Br. at 12-13. I find the defendant's argument to be without merit.

Contrary to the defendant's position, the notices of the November 23, 1992, April 5, 1993 and June 9, 1993 executive sessions disclosed *no* specific statutory ground for convening them. A283, A307, A316. On that basis alone those notices were in plain violation of the statute. Moreover, the notices of the December 21, 1992 and May 10, 1993 executive sessions were invalid because they disclosed no "statement of intent to hold," or any " specific ground or grounds" for holding, those sessions, as the statute requires. *See* 29 *Del.C.* §§ 10002(f) and 10004(e)(2). All that the notices for those meetings stated was that:

*10 The Board regularly moves into executive session for the purpose of receiving advice of counsel, engaging in strategy sessions, considering personnel information, or for any other purpose provided by law.

A289, A314.

A recital of several potential grounds for holding an executive session, concluding with a catch-all category such as "any other purpose provided by law," may have gratified a lawyer's instinct to " cover all bases." However, that approach did not satisfy the spirit or the letter of FOIA's mandate in § 10002(f), that the notice disclose to the public the " specific ground or grounds" for holding an executive session. FOIA contemplates that a closed session must be the exception, not the rule, for how a public body conducts its public business. Therefore, the statute requires the public body to justify its invocation of that exceptional procedure.

It also requires the public body to inform the public in the notice of the executive session of its precise reason or reasons for convening in private. That was not done here. By simply enumerating in the notice one or more of the § 10004(b) exceptions, even though most were not genuine or applicable, FN13 the Board left the public in the dark as to what the closed sessions were all about. To validate this approach would permit a public body to meet in closed session without public accountability.

> FN13. See Part III(C) of this Opinion. In this case the defendant never discussed personnel information, one of its disclosed purposes, at these executive sessions. Pl.Rep.Br. at 13.

I find, for those reasons, that the agendas for those executive sessions were deficient, which resulted in the notices of those sessions being in violation of FOIA.

### C. *The Substantive Invalidity of the Executive Sessions*

In addition to, and apart from, their claim of invalid notice, the plaintiffs contend that the executive sessions were substantively invalid, because most of the discussions that occurred in those sessions were not for a purpose specifically authorized by FOIA. The Board disagrees. It claims that the executive sessions were justified under FOIA's exception for:

[s]trategy sessions, including those involving legal advice or opinion from an attorney-at-law, with respect to collective bargaining or pending or potential litigation, but only when an open meeting would have an adverse effect on the bargaining or litigation position of the public body[.]

*29 Del.C.* § 10004(b)(4).

The Board's argument runs as follows: the purpose of the executive sessions was to receive advice from counsel concerning whether the then-proposed version of the Regulations, and its later evolutions, complied with the Act. That is, because the Board

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 11

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
(Cite as: Not Reported in A.2d)

anticipated litigation over any newly-adopted regulations, it convened the executive sessions to formulate regulations that would be legally defensible. To have required the Board to formulate those Regulations in public would have forced it to reveal its litigation strategy and hobbled its ability to defend the Regulations in court. The executive sessions having been convened for a lawful purpose, the Board did not violate FOIA by then proceeding, as an incidental matter, to debate and consider changes to the proposed Regulations. Def.Rep.Br. at 10-11; Tr. at 75-77.

**\*11** In my view, this interpretation of the "legal advice" exception is fundamentally flawed. It runs counter to the explicit mandate of 29 *Del.C.* § 10001 , which is to construe FOIA to provide citizens easy access to public records and an opportunity to observe and monitor public officials in their formulation of public policy. Closed session exceptions, including the one for receiving legal advice, must be "strictly interpreted to limit nonpublic meetings." *Delaware Solid Waste Auth.,* 480 A.2d at 631.

A narrow, limited interpretation of the "legal advice " exception is also consistent with its legislative history. Section 10004(b)(4) was enacted in its present form in 1985 (in 65 *Del.Laws,* c. 191) by combining two former subsections of 29 *Del.C.* § 10004(b) that had created distinct exceptions for:
(4) Strategy sessions with respect to collective bargaining, pending or potential litigation, when an open meeting would have effect on the bargaining or litigation position of the public body;
[and]

(12) Where a public body has requested an attorney-at-law to render his legal advice or opinion concerning an issue or matter under discussion by the public body and where it has not yet taken a public stand or reached a conclusion in the matter[.]

The predecessor "legal advice" exception of § 10004(b)(12) was quite open ended, and permitted a public body to hold an executive session to

receive legal advice about *any* issue or matter under discussion so long as it had not yet taken a stand or reached a conclusion about the issue. The legislative purpose, and effect, of combining subsections (b)(4) and (b)(12) in 1985 was to prevent potential abuse, (i) by limiting the scope of the "legal advice" exception to those matters relating to collective bargaining or pending or potential litigation (*see* Synopsis of House Bill 246 at 5-6 (A609-610)), and (ii) by making that exception applicable "*only* when an open meeting would have an adverse effect on the bargaining or litigation position of the public body." 29 *Del.C.* § 10004(b)(4) (emphasis added).

To validate the Board's expansive interpretation of the "legal advice" exception would contravene the letter and spirit of FOIA, and subvert the General Assembly's intent to limit the scope of that exception. This case is a paradigm example of why. The Board here correctly anticipated the prospect of litigation. However, its wholesale use of executive sessions to review the public's comments; to debate, discuss, and share views concerning the evolving versions of the Regulations; and to draft new regulatory language, went far beyond strategizing with its counsel about potential litigation. Rather, the Board used the executive sessions for broader purposes-precisely those that the Legislature intended should be accomplished publicly. The minutes of the executive sessions and Chairman Crossan's uncontroverted deposition testimony establish that in those sessions, the Board discussed and formulated the language of the Regulations in contexts unrelated to legal advice, including several provisions of the proposed Regulations as to which no litigation was anticipated. Crossan Dep. at 18, 34-37, 57. If the Board's proffered interpretation of § 10004(b)(4) were adopted, that narrow exception would swallow-up the "open meeting" rule. That simply cannot be. The Board's reliance on the "legal advice" exception to justify most of its discussions and actions during the executive sessions is without factual or legal support.

**\*12** The Board also argues, in the alternative, that its use of executive sessions was justified under the exception permitting an executive session to discuss:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                     Page 12

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

the content of documents, excluded from the definition of "public record" in § 10002 of this Title where such discussion may disclose the contents of such documents.

