IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONA DOBRICH, et al., :
:
    Plaintiffs, :
:
v. : CIVIL ACTION NO. 05-120-JJF
:
INDIAN RIVER SCHOOL DISTRICT, et al., :
:
    Defendants. :

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUEST NOS. 1, 2, 9, 13, 18 & 19 (D.I. 154)**

Defendants hereby respond to Plaintiffs' Motion to Compel Responses to Request Nos. 1, 2, 9, 13, 18 & 19 Directed to Defendants (D.I. 154).

Plaintiffs' motion takes issue with Defendants' objection to Plaintiffs' definition of "School Board Prayer," and seeks to compel the production of documents that Plaintiffs believe would be consistent with their definition. Defendants objected to Plaintiffs' definition of School Board Prayer because it included activities that indisputably are *not* School Board Prayer. Despite Defendants' well-founded objection, they produced more than 1,200 pages of documents relating to School Board Prayer, as well as multiple audio and/or video recordings. Moreover, to resolve this discovery dispute, Defendants offered to produce for inspection *all* of its public School Board meeting documents. Plaintiffs' motion should be denied.

In its Memorandum Order dated March 24, 2006 (D.I. 87), this Court bifurcated discovery into two phases: discovery regarding the constitutionality of the Indian River School Board's Prayer Policy as written and as applied (the "School Board Prayer issue"); and discovery regarding all of the remaining issues. The parties are in the midst of the Phase I (i.e., School Board Prayer issue) discovery.

Despite this Court's express limitation on the scope of discovery in this phase, Plaintiffs' First Request for the Production of Documents defined "School Board Prayer" to include "any prayer, invocation *or other Religious Activity* made at a School Board Meeting by a School Board Member or . . . Representative." Request for Production (Definition No. 22) (emphasis added). If the definition of School Board Prayer stopped at "prayer" and "invocation," Defendants would not have objected. However, the definition went on to include "Religious Activity," which itself was a separately defined term incorporating a host of activities that are *not* prayers or invocations. Even worse, the definition of Religious Activity included essentially all of the issues raised by Plaintiffs in the remaining portions of their complaint[1] that will be addressed in the next phase of discovery. Plaintiffs defined "Religious Activity" as:

> any activity, conduct, expression, observance, practice or path concerning religion or religious beliefs, including and without limitation: designation of religious days in District or School calendars; distribution of religious documents; performance of religious music; performance of religious plays; presentations concerning religion; prayer; religious clubs; or religious study.

Request for Production (Definition No. 13).

Defendants timely and appropriately objected to these definitions to the extent that they "attempt[ed] to expand the definition of School Board Prayer beyond the ordinary meaning of that phrase and beyond the limited issue as defined by the Court for discovery in this phase of the case." Amended Response to Request for Production (Gen. Objection No. 1), attached to Plaintiffs' motion as Exhibit B. Reasonable minds might disagree, for example, on whether it is a "Religious Activity" to note on a calendar that December 25 is Christmas, but there should be

---

[1] Plaintiffs' other allegations of unconstitutional conduct concern the existence of Bible clubs, the alleged distribution of Bibles in school, prayers before athletic events, prayers before pot-luck dinners, references to Christianity in classrooms, and failing to use "inclusive" references in the school calendar. *See* Plaintiffs' First Amended Complaint (D.I. 134).

no dispute that the time for debate and discovery on this, and all of the other non-School Board Prayer issues raised by Plaintiffs, will be in Phase II of the litigation. Plaintiffs' definitions impermissibly exceed the Court's discovery order.

Plaintiffs' argument in support of their broad definition of School Board Prayer is that "[a] reasonable observer of both a School Board meeting's opening prayer and any other religious conduct by School Board members or their Representatives at that meeting 'could only think that the [School Board] meant to emphasize and celebrate [the opening prayer's] religious message.'" Motion to Compel (D.I. 154), at 3. Perhaps there are instances where this would be true, but it is hard to fathom when. For example, if the School Board approved a curriculum containing a high-school art appreciation class that explored religious influences on art, it could hardly be argued that such approval—which Plaintiffs define to be a "Religious Activity"— somehow tends to "emphasize and celebrate" the prayer or moment of silence that might have been offered at the beginning of the meeting.

This debate is completely academic now in any event. Despite Defendants' objections to Plaintiffs' definitions, they produced more than 1,200 pages of documents, as well as audio and video recordings that relate to the School Board Prayer issue. Moreover, they have also offered to make available for inspection all of the documents that they have not already produced relating to the public portions of School Board meetings. *See* Letter from Jason P. Gosselin to Thomas J. Allingham, II (Aug. 9, 2006), attached as Exhibit A. They have also agreed to permit Defendants to review the public portions of audio tapes of School Board meetings, to the extent that such audio tapes exist and have not already been produced. *Id.* If, after doing so, Plaintiffs believe they have found something tending to accentuate or celebrate an opening prayer or moment of silence, the parties can address that issue when it becomes necessary to do so.

If Plaintiffs undertake an inspection and subsequently designate documents, more than likely Defendants will *not* object to a specific request for copying. However, Defendants strongly object to Plaintiffs' demand for copies of tens of thousands of pages of documents and hundreds of hours of audio tape that are completely irrelevant to the issues in either this or the next phase of discovery. If Plaintiffs would like to spend their time looking for a relevant needle in an otherwise non-relevant haystack, they are free to do so. All Defendants ask is that Plaintiffs designate specific documents and allow Defendants' to object to particular documents so designated. Plaintiffs have declined this offer, preferring instead to file this motion.

Finally, Plaintiffs' request for an award of expenses, including attorney fees, is unwarranted. *See Friction Div. Prods., Inc. v. E.I. Du Pont de Nemours & Co.*, 117 F.R.D. 535, 540 (D. Del. 1987); *see also* Defendants' Response in Opposition to Plaintiffs' Motion to Compel Responses to Request Nos. 5, 6, 7, 8 & 17 (D.I. 156), at 4.

For the foregoing reasons, Plaintiffs' motion should be denied.

Respectfully submitted,

/s/ Warren T. Pratt
Warren T. Pratt (DE Bar #4334)
Jason P. Gosselin (*pro hac vice*)
Jarrod D. Shaw (*pro hac vice*)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1243
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

*Attorneys for the Defendants*

Dated: August 11, 2006