**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MONA DOBRICH, et al., :
:
Plaintiffs, :
:
v. : CIVIL ACTION NO. 05-120-JJF
:
INDIAN RIVER SCHOOL DISTRICT, et al., :
:
Defendants. :

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AN ANSWER TO INTERROGATORY NO. 5 (D.I. 160)**

Defendants hereby respond to Plaintiffs' Motion to Compel an Answer to Interrogatory No. 5 Directed to Defendants (D.I. 160).

In the Interrogatory No. 5, the Plaintiffs asked each of the Defendant School Board members to identify their individual religious faith or denomination. Defendants objected to this interrogatory because it is inappropriate. The issues in this case can and should be decided without Defendants being made to answer questions about where they worship and the intensity of their religious beliefs.

On October 19, 2004, the Indian River School Board adopted a policy with respect to prayer at its regular School Board meetings. *See* Policy BDA.1, attached as Exhibit A. The School Board Prayer Policy provides that, "[i]n order to solemnify its proceedings, the Board of Education may choose to open its meetings with a prayer or a moment of silence, all in accord with the freedom of conscience of the individual adult Board member." *Id.* ¶ 1. The policy does not require any Board member to offer a prayer or moment of silence, and it does not require the participation of any school employee, student, or member of the community. *Id.* ¶ 4. Nor does the policy dictate the manner in which a prayer may be given should a Board member elect to do

so. *See id.* ¶ 5. Importantly, the policy specifically provides that the opportunity to offer a prayer or moment of silence "shall not be used or exploited to proselytize, advance or convert anyone, or to derogate or otherwise disparage any particular faith or belief." *Id.* ¶ 3.

The only issues upon which the parties may take discovery at this time are whether the School Board Prayer policy adopted on October 19, 2004 is constitutional as written, and whether it is constitutional as applied. The policy at issue here is not only consistent with the principles annunciated in *Marsh v. Chambers*, 463 U.S. 783 (1983), but it makes it clear that activity that is inconsistent with *Marsh* (*e.g.*, proselytizing) is unacceptable. Whether the policy "as written" passes constitutional muster more than likely can be decided as a matter of law. Whether the policy "as applied" passes constitutional muster may require additional factual inquiry, but that inquiry should not involve a demand by Plaintiffs that the individual Board members explain their religious affiliation, practices, or beliefs.

Simply knowing the religious faith or denomination of a particular Board member does not inform the fact-finder. What exactly would that information prove? Are Catholics more likely to proselytize than Baptists or Presbyterians? Are Christians more prone to use legislative prayer to advance their own religious beliefs than are, say, Jews or Muslims? These are not the kinds of questions that the Plaintiffs need to ask, or that the Defendants need to answer, in order for the Court to decide whether the policy at issue is constitutional. As the Court in *Marsh* concluded, the particular denomination of the person offering the prayer is not relevant to the constitutionality of the practice itself. *See Marsh*, 463 U.S. at 793 (stating "we cannot, any more than members of the Congresses of this century, perceive any suggestion that choosing a clergyman of one denomination advances the beliefs of a particular church.").

Surely the Plaintiffs understand that they cannot surmise a motivation about a particular Board member simply by knowing that the Board member is a Muslim, or a Methodist, or a Baptist, or a baptized Catholic who no longer regularly attends church, or whatever the case may be. For that reason, it is doubtful that Plaintiffs will be content simply with knowing the religious identity (or non-identity) of each Board member. Instead, answers to Interrogatory No. 5 will lead to more prying questions about the Board members' deeply held religious convictions in an attempt to portray the stated purpose of the School Board Prayer Policy (*i.e.*, "to solemnify its proceedings") as a pretext for something else. Even if it were possible to determine the subjective rather than the objective intent of the Board members in adopting the policy at issue,[1] the Court should not permit invidious inquiry into the Board members' religious beliefs.

Finally, Plaintiffs' request for an award of expenses, including attorney fees, is unwarranted. *See Friction Div. Prods., Inc. v. E.I. Du Pont de Nemours & Co.*, 117 F.R.D. 535, 540 (D. Del. 1987) (discussing standard for awarding expenses in context of discovery motion).

---

[1] Numerous courts have recognized that "determining the subjective intent of legislators is a perilous enterprise." *See Edwards v. Aguillard*, 482 U.S. 578, 638 (1988) (Scalia, J., dissenting) (citing *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 130 (1810), and *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968)). Indeed, even if it were possible to determine a legislator's subjective intent, this information itself is not helpful in determining the validity of the challenged action:

> If a state senate approves a bill by vote of 26 to 25, and only one of the 26 intended to advance religion, is the law unconstitutional? What if 13 of the 26 had that intent? What if 3 of the 26 had the impermissible intent, but 3 of the 25 voting against the bill were motivated by religious hostility or were simply attempting to "balance" the votes of their impermissibly motivated colleagues? Or is possible that the bill's sponsor alone is enough to invalidate it—on a theory, perhaps, that even though everyone else's intent was pure, what they produced was the fruit of a forbidden tree?

*Aguillard*, 482 U.S. at 638 (Scalia, J., dissenting).

Defendants' objections to the requests at issue were justified and were asserted in good faith. Further, Defendants' objections were not contrary to an order of this Court.[2]

For the foregoing reasons, Plaintiffs' motion should be denied.

Respectfully submitted,

/s/ Warren T. Pratt

Warren T. Pratt (DE Bar #4334)
Jason P. Gosselin (*pro hac vice*)
Jarrod D. Shaw (*pro hac vice*)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1243
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

*Attorneys for the Defendants*

Dated: August 11, 2006

---

[2] To the extent the Court believes an award of fees *might* be warranted in this or one of the other five motions filed by Plaintiffs, the Defendants respectfully request the opportunity to submit a supplemental brief exceeding the four-page limit permitted under the Court's Scheduling Order.