IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONA DOBRICH, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil Action No. 05-120-JJF |
| | : |
| HARVEY L. WALLS, et al., | : |
| | : |
| Defendants. | : |

---

Thomas J. Allingham II, Esquire, and Richard S. Horvath, Jr., Esquire of SKADDEN ARPS SLATE MEAGHER & FLOM, LLP, Wilmington, Delaware.
Attorneys for Plaintiffs.

Warren T. Pratt, Esquire, Jason P. Gosselin, Esquire (admitted *pro hac vice*) and Jarrod D. Shaw, Esquire (admitted *pro hac vice*) of DRINKER BIDDLE & REATH LLP, Wilmington, Delaware.
Attorneys for Defendants

---

**MEMORANDUM OPINION**

September 14, 2006
Wilmington, Delaware.

**Farnan, District Judge.**

Pending before the Court are six Motions To Compel filed by Plaintiffs. The Court will address each of Plaintiffs' Motions in turn.

I.  **Plaintiffs' Motion To Compel Responses To Request Nos. 1, 2, 9, 13, 18 & 19 Directed To Defendants (D.I. 154)**

By their Motion, Plaintiffs request Defendants to produce documents related to the following issues (1) School Board Prayer (Request No. 1 & 2); (2) media coverage of School Board Prayer (Request No. 9 & 13); (3) and any documents used by Defendants or School Board Members in support of their answers to Plaintiffs' Complaint, where those allegations concerned School Board Prayer (Request Nos. 18 & 19). Plaintiffs' document request defines School Board Prayer as "any prayer, invocation or other Religious Activity made at a School Board Meeting by a School Board Member or the Representative of the School Board or a School Board Member." (D.I. 154, Ex. A.) Plaintiffs contend that broad discovery is permitted in Establishment Clause cases and that discovery into the religious conduct of the School Board Members is relevant to the issues of whether an objective observer would understand that the School Board meant to emphasize and celebrate the religious message of the opening prayer in an attempt to advance one faith or belief over another and to reflect a state endorsement of prayer in public schools.

1

In response, Defendants contend that Plaintiffs' document request defines the term "School Board Prayer" too broadly and that the discovery Plaintiffs seek extends beyond the Phase I discovery on the School Board Prayer issue, and into the Phase II discovery contemplated by the Court on the Remaining Issues. Defendants have produced 1,200 pages of documents and audio and video recordings related to the School Board Prayer issue and have offered to provide all other documents and audio/video tapes to Plaintiffs for their inspection, so that they can designate any additional documents that they believe may be relevant to the opening prayer at the School Board meetings. Once documents are designated, Defendants can then determine whether to produce the documents or object to them. However, Defendants object to the carte blanche production of tens of thousands of pages of documents and hundreds of hours of audio tape which they contend are irrelevant to any of the issues in this case, let alone the Phase I discovery on School Board Prayer.

    The Court has considered the arguments of the parties and agrees with Defendants that the discovery Plaintiffs seek is overly broad and inconsistent with the Court's purpose of initiating a two phase discovery process in this case. By separating discovery, the Court contemplated narrow, focused and relatively brief and uncontentious discovery on the Phase I issue

of School Board Prayer, with more extensive discovery to follow in Phase II on the Remaining Issues. In the Court's view, Defendants' suggestion of making available to Plaintiffs documents for inspection which are not directly relevant, but which may have some overlap, represents a practical solution to the parties' dispute which comports with the goals sought to be achieved by the Court in separating discovery. Defendants' "production for inspection" plan will avoid imposing undue burden and expense on Defendants while simultaneously allowing Plaintiffs to bridge the phases of discovery in a narrow and focused manner so as to prevent the uncontrolled "bleeding" of the issues in this case. Accordingly, the Court will deny Plaintiffs' Motion To Compel and their related request for fees in favor of Defendants' production and inspection alternative.

