# EXHIBIT C

NS

**From:** Allingham II, Thomas [TALLINGH@skadden.com]
**Sent:** Thursday, October 12, 2006 8:48 PM
**To:** Gosselin, Jason P.
**Subject:** Hearn deposition etc.

Jason:

As you know, I am in Selbyville taking depositions, and will have to respond to your barrage of letters today via e-mail rather than by letter.

**Re letter faxed 4:41 today**
1. Questions beyond the scope of Discovery Order. Your letter is incorrect factually. I am entitled to ask questions that are relevant to the Court's consideration of the School Board Prayer issue, as I'm sure you know. If that were not true, how could we respond to your promised summary judgment motion? I have no doubt that you can find isolated instances in which I asked questions about the other policies (though I can't remember any specifically, and I don't yet have access to the transcripts), but the focus of my examination has been on the School Board Prayer issues, including, without limitation, (i) issues relating to the public's perception of what the Board's purpose in adopting the Board Prayer Policy was, (ii) the Board member's understanding of what they did by adopting the Policy, (iii) evidence of the Board members' purposes in adopting the Policy, and so forth. As you rightly observe, I am entitled to some leeway, and an examiner can't perfectly predict what questions may elicit responses that turn out to be irrelevant. On the specific areas your letter identified, I do not believe that I "repeatedly" asked questions about the settlement and the decision to reject it, but I certainly agree that unless questions about the settlement are relevant to the School Board Prayer issue, they should not be asked in this phase of the case. On the issue of the Board members' religious beliefs, we simply disagree as to whether these questions are relevant. I note, however, that my questions have been respectful in tone and content, as I believe your witnesses would confirm. (Dr. Hattier thanked me at the end of his deposition Tuesday for conducting myself in the deposition like a gentleman; Mrs. Bunting volunteered today that Mr. Bierley had told her that she should not be concerned about her deposition, because I had not conducted myself inappropriately.)

2. Questions implicating attorney-client privilege. The witnesses' testimony has been all over the map concerning whether individual lawyers represented the Board at various times. I have explored that issue carefully. I have tried to be careful in making my record on the privilege question. In fact, I have several times cautioned your witnesses to wait a moment before answering the question I'm about to ask, because you or Mr. Shaw may wish to object. But it is quite true that where I thought it clear that no privilege applied, I asked for the substance of statements from the lawyers. You objected, based on your contrary views. That's how the process is supposed to work, and how it did work. To the extent your letter is intended to accuse me of bad faith (it lacks the virtue of being willing to make accusations directly), I am prepared to respond vigorously, and am confident of the result.

3. Harassing Witnesses relative to the August 24, 2004 Board Meeting. That you accuse me of harassing witnesses by asking them whether they were troubled or disturbed by Harold Johnson's statements at the August 24 meeting raising the specter of Madalyn Murray O'Hair's "disappearance" (which statements, as I recall in the absence of transcripts, Dr. Hattier and Mr. Bierley both agreed could reasonably have been construed as a threat to Mrs. Dobrich, and should have been stopped) is startling to me. If you really believe your accusations, you have remedies. Let me confirm, however, that you are quite correct that I care deeply about the issues in this case and the interests of my clients.

**Re letter faxed 4:20 today**
1. The engagement letter issue. The burden is yours, of course, to demonstrate that any document (including an engagement letter) is privileged. Engagement letters are hardly per se privileged, see e.g., Mordesovitch v. Westfield Insurance, 244 F. Supp. 636 (S.D. W.Va.)(this is the first case that popped up -- I'm not going to comprehensively research the issue tonight), but if you want to withhold the document on privilege grounds, do so, and we'll consider our options in light of your showing (if any).

2. <u>Your conversation with Mr. Helms</u>. You have fundamentally misunderstood what occurred during the brief questioning of Mr. Helms on whether he had engaged in substantive discussions about his testimony with anyone overnight. He responded that he had spoken to you. I asked him what you and he had discussed. Mr. Shaw terminated the examination. I told Mr. Shaw that it is my view that I am entitled to test whether the substance of such a conversation concerned the witness's testimony, and gave him as an example that if a lawyer coaches a witness while the witness is "on cross" in a deposition, the examiner is entitled to the entire substance of the conversation, to which no privilege attaches. I don't need a good faith basis for believing you called Mr. Helms for an improper purpose; if you had a conversation, my understanding of the law is that I'm entitled to *ask him* what you talked about generically, *in order to determine if you talked to him for an improper purpose*. And if what you talked about was improper, I'm entitled to probe it.

**Re letter faxed 1:54 today**
1. <u>Janet Hearn</u>. Your letter is untimely. You had previously agreed to produce Mrs. Hearn as the last witness this week, in part because we could, in your words, "slot her in", and in part because you have suggested she would be your 30(b)(6) witness on some of the topics listed (and we had requested the 30(b)(6) witnesses to be produced in the first week). If you wished to file a protective order, you have had plenty of time to do so. In any event, your reasons for refusing to produce Mrs. Hearn are not valid. In the absence of a motion for a protective order (which, until Mr. Shaw told me at 5 p.m. today of your letter, I had never had notice of), I have no obligation to tell you all of the reasons why I want to take a deposition, and I have not done so. Mrs. Hearn is the secretary of this Board. The minutes, which she prepared, are not accurate in respect to matters relating to the School Board Prayer issue. We want to explore why. The tapes cannot answer that question (and others which I have no obligation to reveal to you in advance of the deposition). We expect Mrs. Hearn to be produced after Mr. Hastings concludes tomorrow.

2. <u>Wilson and Oliphant depositions</u>. Unlike your arguments with respect to Mrs. Hearn, the points you make regarding Mr. Wilson and Mrs. Oliphant merit careful consideration, which I can't give them tonight. I propose that we defer those two depositions until further notice, and I'll try to give you a definitive answer as soon as possible, perhaps as early as next Monday.

I'd be pleased to discuss any of the above with you if you wish.

-------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

*******************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*******************************************************
=====================================================================