# EXHIBIT A

09/02/2004  15:28  4367576     HELMS                              PAGE  01

TO: HARVEY WALLS

FROM: REGGIE HELMS

SUBJECT: PROPOSED POLICY

SHEETS: 6/INCLUDING COVER

BPD 000713

[For Release to the General Public
Proposed School Board Prayer Resolution dated 8/30/04
Prepared by The Rutherford Institute, tel. 434.978.3888, and
The Neuberger Firm, tel. 302.655.0582]

I.R. Bd. of Educ.
Resolution
First Reading, 9/ /04

### Policy on Prayer at Board Meetings

**Whereas,** this School Board is an elected legislative and deliberative public body composed of adults;

**Whereas,** this School Board has had a long established custom of solemnifying its proceedings by opening its meetings with a sectarian or non-sectarian prayer by one individual Board member as his or her conscience and religious tradition leads;

**Whereas,** our Country is in a War with terrorism which on September 11, 2001 took the innocent lives of thousands of our fellow citizens, united our Nation and also reminded many of us of the efficacy of prayer;

**Whereas,** in times of War our leaders have lead us in prayer. A few examples follow:

Our first President, George Washington, as he concluded his service as the Continental Army's Commander in Chief, on June 14, 1783, wrote to all the governors of the newly freed states urging them to join him in this prayer:

"Almighty God, We make our earnest prayer that Thou wilt keep the United States in Thy holy protection: that Thou wilt incline the hearts of the citizens to cultivate a spirit of subordination and obedience to government, and entertain a brotherly affection and love for one another and for their fellow citizens of the United States at large.

And finally that Thou wilt most graciously be pleased to dispose us all to do justice, to love mercy, and to demean ourselves with that charity, humility, and pacific temper of mind which were the characteristics of the Divine Author of our blessed religion, and without a humble imitation of whose example in these things we can never hope to be a happy nation. Grant our supplication, we beseech Thee *through Jesus Christ, Our Lord,* Amen." (Emphasis added).

President Abraham Lincoln lamented during the days of the Civil War:

Page 1 of 5

BPD 000714

"We have been recipients of the choicest bounties of Heaven...but we have forgotten God.... We have forgotten the gracious hand which preserved us in peace.... Intoxicated with unbroken success, we have become too self-sufficient to feel the necessity of redeeming and preserving grace, too proud to pray to the God that made us."

President Franklin D. Roosevelt, at the moment of the greatest military invasion in history, D-Day (June 6, 1944), led the nation in praying:

"Almighty God, Our sons, pride of our Nation, this day have set upon a mighty endeavor, a struggle to preserve our Republic, our religion, and our civilization, and to set free a suffering humanity. Lead them straight and true; give strength to their arms, stoutness to their hearts, steadfastness in their faith."

Our current President George W. Bush, in the midst of America's war on terror, urged the Country to pray, stating:

"I ask our Nation to join me in praying for the strength to meet the challenges before us, for the wisdom to know and do what is right, for continued determination to work towards making our society a more compassionate and decent place, and for peace in the affairs of men." (A Proclamation, National Day of Prayer, May 1, 2003)

**Whereas,** a member of the American Civil Liberties Union attended one of our School Board meetings, was offended by a prayer which was said and which ended in the name of Jesus Christ, as did the above mentioned prayer by President George Washington, and the ACLU has threatened the Board and School District with a lawsuit if it does not abandon its custom;

**Whereas,** the School Board has obtained the legal advice of two competent and experienced constitutional attorneys, John W. Whitehead, Esquire and Thomas S. Neuberger, Esquire, that prayer to open Board meetings is constitutional in the United States Court of Appeals for the Third Circuit which includes Delaware, and legal counsel have identified the following legal authority in support of their legal opinion.

In Marsh v. Chambers, 463 U.S. 783 (1983), the United States Supreme Court held that prayer before sessions of legislative and other deliberative bodies does not violate the Establishment Clause of the First Amendment to the Constitution. The Court reasoned and stated that such prayer must not violate the Establishment Clause, noting that the practice pre-exists the First Amendment itself.

AThe opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. From colonial times through the founding of the Republic and ever since, the practice of legislative prayer has coexisted with the principles of disestablishment and religious freedom.@

BPD 000715

Id. at 786. The Court cited the practices of the First Congress as evidence of the Framers= understanding that prayer before meetings of legislative bodies did not violate the Establishment Clause and also said:

AIt can hardly be thought that in the same week Members of the First Congress voted to appoint and to pay a chaplain for each House and also voted to approve the draft of the First Amendment for submission to the states, they intended the Establishment Clause of the Amendment to forbid what they had just declared acceptable.@

Id. at 790. Thus, it is a settled principle that legislative and other deliberative bodies do not violate the Establishment Clause of the First Amendment by opening their meetings with a brief invocation.

It is the opinion of legal counsel that since the Indian River Board of Education is a public legislative and deliberative body it has the right to open its meetings with a prayer.

