# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MONA DOBRICH and MARCO                    :
DOBRICH, individually and as parents      :
and next friend of ALEXANDER              :
DOBRICH, SAMANTHA DOBRICH,                :
JANE DOE and JOHN                         :
DOE, individually and as parents and      :
next friend of JORDAN DOE and             :
JAMIE DOE,                                :
                                          :
    Plaintiffs,                           :
                                          :
        v.                              :    Civ. Action No. 05-cv00120-JJF
                                          :
THE INDIAN RIVER SCHOOL BOARD, et al.,    :
                                          :
    Defendants.                           :

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants, by and through their attorneys, Drinker Biddle & Reath LLP, hereby submit the following Statement of Undisputed Facts in support of their motion for summary judgment:

**The Indian River School Board As Legislative Body**

### I.    Indian River School District

1.     In 1969, the Indian River School District ("District") was formed through the consolidation of five different school districts. *See* Declaration of Charles H. Mitchell at ¶4, attached hereto as Exhibit A; *see also* Deposition of Nina Lou Bunting at 99, attached hereto as Exhibit B.

2.     Currently, the District is divided into five separate electoral districts serving the towns of Selbyville, Frankford, Dagsboro, Gumboro, Fenwick Island, Bethany Beach, Ocean View, Millville, Millsboro, and Georgetown. *See* Del. Code Ann. tit. 14, § 1068(b) (2008).

3.      The District is composed of fourteen schools.  *See* Declaration of Susan Bunting at ¶12, attached hereto as Exhibit C.

4.      The District has approximately 8,388 students and approximately 646 full-time teachers.  *See* Exhibit C (Declaration of Susan Bunting at ¶11).

5.      The District is governed by an elected ten-member school board.  *See* Del. Code Ann. tit. 14, § 1068(a).

**II.      Indian River School Board**

  **A.      Popular Election of Board Members**

6.      Each of the five electoral districts within the District elects two Board members.[1] *See* Del. Code Ann. tit. 14, § 1068(a); Deposition of Charles Bireley at 182, attached hereto as Exhibit D.

7.      Board members are elected by qualified electors of the five districts.  *See* Del. Code Ann. tit. 14, § 1068(g).

8.      Board members swear the following oath before entering upon the duties of their office:

> I do solemnly swear (or affirm) that I will support the Constitution
> of the United States of America and the Constitution of the State of
> Delaware, and that I will faithfully discharge the duties of the
> office of school board member according to the best of my ability;
> and I do further solemnly swear (or affirm) that I have not directly
> or indirectly paid, offered or promised to pay, contributed, or
> offered or promised to contribute, any money or other valuable

---

[1] The School Board members are**:**

  a.  District Number 1: Dustin D. Davis; Robert D. Wilson;
  b.  District Number 2: Kelly R. Willing; Patricia S. Oliphant;
  c.  District Number 3: Nina Lou Bunting; Randall Hughes II;
  d.  District Number 4: Charles M. Bireley, President; Donald G. Hattier;
  e.  District Number 5: Reginald L. Helms, Vice President; Donna M. Mitchell.

Indian River School Board, http://www.irsd.net/board.cfm (last visited April 8, 2008).

> thing as consideration or reward for the giving or withholding a
> vote at the election at which I was elected to said office, so help
> me God (or so I affirm).

*See* Del. Code Ann. tit. 14, § 1053(a).[2]

     9.     Each Board member serves a term of three years.  *See id.* § 1068(f).

### B.     Structure and Operations of Board

     10.     The Board holds regular public meetings at least once per month.  *See* Del. Code Ann. tit. 14, § 1048(a) ("Regular meetings of the school board shall be held each month during the year at the regular meeting place designated by the school board.").

     11.     The Board also holds special meetings as needed.  *Id.* § 1048(b) ("Special meetings of the school board may be held whenever the duties and business of the school board may require.").

