UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONA DOBRICH and MARCO DOBRICH, individually and as parents and next friend of ALEXANDER DOBRICH, SAMANTHA DOBRICH, JANE DOE and JOHN DOE, individually and as parents and next friend of JORDAN DOE and JAMIE DOE, | : : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. Action No. 05-cv-00120-JJF |
| THE INDIAN RIVER SCHOOL BOARD, et al., | : : | |
| Defendants. | : | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
SUMMARY JUDGMENT**

May 22, 2008

Warren Pratt (Del. Bar No. 4334)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Suite 1000
Wilmington, DE 19801
Telephone:   (302) 467-4200
Facsimile:    (302) 467-4201

Jason P. Gosselin
Katherine L. Villanueva
Elizabeth L. McLachlan
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1
II.  ARGUMENT ................................................................................................................. 1
  A.  The Board's Legal Authority Is Consistent With That of a Legislative Body ................................................................................................................. 1
  B.  *Marsh v. Chambers* Applies to the Board Prayer Policy ...................................... 2
     1.  *Marsh* Does Not Stand for the Proposition That Only Non-Sectarian Prayer May Constitute Permissible Legislative Prayer .............. 2
     2.  Under *Marsh*, the Board Prayer Policy Is Constitutional .......................... 4
  C.  The Board Prayer Policy Does Not Reveal a Preference for Religious Expression .................................................................................................. 6
  D.  The Board Prayer Does Not Violate the Endorsement Test ................................. 7
  E.  The Board Prayer Does Not Violate the *Lemon* Test ......................................... 11
  F.  Plaintiffs' Challenges to the Board Prayer Policy Are Meritless and Unworkable .................................................................................................. 12
III. CONCLUSION ............................................................................................................ 14

## TABLE OF AUTHORITIES

*Borden v. Sch. Dist.*,
　2008 U.S. App. LEXIS 8011 (3d Cir. Apr. 15, 2008) ............................................. 9-10

*Chadhuri v. State of Tennessee*,
　130 F.3d 232 (6th Cir. 1997) ....................................................................................... 8

*County of Allegheny v. ACLU*,
　492 U.S. 573 (1989) ..................................................................................................... 7

*Elrod v. Burns*,
　427 U.S. 347 (1976) .................................................................................................... 10

*Lee v. Weisman*,
　505 U.S. 577 (1992) ..................................................................................................... 6

*Lemon v. Kurtzman*,
　403 U.S. 602 (1971) ..................................................................................................... 7

*Lynch v. Donnelly,*
　465 U.S. 668 (1984) ..................................................................................................... 8

*Marsh v. Chambers*,
　463 U.S. 783 (1983) ............................................................................................ *passim*

*Modrovich v. Allegheny County*,
　385 F.3d 397 (3d Cir. 2004) ..................................................................................... 7, 8

*Pelphrey v. Cobb County*,
　448 F. Supp. 2d 1357 (N.D. Ga. 2006) ....................................................................... 3

*Santa Fe Indep. Sch. Dist. v. Doe*,
　530 U.S. 290, 311 (2000) ........................................................................................... 10

## I. INTRODUCTION

After one-hundred sixty pages of briefing and an additional sixty-one pages devoted to the undisputed material facts, most of what can be written about the constitutionality of the Indian River School Board's prayer policy ("Board Prayer Policy") has already been written. For that reason, Defendants will limit this Reply Brief only to those arguments that have not previously been addressed. The vast majority of the points raised by Plaintiffs in their Answering Brief have already been addressed, either in Defendants' Opening Brief or in Defendants' Answering Brief. For example, whether the purpose of the Board's Prayer Policy is a "sham" was addressed in detail in Defendants' Answering Brief. To avoid repetition, Defendants will not reiterate points that have already been properly presented to the Court, and Defendants respectfully request that the Court consider Defendants' Answering Brief in conjunction with this reply.

## II. ARGUMENT

### A. The Board's Legal Authority Is Consistent With That of a Legislative Body

In arguing that *Marsh v. Chambers*, 463 U.S. 783 (1983), does not apply, Plaintiffs contend that Defendants have exaggerated the legal authority that the Board possesses. *See* Pls.' Ans. Br. at 11. Among the myriad legislative-type duties for which the Board is responsible, Plaintiffs challenge Defendants' assertions that (1) the Board has the power to levy taxes; and (2) the Board has the authority to pass laws.[1]

---

[1] Notably, Plaintiffs do not dispute any of the other duties that Defendants rely on to support their argument that the Board is a legislative or other deliberative body.