29 *Del.C.* § 10004(b)(6). The Board urges that it was entitled to invoke this exception, because the drafts of the proposed Regulations it considered during the executive sessions were excluded from the statutory definition of "public records." Section 10002(d)(6) provides that "public records" (as defined) shall not include "any records specifically exempted from public disclosure by statute or common law[.]" *Id.* § 10002(d)(6). The Board argues that a common law "deliberative process" privilege exists, and that because the drafts contained "deliberative comments," they were exempted from public disclosure and were thus a proper subject for discussion in the executive sessions.

I find the Board's invocation of this exception to be misconceived. It rests upon a claimed "deliberative process" privilege for which no support exists in FOIA or in Delaware case law. The Board, nonetheless, would have this Court adopt such a common law privilege by declaring that drafts of the proposed Regulations that contain "deliberative comments" be deemed "exempted from disclosure by ... common law[.]" *Id.* That *ipse dixit* finds no support in the Delaware common law [FN14] or the statute. Moreover, the Board's proffered interpretation would upset the balance struck by the General Assembly between the goal of requiring a public body to conduct its public business in public, and the need to protect the public body's internal deliberative process. That legislative balance is reflected in the nine exceptions to the public meeting requirement enumerated in § 10004(b), all of which are to be narrowly construed. Expressed in somewhat different terms, those nine exceptions *are* the public policy of Delaware.

> FN14. The Board cites no Delaware authority in support of its position. Rather, it relies on *Wolfe v. Department of Health and Human Services,* 839 F.2d 768

(D.C.Cir.1988) and other federal decisions. In *Wolfe,* the Court of Appeals for the District of Columbia Circuit, construing the Federal Freedom of Information Act, held that documents that are both predecisional and deliberative are privileged against disclosure. *Id.* at 774 (citing *EPA v. Mink,* 410 U.S. 73, 88 (1973). The Board argues a similar privilege should be judicially recognized in Delaware. The Board's position is not supported by *Wolfe* or its other cited federal cases. *Wolfe* did not hold that documents that are "deliberative" would, *ipso facto,* establish justification for a closed session, nor does the federal statutory scheme support that position. Under federal law, documents and meetings are treated differently in two separate statutes. The Freedom of Information Act provides for public access to documents. *See* 5 U.S.C.A. § 552 (West 1977). The "Government in the Sunshine" Act provides for open meetings. *See* 5 U.S.C.A. § 552b (West 1977). Significantly, and despite the urging of several federal agencies, Congress has refused to extend the "deliberative process" privilege currently applicable to *documents* under the Freedom of Information Act, to the Government in the Sunshine Act, which is applicable to *meetings. Clark-Cowlitz Joint Operating Agency v. F.E.R.C.,* 798 F.2d 499, 503 n. 4, 505 (D.C.Cir.1986).

The Board would have this Court broaden one of those exceptions by judicially recognizing a common law "deliberative process." To that argument, this Court has responded in *Levy* that if FOIA's requirements are believed to "unreasonably infringe upon ... deliberative processes, such grievances must be directed to the General Assembly which has made the policy decision to enact the sunshine law in its present form." *Levy,* slip op. at 14.

But even if it were assumed that the Board could lawfully have called an executive session to discuss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

drafts of Regulations containing "deliberative comments," the Board did far more than that in this case. It also discussed and debated substantive issues and public comments concerning the proposed Regulations. The Board members used the closed sessions to inform each other of their substantive views and to reach a result (Crossan Dep. at 30), all of which had the effect of orchestrating their *pro forma* subsequent vote in the public session. That was a clear abuse of the limited statutory authorization for holding executive sessions. As this Court observed in *News-Journal Co. v. McLaughlin,* Del.Ch., 377 A.2d 358, 362 (1977), "one purpose of sunshine laws is to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance...."

3

**\*13** For these reasons I conclude that the Board has failed to carry its burden of proof to justify its use of executive sessions in adopting the challenged Regulations. On that ground as well, FOIA was violated.

### IV. *The Claims Under FOIA For Access to Documents and Tapes*

Separately addressed is the plaintiffs' claim for an order directing the Board to turn over certain requested documents (*e.g.,* notices, agendas, drafts, minutes), as well as tape recordings of the Board's executive sessions. Because the documents that are the subject of DP & L's and CIC's FOIA requests were turned over to the plaintiffs on August 13, 1993, that claim is moot. [FN15] What remains, therefore, is the plaintiffs' claim of entitlement to the tape recordings.

> FN15. Neither party straightforwardly concedes the mootness of the document claim, even though it is clear that no relief can be granted on that claim. The plaintiffs would have the issue of their entitlement to the documents under FOIA decided in connection with their request

for costs and attorneys' fees. The Board would have this issue adjudicated to obtain vindication of its position. The entitlement question will be decided, but only in the context of the plaintiffs' FOIA claim for the tapes.

Section 10003 establishes a right in the public to inspect all "public records," which § 10002(d) defines as:
information of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business ... regardless of the physical form or characteristic by which such information is stored, recorded or reproduced.

Section 10002(d) then goes on to exclude from that definition thirteen categories of documents, each intended to protect a distinctive personal privacy interest. 29 *Del.C.* § 10002(d); *see Delaware Solid Waste Auth.,* 480 A.2d at 631.

The Board relies upon two statutory exceptions to justify its decision to withhold the tape recordings used to prepare the minutes of the executive sessions. First, the Board argues that the tapes are not public documents since they pertain "to pending or potential litigation which are not the records of any court." 29 *Del.C.* § 10002(d)(9). That argument founders on the record. Although the Board correctly anticipated that the proposed Regulations might result in litigation, the minutes of the executive sessions disclose that many of the discussions that occurred in the executive sessions did not concern the Board's litigation strategy. Thus, the record defeats the applicability of this exception.

Second, the Board contends that it justifiably denied the plaintiffs access to the tapes, because they are " record[s] of discussions held in executive session [s] pursuant to subsections (b) and (c) of § 10004(b). " 29 *Del.C.* § 10002(d)(10). But that disclosure exception is expressly made subject to § 10004(f), which permits withholding minutes of executive sessions from public disclosure only "so long as public disclosure would defeat the lawful purpose

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                          Page 14

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
(Cite as: Not Reported in A.2d)

for the executive session, but no longer." The tapes are simply another form of verbatim recording of the executive sessions. Thus, a verbatim recording, like written minutes, would be exempt from disclosure only if the recorded discussions pertained to a lawful purpose for holding the executive session. Because no lawful statutory purpose for most of those discussions has been demonstrated, it follows that the Board has not justified withholding the tape recordings of those discussions. Accordingly, the tapes must be released to the plaintiffs, after redacting only those portions that specifically concern the Board's litigation strategies.[FN16]

> FN16. The tapes might be significant because certain of the minutes produced during discovery had not been approved by the Board, and different versions of the minutes had been prepared for the April 5 and June 9, 1993 executive sessions. Crossan Dep. at 10-12; A317-324; A311-12; Def. A14.