**II. Plaintiffs Motion To Compel Responses To Request Nos. 5, 6, 7, 8 & 17 Directed To Defendants (D.I. 156)**

Plaintiffs next request the Court to compel Defendants to produce documents from the following categories (1) documents and communications "concerning the attendance of any Parent, Student, Resident, District Administrator, School Administrator of District representative at a School Board Meeting" (Request Nos. 5 & 6); (2) documents concerning "all past or current District policies or procedures concerning complaints from Students, Parents, Residents or District Representatives" (Request No. 7);

3

(3) documents concerning "School Board Meetings, including but not limited to notes, agendas, minutes, presentations, audio recordings, video recordings or preparation materials" (Request No. 8); and (4) documents concerning "past and current procedures concerning any disciplinary action that the School Board could take or has taken concerning any Student, District Administrator, School Administrator or District Representatives" (Request No. 17). Through this discovery, Plaintiffs seek to explore whether School Board meetings are an integral part of the public school system and frequently involve children. Plaintiffs contend that exploration into the business of the School Board is necessary to determine whether, as Defendants contend, the School Board acted as a legislative body at all times.

Defendants contend that it is unreasonable and unduly burdensome for them to produce every document related to School Board meetings over the past fifteen years. Defendants contend that many of these documents would also be irrelevant to the School Board Prayer issue. Defendants do not object to Plaintiffs' exploration of such issues as when and to what degree students participate in School Board meetings. However, Defendants contend that Plaintiffs can explore these issues through alternative and less expensive means such as requests for admission or during Rule 30(b)(6) depositions. In the

alternative, Defendants reiterate their offer to make the documents available to Plaintiffs, so that they can spend their time culling through them.

The Court agrees with Defendants that there are less costly and less burdensome means for Plaintiffs to address fact issues regarding the business of the School Board.  If Plaintiffs choose not to use these other discovery tools, then the Court concludes that the production for inspection plan offered by Defendants is the most appropriate resolution of the parties' dispute. Accordingly, the Court will deny Plaintiffs' Motion To Compel and their related request for fees in favor of the production and inspection alternative proposed by Defendants.

### III. Plaintiffs' Motion To Compel Responses To Request Nos. 3, 4, 9 & 13 And An Answer To Interrogatory No. 6 Directed To Defendants (D.I. 158)

Plaintiffs' third Motion To Compel seeks production of the following documents (1) communications made by or to the School Board or School Board Members concerning (a) Religious Activities, (b) the Litigation and (c) the Settlement Agreement (Request Nos. 3 & 4); (2) communications between the School Board, School Board Members or District Administrators with Media concerning School Board Prayer, Religious Activities, the Litigation, the Settlement Agreement and School Board Meetings (Request No. 9); and (3) media reports concerning School Board

5

Prayer, Religious Activities, the Litigation, the Settlement Agreement or School Board Meetings (Request No. 13). Plaintiffs contend that discovery on these issues is relevant to determining whether Defendants have taken a position on questions of religious beliefs or linked a person's standing in the community to his or her decision to engage in prayer.

As with Plaintiffs' previous discovery requests, Defendants object to these requests on the grounds that the requests and the definition of "Religious Activity" governing the requests are overbroad. Defendants also object to the production of Defendants' communications regarding the litigation and the rejected settlement proposal on the grounds that these statements are irrelevant to the constitutionality of the School Board Prayer policy as written and as applied. Defendants further object to the request for media reports contending that these documents are irrelevant, and in any event readily accessible to Plaintiffs, because they are in the public domain.