In support of assertions that a School Board member=s prayer is unlawful, the ACLU can only rely upon the divided Sixth Circuit=s opinion in Coles v. Cleveland Bd. of Educ., 171 F.3d 369 (6th Cir. 1999). However, the Sixth Circuit=s 2-to-1 decision in Coles is, of course, not even binding precedent in Delaware, which is governed by the decisions of the Third Circuit Court of Appeals in Philadelphia. The Third Circuit has not addressed this question, and counsel are unaware of any court in the Third Circuit that has even cited to the Coles decision, much less any court that has indicated that it viewed the decision favorably. Furthermore, the fractured Coles decision has faced considerable criticism from legal scholars because it ignores the Supreme Court decision in Marsh. See, e.g., ASixth Circuit Holds That Opening School Board Meetings with a Prayer Is an Establishment of Religion,@ Harvard L. Rev. 1240 (March 2000) (majority in Coles Ainappropriately attributed to school board meetings the same coercive context as the classroom and read too narrowly the permissible role of religious speech in solemnizing the lawmaking process@). So Marsh is still very good law which must be obeyed.

Contrary to the Sixth Circuit=s dismissal of Marsh as an Ahistorical aberration,@ Coles, 171 F.3d at 383, the Supreme Court itself has regularly recognized the continuing vitality of Marsh v. Chambers in the legislative arena. See, e.g. County of Allegheny v. ACLU, 492 U.S. 573, 603 (1989) (discussing the scope of Marsh); Lee v. Weisman, 505 U.S. 577, 596-97 (1992) (noting the inherent differences between the forced attendance of students at a high school graduation and the voluntary attendance of adults at legislative sessions).

Furthermore, a majority of the federal Courts of Appeals that have addressed the matter have followed the Supreme Court=s command and squarely held that prayer by legislative and other deliberative bodies does not violate the Establishment Clause. For example, in Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir 1998), the Tenth Circuit Court of

BPD 000716

Appeals held that invocational prayers at a city council meeting fell squarely under Marsh and that such A>legislative prayer= does not violate the Establishment Clause.@ Id. at 1233. Likewise, just this past summer, the Fourth Circuit Court of Appeals held that a town council may Ainvoke Divine guidance for itself before engaging in public business.@ Wynne v. Town of Great Falls, S.C., 376 F.3d 292, 298 (4th Cir. 2004). And more than a quarter century earlier, the Eighth Circuit Court of Appeals held that prayer by a clergyman before a county board meeting helps set Aa solemn tone for the transaction of government business and assists towards the maintenance of order and decorum.@ Bogen v. Doty, 598 F.2d 1110, 1115 (8th Cir. 1979).

Moreover, even before the Supreme Court=s decision in Marsh, at least three State Supreme Courts had decided that prayer by deliberative bodies did not run afoul of the Establishment Clause. See Marsa v. Wernik, 430 A.2d 888 (N.J. 1981) (prayer at borough council meetings by council members); Colo v. Treasurer and Receiver General, 392 N.E.2d 1195 (Mass. 1979) (prayer by chaplains in state legislature); Lincoln v. Page, 241 A.2d 799 (N.H. 1968) (prayer by clergy at town meetings).

So in reality it is the divided Coles decision which is the aberration and not these six courts of appeals. Additionally, Coles was decided before the recent landmark decision by the U.S. Supreme Court in Good News Club v. Milford Central School, 533 U.S. 98 (2001), which laid to rest the legally incorrect notion that just because religious activity takes place upon public school grounds it is a violation of the Establishment Clause. The Supreme Court there also criticized lower courts which take the simplistic position that mere geography determines whether voluntary prayer is constitutional.

Thus, it is the opinion of legal counsel that the Supreme Court=s decision in Marsh v. Chambers, which unlike the Coles decision is binding precedent in Delaware, compels the conclusion that the Indian River School District=s tradition of opening its meetings with a brief invocation is constitutionally permissible.

Accordingly, the Board hereby adopts the following written policy and it Resolves that -

1. In order to solemnify School Board proceedings, it is the policy of the Board to open its meetings with a prayer or a moment of silence, all in accord with the freedom of conscience of the individual adult Board member.

2. On a rotating basis one individual adult Board member per meeting will be given the opportunity to offer a prayer or moment of silence. If the member chooses not to exercise this opportunity, the next member in rotation shall have the opportunity.

3. Such opportunity shall not used or exploited to proselytize, advance or convert anyone or to derogate or otherwise disparage any particular faith or belief.

BPD 000717

4. Such prayer is voluntary and it is just among the adult members of the Board. No school employee, student in attendance or member of the community in attendance shall be required to participate in any such prayer or moment of silence.

5. Any such prayers may be sectarian or non-sectarian, denominational or non-denominational, in the name of a Supreme Being, Jehovah, Jesus Christ, Buddha, Allah, or any other person or entity, all in accord with the freedom of conscience, speech and religion of the individual Board member, and his or her particular religious heritage.

Indian River\Public Proposed Board Prayer Resolution August 30, 2004.