     12.     The Board performs numerous functions in governing the District, including, but not limited to, adopting the curriculum for each of the schools within the district; developing District-wide policies; selecting and purchasing textbooks; preparing reports required by the State Secretary of Education; appointing and dismissing personnel for the District; approving the use of District facilities; adjudicating significant student or employee disciplinary actions; levying taxes and adopting the district's annual budget; and monitoring the progress of

---

[2] This oath is similar to the oath sworn by members of the Delaware General Assembly and all executive and judicial officers before entering upon the duties of their respective offices, which is set forth in the Delaware Constitution as follows:

> I, . . . do proudly swear (or affirm) to carry out the responsibilities of the office of . . . (name of office) . . . to the best of my ability, freely acknowledging that the powers of this office flow from the people I am privileged to represent.  I further swear (or affirm) always to place the public interests above any special or personal interests, and to respect the right of future generations to share the rich historic and natural heritage of Delaware.  In doing so I will always uphold and defend the Constitutions of my Country and my State, so help me God.

Del. Const. art. XIV, § 1.

construction projects.  *See* Exhibit D (Bireley Dep. at 9-17); Deposition of Donald Hattier at 127,

133-37, 331, attached hereto as Exhibit E.

13.    In order for the Board to transact any business at its regular monthly meetings,

there must be a quorum consisting of a majority of the members on the Board.  *See* Del. Code

Ann. tit. 14, § 1048(c).

C.    <u>Setting Policy for District</u>

14.    The development and adoption of District policies is one function of the Board.

Typically, policies emanate from the Policy committee, which is a subcommittee of the entire

Board.  *See* Del. Code Ann. tit. 14, § 1043 (school boards of the reorganized school districts

"shall have the authority to determine policy and adopt rules and regulations for the general

administration and supervision of the free public schools"); *see also* Exhibit C (S. Bunting Dec.

at ¶5).

15.    In addition to the Board members, certain District personnel and community

members serve on the Policy committee.  *Id*. at ¶6.

16.    The Policy committee meets separately from the full Board approximately once

per month.  In these meetings, the Policy committee, among other things, studies proposed

policies, analyzes the need for new policies, and prepares drafts of new policies.  *Id.* at ¶7.

17.    In order for a new policy to be presented to the full Board for consideration, it

must first be endorsed by the Policy committee members.  The Policy committee chair then

presents the recommendations of the committee to the full Board.  After a new policy is

presented for adoption, the Board will conduct a public first reading of the proposed policy.  *Id.*

at ¶9.

18.    At the next regularly scheduled Board meeting, the Board will conduct a second

4

reading of the proposed policy.  *Id.* at ¶9.

19.    After the second reading, the Board may vote to adopt the proposed policy.  *Id.* at

¶10.  Approved policies are included in the Policy Manual.

### D.    Power to Levy Taxes and Authorize Expenditures

20.    The District, which acts through its elected Board, is empowered to levy and

collect taxes for school purposes.  *See* Del. Code Ann. tit. 14, § 1902 (stating that "[a]ny district

may, in addition to the amounts apportioned to it by the Department of Education or appropriated

to it by the General Assembly, levy and collect additional taxes for school purposes upon the

assessed value of all taxable real estate in such district" except certain exempt real estate).

21.    The District fixes the rate of taxation based on the total value of all taxable

property as shown on the county assessment list.  *See id.* § 1916.

22.    In addition to the money received through taxation, the District also receives

appropriations from the General Assembly.  *See* Del. Code Ann. tit. 14, §§ 1701, 1702.

23.    The appropriations are for the support, maintenance and operation of the free

public schools.  *See id.* § 1702(a).

24.    The District uses the appropriations for various purposes, including employing

personnel, school costs such as library resources, energy, and educational advancement.  *See id.*,

§ 1702.

25.    The Board also has other spending powers; for example, the Board is required to

spend money for the maintenance of school property.  *See* Del. Code Ann. tit. 14, § 1055

("school board shall make all repairs to school property, purchase all necessary furniture and

provide for adequate heating and proper ventilation of the buildings").

26.    It also has the duty to file a district report with the Department of Education, in

which the Board is encouraged to include information on the expenditures, revenues, and business and financial transactions of the previous fiscal year.  *See* Del. Code Ann. tit. 14, § 1050.

### E.     Board is a Representative Body

27.     As an elected body, Board members attempt to be responsive to the needs of their constituents.  *See, e.g.,* Exhibit B (N. Bunting Dep. at 98) ("[constituent feedback] is important to me because I represent these people and they elected me to make decisions at the Board level on their behalf, and I represent my people").