Even assuming that the Board does not enjoy the power to levy taxes and the authority to pass laws, the Board's remaining duties and responsibilities are akin to those of a "legislative or other deliberative body." With respect to the Board's power to levy taxes, however, the fact that the Board must first obtain a referendum to levy taxes does not make the Board's authority any less legislative or deliberative. Indeed, it is common for legislative bodies such as town councils to levy taxes by referendum. Moreover, with respect to the Board's authority to pass laws, Defendants concede that the Board cannot "pass laws," but the Board members do have authority to adopt rules and regulations, which are binding on the community. In other words, the Board is a political subdivision, like any county, municipality, or any other unit of local government, and the authority and functions of the Board clearly support the classification of the Board as a "legislative or other deliberative body." While Plaintiffs quibble over minutiae, they miss the larger point.

### B. *Marsh v. Chambers* Applies to the Board Prayer Policy

#### 1. *Marsh* Does Not Stand for the Proposition That Only Non-Sectarian Prayer May Constitute Permissible Legislative Prayer

Plaintiffs make much of the fact that in *Marsh* the Court noted that the chaplain had previously used explicitly Christian prayers but later used only non-sectarian prayers. *See* Pls.' Ans. Br. at 13. Plaintiffs describe the Court's holding in *Marsh* as "[t]he *absence* of a holding . . . on sectarian prayer." *See* Pls.' Ans. Br. at 14 (emphasis added). Plaintiffs therefore argue that the Court's holding thus does not extend to "sectarian" prayer. In footnote 15 of Plaintiffs' Answering Brief, Plaintiffs state that the "reason that the Supreme Court did not distinguish between sectarian prayer and non-sectarian prayer is that the issue was not presented." *See* Pls.' Ans. Br. at 30 n. 15. Plaintiffs further state that "[t]he facts on the record for the Supreme Court were that the prayers were non-sectarian." *See id.*

- 2 -

This is not an accurate reading of *Marsh* because the Court did consider the previous nature of the prayers, but the Court found the previous sectarian references to be inconsequential. The *Marsh* decision addressed Nebraska's practice of paying a chaplain to open the legislative sessions with a prayer. The Court noted that the same chaplain had been used for sixteen years, and that for most of that time the chaplain used sectarian prayers. *Marsh*, 463 U.S. at 793 n.14 ("some of his earlier prayers were often explicitly Christian"). In its ruling, the Court did not draw a distinction between sectarian and non-sectarian prayer. Sectarian prayer was as much a part of the factual record in *Marsh* as non-sectarian prayer. Indeed, the Court went out of its way to state that the content of prayer "is not of concern" to the constitutionality of legislative prayer. Instead, the determinative inquiry was whether "the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief. That being so, it is not for us to embark on a sensitive evaluation or to parse the content of a particular prayer." *Marsh*, 463 U.S. at 793 n. 14.

Plaintiffs finally state that "Courts of Appeals that have employed a *Marsh* analysis have *assumed* without deciding that *Marsh* applied, because even under *Marsh*, the prayer practices were unconstitutional." *See* Pls.' Ans. Br. at 15 (emphasis in original) (citing *Bacus*, 52 Fed. App'x at 356). Regardless of whether Courts of Appeals have assumed that Marsh applies or have engaged in a substantive analysis of *Marsh*, this does not change the underlying determination that the Board constitutes a legislative body, which determination is consistent with decisions of other Courts of Appeals.[2] Moreover, decisions of other Courts of Appeals are

---

[2] The Third Circuit has not addressed the applicability of *Marsh* in the context of legislative prayer. Despite generally agreeing that school boards are legislative bodies, other courts differ in their analyses of the parameters of *Marsh*. *See Pelphrey v. Cobb County*, 448 F. Supp. 2d 1357,
(continued…)

- 3 -

not binding on this Court, particularly if such decisions have misconstrued Supreme Court precedent.