## V. THE REMEDY

*14 Having determined that the Board transgressed the mandates of FOIA, I consider the appropriate remedy. The plaintiffs urge the Court to void the Regulations and enjoin the defendants from enforcing them. They argue that such relief is warranted because the Regulations were improperly formulated and essentially agreed to in closed sessions, and then adopted ceremonially in a hastily-called public session. Moreover, they say, the Board had previously misled the public by failing to give notice that the Regulations would be voted upon, and possibly approved, at the June 9, 1993 public session. Any remedy short of voidance, it is urged, will not protect the plaintiffs' (and the public's) interest in observing and monitoring the Board's deliberations and rule-making process. Voidance would also have the salutary effect of alerting other public bodies to the fact that any future violations of Delaware's sunshine law will be regarded seriously.

The Board contends that voidance is too extreme a

remedy and would be wasteful and unnecessary, because of the significant governmental time and expense already invested in promulgating the Regulations. The Board claims that to require it to deliberate and decide anew would prove a useless exercise, because the plaintiffs themselves failed to take advantage of the open meetings previously held, and because at the conclusion of any remedial rule-making process the identical Regulations would likely be adopted. Instead, the Board argues, this Court should (as it did in *Levy*) find an "an alternative remedy with less draconian consequences." *Levy,* slip op. at 19. However, the Board has not suggested what a less draconian remedy might be. Tr. at 112.

Having considered these colliding points of view, I reluctantly conclude that in the circumstances voidance is the only appropriate remedy. To invalidate a decision by a public body is not an action to be undertaken lightly. *See Wilmington Federation of Teachers v. Howell,* Del.Supr., 374 A.2d 832, 835 (1977). Invalidation is a "serious sanction and ought not to be employed unless substantial public rights have been affected and the circumstances permit the crafting of a specific remedy that protects other legitimate public interests." *Ianni v. The Department of Elections of New Castle County,* Del.Ch., C.A. No. 8590, slip op. at 20, Allen C. (Aug. 29, 1986). However, the Delaware General Assembly, in its 1985 amendments to FOIA, expressly empowered this Court to void actions by a public body in violation of the statute. 29 *Del.C.* § 10005(a). Moreover, in this case material violations of both the letter and spirit of FOIA have occurred that adversely affect substantial public rights, and no "other legitimate public interests" are implicated for which a protective specific remedy need be crafted.

Because most of the Board's deliberations on the proposed Regulations took place behind closed doors, the public had no opportunity to observe and monitor the Board's proceedings and to understand the basis for the Board's actions on a matter of public importance. In Chancellor Allen's words:
*15 When public participation is afforded, it is reasonable to hope, and the drafters of the Freedom of Information Act clearly did hope, that two kinds

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

of benefits would result. The public body might be put in a position to make a better decision ultimately and, secondly, a citizen or organization of citizens that understands the decision may feel, if not pleased with the ultimate outcome, at least content that its views have been considered and the decision has been reached in an impartial and fair way.

*Ianni,* slip op. at 17.

No remedy less drastic than invalidating the adoption of the Regulations has been put forth, nor would any lesser remedy be appropriate. This case is unlike *Levy,* where this Court refused to void and enjoin a reassignment plan that had already been fully implemented, with the staff and students having been reassigned and attending their new schools and classes.[FN17] In those circumstances, as Vice Chancellor Chandler observed:

> FN17. In *Levy,* the Court found that the Cape Henlopen Board of Education had violated FOIA in connection with its decision to reassign students in the school district's junior high schools. The remedy the Court crafted was to preliminarily enjoin the Board of Education from discussing, in meetings closed to the public, public business involving reorganization and redistricting of the Cape Henlopen School District. *See Levy, supra,* (Order attached).

An injunction would, therefore, seriously disrupt teachers, students and staff, diverting attention from their critical educational mission-a mission that ought to be the first order priority of everyone. Moreover, an injunction would probably threaten to impair contracts with third parties, exposing the school district to lawsuits....
*Levy,* slip op. at 19.

Here, by way of contrast, the Board has been unable to suggest any appropriate lesser remedy. Moreover, to void the Regulations as invalidly adopted will not visit adverse consequences upon innocent parties, because the Regulations have

never been, nor are they presently being, enforced. The Board has not demonstrated that the public would be harmed if that *status quo* were allowed to continue for a brief period pending a remedial rule-making process in compliance with FOIA.[FN18]

> FN18. Voiding the adoption of the Regulations will not require repeating the entire rule-making process. While the Board will have to conduct its rule-making deliberations in public session, starting again with the proposed Regulations sent to it on September 25, 1992, it can still use the public input already received. The Court is aware of the possibility that some (or all) of the language the Board previously formulated in closed session might again be adopted. However, that result is not inevitable. Even if that did occur, what is crucial is not the result but the process by which it is achieved. The Board will have deliberated and formulated the Regulations openly, thereby enabling the public to understand the language choices ultimately made, and be satisfied that its input was duly considered.

Finally, the plaintiffs seek an award of costs and attorneys' fees pursuant to 29 *Del.C.* § 10005(d), which authorizes (but does not require) the Court to award such relief to a successful plaintiff. In support of their request, the plaintiffs contend that the Board acted in bad faith, particularly by withholding certain public documents until August 13, 1993. Only an award of costs and attorneys' fees (plaintiffs argue) will encourage the Board and other public bodies to take seriously their responsibilities under FOIA.

I cannot agree. The plaintiffs have not established that the Board acted in bad faith by withholding the public records until August 13, 1993. Its decision to do that had a colorable-albeit erroneous-legal basis. Moreover, because the plaintiffs have a significant private economic interest in invalidating the Regulations, no fee shifting was (or would be) needed to afford them an incentive to bring suit. Accordingly, the application for costs and attorneys'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                Page 16

Not Reported in A.2d, 1994 WL 274295 (Del.Ch.), 20 Del. J. Corp. L. 245
**(Cite as: Not Reported in A.2d)**

fees is denied as a matter of discretion.