With respect to documents that are already in the public domain, the Court agrees with Defendants that these documents are equally accessible to Plaintiffs, and therefore, their production by Defendants is not required. As for Plaintiffs' request for discovery related to communications concerning this litigation or the settlement agreement, the Court concludes that such

information is not relevant to the issue of whether the School Board's Prayer Policy is constitutional as written or applied. Plaintiffs direct the Court to <u>Kitzmiller v. Dover Area School Dist.</u>, 2005 WL 4147867 (M.D. Pa. Sept. 22, 2005), to support their argument. In <u>Kitzmiller</u>, the Court denied defendants motion in limine seeking to exclude statements made by school board members at school board meetings concerning the biology curriculum at issue. Unlike <u>Kitzmiller</u>, in this case, Plaintiffs' discovery request does not pertain to statements relevant to the School Board Prayer issue, but rather to the *litigation* concerning the School Board Prayer issue. In the Court's view, <u>Kitzmiller</u> does not support Plaintiffs' request for discovery on this unrelated issue, and the Court agrees with Defendants that the views of the School Board Members on the merits of this litigation are irrelevant to the constitutionality of the School Board Prayer Policy.

To the extent that Plaintiffs seek communications related to the broadly defined topic of Religious Activity, the Court concludes, for the reasons discussed in the context of Plaintiffs' other motions, that Defendants' production for inspection plan is an appropriate method for resolving the parties' dispute. Accordingly, the Court will deny Plaintiffs' Motion To Compel and related request for fees in favor of

Defendants' production for inspection alternative for documents related to communications concerning Religious Activities.

### IV. Plaintiffs' Motion To Compel An Answer To Interrogatory No. 5 Directed To Defendants (D.I. 160)

By their Motion, Plaintiffs request the Court to require Defendants to respond to the interrogatory which asks Defendants to "[d]escribe the religious faith or denomination of any and all School Board Members." (D.I. 160, Exh. A.) Plaintiffs contend that this information is relevant to the purpose underlying the School Board Prayer Policy and to the School Board's practices under the Policy. Plaintiffs further contend that the religious faith of each Board Member will show whether Plaintiffs have used School Board Prayer to advance one religious faith over another in violation of the Supreme Court's decision in <u>Marsh v. Chambers</u>, 463 U.S. 783 (1983).

In response, Defendants contend that Plaintiffs cannot discern a motivation about a particular School Board Member by knowing that Board Member's religious affiliation. Defendants contend that Interrogatory No. 5 will lead to more prying questions about the School Board Members' religious convictions, and that the subjective intent of the Board Members and information about their own religious practices and beliefs is irrelevant to the constitutionality of the School Board Prayer Policy.

8

In Marsh, the Supreme Court recognized that the particular religious denomination of the person offering the prayer is not determinative, in and of itself, as to whether the practice of opening a legislative session with a prayer is constitutional. 463 U.S. at 793. However, courts including the Marsh court, have noted the religious denomination of prayer leaders in considering Establishment Clause cases involving public prayer. See e.g. Wynee v. Town of Great Falls, 376 F.3d 292, 294 (4th Cir. 2004) ("First, the court found that . . . the Mayor and all Council Members are Christian, and the Council Member John Broom 'often' leads the prayer."), cert denied, 125 S. Ct. 2990 (2005); Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ., 52 Fed. Appx. 355, 357 (9th Cir. 2002) ("[Plaintiffs] do not share the Christian religious beliefs with the school board member who generally performed the invocation . . ."); Coles v. Cleveland Bd. of Educ., 171 F.3d 369, 373 (6th Cir. 1999) ("With few exceptions, the clergy asked to offer the prayer have been members of the Christian faith."). Defendants raise the concern that Interrogatory No. 5 will lead to more prying questions about the Board Members' individual faith practices; however, at this juncture, no such concern exists. Interrogatory No. 5 is narrowly crafted and requests only that Defendants "identify" the faith or denomination of the School Board Members. Accordingly,

the Court will require Defendants to respond to Interrogatory No. 5, but will deny Plaintiffs' request for fees in connection with their Motion.