28.     As with other elected, deliberative bodies, constituent preferences play a role in the Board's decision-making.  *See* Exhibit E (Hattier Dep. at 299) (testifying that if his constituents do not agree with his decisions, then "come election time[,] they are free to elect someone else").

29.     In 1994, in order to ensure greater constituent feedback, the Board added a public comments segment to the regularly scheduled meetings.  *See* Exhibit D (Bireley Dep. at 36-37) ("it was important for people in the community to come and talk to us about things that was on their minds, concerns or anything like that or have input.").

### Board Prayer Practice and Policy

### I.     Practice Prior to Adoption of Current Policy

30.     Opening school board meetings with a prayer to solemnize the proceedings is a tradition that predates the District itself.  *See* Exhibit A (C. Mitchell Dec. at ¶¶3-4, 8) (stating, for example, Millsboro School Board opened its meetings with a prayer prior to 1969 consolidation); Deposition of Donna Mitchell at 12, attached hereto as Exhibit F ("My grandfather was on the school board when I was a young child in school, and they opened the meetings with prayer at that time, and that's over 50 years ago").

31.    Since the formation of the District, the Board has opened each regular meeting with a prayer.  *See* Exhibit A (C. Mitchell Dec. at ¶8).

32.    This practice has continued uninterrupted from the creation of the current district in 1969 to the present.  *See id*. at ¶¶8-9; Exhibit D (Bireley Dep. at 52); *see also* Deposition of Dr. Mark Isaacs at 25, attached hereto as Exhibit G ("For as long as I was a student, even back in Sussex Central High School, board meetings were always opened with a prayer").

33.    The usual custom was for the board president to designate one person at each meeting to lead the group.  *See* Exhibit D (Bireley Dep. at 57, 59); Exhibit A (C. Mitchell Dec. at ¶10).

34.    Historically, the Board did not place any restrictions relating to the content of the prayer.  *See* Exhibit D (Bireley Dep. at 57); Exhibit A (C. Mitchell Dec. at ¶11).

**II.    Adoption of Board Prayer Policy**

35.    In the summer of 2004, after receiving a complaint from Plaintiff Mona Dobrich (who has since dismissed her claims regarding Board prayer), the Board reviewed its policy of opening its regular Board meetings with a prayer.

36.    On October 19, 2004, the Board formally adopted a policy entitled Board Prayer At Regular Board Meetings ("Board Prayer Policy").  *See* Exhibit D (Bireley Dep. at 96).

37.    That policy provides as follows:

> 1.    In order to solemnify its proceedings, the Board of Education may choose to open its meetings with a prayer or moment of silence, all in accord with the freedom of conscience of the individual adult Board member.
>
> 2.    On a rotating basis one individual adult Board member per meeting will be given the opportunity to offer a prayer or request a moment of silence.  If the member chooses not to exercise this opportunity, the next member in rotation shall have the opportunity.

3.    Such opportunity shall not be used or exploited to proselytize, advance or convert anyone, or to derogate or otherwise disparage any particular faith or belief.

4.    Such prayer is voluntary, and it is among only the adult members of the Board.  No school employee, student in attendance, or member of the community in attendance shall be required to participate in any such prayer or moment of silence.

5.    Any such prayers may be sectarian or non-sectarian, denominational or non-denominational, in the name of a Supreme Being, Jehovah, Jesus Christ, Buddha, Allah, or any other person or entity, all in accord with the freedom of conscience, speech and religion of the individual board member, and his or her particular religious heritage.

*See* Board Prayer Policy, attached hereto as Exhibit H.

### A.    Context of Board Prayer

38.    Each Board meeting usually opens with a call to order and a roll call of the Board members.  *See, e.g*., November 16, 2004 Board meeting minutes, attached hereto as Exhibit I.

39.    Next, the meeting's agenda is approved.  *See id.*

40.    Following the approval of the meeting agenda is the Presentation of Colors.  *See id*.

41.    After the Presentation of Colors, one Board member will offer a prayer, moment of silence, or other solemnizing appeal in accordance with the policy.  *See  id.*

42.    This usually takes less than less than a minute or two.  *See, e.g.*, Audio tape: June 20, 2006 Indian River School District Board Meeting (June 20, 2006) (produced to plaintiffs as BDP 1321-1322); Exhibit C (S. Bunting Dec. at ¶13).