### 2.    Under *Marsh*, the Board Prayer Policy Is Constitutional

Plaintiffs contend that Defendants have grossly distorted the Court's holding in *Marsh*, but Plaintiffs are the ones who are distorting *Marsh* and drawing an artificial distinction between sectarian prayer and non-sectarian prayer.  Indeed, Plaintiffs have overlooked significant portions of Defendants' Opening Brief, in which Defendants addressed the Court's holding in *Marsh* and the relevant considerations in the application of *Marsh*.  Plaintiffs assert that, according to Defendants, legislative prayer is incapable of proselytizing and that *Marsh* therefore permits legislative prayer in all circumstances.  *See* Pls.' Ans. Br. at 29.  This interpretation of Defendants' Opening Brief contradicts Defendants' repeated statements that, "[u]nder *Marsh*, sectarian prayer is permissible *when the prayer opportunity is not exploited for an impermissible purpose*."  *See, e.g.*, Defs.' Opening Br. at 25 (emphasis added).

The evidence in the record here makes it clear that the prayer opportunity has not been used to advance Christianity or any other religion.  Although Plaintiffs take issue with the fact that "the Board's 30(b)(6) witness could not recall a non-Christian ever having served on the Board," *see* Pls.' Ans. Br. at 32, the religion of each Board member is irrelevant to the determination as to whether the opportunity to invoke Board prayer has been used to advance Christianity.  The Board prayer offered on June 20, 2006, for example, with which Plaintiffs take much issue, was wholly consistent with the Board members' testimony regarding the purpose of

---

(..continued)
1365-66 (N.D. Ga. 2006) (explaining "th[is] area of the law remains in its nascency, with no apparent consensus having yet emerged respecting [*Marsh*'s] appropriate contours").

the Board prayer. While Plaintiffs choose to cite only the reference to "Jesus Christ," the prayer in its entirety is nothing more than an appeal for wisdom and sympathy for community members:

> Dear Heavenly Father, among Your many blessings, we thank You for the beautiful summer weather and especially for the much needed rain. We thank You also for the wonderful school year that has just ended with so many successes, awards, and accomplishments of our students and staff once again. We ask Your continued blessings on those among us who have devoted so much time, energy, and expertise to the betterment of this district and who are now stepping down. Give them peace, health, and happiness in the days to come. Be with our people who have suffered illness or injury this year, and grant them a quick return to normal life. Comfort the families of those who are lost to us and give them strength in their time of grief. Protect all who are here and return them to us safely in the fall. We ask that You continue to guide and direct us in the our decision-making, so that every child in this district receives the educational skills to be all he/she can be. We ask these things and all others in the name of Jesus Christ, our Lord. Amen.

*See* Exhibit Y (recording of Board prayer offered on June 20, 2006). That Plaintiffs would take issue with a prayer solely because of a single reference to Jesus Christ is unfortunate. The purpose of the June 20, 2006 prayer was to call to mind the important work of the Board and to unify the community. While Plaintiffs may choose to overlook these simple words of gratitude and good will, this does not mean that the purpose of the prayer is something other than to solemnize the Board meeting, or that the effect is to promote Christianity.

### C. The Board Prayer Policy Does Not Reveal a Preference for Religious Expression

Plaintiffs next assert that Defendants have mischaracterized the alternatives available under the Board Prayer Policy, and that the Board Prayer Policy reveals a preference for religious expression. *See* Pls.' Ans. Br. at 16. Plaintiffs rely on (1) the title of the Board Prayer Policy; and (2) the fact that the Board Prayer Policy "prescribes only two mechanisms for solemnifying Board meetings – prayers or moments of silence." *See id.* Plaintiffs further state

- 5 -

that "consistent with the Policy's title . . . Board member[s] will open the meeting[s] with a Christian prayer." *See id.*

Plaintiffs' argument is illogical. The title of the Board Prayer Policy, which references the term "prayer" does not thereby reveal a preference for religious expression or a preference for *Christian* prayer. Had the Board referred to the Board Prayer Policy as the Solemnification Policy, as Plaintiffs suggested, the Board would have been accused of further perpetrating a sham.

In sum, the Board Prayer Policy allows all types of prayer, as well as moments of silence. This reflects the fact that the Board does not prefer religion over non-religion, or Christianity over any other religion.

### D.     The Board Prayer Does Not Violate the Endorsement Test

As Plaintiffs correctly state, the "analysis of endorsement [under the endorsement test] is similar to the analysis of 'primary effect' under the *Lemon* test." *See* Pls.' Ans. Br. at 17. Plaintiffs' argument fails, however, in reaching the conclusion that references to Jesus Christ are *per se* violations of the endorsement test.