### V. CONCLUSION

For the foregoing reasons the plaintiffs' motion for
summary judgment is granted, and the defendants
cross-motion for summary judgment is denied. To
summarize, the Regulations are declared void and
unenforceable on the ground that they were
improperly adopted in violation of FOIA. The tape
recordings of the Board's executive sessions, if still
desired, shall be turned over to the plaintiffs after
being redacted only for privileged discussions.
The plaintiffs' application for costs and attorneys'
fees is denied. Counsel shall submit a form of
order implementing the rulings herein.

Del.Ch.,1994.
Chemical Industry Council of Delaware, Inc. v.
State Coastal Zone Indus. Control Bd.
Not Reported in A.2d, 1994 WL 274295 (Del.Ch.),
20 Del. J. Corp. L. 245

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit F

Westlaw.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Page 1

**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,M.D. Pennsylvania.

Tammy KITZMILLER, et al., Plaintiffs

v.

DOVER AREA SCHOOL DISTRICT, et al.,
Defendants.
**No. 04CV2688.**

Sept. 22, 2005.

Alex J. Luchenitser, Ayesha Khan, Richard B. Katskee, Americans United for Separation of Church and State, Washington, DC, Benjamin M. Mather, Eric J. Rothschild, Joseph M. Farber, Stephen G. Harvey, Stacey I. Gregory, Pepper Hamilton LLP, Christopher J. Lowe, Philadelphia, PA, Mary Catherine Roper, American Civil Liberties Union of Pennsylvania, Philadelphia, PA, Paula Kay Knudsen, American Civil Liberties Union of Pennsylvania, Thomas B. Schmidt, III, Pepper Hamilton, LLP, Harrisburg, PA, Witold J. Walczak, American Civil Liberties Union of PA, Pittsburgh, PA, for Plaintiffs.
Stephen S. Russell, Stock & Leader, York, PA, Ronald A. Turo, Turo Law Offices, Carlisle, PA, Leonard G. Brown, Clymer & Musser, P .C., Lancaster, PA, for Defendants.

**MEMORANDUM AND ORDER**

JOHN E. JONES III, District Judge.
**\*1 THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court are numerous Motions in Limine filed by Defendants and one Motion in Limine filed by Plaintiffs in response to Defendants' Application for Use of Deposition Testimony pursuant to Fed.R.Civ.P. 32(a)(3)(E) (doc. 191). We will address the various Motions and Defendants' Application in turn.

**A. Defendants' Motions in Limine**

**I. Preclude Plaintiffs From Using or Introducing at Trial Statements Made by Individual Board Members**

In the Motion, Defendants move the Court to prohibit Plaintiffs from using or introducing at trial any evidence regarding statements made by individual board members. In that regard, Defendants assert that the statements of individual board members that Plaintiffs seek to introduce at trial are irrelevant, improper character evidence, improper evidence of religious beliefs and opinions, and Defendants argue, even if relevant, the statements constitute evidence that is more prejudicial than probative. Finally, Defendants maintain that the evidence would also be inadmissible if the school board's policy were construed under Pennsylvania law.

In response, Plaintiffs argue that the caselaw is clear that evidence shedding light on the religious purposes of individual Board members, including their statements made during Board meetings or in the broader course of the debate over the biology curriculum is relevant in assessing the purpose of the policy and "that evidence shedding light on the history of the development of intelligent-design creationism is relevant in assessing what a reasonable observer would understand about the scientific *bona fides, vel non,* of that theory, and accordingly of the purpose and effect of the edict." (Pls.' Br. Opp. Defs.' Mot. Limine at 10).

In this part of their Motion, Defendants are seeking to exclude statements allegedly made by former board members at public school board meetings. After a thorough review of the submissions and applicable caselaw, we do not find that Plaintiffs should be precluded from using or introducing at trial any evidence regarding statements made by individual board members or administrators to the extent provided below, for the reasons that follow.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Federal Rule of Evidence 801 provides that "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Federal Rule of Evidence 801 goes on to explain that admissions by a party-opponent are statements which are not hearsay, and provides, in pertinent part, as follows:

(d) Statements which are not hearsay. A statement is not hearsay if-

(2) The statement is offered against a party and is (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]

Fed.R.Evid. 801(d)(2)(D).

**\*2** We initially note that we find Defendants' argument, concerning the fact that the category of party-opponent admissions is inapplicable to this case as the individual school board members have not been sued and are not parties to this action, unconvincing and erroneous. Named Defendants in this action are the Dover Area School District and the Dover Area School District Board of Directors. As Plaintiffs submit in the sur-reply brief, Fed.R.Evid. 801(d)(2)(D) does not require that the individuals making the statements actually be parties to the action, instead it requires that they be agents of employees of a party to the action. Moreover, as Plaintiffs accurately assert, numerous courts have held that statements made by school-board members and administrators acting as agents for school districts are not hearsay and are admissible as statements by party opponents. *See, e.g., Wilkerson v. Columbus Separate Sch. Dist.,* 985 F.2d 815, 818 (5th Cir.1993) (considering statements by school-board members as evidence against the defendant school district because the board members were the school district's agents); *Biver v. Saginaw Township Cmty. Sch.,* 1986 U.S.App. LEXIS 32878, \*22-23 (6th Cir.1986) (holding that statements of school superintendent at school-board meeting were not hearsay because they were within scope of his agency and were admissible as admissions against party opponent).

We hold that to the extent that statements by members of the Dover Area School Board or administrators were made at Dover Area School Board meetings, those statements are relevant pursuant to Fed .R.Evid. 401, probative to a central issue in this case, and admissible non-hearsay as a party-opponent admission pursuant to Fed .R.Evid. 801(d)(2)(D). An agency relationship existed between the individual Dover Area School Board members and the Dover Area School District such that members of the Board who spoke in their official capacities at board meetings and administrators who acted in their official capacities were doing so as agents of the Defendant school district concerning a matter (a policy related to the teaching of biology), within the scope of the agency relationship. The subject speech and acts were made during the existence of the relationship. *See* Fed.R.Evid. 801(d)(2)(D).

Accordingly, to the extent that statements were made by members of the Board and administration while acting within the scope of the agency relationship and made during the existence of the relationship, such statements are party-opponent admissions and therefore admissible evidence. Defendants' Motion in Limine to preclude Plaintiffs from using or introducing at trial any evidence regarding statements made by individual board members is denied as provided herein.

**ii. Preclude Plaintiffs From Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon**

**\*3** In the Motion, Defendants move the Court to prohibit Plaintiffs from using or introducing at trial any evidence relating to the Discovery Institute, including its so-called "Wedge Document" and "Wedge Strategy," the Foundation for Thought and Ethics ("FTE"), including drafts and versions of the text *Of Pandas and People* ("*Pandas* "), Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon, as such evidence is irrelevant, hearsay, and even if relevant, is more prejudicial than probative pursuant to Fed.R.Evid. 402, 403, 801, and 802.