**V.  Plaintiffs' Motion To Compel Responses To The Request And Answers To Interrogatories Directed To Defendants (D.I. 162)**

By their next Motion, Plaintiffs contend that Defendants have refused to produce documents in accordance with the Instructions for complying with Plaintiffs' document requests and interrogatories.  Specifically, the instructions set the relevant time period from the earlier of September 1, 1991, or the date that Defendants claim their conduct first occurred, to the present.  Plaintiffs contend that the School Board's history of opening its meetings with a prayer is relevant to demonstrate the context of the Prayer Policy under consideration and the School Board's application of that Policy.  Specifically, Plaintiffs contend that evidence of prayer at School Board meetings predating the June 2004 adoption of the Prayer Policy is "highly relevant" to "(i) whether there is a unique history of prayer at those meetings, Marsh, 783 U.S. at 791, (ii) how a reasonable observer would view the Policy and the School Board's practice of opening its meetings with prayer, and (iii) Defendants' intention to rely on the alleged 'long history of tradition' of religious conduct including prayer at School Board meetings."  (D.I. 162 at 3.)  Plaintiffs also contend that Defendants waived any objection

10

to the Instructions by failing to object to them when the document requests and interrogatories were served.

In response, Defendants contend that it was unnecessary to lodge a time frame objection to Plaintiffs' instructions, because the only discovery relevant to this phase of the case is discovery related to the School Board Prayer Policy, which was adopted on October 19, 2004.  Defendants contend that the School Board began its consideration of the Prayer Policy in June 2004, four months prior to its adoption, and that is why Defendants limited production to this time frame.  Defendants also contend that Plaintiffs' requests are overbroad and would involve tens of thousands of documents that are irrelevant to this litigation.  However, Defendants have offered to produce documents dated prior to June 2004, for Plaintiffs' inspection so that Plaintiffs can identify which specific documents they would like to have copied.

The Court agrees that some history of the School Board's prayer practices is relevant to Plaintiffs' claim; however, the Court also understands the breadth and burden of Plaintiffs' request on Defendants.  For the reasons discussed in the context of Plaintiffs' other motions, the Court concludes that Defendants' production and inspection plan provides an appropriate resolution to this dispute.  Accordingly, the Court will deny Plaintiffs' Motion To Compel and related request for

fees in favor of Defendants' offer to produce the documents for Plaintiffs' inspection.

## VI. Plaintiffs' Motion To Compel Responses To Request No. 8 Directed To Defendants (D.I. 164)

Plaintiffs next request the Court to compel Defendants to produce "any and all documents, concerning, directly or indirectly . . . School Board Meetings, including but not limited to notes, agendas, minutes presentations, audio recordings, video recordings or preparation materials." (D.I. 164, Exh. A at 3.) Plaintiffs' Motion represents the second Motion dealing with Request No. 8; however, Plaintiffs' Motion focuses on Defendants' refusal to produce materials pertaining to "closed" meetings. Plaintiffs contend that Defendants did not timely object to producing these documents on the grounds that they were protected by the deliberative process privilege or the "executive session" provision of the Freedom of Information Act ("FOIA"), 29 Del. C. 10004. Plaintiffs also contend that, as a substantive matter, Defendants have not shown that either the privilege or Section 1004 apply. Plaintiffs further contend that the closed session documents are relevant to Defendants' claim that the School Board acted as a legislative body at all times. Plaintiffs point out that Defendants have conceded that closed meetings are not opened with a prayer. Thus, Plaintiffs contend that information discussed in the closed sessions is relevant to determine whether

12

the School Board conducts the same business in its closed sessions without prayer as in its open sessions, which may, in turn, show that the School Board exploits its open sessions as a prayer opportunity to advance one faith over others.

Defendants contend that Section 1004(b) of the FOIA permits the School Board to go into closed session in order to discuss the following topics: (1) individual hiring and training, (2) site acquisitions, (3) law-enforcement activities; (4) strategy sessions involving legal advice or an opinion from an attorney regarding pending or potential litigation, (5) the identity of anonymous charitable donors; (6) discussion of the content of non-public records; (7) student disciplinary proceedings; (8) employee disciplinary or dismissal proceedings; and (9) personal matters. Defendants contend that none of these issues, with the possible exception of legal strategies, has anything to do with the constitutionality of the School Board Prayer Policy as written and as applied. As for legal strategies, Defendants contend that those discussions are protected from disclosure by the attorney-client privilege and/or the work product doctrine, both of which Defendants asserted in their initial response. Defendants further contend that the documents are protected from disclosure under the deliberative process privilege as a matter of federal common law.