43.    After the Board prayer, the Board moves forward with the business at hand, including the approval of the minutes from the previous Board meeting and announcing student awards.  *See, e.g.*, Exhibit I (November 16, 2004 Board meeting minutes).

44.    It has become customary since the adoption of the current Board prayer policy for the board president to offer a disclaimer between the Presentation of Colors and the prayer to ensure that members of the public understand the purpose of the prayer policy.  For example, on November 16, 2004, at the first Board meeting following the adoption of the policy, the Board president made the following statement:

> It is the history and custom of this Board that, in order to solemnify the School Board proceedings, that we begin with a moment of prayer, in accord with the freedom of conscience of the individual adult members of the Board.  Further, such prayer is voluntary and just among the adult members of the School Board.  No school employee, student in attendance or member of the community is required to participate in any such prayer or moment of silence.

*See* Transcribed minutes of November 16, 2004 Board meeting, attached hereto as Exhibit J.

45.    Although this disclaimer is not required by the Board prayer policy itself, since November 16, 2004, a disclaimer has been read in conjunction with the opening prayer at each regular Board meeting.  *See* Exhibit D (Bireley Dep. at 104-05) (stating that, as board president, he has offered disclaimer at every meeting).

**B.    Prayer Is Non-Compulsory**

46.    Although the prayer policy provides that the prayer will be offered by Board members on a rotating basis, no Board member is forced to pray or otherwise lead the Board. *See* Deposition of Harvey L. Walls at 69, attached hereto as Exhibit K (stating that he declined to offer prayer or lead group); *see also* Exhibit D (Bireley Dep. at 154) (stating that he has always declined to offer prayer or moment of silence based on personal preference).

47.    Moreover, the Board does not require members of the public to participate in the prayer.  *See* Exhibit K (Walls Dep. at 52) ("I have no expectation for the audience. . . . They can do whatever they wish"); Deposition of Lois Hobbs at 207-08, attached hereto as Exhibit L

(describing the disclaimer portion of the Board Prayer policy that states, "No school employee, student in attendance, or member of the community in attendance shall be required to participate in any such prayer or moment of silence," Ms. Hobbs views such statement as allowing them to get up and leave, "just not participate," not bow their heads, or arrive after the prayer has concluded).

48.    The length of time the Board spends in the opening prayer is relatively brief in comparison to the length of the Board meetings.  For example, the June 20, 2006 meeting lasted more than five and a half hours, while the prayer lasted only sixty-two seconds.  *See* June 20, 2006 Board meeting minutes, attached hereto as Exhibit M; Audio tape: June 20, 2006 Indian River School District School Board Meeting (June 20, 2006) (produced to plaintiffs as BDP 1321-1322); Exhibit C (S. Bunting Dec. at ¶13).

### C.    Content of Prayers

49.    With the adoption of the current policy, the Board has continued its tradition of allowing Board members to participate as they choose without dictating the content of the prayers.  *See* Exhibit H (Board Prayer Policy at ¶5) ("Any such prayers may be sectarian or non-sectarian, denominational or non-denominational, in the name of a Supreme Being, Jehovah, Jesus Christ, Buddha, Allah, or any other person or entity, all in accord with the freedom of conscience, speech and religion of the individual board member, and his or her particular religious heritage").

50.    In some instances, the prayers have referenced historical figures.  For example, on November 16, 2004, Board member Dr. Donald Hattier quoted from George Washington's 1789 inaugural address:

> "Such being the impression under which I have, in obedience to
> the public summons, repaired to the present station, it would be

> peculiarly improper to omit in this first official act, my fervent
> supplications to that Almighty Being who rules over the universe,
> who presides in the councils of nations, and whose providential
> aids can supply every human defect, that His benediction may
> consecrate to the liberties and happiness of the people of the
> United States a Government instituted by themselves for these
> essential purposes, and may enable every instrument employed in
> its administration to execute with success the functions allotted to
> his charge." As we sit here tonight, fellow Board members, I must
> ask for the same benedictions from the Almighty as President
> Washington has before. Let those primary principles guide our
> actions for the betterment of the students, teachers and
> administrators and society as a whole here in the Indian River
> School District and [elsewhere]. We ask this in the Lord's name.