Despite Plaintiffs' view that sectarian references are determinative, the Supreme Court and the Third Circuit have confirmed that a challenged practice must be considered in its entirety, and not one factor is dispositive of the endorsement test. Indeed, "the endorsement analysis requires a specific, fact-based inquiry to determine if a reasonable observer, aware of various contextual factors, would be offended for the particular reason that the [challenged governmental conduct] sends a message of government endorsement of religion." *County of Allegheny v. ACLU*, 492 U.S. 573, 630 (1989) (O'Connor, J., concurring); *see also Modrovich v. Allegheny County*, 385 F.3d 397, 407 (3d Cir. 2004) ("endorsement analysis requires a specific,

fact-based inquiry to determine if a reasonable observer, aware of *various* contextual factors, would be offended") (emphasis added).

Here, Plaintiffs' reliance on the sectarian references not only conflicts with the Supreme Court's holding in *Marsh*, but also the Court's repeated instruction to consider *all* factors when analyzing governmental conduct under the endorsement test. Religious references in the prayers do not defeat a finding that the challenged practice is constitutional under the endorsement test. As discussed in Defendants' Opening Brief, the purpose of the Board's invocation of prayer, which contained Judeo-Christian references, was to solemnize the Board meetings. Although some of the prayers mention "God" and "Jesus Christ," "[t]o invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment; it is simply a tolerable acknowledgement of beliefs widely held among the people of this country." *Marsh*, 463 U.S. at 792. Therefore, the Judeo-Christian references in the prayers do not defeat the secular purpose of the Board prayers, *see Chadhuri*, 130 F.3d at 236; *Lynch v. Donnelly,* 465 U.S. 668, 673 (1984), and the inclusion of these religious references does not render the Board prayer unconstitutional under the endorsement test. When viewed in the context in which the prayers were recited, "a reasonable observer familiar with the history and context of the [Board prayers] would [not] perceive the [Board prayers] as a government endorsement of religion." *See Modrovich*, 385 F.3d at 401.

Moreover, Plaintiffs' argument renders history dispositive, *see* Pls.' Ans. Br. at 18, and directly conflicts with *Modrovich*, which holds that the endorsement test requires a fact specific, case-by-case analysis that depends on the audience, the forum where the activity occurs, and general history. *Modrovich,* 385 F. 3d at 401-02. In *Modrovich*, the Third Circuit emphasized present events and de-emphasized the historical fact that the Ten Commandment display at issue

in that case had been donated to the county by a Christian group. Under *Modrovich*, therefore, the critical emphasis is on present events, not specific history. 385 F. 3d at 410.

Here, the Board adopted the Board Prayer Policy, which modified an existing but unwritten policy, in an effort to comply with the Establishment Clause. To consider the absence of a Board Prayer Policy in prior years as outcome-determinative would lead to the absurd result that governmental entities would have no motivation to modify past policies or adopt new policies to be consistent with the Establishment Clause.[3]

Plaintiffs next advance a broad concept that "prayers given or sanctioned by school officials in the presence of students anywhere on public grounds – not merely in the classroom – are . . . unconstitutional." *See* Pls.' Ans. Br. at 19. Plaintiffs have not cited any authority for this purported constitutional parameter. This is because there is none. Indeed, there is no Supreme Court or Third Circuit case that stands for such a broad prohibition against religious activity. Although Plaintiffs cite to *Borden v. Sch. Dist.*, 2008 U.S. App. LEXIS 8011, at *24 (3d Cir. Apr. 15, 2008), the Third Circuit explicitly stated in *Borden* that "[n]ot every religious display of a school official will have the necessary 'history and context' to be an Establishment Clause violation[.]" *Id.* at *24. In *Borden*, consistent with its instruction to engage in a case-by-case analysis, the Third Circuit determined that the plaintiff's conduct violated the Establishment Clause only after analyzing the totality of factors. Importantly, contrary to Plaintiffs' unsubstantiated reading of *Borden*, the Third Circuit did not hold that prayers by school officials on public grounds are unconstitutional.

---

[3] It is also worth noting, as Defendants stated in their Answering Brief, that what a reasonable observer would perceive is a question for the finder of fact. *See Modrovich v. Allegheny County*, 385 F.3d 397, 417 (3d Cir. 2004); *see also* Defs.' Ans. Br. at 27.