We are in agreement with Plaintiffs' submission to the extent that Defendants place undue weight on the text

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the Board's resolution itself to show the "purpose" of the Board's change to the biology curriculum and evidence showing the effect of that policy on ninth-grade biology students, to the exclusion of other relevant, probative evidence that the Court may consider to assess the constitutionality of the instant policy. Although Defendants are clearly seeking to persuade the Court that the Board's purpose cannot be illuminated either by its members' own statements in adopting the policy or by consideration of the historic context in which and from which intelligent design emerged, we find that position to be unconvincing and unreasonably restrictive after reviewing applicable, compelling caselaw cited by Plaintiffs. Moreover, as Plaintiffs accurately submit, it is notable that the term "intelligent design" is not defined in the policy. Any relevant evidence that will aid the Court in understanding the concept of "intelligent design" in general and as it applies to the policy shall be admissible so long as that evidence is otherwise permissible under the applicable Federal Rules of Evidence.

Accordingly, the instant Motion in Limine is denied to the extent that Plaintiffs shall not be precluded from using or introducing at trial evidence related to the Discovery Institute, including the "Wedge Document" and "Wedge Strategy," FTE, drafts and versions of the text *Pandas,* Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon at this juncture. We will note that this ruling will not of course act as blanket permission to allow all portions of these publications and subjects into evidence, and Defendants reserve the right to reassert specific objections to the instant material and with regard to the aforementioned individuals at the time of trial.

### iii. Preclude Plaintiffs From Using or Introducing at Trial News Materials

In the Motion, Defendants move the Court to prohibit Plaintiffs from using or introducing at trial newspaper articles, letters to the editor, editorials, and any other news material (collectively referred to as "news materials") as they are hearsay, irrelevant, and more prejudicial than probative pursuant to Fed.R.Evid. 402,

403, 801, and 802.

Just prior to rendering this opinion we received a Joint Motion for Contempt (doc. 197) filed by Defendants and counsel for non-party subpoenaed witnesses, Heidi Bernard-Bubb and Joseph Maldonado (collectively "the Reporters"), in which counsel informed the Court that despite our September 12, 2005 Order limiting the subject matter of the Reporters' depositions, such Reporters will not attend any scheduled depositions in this matter prior to exhaustion of their appeal rights. (Rec. Doc. 197 at ¶¶ 9-10). It is therefore readily apparent to the Court that substantial questions exist as to whether the Reporters will be deposed individually and whether they will testify at the time of trial in Plaintiffs' case-in-chief. As it is unsettled regarding whether the Reporters will testify in any capacity in the case *subjudice,* it would be imprudent and premature to rule upon the instant Motion in Limine. Accordingly, Defendants' Motion in Limine to Preclude Plaintiffs From Using or Introducing at Trial News Materials is deferred until the time of trial.

### iv. Exclude the Testimony of Barbara Forrest, Ph.D.

*4 In the Motion, Defendants move the Court to exclude the testimony and expert reports, including the data upon which they are based, of Barbara Forrest, Ph.D., a witness who intends to testify as an expert on behalf of Plaintiffs, pursuant to Federal Rules of Evidence 401, 403, 702, and 703. Defendants argue that Dr. Forrest brings no scientific, technical, or other specialized knowledge to this case and accuses Plaintiffs of using her as a "Trojan Horse" to bring into the courtroom impertinent matters to prejudice the Dover Area School Board ("DASB"). (Defs.' Br. Supp. Mot. Limine at 12). In response, Plaintiffs assert that Dr. Forrest's proffered expert testimony goes directly to the issue of the origins of intelligent-design creationism, that she is qualified to testify as an expert pursuant to Fed.R.Evid. 702, that her methodology is reliable, and that her testimony "fits" the issues in this case.

An initial issue to address is Defendants' contention that Dr. Forrest is not qualified to give an expert opinion in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
(Cite as: Slip Copy)

the case *subjudice*. As Defendants submit, Fed.R.Evid. 702 provides, as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. We first recognize that there may be few experts with the particular area of expertise held by Dr. Forrest concerning the "nature and strategy of the intelligent design creationist movement." In fact, Dr. Forrest may be the only such expert. Accordingly, there is no particular touchstone in existence regarding an individual with Dr. Forrest's qualifications and the concept of "specialized knowledge," as there would be for example with an expert who is an accident reconstructionist specialist or one who is versed in the medical field. However, we find nothing in the submissions to indicate at least at this preliminary stage that Dr. Forrest is not an appropriate expert witness in this case. We are in agreement with Plaintiffs that Dr. Forrest's report makes clear that she has "specialized knowledge" on the nature and strategy of the intelligent design creationist movement, and possesses the ability to assimilate information and research topics intimately involved with the concept of intelligent design pursuant to Fed.R.Evid. 702.

Therefore, at this juncture, given Dr. Forrest's credentials, extensive research, and writings on the subject of intelligent design and the intelligent design creationist movement, we will permit her to testify at the time of trial, subject to the opportunity by defense counsel to conduct a voir dire examination on her qualifications. We reserve as we must ultimate judgment concerning her ability and the extent to which she can testify until the trial in this case.

*5 The second pertinent rule to consider for purposes of this inquiry is Fed.R.Evid. 703. Federal Rule of Evidence 703 provides, in relevant part, as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed.R.Evid. 703. We recognize that Fed.R.Evid. 703 permits experts to rely on hearsay in expert reports; however, the hearsay statements present in Dr. Forrest's report may be problematic because without more, we are unable to verify the accuracy of the statements at issue, nor can we determine whether the individual statements have been taken out of context. Accordingly, in an effort to be equitable, to balance competing concerns, and after a careful review of the submissions, we hold that to the extent that Dr. Forrest testifies and such testimony references hearsay statements found in her report, we direct Plaintiffs' counsel to stand ready to provide the Court and defense counsel with any pertinent material cited by Dr. Forrest. In particular, we are concerned with quotations within her report attributed to certain individuals, which purport to have been taken from books and publications. Counsel can either provide the Court and defense counsel with the entire article or section, for example, or a verifiable portion thereof with the quotation at issue clearly marked for inspection. This process will allow for any statement(s) taken from publications to be verified for accuracy purposes and to ascertain whether such statement was taken out of context. Finally, we are in agreement with Plaintiffs inasmuch as they assert that Dr. Forrest's testimony should be allowed in these areas as Defendants are free to cross-examine her concerning any and all inaccuracies present in her characterization of intelligent-design writings.