13

As a threshold matter, the Court concludes that Defendants have not waived the protection of the deliberative process privilege. Although Defendants did not initially assert the privilege in precise terms, they asserted other valid objections to the disclosure of documents from the School Board's closed door sessions. See SCM Corp. v United States, 473 F. Supp. 791, 796 (Cust. Ct. 1979).

While the deliberative process privilege has not been recognized in Delaware[1], it has been recognized as a matter of federal common law. National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132, 140 (1975). However, the privilege is a qualified privilege, not an absolute privilege. Thus, the Court must balance a party's need for disclosure against the government agency's need for confidentiality and consider such factors as "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved, (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." Scott v. Bd. of

---

[1] See Beckett v. Trice, 1994 WL 319171, *3 (Del. Super. Ct. June 6, 1994); Chem. Indus. Council of Del., Inc. v. State Coastal Zone Indus. Control Bd., 1994 WL 274295, 12 (Del. Ch. May 19, 1994)

14

Educ. of the City of East Orange, 219 F.R.D. 333, 337 (D.N.J. Jan. 6, 2004). The deliberative process privilege is limited to communications regarding the formulation of policy and not routine operating decisions; however when the very policy deliberations of the particular government entity are at issue, the privilege is not available. Id. (citations omitted).

In this case, the application of the deliberative process privilege presents an interesting question. On the one hand, the Court understands that school boards in the state routinely function without the benefit of such a privilege, and therefore, there is little chance that a decision against application of the privilege would chill decision making by school boards in Delaware. In addition, some of the evidence sought by Plaintiffs from the closed door sessions might apply to the very policy decisions of the Board related to the topic of school prayer, and in this regard, the privilege would not apply.

On the other hand, much of the other evidence from the closed sessions involves other types of policy decisions not implicated by this case, and thus, such evidence would be marginally, if at all relevant, to the question of the constitutionality of the School Board's Prayer Policy. Further, the Court has permitted Plaintiffs' inspection of such other evidence to the extent that it has been discussed in open

meetings of the School Board, and therefore, an alternate avenue exists for Plaintiffs to obtain this type of evidence.

Balancing these factors, the Court is persuaded that any disclosure of the content of the School Board's closed sessions should be narrowly tailored to the School Board's Prayer Policy. In this regard, the Court concludes, in the circumstances of this case, that the deliberative process privilege applies to the majority of the closed door sessions of the School Board, except to the extent that those sessions may have directly pertained to the adoption of the School Board's Prayer Policy. Defendants have represented to the Court that the School Board's Prayer Policy was adopted in public, and thus, there may not be any discussions to disclose in this regard. Further, in examining the types of topics covered in closed door sessions, the Court is persuaded that the only relevant discussions to the School Board Prayer Policy issue are those involving litigation decisions, and Defendants have asserted the protections of the attorney-client and work product doctrine for those discussions. Further, Plaintiffs have not rebutted Defendants' arguments concerning the application of the attorney-client privilege and work product doctrine, and therefore, the Court is persuaded, at this juncture, that the closed door sessions relevant to legal discussions are protected from disclosure. Accordingly, the

Court will grant Plaintiffs' Motion to the extent that any closed door sessions of the School Board directly relate to the adoption of the School Board Prayer Policy and deny Plaintiffs' Motion in all other respects.

## CONCLUSION

For the reasons discussed, the Court has resolved each of Plaintiffs' Motions To Compel in the manner set forth above.

An appropriate Order detailing the Court's rulings with respect to each Motion will be entered.