*See* Exhibit J (Transcribed minutes of November 16, 2004 Board meeting) (addition in original).

51.    Similarly, on March 22, 2005, former Board member Harvey Walls offered the

following prayer to open the regular Board meeting:

> At this time, I'd like to lead the Board in a moment of prayer
> basically on an excerpt taken from a speech given by Dr. Martin
> Luther King that he entitled "Not So Civil Dreams." "God does
> not judge us by the separate incidences or the separate mistakes
> that we make, but by the total bent of our lives. In the final
> analysis, God knows that his children are weak and they are frail.
> In the final analysis what God requires is that your heart is right."
> As we gather here this evening, let us take these words to heart and
> put the best interests of the students, teachers, employees and
> residents of the Indian River School District ahead of our own.
> Amen.

*See* Transcribed minutes of March 22, 2005 Board meeting, attached hereto as Exhibit N.

52.    In other instances, Board members have invoked Jesus. For example, on

February 22, 2005, Board member Reginald Helms gave the opening prayer and offered the

following: "Heavenly Father, Lord our God. Heavenly Father, please help the Board with the

problems in the School District that we are going through right now. We ask these things in

Jesus' Name." *See* Amended Compl. at ¶144.

53.    In other instances, rather than offering a prayer, the Board member elected to

offer a moment of silence. *See* Deposition of Patricia Oliphant at 33, attached hereto as Exhibit

O (stating preference for offering a moment of silence rather than a prayer).

D.      <strong>Purpose of Prayers</strong>

54.     The purpose of opening regular Board meetings with a prayer or moment of

silence, as stated in the policy itself, is to solemnize the proceedings. *See* Exhibit K (Walls Dep.

at 40) (purpose of prayer is to "impress upon the importance of a regular meeting, just to ask for

guidance in making the proper decisions"); Deposition of John Evans at 39, attached hereto as

Exhibit P (purpose of prayer is for "guidance for the body of the school board, that [they] might

make good decisions for [the] school district"); Exhibit D (Bireley Dep. at 151) (to "ask for

Divine guidance for the Board to help them make correct decisions and get them through the

meeting in the proper way . . . to make the best decisions for what's best for our students");

Exhibit E (Hattier Dep. at 114) (solemnizing the proceedings means "the idea that we are going

to think beyond ourselves, beyond what's happening today and sit down and make absolutely the

best decisions we can").

55.     In addition to seeking guidance in their decision making, Board members have

occasionally prayed for individual families within the District stricken by tragedy or for others in

the community. *See* Exhibit L (Hobbs Dep. at 198) (if there was a death or other tragedy, "often

[the person giving the prayer] would bless that, you know, they would say, you're in our

thoughts, that family, who's ever gone through this tragedy is in our thoughts"); *see also* Exhibit

F (D. Mitchell Dep. at 145) ("the prayer may be lifted for the school bus drivers or the teachers

or the students, you know, however the person feels led to pray").

56.     However, the prayer policy has not been used to proselytize one's own religion or

to disparage that of another. *See* Exhibit L (Hobbs Dep. 198) (stating that prayer is not for

12

"preaching any one religion to anyone"); Exhibit K (Walls Dep. at 159) ("I don't think [the meeting or prayer] needed to be the time or place for proselytizing or trying to convert anybody").

Dated: April 10, 2008                              Respectfully submitted,

                                                     _/s/_ Warren Pratt_____
                                                     Warren Pratt (Del. Bar No. 4334)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Suite 1000
Wilmington, DE 19801
Telephone:    (302) 467-4200
Facsimile:    (302) 467-4201

Jason P. Gosselin
Katherine L. Villanueva
Elizabeth L. McLachlan
DRINKER BIDDLE & REATH LLP
One Logan Square, 18th and Cherry Sts.
Philadelphia, PA 19103
(215) 988-2700
(215) 988-2757 (facsimile)