The *Borden* decision highlights the difficulty in applying the endorsement test. In *Borden*, the court found that the plaintiff football coach's decision to stand in respectful silence while his players prayed was an endorsement of religion, in light of his history of praying with them. Defendants respectfully submit that the court could have just as easily reached the opposite conclusion that the coach's respectful silence, in light of his history, demonstrated an attempt to remain neutral toward religion. In any event, the very same conduct by a coach without the history of the *Borden* plaintiff would be deemed constitutional. Fortunately, this Court need not reach that issue. The Board prayer at issue in this case does not occur in a classroom nor does it constitute an extracurricular activity. As the Supreme Court has explained, extracurricular activities are activities that are important "to many students . . . as part of a complete educational experience." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 311 (2000). Unlike graduation ceremonies or football games, for example, Board meetings are not part of a student's educational experience.

Finally, Plaintiffs believe that the duration of the Board prayers is constitutionally irrelevant.[4] *See* Pls.' Ans. Br. at 21. While Defendants agree that violations of the Establishment Clause can occur "for even minimal periods of time," *see Elrod v. Burns*, 427 U.S. 347, 374 (1976), Defendants referred to the duration of the Board prayers to emphasize that the Board did not exploit its opportunity to say the prayers. A ten or fifteen minute prayer at the beginning of a Board meeting would certainly raise concerns as to whether the prayer

---

[4] Plaintiffs also contend that "Defendants mischaracterize how the Board adopted the [Board Prayer] Policy." *See* Pls.' Ans. Br. at 10. Plaintiffs' reliance on the method by which the Board adopted the Board Prayer Policy is misplaced because Defendants acknowledge that the Board Prayer Policy was not adopted in the typical manner. Regardless of how the Board Prayer Policy was adopted, however, Defendants highlighted the process by which most Board policies are adopted to demonstrate the legislative nature of the process.

opportunity is being exploited for an improper purpose.  That, of course, has not happened, and Defendants introduced evidence as to the length of the prayers to provide context.  The Board prayers are not intended as devotional exercises and have not been used for that purpose.  The length of the prayers is merely one factor out of many to support the Board's position that the Board prayers, while occasionally sectarian in nature, do not rise to the level of exploiting or proselytizing any one religion.  *See Marsh*, 493 U.S. at 794-95.

### E.    The Board Prayer Does Not Violate the Lemon Test

Plaintiffs cite the testimony of Robert Wilson in arguing that the purpose of the Board Prayer Policy is a sham.[5]  Plaintiffs, however, have taken Mr. Wilson's testimony out of context.  Mr. Wilson testified that he "want[s] the public to take part in the prayer," but Mr. Wilson repeatedly explained that the Board prayers "publicly . . . unify" the Board members.  *See* R. Wilson Dep. at 31; *see also id.* ("It's just a way to publicly come together as a board."); (stating that the Board prays in the public's presence to show "the same kind of unity"); 33 ("[W]e feel that we should have a right to prayer and unify.").  When Mr. Wilson's testimony is considered in its proper context, it is clear that Mr. Wilson does not view the Board's purpose as including the public in a devotional exercise, but rather to demonstrate to the public that the Board is unified and to invite the public to join the Board in its unified efforts.[6]  Furthermore, there is no

---

[5] Importantly, Mr. Wilson, who joined the Board in 2006, was not a Board member when the Board Prayer Policy was adopted in 2004.  *See* Deposition of Robert Wilson, attached to Pls.' Ans. Br., at 3 (stating that he has been a member of the Board since July 2006).

[6] This is consistent with the testimony of the remaining Board members, who uniformly stated that the purpose of the Board prayer is to solemnify the Board meetings.  *See* Exhibit K (Walls Dep. at 40) (purpose of prayer is to "impress upon the importance of a regular meeting, just to ask for guidance in making the proper decisions"); Deposition of John Evans at 39, attached hereto as Exhibit P (purpose of prayer is for "guidance for the body of the school board, that [they] might make good decisions for [the] school district"); Exhibit D (Bireley Dep. at 151) (to
(continued…)

evidence in the record that Mr. Wilson exploited the prayer opportunity of otherwise violated the Board Prayer Policy.