**v. Exclude the Testimony of Jeffrey Shallit, Ph.D.**

In the Motion, Defendants move the Court to exclude the testimony and expert report of Plaintiffs' rebuttal witness, Jeffrey Shallit, Ph.D pursuant to Fed.R.Civ.P. 37.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Inasmuch as the parties agreed at oral argument on Defendants' previously filed Motion for Summary Judgment, conducted on September 9, 2005, that Plaintiffs will not present Dr. Shallit during Plaintiffs case-in-chief and will instead reserve him as a rebuttal witness, if necessary, we will defer any further resolution of the issues presented in this Motion, until and if they are reasserted by defense counsel at the time of trial. We specifically note that Defendants reserve all arguments with respect to the suitability of Dr. Shallit's testimony as a rebuttal witness, if so called by Plaintiffs, until the time of his trial testimony.

### B. Plaintiffs' Motion in Limine

### I. Exclude Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker

*6 Defendants filed an Application for Use of Deposition Testimony Pursuant to Fed.R.Civ.P. 32(a)(3)(E) (doc. 191) in which they request permission to use designated portions of deposition testimony from former board members, Angie Yingling, Carol Brown, Jeff Brown, or science faculty employed by Dover Area School District, Bertha Spahr, Jennifer Miller, and Rob Linker. In support thereof, Defendants contend that this case presents extraordinary circumstances which support the use of the designated deposition testimony, including, for example the length of the trial which will involve detailed testimony from fact and expert witnesses and the fact that the aforementioned witnesses are adverse to Defendants. Defense counsel asserts that use of the designated testimony will serve the interest of justice with due regard for the importance of presenting the testimony of witnesses orally and in open Court, as this is a bench trial, and the designated testimony will be of material assistance to the Court.

In response, Plaintiffs filed a Motion in Limine to Exclude the Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker in which they assert that the Declarants' depositions are inadmissible hearsay and that no "exceptional circumstances" exist allowing the

designation deposition testimony to be admitted in evidence.

First, we note that the testimony Defendants seek to admit into evidence is hearsay as such testimony was offered at depositions and will be offered to prove the truth of the matter asserted. *See* Fed.R.Evid. 801; *New Jersey Turnpike Auth. v. PPG Indus.,* 197 F.3d 96, 111-12 (3d Cir.1999); *United States v. Kelly,* 892 F.2d 255, 261 (3d Cir.1989). Second, as Plaintiffs submit, Fed.R.Evid. 804 provides hearsay exceptions and specifically contemplates deposition testimony. Such testimony is admissible only in limited circumstances. Federal Rule of Evidence 804(b) concerning hearsay exceptions, provides, in pertinent part, as follows:

**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b) (emphasis added). Accordingly, the party seeking admission of the out of court statement, Defendants, bear the burden of proving the unavailability of the declarant. *See* *Kirk v. Raymark Indus., Inc.,* 61 F.3d 147, 165 (3d Cir.1995) (finding the admission of prior testimony to be in error because the plaintiff did not establish that the witness was unavailable). A witness is "unavailable" pursuant to Fed.R.Evid. 804(a) when he or she "is absent from the hearing and the proponent of a statement has been unable to procure his attendance ... by process or other reasonable means." [FN1] Fed.R.Evid. 804(a)(5).

> FN1. The four remaining definitions of "unavailability of a witness" are not relevant to the disposition of Plaintiffs' Motion in Limine and Defendants' Application. Fed.R.Evid. 804(a)(1)-(4).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 6
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

*7 We hold that all of the Declarants at issue in
Defendants' Application are "available" under
Fed.R.Evid. 804 as they are all within the subpoena
powers of the Court because they either live in the
Middle District of Pennsylvania or are within 100 miles
of the place of trial. *See* Fed.R.Civ.P. 45(b)(2) (Federal
courts may issue subpoenas in the district in which that
court sits or anywhere within 100 miles of the place of
the trial); *Zenith Radio Corp. v. Matsushita Electric
Industrial Co.*, 505 F.Supp. 1190, 1249 (E.D.Pa.1980),
*aff 'd in part and rev'd in part on other grounds*, 723
F.2d 238 (3d Cir.1983) ("[I]t has long been the rule that
inability to procure attendance by 'process or other
reasonable means' is satisfied by demonstration of
inability to serve a subpoena." In addition, the court
found that Japanese citizens living in Japan were
"unavailable" because they "are beyond the subpoena
power of this court."). Moreover, Plaintiffs have
subpoenaed all of the Declarants and four of the six
witnesses, Carol Brown, Jeff Brown, Bertha Spahr, and
Jennifer Miller, have been subpoenaed to testify at trial
by Plaintiffs. We therefore find that the hearsay
exceptions located in Fed.R.Evid. 804 are not
applicable.

Finally, Defendants have advised the Court that they
intend to invoke Fed.R.Civ.P. 32 to admit Declarants'
deposition testimony into evidence. Federal Rule 32
addresses the use of deposition in court proceedings
and allows the deposition of a witness to be used if the
court finds that "exceptional circumstances exist as to
make it desirable, in the interest of justice and with due
regard to the importance of presenting the testimony of
witnesses orally in open court, to allow the deposition
to be used." Fed.R.Civ.P. 32(a)(3)(E). After a careful
review of the record and the submissions, contrary to
Defendants' contentions, we hold that no exceptional
circumstances are present that would prevent the
Declarants from testifying at trial. As Plaintiffs
accurately explain, the Declarants are all within the
subpoena powers of this Court, thus not "unprocurable
through a subpoena" or at a great distance from this
Court. *See Allgeier v. United States*, 909 F.2d 869, 876
(6th Cir.1990) (witness's position as a doctor was not
enough to render him "unavailable"). Neither are the
Declarant's deceased or unable to attend or testify
because of age, illness, infirmity, or imprisonment.

Fed.R.Civ.P. 32(a)(3).

Accordingly, the deposition testimony that Defendants
seek to admit into trial constitutes inadmissible hearsay
statements which fail to satisfy any hearsay exception.
Moreover, as previously noted, the Declarants are
available to testify at trial, are within the subpoena
powers of this Court, and four of the six Declarants will
be testifying in Plaintiffs' case at trial. Plaintiffs' Motion
in Limine to Exclude the Deposition Testimony of
Jeffrey Brown, Carol Brown, Angie Yingling, Bertha
Spahr, Jennifer Miller, and Robert Linker is therefore
granted. Defendants' Application for Use of Deposition
Testimony Pursuant to Fed.R.Civ.P. 32(a)(3)(E) is
denied.