### F. Plaintiffs' Tacit Alternative to the Board Prayer Policy Are Meritless and Unworkable

Plaintiffs' position is that Board prayer is improper under any circumstances. This position is made clear in both Plaintiffs' Motion for Summary Judgment as well their Answering Brief to Defendants' Motion for Summary Judgment. However, there is an undercurrent that flows throughout the presentation of Plaintiffs' arguments suggesting that, if the Court finds Board prayer permissible, it should nonetheless force Defendants to strip all sectarian references from those prayers.

Indeed, Plaintiffs seem to take issue not so much with the fact that prayers are offered but that they contain sectarian references. For example, in the preliminary statement of their Answering Brief Plaintiffs note the reference to Jesus Christ in the prayer offered at the June 20, 2006 Board meeting. Importantly, however, Plaintiffs have not otherwise complained about the substance of the prayer. Evidently, Plaintiffs do not take issue with the Board members giving thanks for the "beautiful summer weather" and the "much needed rain;" or giving thanks for a successful academic year that ended with many successes for students and staff alike; or seeking the continued blessings upon devoted teachers who had dedicated much of their careers to the District and were now stepping down; or seeking good health and comfort for families in the

---

(..continued)
"ask for Divine guidance for the Board to help them make correct decisions and get them through the meeting in the proper way . . . to make the best decisions for what's best for our students"); Exhibit E (Hattier Dep. at 114) (solemnizing the proceedings means "the idea that we are going to think beyond ourselves, beyond what's happening today and sit down and make absolutely the best decisions we can").

District suffering illness or who had experienced loss; or seeking continued guidance for the Board in its "decision making" so that "every child in th[e] district receives the educational skills to be all he/she can be."[7] *See* Exhibit Y.  Plaintiffs have not challenged these portions of the prayer, but instead take issue with this prayer because of the concluding reference to Jesus Christ.

To the extent that Plaintiffs are inviting this Court to stake out an alternative "middle ground" that would permit prayer so long as it does not contain sectarian references, this Court should reject that invitation.  As discussed at length elsewhere, there is nothing in *Marsh* that requires such a limitation.  Moreover, it is an illusory solution.  If the Court were to find that prayers are acceptable only so long as they are sufficiently watered down so that most people will not complain, the Court will not create a solution.  Instead, it will create a different problem that will need to be resolved when a person offended by generic references to God files a lawsuit.  The Court in *Marsh* set the parameters for legislative prayer.  They must be non-proselytizing, non-disparaging, and must be truly intended for the purpose of solemnizing formal proceedings.  Any other attempt to fashion a compromise that would circumscribe the content of prayer necessarily goes outside the bounds of *Marsh*.

In creating the Board Prayer Policy at issue in this case, the Board got it right.  Contrary to what Plaintiffs argue, the Board did not simply attempt to codify the practice that had previously been in existence.  Certainly they sought to preserve that practice, but they also sought to do so in a manner that is consistent with the established law on legislative prayer.  Moreover, the Board made it clear that prayer of any variety – in the name of any deity or no

---

[7] For the full text of the June 20, 2006 prayer, *see supra* at 4-5.

prayer at all – is acceptable for solemnizing the proceedings. The Court should find the Board Prayer Policy both as written and applied is constitutional. It is the only appropriate policy for a society that strives for religious pluralism and tolerance.

### III. CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court enter summary judgment in favor of the Board.

Dated: May 22, 2008                                        Respectfully submitted,

/s/Warren Pratt

Warren Pratt (Del. Bar No. 4334)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Suite 1000
Wilmington, DE 19801
Telephone:  (302) 467-4200
Facsimile:   (302) 467-4201

Jason P. Gosselin
Katherine L. Villanueva
Elizabeth L. McLachlan
DRINKER BIDDLE & REATH LLP
One Logan Square, 18th and Cherry Sts.
Philadelphia, PA 19103
(215) 988-2700
(215) 988-2757 (facsimile)

# CERTIFICATE OF SERVICE

  I, Warren T. Pratt, hereby certify that on May 22, 2008, I electronically filed the foregoing Reply Brief using CM/ECF, which will send notification of such filing to the following:

  Thomas J. Allingham II
  One Rodney Square
  P.O. Box 636
  Wilmington, DE 19899
  (302) 651-3000

  *Attorney for Plaintiffs*

               /s/ Warren Pratt
               Warren Pratt (Del. Bar No. 4334)