**\*8 NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion in Limine to Preclude Plaintiffs
From Using or Introducing at Trial Statements Made by
Individual Board Members (doc. 151) is denied as
provided herein.

2. Defendants' Motion in Limine to Preclude Plaintiffs
From Using or Introducing at Trial Evidence Related to
Discovery Institute, Foundation for Thought and Ethics,
Jon Buell, Charles Thaxton, Phillip Johnson, Percival
Davis, and Dean Kenyon (doc. 156) is DENIED. We
will note that this ruling will not of course act as blanket
permission to allow *all* portions of these publications
and subjects into evidence, and Defendants reserve the
right to reassert specific objections to the instant
material and with regard to the aforementioned
individuals at the time of trial.

3. Defendants' Motion in Limine to Preclude Plaintiffs
From Using or Introducing at Trial News Materials
(doc. 148) is DEFERRED until the time of trial.

4. Defendants' Motion in Limine to Exclude the
Testimony of Barbara Forrest, Ph.D. (doc. 158) is
DENIED.

5. As the parties agreed at the September 9, 2005 oral
argument on Defendants' previously filed Motion for
Summary Judgment that Plaintiffs will not present Dr.
Shallit during Plaintiffs' case-in-chief and will instead

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reserve him as a rebuttal witness, if necessary, we will defer any further resolution of the issues presented in Defendants' Motion in Limine to Exclude the Testimony of Jeffrey Shallit, Ph.D. (doc. 154), until if and when they are reasserted by defense counsel at the time of trial.

6. Plaintiffs' Motion in Limine to Exclude Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker (doc. 190) is GRANTED.

7. Defendants' Application for Use of Deposition Testimony Pursuant to Fed.R.Civ.P. 32(a)(3)(E) is DENIED.

M.D.Pa.,2005.
Kitzmiller v. Dover Area School Dist.
Slip Copy, 2005 WL 4147867 (M.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3136720 (Trial Motion, Memorandum and Affidavit) Memorandum of Law In Support of Admissibility of Editorials and Letters to the Editor in the York Daily Record and York Dispatch from the Period June 1, 2004, Through September 1, 2005 (Oct. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3136718 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Strike ""brief of Amici Curiae Biologists and Other Scientists in Support of Defendants" and ""Brief of Amicus Curiae, the Discovery Institute" (Oct. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3136716 (Trial Motion, Memorandum and Affidavit) Brief of Amicus Curiae, the Discovery Institute (Oct. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3628833 (Trial Motion, Memorandum and Affidavit) Brief of Amicus Curiae, the Discovery Institute (Oct. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3136714 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Objections to Defendants' Counter Designations of Deposition Testimony (Oct. 11, 2005) Original Image of this Document (PDF)

• 2005 WL 3628832 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Objections to Defendants' Counter Designations of Deposition Testimony (Oct. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3136712 (Trial Motion, Memorandum and Affidavit) Brief of Amici Curiae Biologists and Other Scientists in Support of Defendants (Oct. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 3628830 (Trial Motion, Memorandum and Affidavit) Motion to Quash Subpoenas or for Protective Order (Sep. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 3628831 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Joseph Maldonado and Heidi Bernhard-Bubb in Support of Motion to Quash Subpoenas or for Protective Order (Sep. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 3628826 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Sur-Reply in Opposition to Defendants' Reply Brief in Support of Its Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628827 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Motion in Limine to Exclude the Testimony of Barbara Forrest, Ph.D. (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628828 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Statements Made by Individual Board Members (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628829 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon (Sep. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3628825 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 20, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
(Cite as: Slip Copy)

Original Image of this Document (PDF)
• 2005 WL 3628824 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion Inlimineto Exclude the Deposition Testimony of Jeffrey Brown, Carol Brown, Angie Yingling, Bertha Spahr, Jennifer Miller, and Robert Linker (Sep. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 3628822 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLC in Support of Its Motion for Reconsideration of the Courts Memorandum and Order Dated September 7, 2005 (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 3628809 (Trial Motion, Memorandum and Affidavit) Defenda Ants' Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628810 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial News Materials (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628811 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Statements Made By Individual Board Members (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628812 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Statements Made By Individual Board Members (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628813 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Exclude the Testimony of Jeffrey Shallit, PH.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628814 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Exclude the Testimony of Jeffrey Shallit, PH.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628815 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought

and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628816 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Preclude Plaintiffs from Using or Introducing at Trial Evidence Related to Discovery Institute, Foundation for Thought and Ethics, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and De an Kenyon (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628817 (Trial Motion, Memorandum and Affidavit) Defendants' Motion in Limine to Exclude the Testimony of Barbara Forrest, Ph.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628818 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion in Limine to Exclude the Testimony of Barbara Forrest, PH.D. (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 3628807 (Trial Motion, Memorandum and Affidavit) Unopposed Motion of Courtroom Television Network LLC to Intervene (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628808 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLc in Support of Its Unopposed Motion to Intervene (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628819 (Trial Motion, Memorandum and Affidavit) Unopposed Motion of Intervenor Courtroom Television Network LLC for Leave to Record and Telecast Trial Proceedings (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628820 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLC in Support of its Unopposed Motion for Leave to Record and Telecast Trial Proceedings (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628823 (Trial Motion, Memorandum and Affidavit) Memorandum of Courtroom Television Network LLC In Support of Its Unopposed Motion for Leave to Record and Telecast Trial Proceedings (Sep. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3628806 (Trial Motion, Memorandum and Affidavit) Reply Brief of Joseph Maldonado and Heidi Bernhard-Bubb in Support of Motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Reconsideration of Court Order Dated August 2, 2005 (Aug. 31, 2005) Original Image of this Document (PDF)

• 2005 WL 3628805 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Reporters' Motion to Reconsider This Court's Order of August 2, 2005 (Aug. 24, 2005) Original Image of this Document (PDF)

• 2005 WL 3628804 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion for Summary Judgment (Aug. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 3628802 (Trial Motion, Memorandum and Affidavit) Motion for Reconsideration (Aug. 11, 2005) Original Image of this Document (PDF)

• 2005 WL 3628803 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Joseph Maldonado and Heidi Bernhard-Bubb in Support of Motion for Reconsideration of Court Order Dated August 2, 2005 (Aug. 11, 2005) Original Image of this Document (PDF)

• 2005 WL 3628801 (Trial Motion, Memorandum and Affidavit) Opposition to Defendants' Motion for Summary Judgment (Aug. 8, 2005) Original Image of this Document (PDF)

• 2005 WL 3628799 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Judgment Pursuant to ¢yFed. R. Civ. P. 56¢y¢r;0001;;LQ;USFRCPR56;1004365;¢r (Jul. 13, 2005) Original Image of this Document (PDF)

• 2005 WL 3628800 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion for Summary Judgment (Jul. 13, 2005) Original Image of this Document (PDF)

• 2005 WL 3628798 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Their Motion to Compel Nonparties, Maldonado, Bernhard-Bubb, York Dispatch, and York County Daily Record to Comply with Subpoenas (Jul. 1, 2005) Original Image of this Document (PDF)

• 2005 WL 3628797 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Defendants' Response in Opposition to Motion to Quash or for a Protective Order Filed By Joseph Maldonado and Heidi Bernhard-Bubb (Jun. 30, 2005) Original Image of this Document (PDF)

• 2005 WL 3628795 (Trial Motion, Memorandum and

Affidavit) Brief in Opposition to Defendants' Motion to Compel Nonparties to Comply with Subpoenas (Jun. 27, 2005) Original Image of this Document (PDF)

• 2005 WL 3628796 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion to Compel Non-Parties Maldonado and Bernhard-Bubb, York Dispatch, and York County Daily Record, to Comply with Subpoenas (Jun. 27, 2005) Original Image of this Document (PDF)

• 2005 WL 3628794 (Trial Motion, Memorandum and Affidavit) Defendants' Response in Opposition to Motion to Quash or for a Protective Order Filed by Joseph Maldonado and Heidi Bernhard-Bubb (Jun. 23, 2005) Original Image of this Document (PDF)

• 2005 WL 3628793 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion to Compel Nonparties, Maldonado, Bernhard-Bubb, York Dispatch, and York County Daily Record, to Comply With Subpoenas (Jun. 15, 2005) Original Image of this Document (PDF)

• 2005 WL 3628792 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Application to Intervene By Foundation for Thought and Ethics (Jun. 14, 2005) Original Image of this Document (PDF)

• 2005 WL 3628790 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Motion of Non-Parties Joseph Maldonado and Heidi Bernhard-Bubb to Quash Subpoena or for Protective Order (Jun. 10, 2005) Original Image of this Document (PDF)

• 2005 WL 3628791 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Joseph Maldonado and Heidi Bernhard-Bubb in Support Of Motion to Quash Subpoena or For Protective Order (Jun. 10, 2005) Original Image of this Document (PDF)

• 2005 WL 3406668 () (Partial Testimony) (May 25, 2005) Original Image of this Document (PDF)

• 2005 WL 3628787 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Opposing Defendants' Motion For A Protective Order (May 10, 2005) Original Image of this Document (PDF)

• 2005 WL 3628789 (Trial Motion, Memorandum and Affidavit) Non-Parties Foundation for Thought and Ethics and Jon A. Buell's Motion for Protective Order and/or to Quash Subpoenas and Brief in Support (May 9, 2005) Original Image of this Document (PDF)

• 2005 WL 3406667 () Declaration of Dr. Dick M. Carpenter, II (May 7, 2005) Original Image of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                            Page 10
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
(Cite as: Slip Copy)

Document (PDF)
• 2005 WL 3628786 (Trial Motion, Memorandum and Affidavit) Defendants' Motion For A Protective Order (May 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3415842 () Declaration of Dr. Michael Behe (Mar. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 3628785 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Motion to Dismiss (Feb. 25, 2005) Original Image of this Document (PDF)
• 2005 WL 3628783 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss (Feb. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3628784 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support Of Application to Intervene as Defendants (Feb. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3628781 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Motion to Intervene (Feb. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3628782 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Proposed Intervenors' Application to Intervene as Defendants (Feb. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3628779 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Pursuant to ¢ y F e d .    R .    C i v .    P . 12¢y¢r;0001;;LQ;USFRCPR12;1004365;¢r (Jan. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3628780 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion to Dismiss (Jan. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3628777 (Trial Motion, Memorandum and Affidavit) Application to Intervene as Defendants (Jan. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3628778 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Application to Intervene as Defendants (Jan. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3628788 (Trial Motion, Memorandum and Affidavit) Non-Party Foundation for Thought and Ethics' Memorandum In Support of Motion for Protective Order (2005) Original Image of this

Document (PDF)
• 2004 WL 3008270 (Trial Pleading) Complaint (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3646142 (Trial Pleading) Complaint (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3646143 (Trial Pleading) Answer (Jan. 3, 2004) Original Image of this Document (PDF)
• 2004 WL 3636945 () Oral deposition of Brian Alters. Ph.D., taken at the law offices of Pepper Hamilton, LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, Pennsylvania, on June 2, 2003, at 9:01 a.m., before Jennifer L. Beraudez, a Registered Professional Re porter, and Notary Public. pursuant to notice. (2004) Original Image of this Document (PDF)
• 2004 WL 3646144 (Trial Pleading) Answer in Intervention (2004) Original Image of this Document (PDF)
• 2004 WL 3646145 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum Of Law In Support Of Motion For A Protective Order (2004) Original Image of this Document (PDF)
• 2004 WL 3646146 (Trial Motion, Memorandum and Affidavit) Non-Party Foundation for Thought and Ethics' Motion for Protective Order (2004) Original Image of this Document (PDF)
• 2004 WL 3646147 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Application to Intervene By Foundation for Thought and Ethics (2004) Original Image of this Document (PDF)
• 2004 WL 3646148 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Compel Nonparties, Maldonado, Bernhard-bubb, York Dispatch, and York County Daily Record, to Comply With Subpoenas (2004) Original Image of this Document (PDF)
• 2004 WL 3646149 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Motion of Non-Parties Joseph Maldonado and Heidi Bernhard-Bubb to Quash Subpoena or for Protective Order (2004) Original Image of this Document (PDF)
• 2004 WL 3646150 (Trial Motion, Memorandum and Affidavit) Reply of Foundation for Thought and Ethics to Plaintiffs' and Defendants' Opposition to Fte's Application to Intervene (2004) Original Image of this Document (PDF)
• 2004 WL 3646151 (Trial Motion, Memorandum and Affidavit) Brief of Amici Curiae Biologists and Other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 4147867 (M.D.Pa.)
**(Cite as: Slip Copy)**

Scientists in Support of Defendants (2004) Original
Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.